**BARNES & THORNBURG** LLP

Joseph G. Eaton
317-231-7705
joe.eaton@btlaw.com

11 South Meridian Street
Indianapolis, IN 46204-3535 U.S.A.
(317) 236-1313
Fax (317) 231-7433

www.btlaw.com

March 5, 2020

*Via Electronic Court Filing*
Honorable Stewart D. Aaron
Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    *Rouviere v. DePuy Orthopaedics, Inc., et al.*
                Cause No: 1:18-cv-04814-LJL-SDA

Dear Magistrate Judge Aaron:

      We represent DePuy Orthopaedics, Inc. ("DePuy") (now known as Medical Device Business Services, Inc.) in the above-referenced matter and we are writing in response to Plaintiffs' March 2, 2020 Letter Motion ("Plaintiffs' Motion"), which seeks to compel further responses to Plaintiffs' Interrogatories to DePuy. Plaintiffs' Motion should be denied in its entirety, including Plaintiffs' request for sanctions, and DePuy should be awarded costs for responding to these unsupported claims.

      **Brief Factual Background** This is a medical device products liability case. Plaintiffs, representing themselves *pro se*, allege that hip replacement medical device components manufactured by DePuy and Howmedica Osteonics Corp. ("Stryker") were defective in their manufacture, warnings, and design. These components were implanted in Jodi Rouviere's hip in August 2012 and revised and replaced over the course of multiple surgeries in 2016 and 2017.

      The only DePuy components implanted in August 2012 were (1) a femoral component - the Summit Stem, which is made of titanium and (2) the Biolox Head, which is made of ceramic. The Stryker components consisted of the MDM Dual-Mobility Liner, which includes a Tritanium shell, a cobalt-chrome liner, and a polyethylene insert. [*See* **Exhibit A** for x-ray and diagram of Plaintiff's initial hip implant identifying the components.] Plaintiff's hip was first revised in November 2016 primarily because Ms. Rouviere's pre-existing connective tissue disorder caused three of the components to impinge, or come into contact with each other. The components that impinged were the DePuy Summit Stem, the Stryker Tritanium shell and the MDM cobalt-chrome liner. The Biolox Head did not impinge or come into contact with any other component and there is no evidence to suggest that it had anything to do with Plaintiffs' alleged injuries. Impingement is a known risk of any hip replacement, especially in patients like Ms. Rouviere who have a connective tissue disorder, and her implanting surgeon was warned about these risks by both DePuy and Stryker in their Information for Use ("IFU") or warning as well as in other documents.

      With respect to DePuy, Plaintiffs' allegations for months concerned only the Summit Stem, but Plaintiffs more recently sought to conduct discovery on the femoral head component (the ceramic Biolox Head). However, as noted, the Biolox Head had nothing to do with the components that came into contact with each other and does not relate in any way to any of Plaintiffs' strict liability and negligence theories. That fishing expedition is the source of this discovery dispute.

### DePuy's Responses to Plaintiffs' First Set of Interrogatories Were Timely and Its Objections Are Not Waived.

Plaintiffs' first argument that DePuy's responses were untimely is simply incorrect. Plaintiffs served their First Set of Interrogatories to DePuy on February 21, 2019. [Plaintiffs' Interrogatories are attached as **Exhibit B**.]. As Plaintiffs' Motion acknowledges, the parties agreed to extend DePuy's deadline to respond until April 25, 2019. But Plaintiffs' Motion fails to disclose that on April 22, 2019, DePuy requested an additional ten day extension and Plaintiffs agreed. [Email from J. Rouviere attached as **Exhibit C**.] DePuy then timely served its responses to Plaintiffs on May 6, 2019.[1] This argument is yet another example of Plaintiffs making false accusations against DePuy and its counsel under the guise of their *pro se* status. DePuy responded within the time agreed to by the parties; its objections to Plaintiffs' First Set of Interrogatories are not waived.

### DePuy Properly Limited Its Responses to the DePuy Component at Issue – the Summit Stem – and the Court Should Deny Plaintiffs' Attempts to Retroactively Expand Their Interrogatories to Irrelevant Components.

