# EXHIBIT F

*Law Offices of*
**ANDRE A. ROUVIERE**
Merrick Park Law Center
4070 Laguna Street
Coral Gables, Florida 33146
e-mail: Andre@Rouvierelawfirm.com

André A. Rouviere                                               Telephone (305)774-7000
Lissette B. Cruz                                                Fax (305)946-6121

March 12, 2020

JT Larson
Barnes & Thornberg LLP
11 South Meridian Street
Indianapolis, Indiana 46204

## RE:   ROUVIERE v DEPUY/STRYKER

Dear JT:

Plaintiffs take exception to the characterization of Plaintiffs efforts to acquire discovery from Depuy as harassing.   Plaintiffs are attempting to discover admissible evidence from Depuy, regarding the issues in this case, including: defects or dangers of the product and materials incorporated in the product; knowledge/notice of design, defect or dangers of the product and its materials (specifically including metals); Depuy's representations and warnings; and Depuy's culpability, callousness, recklessness and greed (profit over safety). With this in mind, Plaintiffs respond to your letter of March 10.

Regarding Depuy's claim that "Plaintiffs' Overbroad Definition of 'Hip Implant Device'": To the extent that Depuy has knowledge regarding the accompanying Stryker components itemized in your response – i.e., insert, liner, cup, and all coatings – Plaintiff would expect the corporate representative to provide said information; and if it is the position that Depuy has no knowledge regarding that issue, the corporate representative produced can simply say so on the record.

We appreciate your newfound willingness to respond to discovery regarding Depuy's Biolox head. As it applies to the Summit Stem, Biolox Head and coatings (i.e. Hydroxyapatite, Porocoat (Duofix)). It is our understanding that the FDA requires Depuy to maintain a Master Device File for the application process of each. To the extent that master file exists, it must be produced in Depuy's response and it is expected that the corporate representative will be prepared to discuss them. To the extent Depuy is now willing to produce documents relating to the Biolox head, please deliver them to Plaintiffs forthwith.

Category No. 6 is appropriate and relevant. Depuy's defenses to the plaintiff s claims are absolutely relevant, as are the 41 affirmative defenses filed, and Depuy's corporate representative should be prepared to respond to each.

Category No. 8 discusses more than warnings and materials, and these issues are relevant and Depuy's lawyers' representations are worthless.   Again, if it is Depuy's position that it does not publish or make any information available to the patients or the public, then the corporate representative can state that under oath.

1

Category Nos. 9, 12, 18, 21, 22, 23, succinctly describe the following issues relating to the implant device.  Coincidentally, these issues all relate to the risks and dangers related to the device, as well as Depuy's notice and knowledge of such risks and dangers, and are relevant.

Category No. 9:   failures, adverse events, risks, potential defects or corrective actions considered, proposed or implemented;

Category No. 12:   documents regarding safety, adverse events, design issues or flaws, or possible risks or harm the device or any of its components has caused or could cause a recipient;

Category No. 18:   metal hypersensitivity, foreign body reaction, metal toxicity, carcinogenicity, and allergic reactions to implant device, components or materials;

Category No. 21:   Biological and biochemical testing or analysis;

Category No. 22:   corrosion, erosion, deterioration of different metals or materials in the hip implant device or its components;

Category No. 23:   debris created or deposited by the hip implant device, or its components, and the associated risks or damage.

These categories are succinct, well defined, relevant, not overbroad and germane to the Plaintiffs case, and will remain as posed.

Category No. 15 & 16, Plaintiffs acknowledge Depuy's recognition of its discovery obligation to provide the requested information regarding the Biolox Delta Ceramic Head. In the spirit of compromise, Plaintiffs will modify the parameters to include the "pairing" of these components with any hip implant device or system Depuy manufactured or to which Depuy expected (foresaw) that such components would be paired.

Category Nos. 17, 19, 20, 25, 26, 27, 28: Plaintiffs note that Depuys attorney incorrectly attempts to eliminate relevant issues and discovery to Plaintiffs case with untruthful assertions meant to redirect Plaintiffs focus based solely on defense counsels' opinion.

