USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/3/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jodi Rouviere, et al.,

                             Plaintiffs,

          -against-

Depuy Orthopaedics, Inc. et al.,

                             Defendants.

1:18-cv-04814 (LJL) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

        Before the Court is a motion by Defendant DePuy Orthopaedics, Inc. ("DePuy"), pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for a protective order with respect to certain of Plaintiffs' Rule 30(b)(6) deposition categories. (Ltr. Mot., ECF No. 108.) For the following reasons, DePuy's motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

        This is a medical device product liability case arising from injuries allegedly sustained by Plaintiff Jodi Rouviere after receiving a purportedly defective hip implant. (First Am. Compl., ECF No. 26, at ¶¶ 6, 279-399.) Plaintiffs allege that hip replacement medical device components manufactured by DePuy and Howmedica Osteonics Corp. were defective in their manufacture, warnings and design. (*See id*.) These components were implanted in Jodi Rouviere's hip in August 2012 and removed or revised and replaced over the course of multiple revision surgeries in 2016 and 2017. (*Id*. ¶ 6.) The component that was manufactured by DePuy was the Summit Tapered Hip System Stem (the "DePuy Summit Stem"). (*Id*. ¶¶ 2, 4.)

        Plaintiffs have identified 30 categories about which they seek to have a corporate designee testify on behalf of DePuy. (*See* Ltr. Mot., Ex. D, ECF No. 108-4.) DePuy objects to many

of those categories on a variety of grounds, including that they are disproportional to the needs of the case; that they are irrelevant to the issues in the case; that they are argumentative, overly broad and harassing; that they seek legal strategy and opinions; that they seek information that DePuy does not possess; and that some are duplicative of one another. (Ltr. Mot. at 3-5.)

In an 11-page response, together with 15 exhibits,[1] Plaintiffs defend and refuse to withdraw any categories for which testimony is sought, except one – they agree to withdraw Category No. 15 because is it duplicative of Category No. 11. (Pls.' Ltr. Resp., ECF No. 113.)

**LEGAL STANDARDS**

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides in relevant part:

> In its notice . . . a party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

This Court previously has had occasion to set forth the legal standards regarding Rule 30(b)(6), which are as follows:

> "Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject." *Reilly v. NatWest Markets Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999). "To satisfy Rule 30(b)(6), the corporate deponent has an affirmative duty to make available 'such number of persons as will' be able 'to give complete, knowledgeable and binding answers' on its behalf." *Id*. (citation omitted). Thus, if witnesses designated pursuant to Rule 30(b)(6) lack "personal

---

[1] By their lengthy submission, Plaintiffs are in violation of the Court's Individual Practices. The Court's Individual Practices provide that opposition letters regarding discovery disputes "may not exceed three pages in length exclusive of attachments, which should be kept to a minimum." (*See* M.J. Aaron, Individual Practices, II.D.1.)

2

knowledge concerning the matters set out in the deposition notice," then "the corporation is obligated to prepare them so that they may give knowledgeable answers." *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, No. 07-CV-00930, 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009).

The organization "must make a conscientious good faith endeavor to designate the persons having knowledge of the matters [identified] . . . and to prepare those persons in order that they can answer fully, completely, [and] unevasively, the questions posed . . . as to the relevant subject matters." *Eid v. Koninklijke Luchtvaart Maatschappij N.V.*, 310 F.R.D. 226, 228 (S.D.N.Y. 2015) (citation omitted). The organization "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

If the entity receiving the deposition notice does not possess knowledge of the matters listed in the deposition notice, "then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to 'matters known or reasonably available to the organization.'" *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 76 (D. Neb. 1995) (citing Fed. R. Civ. P. 30(b)(6) ).

The deposition topics must be "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). "Like other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'" *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-09371 (KPF) (SN), 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (citations omitted).

*Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 80-81 (S.D.N.Y. 2019).

Rule 26(c)(1) requires the party seeking a protective order limiting discovery to show good cause for the request. *See* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ."). "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 514, *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013). Moreover, a district court has broad latitude to determine the scope of

3

discovery and to manage the discovery process. *See Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 328 F.R.D. 450, 452 (S.D.N.Y. 2018).

## ANALYSIS

As an initial matter, with respect to each of the Plaintiffs' categories at issue, except for one, Plaintiffs seek testimony from "[t]he person with the most knowledge regarding" such category. (*See* Ltr. Mot., Ex. D, at 2-5.) This is improper. DePuy has an obligation to make a conscientious good faith endeavor to designate the persons having knowledge of the matters identified and to prepare those persons in order that they can answer fully, completely and unevasively, the questions posed regarding the various categories. *See Eid*, 310 F.R.D. at 228. Those persons need not be the ones with the "most knowledge" about each particular category. Importantly, the testimony given by DePuy's corporate designee on a particular topic will be binding on DePuy inasmuch as whatever its deponent says can be used against DePuy. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015).

