*Law Offices of*
**ANDRE A. ROUVIERE**
Merrick Park Law Center
4070 Laguna Street
Coral Gables, Florida 33146
e-mail: Andre@Rouvierelawfirm.com

André A. RouviereTelephone (305) 774-7000
Lissette B. CruzFax (305) 946-6121

November 18, 2020

VIA ECF
Honorable Stewart D. Aaron, U.S.M.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re: Rouviere v. DePuy Orthopaedics, et al.**
<u>**Civil Action No. 1:18-cv-4814 (AJN)**</u>

Dear Judge Aaron:

On behalf of the Plaintiffs, I submit this Response in Opposition to Defendant DePuy Orthopaedics, Inc.'s ("DePuy") Motion to Strike Untimely Expert Opinions of John Jarrell, Ph.D, the alternate engineer expert for Plaintiff. Based on the below facts and law, Plaintiffs respectfully submit this Court should deny the motion to strike in its entirety.

**I.Introduction.**

Plaintiffs retained their initial expert engineer witness to provide a report an expert opinion and trial testimony to prove Plaintiffs' factual allegations contained in their amended complaint of wrongdoing by the Defendants Howmedica Osteonics Corp. ("HOC") and DePuy against Plaintiffs. At the time of retention of this initial engineer expert witness, Plaintiffs were led to believe there was no conflict of interest the expert labored under with respect to any of the named Defendants in the instant case. *See Exhibit 1 hereto* (███ Conflict Work Sheet).

On September 21, 2020, Plaintiffs disclosed to HOC and DePuy the Plaintiffs' engineer expert and his written report, captioned "Testifying Expert Report." *DE# 158*; *See also Exhibit 2 hereto*. In this Expert Report, Plaintiffs' engineer expert initially provided a scope of his inquiry:

> ███████████████████████ retained by the Law Offices of Andre Rouviere to **evaluate the explanted hip prosthesis systems manufactured by DePuy Orthopedics and Stryker Orthopedics to determine if the components were defective in either their manufacture, design and/ or**

> **failure to adequately warn**. In addition, ▮ was also given three kidney stones removed from the plaintiff for analysis to determine the metallic chemistry content. ▮ was tasked with performing a non-destructive evaluation of the explanted hip system and kidney stones retrieved from Ms. Jodi Rouviere. This report addresses materials and manufacturing aspects of ▮'s investigation conducted by ▮ ▮. Specifically, ▮ was asked to review the available physical evidence of the explanted medical devices and kidney stones, manufacturing records, DePuy and Stryker documents, exemplar components, scientific literature, and the medical records of Ms. Jodi Rouviere pertaining to these issues."

*Expert Report, p.2.* (*emphasis in bold*). Having established the scope and mission, the engineer expert then identified materials reviewed and relied upon, which included but not limited to the following:

> 1. Deposition transcript of DePuy corporate representative Thomas Camino
>
> 2. DePuy's "Never Stop Winning" marketing material of 2009 ("Well, the Jury is in and it directly points at Stryker's System. All data points to meta! contamination from neck impingement with the Trident cup. In addition, squeaking has been reported to be much higher when their Beta Titanium Alloy stem, the accolade, when used with the Trident Cup."). *Exhibit 3 hereto.*
>
> 3. Email dated 10 18 2006 from Paul M. Berman Product Director of DePuy, with 22-page attachment ("Bearings In-Motion CD Script" by Paul Berman, providing therein details about downfalls of HOC's Stryker products, and DePuy's products reducing impingements). *Exhibit 4 hereto.*

*Id., pp.3-4.* The engineer expert continued his investigation by reviewing Plaintiff Ms. Rouviere's treatment, which specifically referenced (1) DePuy Summit 12/14 tapered titanium alloy femoral uncemented size #1 stem with high offset and with a Duofix hydroxyapatite (HA) coating (REF# 1570-12-070, Lot# 198547), (2) DePuy Biolox Delta Articuleze 28mm ceramic head +5mm (Lot# 3305163), (3) Head: DePuy Biolox Delta Articuleze Ceramic Head 28+5mm, (4) DePuy Biolox Delta TS Ceramic Femoral Head, Revision, 36mm +5, 16/18 Taper, (REF#: 1365-36-720, LOT: 8365734), (5) DePuy Summit 12/14 tapered femoral stem with Duofix with a Duofix, (6) removal of DePuy Summit 12/14 tapered femoral stem with Duofix with a Duofix and DePuy Biolox Delta TS Ceramic Femoral Head, Revision, 16/18 Taper, this device has a titanium sleeve at the taper." *Id., pp.5-6.* Plaintiffs' engineer expert reviewed photographic documentation relating to (1) "DePuy Biolox Delta ceramic head which is inside of the Stryker Restoration UHMWPE insert," and (2) "DePuy Biolox Delta TS ceramic femoral head and the Stryker Trident UHMWPE insert that were implanted." *Id., p.8.* Plaintiffs' engineer expert opined, among other things:

> 1. "In fact, Stryker's competitor, DePuy, was aware of the impingement issue in 2009 where it was presented at a National DePuy Sales Meeting and it was stated If DePuy was aware of this issue and was disseminating this information to their

sales force, then Stryker had to have been aware that the neck/rim impingement issue was a real problem."