The focus of Plaintiffs' Motion is ostensibly to compel DePuy to answer interrogatories regarding the ceramic Biolox Head component. This expansion is improper for three reasons. First, Plaintiffs' Interrogatories violate Local Rule 33.3. Second, Plaintiffs' Interrogatories clearly did not request information regarding components other than the Summit Stem. Third, and most importantly, the Biolox Head is entirely irrelevant to this case and Plaintiffs' claims. Therefore, the Court should deny Plaintiffs' requested fishing expedition using improper, retroactively-revised interrogatories.

#### A. Plaintiffs' Interrogatories Violate the SDNY Local Rules.

Local Rule 33.3 provides that the only interrogatories that may be served at the outset of a case are those "seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature." Plaintiffs' Interrogatories go well beyond these topics, address substantive claims, and violate the local rules. The Court should deny Plaintiffs' Motion to compel for violation of the Local Rules.

#### B. Plaintiffs' Interrogatories Only Sought Information Related to the Summit Stem, Despite Plaintiffs' Insistence After the Fact that They Sought Information Related to Other Components.

Despite the fact that Plaintiffs' Interrogatories violate the Local Rules, DePuy still fully responded to this discovery including by producing the Design History File (DHF), the 510(k) application to the Food and Drug Administration, the IFU, the Surgical Technique Brochure and literature relating to the Summit Stem. Plaintiffs defined the word **"Device"** in their Interrogatories as the **"DePuy Summit Tapered Hip System's *Summit stem* component."** Rightly so, since that is one of the three components that impinged and are at issue in the case. Plaintiffs apparently are simply now frustrated that their definition of "Device" in their Interrogatories did not include the

---

[1] Pursuant to Fed. R. Civ. P. 6(a)(1)(C), when the last day of a period falls on "Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Accordingly, DePuy's ten-day extension, which fell on Sunday, May 5, 2019, continued to run until the end of the day Monday, May 6, 2019.

Biolox Head. DePuy reasonably interpreted interrogatories regarding the "product" as requests for information regarding DePuy's "Device," as Plaintiffs' defined the term. DePuy's so-called "self-serving interpretation" was a logical interpretation based on Plaintiffs' own defined terms and the substance of Plaintiffs' Interrogatories.

On November 5, 2019 – *nearly six months after DePuy served its responses to Plaintiffs' Interrogatories* – Plaintiffs sent a meet and confer letter to DePuy that sought to broaden Plaintiffs' Interrogatories. [Plaintiffs' November 2019 Letter, attached as **Exhibit D**.] Plaintiffs were presumably aware that they had served the maximum number of 25 interrogatories and could not serve additional interrogatories regarding the Biolox Head. So, Plaintiffs instead framed these issues as "clarifications," but in reality these were wholesale revisions of Plaintiffs' Interrogatories. Plaintiffs' "clarifications" requested additional information from DePuy beyond the scope of the original requests, primarily regarding the Biolox Head. However, Plaintiffs failed to provide a basis for expanding their discovery requests other than to say the ceramic Biolox Head was one of the other components implanted in August 2012. DePuy responded on November 15, 2019 and declined to accept Plaintiffs' supposed clarifications. [DePuy's November 2019 letter, attached as **Exhibit E**.] Now, more than three months later and weeks before the close of fact discovery, Plaintiffs bring this issue to the Court. The Court should deny Plaintiffs' improper attempt to expand their discovery requests after the fact.

      C.      **The Biolox Head Is Irrelevant to Plaintiffs' Claims.**

Plaintiffs should not be allowed to broaden discovery regarding the Biolox Head because the Summit Stem is the only DePuy component that is relevant. The Biolox Head has nothing to do with impingement or the components coming into contact with one another. As noted, the Summit Stem came into contact or impinged with the MDM liner and Tritanium acetabular shell. The Biolox Head was not involved in the impingement in way, did not come into contact with the Stryker components and there is nothing indicating that it had anything to do with Plaintiff's need for a revision surgery. Plaintiffs are well aware that the DePuy Biolox Head is not relevant to their claims, as evidenced by the fact that it is only mentioned one time in Plaintiffs' Amended Complaint. [Dkt. 26, ¶ 83.] And the Amended Complaint does not allege injuries related to the Biolox Head, only injuries specifically related to the "Summit Tapered Hip Stem." [Dkt. 26, ¶¶ 162, 164, 167, 171, 173, 175.] When Plaintiffs amended their Complaint, they specifically alleged additional injuries including titanium toxicity, metallosis, and heightened titanium, aluminum, and other blood metal levels, but still alleged no injuries caused by the Biolox Head. [Dkt. 26, ¶ 11, 90, 92, 104, 105.] Plaintiffs' vague assertion in their Motion that they have alleged causes of action related to the Biolox Head is incorrect.