    Depuy lawyers say:

> "As we have explained, the Pinnacle and ASR hip systems included metal-on-metal articulating surfaces that were designed to involve a metal femoral head component articulating against a metal liner component. Ms. Rouviere's implant at least relating to the DePuy components include a Biolox Delta ceramic head articulating against a poly liner. This is a completely different construct than the Pinnacle and ASR devices…"

This is neither accurate, nor evidence.   The Plaintiffs are entitled to all requested information regarding the Summit Stem, Biolox Head and the hip systems/components that these components have been paired with.   If the ASR and the Pinnacle systems utilized the Summit Stemamd/or Biolox head, or provided Depuy with information regarding the defects or dangers of a substantially similar device, they are relevant.   We look forward to discussing these issues with Depuy's corporate representative, under oath.   Somehow, the metal debris that was/is of concern in the "metal on metal" devices is affecting Jodi as well, and we look forward to

2

learning what Depuy knew about the risks and dangers of the metals in its devices, among other things.

Category No. 17:   The issues relating to the 2008 Depuy sales conference should reveal Depuy's knowledge and information regarding the design and safety of its hip implant devices (whether it's the Summit or its predecessors, pairings of components with the Summit or other substantially similar devices or components) and the marketing and promotion campaigns and corporate culture.

Category No. 19:   Dr. Schmalzreid was, at the very least, an outside design consultant for the Summit Stem, Porocoat and Duofix HA, and an author of numerous articles relied upon by Depuy in the sale and defense of the Summit Stem.

Category No. 20:   As an employee of Depuy, we would limit the scope of this request to documents authored or received by Dr. Campbell or studies conducted by Dr. Campbell or by the hospital/lab for which she works under her direction, which she was paid to or by which were funded by Depuy, and which relate or refer to wear debris from hip implants and the effect or possible effect on the human body.

Category Nos. 25 & 26:   Describes issues relating to Depuy's knowledge regarding:

> health concerns of the "metal on metal" hip implants from 2008 through 2012; and "metal on metal," the "ceramic on poly," and the "poly on metal" hip implant devices and components, including the differences between them and benefits and risks of each.

Notably, this relates to the issue you, the lawyers, discuss above to support your defense or avoidance, but argue at the same time that it's not relevant and that Plaintiffs should not be allowed to discuss the issue with Depuy. Again, Depuy's knowledge of the dangers associated with the various products and materials it uses and which are all incorporated into the subject device implanted into Jodi, is relevant and subject to discovery.

Category Nos. 27 & 28:   Evidence of Depuy's misrepresentations, deceptions and bad acts in the sale and defense of its products (particularly substantially similar products for which Depuy, as the manufacturer has unique specialized knowledge and is relied upon for information and candor about its products) is relevant to credibility and bias of Depuy as a witness and to Depuy's punitive liability.   We appreciate this may be a sensitive and embarrassing issue, but Plaintiffs sincere and legitimate interest is in discovery of the issue.

Again, these categories are succinct, well defined, relevant, not overbroad and germane to the Plaintiff's case, and, except as otherwise specifically indicated, will remain as posed.

Though Plaintiff appreciates Depuy's lawyers unnecessarily rendering their opinions as to why Plaintiffs' request certain information or attempt to create their own "evidence" of why the issues are not relevant, Plaintiffs, since the filing of the initial discovery request almost two years ago, have simply sought to obtain the basic discovery to which Plaintiffs have been entitled.   On the other hand, Depuy has systematically refused and rejected requests regarding this information. What is "harassing" is Depuy's refusal to timely produce what should have been produced in its first response.

As this matter relates to the proposed dates of deposition for the Depuy corporate representative deposition, the two dates proposed in late March are not realistic as it is clear Depuy has significant discovery to produce to Plaintiffs, and Plaintiffs will need time to review and prepare the new discovery materials.

                          Very truly yours,

                          */s/ Andre Rouviere*
                          Andre A. Rouviere

AAR/jlr

4