The Court now considers the various categories in dispute. The Court groups the categories in the manner in which they are addressed by the parties:

**I.        Plaintiffs' Category Nos. 1, 2, 3 And 13**

**Plaintiffs' Category No. 1:** "[P]ackaging, labels, tags, instructions, marketing materials or warnings relating to the hip implant device or any of its components, and the identity and substance of any documents related to such issues."

**Plaintiffs' Category No. 2:** "[T]he information or warnings of any kind related to the hip implant device or any of its components, which were published, delivered or communicated by you or any of your employees, agents, representatives or distributors to surgeons, physicians, other health care professionals or to patients, and any documents related to such issues."

**Plaintiffs' Category No. 3:** "[T]he information or warnings of any kind related to the hip implant device or any of its components, which were published, delivered or communicated by you or any of your employees, agents, representatives or distributors to Plaintiffs' surgeons, physicians, other health care professionals or to Plaintiffs, and any documents related to such issues."

**Plaintiffs' Category No. 13:** "[D]ocuments which refer to or discuss recall campaigns, technical service bulletins, or warnings which involved the device or any of its components from any country in which the device or any of its components are sold or distributed under any name."

DePuy argues that Category Nos. 1, 2, 3 and 13 are duplicative. (Ltr. Mot. at 5.) Plaintiffs respond that "[e]ach is different in its approach and what it seeks." (Pls.' Ltr. Resp. at 10.)

The Court in its discretion finds that these categories are duplicative to an extent, and replaces them with three categories that are more reasonably particular, as follows:

**Court Category No. 1:** "Written materials or warnings that accompanied the DePuy Summit Stem (including the Instructions for Use) during the period 2010 to 2017."

**Court Category No. 2:** "The packaging, labeling and marketing of the DePuy Summit Stem during the period 2010 through 2017."

**Court Category No. 3:** "Any recalls initiated regarding the DePuy Summit Stem."

To be clear, the Court's deposition categories relate to the DePuy Summit Stem, and not the broader definition used by Plaintiffs. The Court finds that Plaintiffs are not entitled to ask deposition questions regarding DePuy's Pinnacle products, which are not at issue in this case. (*See* Reply, ECF No. 114, at 1-2.)

**II.    Plaintiffs' Category Nos. 4, 9 And 12**

**Plaintiffs' Category No. 4:** "[T]esting, studies, analyses, adverse incidents, potential defects or risks of any kind related to the hip implant device or any of its components, and any documents related to such issues."

**Plaintiffs' Category No. 9:** "[D]ocuments (including but not limited to reports, memoranda, analyses, testing data or results) relating to any failures, adverse events, risks, potential defects or corrective actions considered, proposed or implemented for the hip implant device (including its components or coatings)."

**Plaintiffs' Category No. 12:** "[D]ocuments (including but not limited to internal and external correspondence, communications, emails, and memoranda of any kind) prepared by Depuy, its employees, agents, representatives or consultants which refer or discuss any concerns regarding safety, adverse events, design issues or flaws, or possible risks or harm the device or any of its

5

components has caused or could cause a recipient from the time it was first designed and produced through the present time."

DePuy argues that Category Nos. 4, 9 and 12 are duplicative. (Ltr. Mot. at 5.) Plaintiffs respond by restating in different words what these categories are seeking. (Pls.' Ltr. Resp. at 10.)

The Court in its discretion finds that these categories are duplicative to an extent, and replaces them with the following category, which is more reasonably particular:

**Court Category No. 4:** "The history of the performance of the DePuy Summit Stem, including any reports of defects, failures or other adverse events."

### III.     Plaintiffs' Category Nos. 11 And 15

Plaintiffs admitted that Plaintiffs' Category Nos. 11 and 15 were duplicative and agreed to withdraw Category No. 15. (Pls.' Ltr. Resp. at 10.) The Court adopts Plaintiffs' Category No. 11, using the Court's defined term for the DePuy product at issue, as follows:

**Court Category No. 5:** "The intended, permitted or foreseeable use of the DePuy Summit Stem within any other hip system, device or components, whether manufactured by DePuy or any other manufacturer, and whether or not communicated to or authorized by the FDA or any other oversight authority."