2. "The explanted stem and liner from Ms. Rouviere showed direct evidence of significant wear that resulted in severe metallosis reactions. The amount of metal loss from the neck of the stem was extremely significant when compared to metal-on-metal articulating joints that have been shown to cause adverse metal debris reactions.

3. "The Stryker MDM Liner System presented an unreasonable risk of harm. Its risks outweighed its perceived benefits. These risks in excessive metal wear debris and metal ions, causing early failure and an undesirable clinical outcome for Ms. Rouviere."

*Id., pp.11-12*. To be clear, Plaintiffs' engineer expert's "scope of subject areas" is clear, concise and included DePuy by name and its products subject of this litigation. On October 14, 2020, two days before the day of the agreed upon deposition of Plaintiffs' engineer expert to be taken by DePuy, HOC filed a motion to disqualify Plaintiffs' engineer expert witness and his written report/opinion. *DE# 171*. DePuy did not join in the motion to disqualify or move separately to disqualify Plaintiffs' engineer expert notwithstanding DePuy knew and concealed the fact Plaintiffs' engineer expert owed a duty of loyalty and confidentiality to DePuy prior to and at the time of rendering his expert opinion on the scope of areas he examined detailed in the report.

On October 21, 2020, DePuy, knowing HOC's motion to disqualify Plaintiffs' engineer expert was pending, filed a motion for summary judgment, claiming Plaintiffs' engineer expert witness reviewed "DePuy-related documents" "were (1) the Rule 30(b)(6) deposition testimony of DePuy's corporate representative Thomas Camino, (2) a document titled "Never Stop Winning," allegedly related to a DePuy sales conference, and (3) an e-mail from a former DePuy employee, Paul Berman. [SUMF ¶ 51.]." *DE# 179, p.11*. DePuy specifically addressed its motion for summary judgment the opinion of Plaintiffs' engineer expert witness. *Id., pp.11, 15*. October 25, 2020, this Court granted HOC's motion to disqualify. In so doing, this Court ordered:

"No later than November 9, 2020, Plaintiffs may serve an expert disclosure by an alternate engineer expert regarding the same scope of subject areas as were covered by the Engineer Expert."

*DE# 193*. On November 9, 2020, Plaintiffs disclosed to HOC and DePuy the Plaintiffs' alternate engineer expert, Dr. John D. Jarrell, PhD, PE and his report on the same scope of subject areas as were covered by the Plaintiffs' initial engineer expert (hereinafter referred to as "disqualified expert"). *See Exhibit 3 hereto*. To be sure, Dr. Jarrell wrote in the first paragraph of this report:

"I, John D. Jarrell, PhD, PE, was retained by the law office of Law Offices of Andre A. Rouviere on or about October 28, 2020 to **evaluate the explanted hip prosthesis systems manufactured by DePuy Orthopedics and Stryker Orthopedics and review documentation and data to determine if the components were defective in either their manufacture, design and/ or failure to adequately warn.**"

3

*Exhibit 5, p.1*. (*emphasis in bold*). Dr. Jarrell then rendered his expert opinion, finding, among several other defects and negligence on part of Defendants DePuy and HOC the following: (1) "the Stryker MDM X3 Modular Dual Mobility Acetabular System with MDM Cobalt Chromium (CoCr) liner is defective due to the following defects which [he] ha[s] identified"; (2) "Stryker neglected to adequately warn of the risks associated with exposure to cobalt chromium alloy and titanium alloy metal wear debris, metal ions and corrosion products of their MDM X3 Modular Dual Mobility Acetabular System product line in comparison to the traditional designs with poly liners and shells with anatomical design, even though such risks were known to them, present in the published literature and identified in their testing documents"; (3) Stryker MDM Liner System presented an unreasonable risk of harm"; (4) "DePuy educated their sales team on other manufacturer's dangerous and toxic failed components but did not warn against the pairing of their components with Stryker's failing product".

DePuy now moves to strike Plaintiffs' alternate engineer expert Dr Jarrell's opinion as to DePuy, claiming Dr. Jarrell's opinion rendered as to DePuy is outside the scope of Plaintiffs' initial and now disqualified engineer expert. Plaintiffs' remonstrance to DePuy's motion to strike cannot be any clearer. Plaintiffs request that DePuy's motion to strike be denied in its entirety.