The reason that Plaintiffs do not allege that the Biolox Head caused Ms. Rouviere's injuries is because it could not. The Biolox Head is *ceramic*, and cannot possibly relate to Jodi Rouviere's alleged metal-related alleged injuries. Plaintiffs' statements regarding the Biolox Head are based on nothing more than speculation or conjecture. *Pearlstein v. BlackBerry Ltd.*, 2019 WL 5287931, at *3 (S.D.N.Y. Sept. 20, 2019) (holding that attempted discovery related to a product different from the product at issue in the case was not proportional to the needs of the case). Plaintiffs have met with healthcare providers from literally all over the world and they have not indicated that anyone has ever attributed the Biolox Head as a potential cause of Ms. Rouviere's injuries. Plaintiffs simply want to go on an impermissible fishing expedition for information about an irrelevant product in hopes they can stumble on something new. *See Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at

*2 (S.D.N.Y. June 21, 2002) (modifying discovery requests when they constituted "no more than a fishing expedition" to discover additional facts). DePuy rightfully refused to submit to such an expedition and provided only the information originally requested by Plaintiffs. The Court should not allow this discovery.

### DePuy Complied with Fed. R. Civ. P. 33(d) When It Indicated It Produced Responsive Documents and Identified the Records that Must be Reviewed.

Plaintiffs' Motion vaguely complains that DePuy misused Rule 33(d) [Motion at 3], but they fail to cite to a single legitimate example of this alleged misuse in their Motion. Pursuant to Fed. R. Civ. P. 33(d), DePuy was entitled to specify business records from which Plaintiffs could determine the answer to a particular interrogatory. As noted above, DePuy produced numerous business records in response to Plaintiffs' Interrogatories as well as Plaintiffs' First Set of Requests for Production relating to the Summit Stem. Case law within the Second Circuit plainly provides that "[w]here an unequal burden does not exist between the parties, the court will allow the responding party to produce business records, *even if the interrogating party must examine multiple documents* to ascertain the answers to its interrogatories." *See Sadofsky v. Fiesta Prod., LLC*, 252 F.R.D. 143, 148 (E.D.N.Y. 2008). In its responses to Plaintiffs' Interrogatories, consistent with the Federal Rules, DePuy indicated which specific records Plaintiffs should look at in response to each Interrogatory. In Plaintiffs' Exhibit A they list alleged issues with certain Interrogatories and DePuy's assertion of Rule 33(d). These examples only show that DePuy's invocation of Rule 33 was proper. *See e.g.*, Interrogatory 11 (requesting that DePuy describe all instructions or warnings), Interrogatory 16 (requesting that DePuy list all applicable regulations and standards), Interrogatory 18 (requesting that DePuy identify and describe all policies and procedures). These are the exact kind of burdensome interrogatories for which Rule 33(d) was intended. DePuy and Plaintiffs each have equal burden of deriving an answer from the documents, despite Plaintiffs' assertion otherwise. DePuy's use of Rule 33(d) was entirely proper.

### DePuy's Objections Were Not Boilerplate and Were Thoroughly Supported in DePuy's Response to Plaintiffs' Meet and Confer Letter.

Plaintiffs' complaint regarding DePuy's objections as to the number, form, and scope of Plaintiffs' Interrogatories is misplaced because these objections were proper. DePuy explained in great detail over six and a half single-spaced pages the reasons for its objections. [*See* **Exh. D**.] DePuy has not used objections to obstruct discovery and has explained its objections in its responses and subsequent meet and confer letters.

DePuy respectfully requests that Plaintiffs' Motion be denied and that the Court award DePuy its costs associated in responding to these unsupported claims.

Very truly yours,

*/s/ Joseph G. Eaton*

Joseph G. Eaton

cc:   All Counsel of Record (*via ECF*)

BARNES &THORNBURG LLP