### IV.     Plaintiffs' Category Nos. 18, 22 And 23

**Plaintiffs' Category No. 18:** "[M]etal hypersensitivity, foreign body reaction, metal toxicity, carcinogenicity, and allergic reactions to implant device, components or materials, and regarding any documents relating to such issues."

**Plaintiffs' Category No. 22:** "[C]orrosion, erosion, deterioration of different metals or materials in the hip implant device or its components, and [] any documents relating to such issues."

**Plaintiffs' Category No. 23:** "[D]ebris created or deposited by the hip implant device, or its components, and the associated risks or damage (including but not limited to metallosis, staining of surrounding tissue, pseudotumors, subluxation, dislocation or any other potential harm or adverse event), and [] any documents relating to such issues."

6

DePuy argues that these three categories all seek information related to metal reactions allegedly caused by use of the Summit Hip Stem. (Ltr. Mot. at 5.) Further, DePuy objects that Category Nos. 18 and 23 are overbroad and not sufficiently particular. (*Id*.) Plaintiffs respond that the three categories are "in no way duplicative or redundant." (Pls.' Ltr. Resp. at 10.) With respect to Category Nos. 18 and 23, they contend that they are entitled to discovery regarding whether DePuy's products are carcinogenic, even though there are no allegations that the DePuy product caused Ms. Rouviere to contract cancer. (*Id*. at 9.)

The Court in its discretion finds that Category Nos. 18, 22 and 23 are duplicative to an extent. The Court also finds that the question of whether the DePuy product may be carcinogenic is not relevant or proportional to the needs of this case. The Court replaces Category Nos. 18, 22 and 23 with the following category, which is more reasonably particular, and is proportional to the needs of the case:

**Court Category No. 6:** "Any reactions caused by use and/or corrosion of the Summit Hip Stem, including hypersensitivity, foreign body reaction, metal toxicity and allergic reactions."

**V.       Plaintiffs' Category Nos. 17, 19, 20 And 25-28**

**Plaintiffs' Category No. 17:** "2008 DePuy sales conference and campaign ('Taking Shares of Business'), and [] any documents related thereto (including but not limited to videos, recordings, videos, recordings, materials and minutes."

**Plaintiffs' Category No. 19:** "[D]ocuments by or between Dr. T Schmalzreid and Depuy, its employees, agents or representatives."

**Plaintiffs' Category No. 20:** "[D]ocuments by or between Dr. Pat Campbell and Depuy, its employees, agents or representatives."

**Plaintiffs' Category No. 25:** "[T]he health concerns regarding the 'metal on metal' hip implants from 2008 through 2012, and any documents relating to such issues."

**Plaintiffs' Category No. 26:** "[T]he 'metal on metal,' the 'ceramic on poly,' and the 'poly on metal' hip implant devices and components, including the differences between them and benefits and risks of each, and regarding any documents relating to such issues."

7

**Plaintiffs' Category No. 27:** "Fraudulent statements, illegal payments to doctors, relationships with medical facilities/ surgeons…. made by Defendants, J&J, Stryker to public, patients."

**Plaintiffs' Category No. 28:** "[A]ny indictments, complaints, sanctions, fines, admonishments, orders or agreements which refer to or discuss the improper, deceptive or fraudulent communications, business dealings, transactions, bribes, payoffs, kickbacks, regarding their medical products (including but not limited to the subject hip implant device), and [] any documents relating to such issues."

DePuy groups these categories together and argues that they are argumentative, overbroad and harassing. (Ltr. Mot. at 4.) Plaintiffs defend each one. (Pls.' Ltr. Resp. at 10.) In its discretion, the Court grants DePuy's protective order and strikes each of the foregoing seven categories. Plaintiffs' Category No. 17 relates to marketing, but Court Category No. 2 (set forth above) already covers marketing for the period 2010 to 2017 relating to the product at issue. The Court finds that any broadening of that category is not proportional to the needs of the case. Plaintiffs' Category Nos. 19 and 20 are not limited by time or subject and therefore are not reasonably particular. Plaintiffs' Category Nos. 25 and 26 are not limited to the DePuy product at issue and the Court finds that they are not proportional to the needs of the case. Plaintiffs' Category Nos. 27 and 28 (which relate to whether DePuy improperly influenced surgeons to use their products) are misplaced since Plaintiffs do not "cast blame on either of the surgeons that operated on" Ms. Rouviere. (Pls.' Ltr. Resp. at 6.) In any event, the Court finds that these categories are not proportional to the needs of this product liability case.

### VI.     Plaintiffs' Category No. 6

**Plaintiffs' Category No. 6:** "[A]ny defenses claimed in this lawsuit and [] documents which support or relate to any defense asserted in this lawsuit."