## II.     Reasons For Denying DePuy's Motion to Strike Dr. Jarrell's Expert Opinion.

Plaintiffs' alternate engineer expert, Dr. Jarrell's expert report and opinion was well within the scope of area established by the disqualified engineer expert. DePuy is confusing or rather equating Dr, Jarrell's opinion as the "scope of areas as were covered by the [disqualified] Engineer Expert." *DE# 193*. What DePuy is actually seeking is an exact or clone opinion of the disqualified engineer expert from Dr Jarrell -- a claim of entitlement by DePuy to be pure sophistry. The federal courts are in agreement on this point of law. *See, Lincoln Nat. Life Ins. Co. v. Transamerica Financial Ins. Co.*, 2010 WL 3892860 *2 (N.D. Ind. Sept. 30, 2010) ("Although the substitute expert's testimony and report are generally restricted to the same subject matter as the prior expert, the substitute is not normally required to simply adopt the prior expert's conclusions verbatim—in effect, doing little more than authenticating and confirming the prior expert's conclusions. Rather, the substitute expert 'should have the opportunity to express his opinions in his own language after reviewing the evidence' . . . . . he will be permitted to review all of the evidence, conduct his own independent analysis, and express his opinion in his own words.").

As an initial matter, had Plaintiff known the disqualified expert had a prior relationship with DePuy and its counsel and labor under a real conflict of interest with providing testimony against DePuy, Plaintiff would have never retained ore relied upon the report of the disqualified engineer expert in the first instance. Plaintiffs and this Court are now learning for the first time of this double conflicted disqualified engineer expert through DePuy's motion to strike here. Although the disqualified engineer expert set out the scope of his examination of DePuy and HOC and its products subject of Plaintiffs' amended complaint, the disqualified engineer expert elected not to opine on DePuy's failure to warn which was in the scope of area detailed by the disqualified expert. The rhetorical question is why? Was the disqualified engineer expert so conflicted he decided to opine against HOC but not DePuy? DePuy and its counsel remained

4

totally silent about this clear and real conflict of disqualified engineer expert. Of course, we now know why! Upon receipt of the disqualified engineer expert's "Testifying Expert Report," it appears DePuy felt totally relieved that the disqualified engineer expert looked out for DePuy by not opining on the certain aspects of the scope of areas detailed in the beginning of the disqualified Expert Report relating to DePuy.

Now with a conflict-free engineer expert, Dr Jarrell followed the same scope of area to examine facts, evidence and materials relating to DePuy and HOC which was the same as the disqualified engineer expert. Unfortunately for DePuy, this conflict free alternate engineer expert rendered a more complete expert opinion on the scope of areas covered by the disqualified engineer expert, placing clear liability on DePuy and HOC. DePuy now steps up and says that the disqualified engineer expert was actually an expert for DePuy and its counsel in prior litigation and owed a continuing duty of loyalty to DePuy and its counsel – a real and actual conflict warranting disqualification as an expert for Plaintiff. Was the concealment of this conflict by DePuy a conflict upon which DePuy owed a duty of candor to the Court and parties in this case? Or was DePuy hoping and expecting to get to rely upon the conflictd now disqualified engineer expert who would not render any opinion establishing liability as to DePuy?

One thing is clear, "our adversary system depends on a most jealous safeguarding of truth and candor," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 463 (4th Cir. 1993), and "[t]he system can provide no safe harbor for clever devises to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." *Id.* at 457-58. "Every attorney is an officer of the court . . . [and] he always has a duty of candor to the tribunal." *Burns v. Windor, Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). DePuy and its counsel knew Plaintiffs' disqualified engineer expert worked for, owed a continual duty of loyalty to DePuy and its counsel, but DePuy and its counsel intentionally kept silent given the disqualified engineer expert, while identifying the scope of areas he was going to examine and render an expert opinion on, did not throw DePuy under the proverbial city bus.

Nonetheless, a careful examination of Dr. Jarrell's scope of area to render an opinion on and the disqualified engineer expert's scope of area makes clear that Dr. Jarrell did not expand or go beyond the scope of area defined by the disqualified engineer expert. Rather, the only difference in the two expert reports is that Dr. Jarrell, the conflict-free engineer expert, provides a more detailed opinion of the failures of DePuy and its defective products used in Plaintiff Jodi Rouviere's body. Plaintiffs must be allowed to use and later present Dr. Jarrell's Report and Expert Opinion in its entirety during the summary judgment proceedings and before the jury in this case. Based on the foregoing facts and law, Plaintiffs request this Court to DENY the Defendant DePuy's Motion to Strike Untimely Expert Opinions of John Jarrell, Ph.D in its entirety.

Sincerely,

*//ss// Andre Rouviere*
Andre Rouviere
cc:    all counsel of record (via CM/ECF)

5