DePuy argues that Category No. 6 seeks legal strategy and opinions. (Ltr. Mot. at 4-5.) Plaintiffs do not appear to specifically address this category in their letter response. To the extent that Plaintiffs are seeking legal strategy or opinions, such strategy and opinions are protected by

the work product doctrine. In any event, the Court finds that this category is not reasonably particular.

**VII.   Plaintiffs' Category Nos. 8 And 29**

**Plaintiffs' Category No. 8:** "[I]nformation on the subject hip implant device or its components (including but not limited to written, audio or visual materials, videos, models, photographs, brochures, advertisements or marketing materials), which you provide or make available, directly or indirectly, for the patient to review, or consult regarding the selection of the hip implant device or any of its components, and regarding any documents related to such issues."

**Plaintiffs' Category No. 29:** "[T]he Medical Device Master File."

DePuy objects to these categories on the ground that they seek information that DePuy does not possess. (Ltr. Mot. at 5.) DePuy's counsel explains that DePuy provides warnings and materials for the components at issue to surgeons, not patients, and that the "Master File" is not in DePuy's possession, but is on file with the FDA. (*Id.*; *see also* Reply at 2-3.) The Court accepts the representations made by DePuy's counsel, as officers of the Court, and strikes these categories. Moreover, the Court notes that Court Category No. 1 already captures warnings that accompanied the DePuy Summit Stem.

**VIII.   Remaining Plaintiffs' Categories**

The Court adopts certain of the remaining Plaintiffs' categories (*i.e.*, those not addressed above), as modified in order to make them reasonably particular and proportional to the needs of the case, as follows:

**Court Category No. 7 (replacing Plaintiffs' Category No. 5):** "Any coatings used or considered for use on the DePuy Summit Stem."

**Court Category No. 8 (replacing Plaintiffs' Category No. 7):** "The 510(k) application and approval process for the DePuy Summit Stem."

9

**Court Category No. 9 (replacing Plaintiffs' Category No. 10):** "Failure rates associated with the DePuy Summit Stem."

**Court Category No. 10 (replacing Plaintiffs' Category No. 14):** "The Design History File for the DePuy Summit Stem and the information contained therein."

**Court Category No. 11 (replacing Plaintiffs' Category No. 16):** "Use of the DePuy Summit Stem with components designed, manufactured and sold by other medical device manufacturers."

**Court Category No. 12 (replacing Plaintiffs' Category No. 24):** "Testing and/or analyses done on the DePuy Summit Stem."

The Court strikes Category No. 21 on the ground that it is confusing, not reasonably particular and not proportional to the needs of the case. The Court strikes Category No. 30 on the ground that it is redundant of Plaintiffs' other discovery devices and not reasonably particular.

## CONCLUSION

For the foregoing reasons, DePuy's motion for a protective order is GRANTED IN PART and DENIED IN PART. The following are the 30(b)(6) topics as to which a DePuy witness or witnesses shall testify:

**Court Category No. 1:** "Written materials or warnings that accompanied the DePuy Summit Stem (including the Instructions for Use) during the period 2010 to 2017."

**Court Category No. 2:** "The packaging, labeling and marketing of the DePuy Summit Stem during the period 2010 through 2017."

**Court Category No. 3:** "Any recalls initiated regarding the DePuy Summit Stem."

**Court Category No. 4:** "The history of the performance of the DePuy Summit Stem, including any reports of defects, failures or other adverse events."

**Court Category No. 5:** "The intended, permitted or foreseeable use of the DePuy Summit Stem within any other hip system, device or components, whether manufactured by DePuy or any other manufacturer, and whether or not communicated to or authorized by the FDA or any other oversight authority."

**Court Category No. 6:** "Any reactions caused by use and/or corrosion of the Summit Hip Stem, including hypersensitivity, foreign body reaction, metal toxicity and allergic reactions."

**Court Category No. 7:** "Any coatings used or considered for use on the DePuy Summit Stem."

**Court Category No. 8:** "The 510(k) application and approval process for the DePuy Summit Stem."

**Court Category No. 9:** "Failure rates associated with the DePuy Summit Stem."

**Court Category No. 10:** "The Design History File for the DePuy Summit Stem and the information contained therein."

**Court Category No. 11:** "Use of the DePuy Summit Stem with components designed, manufactured and sold by other medical device manufacturers."

**Court Category No. 12:** "Testing and/or analyses done on the DePuy Summit Stem."

**SO ORDERED.**

DATED:   New York, New York
         June 3, 2020

_____
STEWART D. AARON
United States Magistrate Judge