UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODI ROUVIERE and ANDRE ROUVIERE, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) Case No. 1:18-cv-04814-LJL-SDA ) |
| DEPUY ORTHOPAEDICS, INC. n/k/a MEDICAL DEVICE BUSINESS SERVICES, INC. and HOWMEDICA OSTEONICS CORPORATION d/b/a STRYKER ORTHOPAEDICS, | ) ) ) ) ) ) |
| *Defendants*. | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ALTER, AMEND OR SET ASIDE THIS COURT'S NOVEMBER 24, 2020 ORDER**

Pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3, Plaintiffs respectfully request that the Court reconsider its Order granting Defendant DePuy Orthopaedics, Inc.'s ("DePuy") motion striking Plaintiffs' alternate engineer expert witness report as to DePuy. *ECF 232*. At the oral argument hearing held by this Court on DePuy's motion to strike, the Court relied on the representations of DePuy's counsel that Plaintiffs' disqualified expert was not engaged or involved in ongoing litigation with his former client, DePuy. (In order for a Rule 59(e) motion to be granted, a party must identify "newly-discovered evidence or manifest errors of law or fact."). After the Court's decision came down granting DePuy's motion to strike, Attorney Matt Morrison who represents a plaintiff in a case against DePuy in the Northern District of Texas issued a sworn declaration that Plaintiffs' disqualified expert is DePuy's expert in that pending case.  Because this Court was misled as to the disqualified expert ongoing duty of loyalty owed to DePuy and its counsel, the Court should therefore amend or alter its order to reflect that the disqualified expert was involved in ongoing litigation for his client DePuy during

the pendency of the instant case and that the inherent conflict the disqualified expert labored under while performing a review and submitting a report for Plaintiffs involving his current client DePuy establishes good cause to allow Plaintiffs' alternate engineer expert Dr Jarrell's report and opinion to stand in its entirety and not be stricken as to claims of wrongdoing by DePuy.

In other terms, pursuant to Rule 59(e), Plaintiffs urge this Court to alter or amend its November 24, 2020 order to find there is good cause to (1) allow Dr. Jarrell's report and opinion stand in its entirety, (2) not strike any portion of his expert opinion as to DePuy and (3) deny DePuy's motion to strike.

## I.    <u>Statement of Facts</u>

This Court set the deadline for Plaintiffs to designate their experts by September 21, 2020. On September 18, 2020, Plaintiffs filed a letter motion for enlargement of time to file their expert disclosure to and including September 28, 2020. *ECF 154*. Plaintiffs' request was based on the fact that "[n]ot until Thursday night, September 17, 2020 at 10 pm did the expert advise the Plaintiffs that he was not willing to continue as Plaintiffs expert." *Id*. This Court denied Plaintiffs' motion for an extension of time. *ECF 157*.

On October 14, 2020, Howmedica Osteonics Corporation ("Howmedica") filed a motion to disqualify Plaintiff's engineer expert,[1] citing Plaintiff's engineer expert had been an expert for Howmedica and its counsel in other litigation and continued to be obligated as an expert witness for Howmedica and its counsel in other pending or future litigation. *ECF 171*. Notwithstanding Plaintiff's opposition to disqualification of their engineer expert. This Court granted

---

[1] Plaintiff has intentionally omitted the name of their expert and his former employer pursuant to this Court's order not to name said expert or former employer in future filings in this case.

Howmedica's motion to disqualify Plaintiffs' engineer expert witness (hereinafter referred to as "disqualified expert"). *ECF 193*. In so doing, this Court allowed Plaintiffs' to designate an alternate engineer expert witness to report and opine on the same scope of area as the disqualified expert. *Id*.

On November 9, 2020, Plaintiffs designated Dr. Jarrell as their alternate engineer expert and provided Dr. Jarrell's report and opinion to Defendants in this case. In response, Defendant DePuy moved to strike certain paragraphs of Dr. Jarrell's report and opinion, citing Dr. Jarrell rendered an opinion outside the scope of the disqualified engineer expert. Plaintiffs filed a response in opposition, arguing Dr. Jarrell's opinion did not go outside the area of scope of the disqualified engineer expert. Plaintiffs further argued that their disqualified expert was doubled conflicted having been an expert with DePuy and Homedica. *ECF 220*. Plaintiffs filed a motion for leave to file a surreply, citing among other reasons, the need to address DePuy's claim "Disqualified Expert was not currently engaged by DePuy as the last case on the prior testimony list concluded in 2014." *ECF 224*. This Court denied Plaintiffs' motion. *ECF 225*.

On November 24, 2020, this Court held a telephonic oral argument hearing on DePuy's motion to strike Dr. Jarrell's opinion as it related to DePuy. At this hearing, Plaintiffs claimed they were lulled into believing the disqualified expert and his former employer did not have a conflict with DePuy and Howmedica. Plaintiffs proffered to this Court that the disqualified engineer expert's owed a continuing duty to DePuy and its counsel, and DePuy and its counsel intentionally remained silence on this conflict with and/or duty owed by the disqualified engineer expert to DePuy and its counsel, while the disqualified expert was acting as an expert for Plaintiff and was given a mission "to evaluate the explanted hip prosthesis systems manufactured

by DePuy Orthopedics and Stryker Orthopedics to determine if the components were defective in

either their manufacture, design and/ or failure to adequately warn."[2]

Specifically, the following exchanged took place between Plaintiffs' counsel and the

Court:

> MR. ROUVIERE: Judge, first of all, the position of the plaintiff is that the scope that the Court would have been speaking about is the scope that the expert would have walked into the assignment to investigate and determine his opinions. And the scope that the disqualified expert and the scope that Mr. Jarrell were both given were identical. And they, with their own eyes and experience, reviewed the documents, reviewed the evidence, and came up with opinions.

> It is -- and we raised this with the Court, it is a question that DePuy knew that the disqualified expert was in fact a prior expert for them, had conflict. We have concern that they still have conflict ongoing with the case that is still pending within the multidistrict litigation, that the attorneys are right out of that office in Indiana. It is clear that DePuy kept that information close to the vest in an effort to try to gain an unfair advantage. They had a duty to advise the Court and advise the defense that this expert, who Stryker was already moving to disqualify, in fact also had a conflict in this case.

> THE COURT: Mr. Rouviere, if I could stop you there. As you know, in their reply letter DePuy attached as an exhibit -- and I know the public record version is redacted but I have the unredacted version, and there do appear to be in the disclosure that I believe you filed, it discloses cases in which the disqualified expert testified where DePuy was a party, and it lists Barnes & Thornburg as counsel. So you were aware of that –

> MR. ROUVIERE: Well –

> THE COURT: Let me finish. Let me pose the question and I will hear from you. You were aware of those prior engagements, were you not?

> MR. ROUVIERE: Judge, I have to tell the Court exactly how it occurred. As Court remembers from our last oral conversation we had, the first thing that was done was a conflict check with that company and with that expert. And that hurdle was cleared, as far as I was concerned, because in fact it was represented to me that there was no conflict. And the conflict form which I filed with the Court clearly lays out the attorneys, the companies

---

[2] *Report of Disqualified Expert at p.1.*

and the defendants. So going forward from that point in time, as the Court remembers, we were running on a short string of time because of what happened with our prior expert. I received a list of prior testimony. The rule is that it goes four years back, and I may have perused the whole thing but I only focused on the previous four years because I wasn't looking for a conflict because I had already cleared that conflict. Now beyond that, Judge, we're not just talking about a prior conflict. There's issues that the plaintiffs have with this ongoing, that the disqualified expert still has with this company and with this defendant and with this law firm. And it's working to the plaintiffs' detriment that there was dishonesty on the sides of the other players that why would I want to pay a second expert? It doesn't make any sense, Judge. I was led to believe this man had no conflicts. I find out the hard way from Stryker that there was a conflict, and DePuy sits on it and doesn't incorporate and enjoin with their motion to disqualify, and how do I know that the disqualified expert didn't deliberately minimize the responsibility of DePuy. A separate set of eyes with the same exact evidence has several opinions, and the scope of what they evaluated and what they look at was the same. Like the Court said, it's going to be regarding the same scope. We gave the same exact information to both experts. We have to do the same exact thing, the same exact scope. We did not go to the expert –

THE COURT:  So, Mr. Rouviere, it sounds like in answer to my question that you were -- and tell me if I have this wrong, you were aware that this expert had given testimony in cases where DePuy was a party but you didn't attach any significance to it. Would that be a fair way to characterize your response?

MR. ROUVIERE: No, your Honor. Frankly, as I was telling the Court, I had already put in my mind, based on the conflict check, that I wasn't even looking for conflicts. I reviewed briskly through that report. I never saw -- I don't know if I went that far down to the bottom because, as the Court knows, the rules as far as production of testimony is four years back, and the testimony of the excluded witness was many years behind that. So I was not aware, Judge. Had I been aware, I would not have gone forward or I would have made note of it. I would not sit here and bring myself deliberately to this point in the game if I knew that information. And again, to the point –

THE COURT: And at the time that you submitted the disqualified expert report, you were aware, weren't you, that that expert did not give any expert opinion regarding DePuy, correct?

MR. ROUVIERE: Judge, I will say this in the most honest manner that I can. If the Court remembers, we were under a 72-hour gun from the time I hired this expert until a report was due. I was provided with the final

version of that report about 20 minutes before midnight, your Honor. So my knowledge and ability to examine it with any in-depth evaluation at the time it was filed was very limited. And I did not put two and two together that this is a possible deliberate withdrawal of information by this expert until DePuy comes clean in their motion that he's been their expert for years. They don't say that he's still their expert, but we have reason to think that he is still is. But no, I was not aware of it, Judge.

THE COURT: And you don't have any evidence that this was -- what you're suggesting quite frankly borders not on only unethical but possibly illegal conduct by the disqualified expert if he deliberately sabotaged your case. You don't have any proof of that, do you? You're just –

MR. ROUVIERE: I don't –

THE COURT: Let me finish. You're making argument based upon the fact that you see he previously represented or previously was engaged by DePuy, right?

MR. ROUVIERE: Well, Judge, with the exception that I think I identified one open case that's still pending with a plaintiff who the defendant is being represented by -- the defendant is Johnson & Johnson being represented by the Thornburg Law Firm, which is one of the cases that the disqualified expert was involved in and apparently is still an open case.

THE COURT: I do want to ask DePuy's counsel about that, but when it came to Howmedica, your disqualified expert had clear in that case -- and I do want to hear from DePuy's counsel in this case, but clear in that case that the litigation was in fact still pending and you were willing to hold on to -- I'm using my words, not yours -- that expert because that expert was prepared to give testimony against Howmedica.

And here we have the situation where you say that this disqualified expert was somehow engaged in some shenanigans, for lack of a better term, or might have been engaged in some shenanigans in not giving an expert opinion against one of his other clients. Do I have that right?

MR. ROUVIERE: Judge, that is a reasonable possible conclusion. I can't prove that, but it does have the air of impropriety. If they've got an expert witness that is still around and they know that he filed an opinion in a case that is with them and because they believe it's -- because they like the opinion, then so be it.

\*   \*   \*   \*   \*   \*

THE COURT: So now let me please hear from you with respect to the arguments that Mr. Rouviere just made.

> MR. LARSON: Beyond that, your Honor, I guess I will briefly address the allegation that there's a current case. That's new. We hadn't heard before.[3] Looking at the prior testimony list, I assume that Mr. Rouviere is referring to the In Re Pinnacle MDL down in Dallas, the Northern District of Texas. Disqualified expert did testify at deposition in 2014. That MDL has been resolved publicly. They're in process of settling those claims. There are no more bellwether cases. That is not an ongoing litigation in which the disqualified expert has any role.

> THE COURT: So is your representation as an officer of the Court that there is no ongoing litigation in which the disqualified expert is engaged?

> MR. LARSON: That's correct.

*Exhibit 1 hereto, pp.6-14 (Transcripts Of Oral Argument Before Judge Aaron at pp.6-14).*

On November 24, 2020, this Court entered an order granting DePuy's motion to strike.

This Court held:

> Prior to the September 21, 2020 deadline for the parties' expert disclosures, Plaintiffs failed to serve an expert disclosure regarding design defect and failure to warn issues as to DePuy. The expert report of the Prior Engineer Expert gave such opinions as to Howmedica, but not as to DePuy. (See Catullo Decl. Ex. A at 12.) On November 9, 2020, Plaintiffs, for the first time, offered failure to warn opinions as to DePuy, in the Jarrell expert report. (See DePuy Ltr. Mot. Ex. A at 8-10.) Because the Court finds that Plaintiffs have failed to make a showing of good cause for their failure to offer the DePuy-related opinions by the September 21, 2020 deadline, the Court grants DePuy's motion to strike.

> \*    \*    \*    \*    \*    \*

> Seizing upon a statement in DePuy's motion that the Prior Engineer Expert "previously testified on behalf of DePuy in hip litigation" (DePuy 11/13/20 Ltr. Mot. at 2), Plaintiffs in their response to DePuy's motion raise questions regarding whether the Prior Engineer Expert was "look[ing] out" for DePuy by not offering opinions as to DePuy. (See Pls.' 11/18/20 Ltr. Resp. at 4-5.) The Court finds this argument disingenuous,

---

[3]Attorney Larson's statements here to the Court cannot be reconciled with Attorney Lawson's email to Attorney Rouviere. *See Exhibit 2 hereto.* Attorney Lawson wrote in this email: "At the outset of the call you indicated that you want to seek discovery regarding the current relationship between Barnes & Thornburg, DePuy, and [disqualified expert] and stated that 'I believe B&T has an ongoing conflict of interest with [disqualified expert]  and there is enough there to investigate it'." *Id.*

however, because Plaintiffs were aware of the content and scope of the report at the time they served it and, if they believed it was insufficient in scope because it failed to encompass opinions regarding DePuy, they could have sought relief from the September 21, 2020 deadline at that time. Moreover, as DePuy states in its reply (see DePuy 11/20/20 Reply at 3), Plaintiffs' own disclosures to Defendants expressly indicate that the Prior Engineer Expert previously had testified as an expert in litigation in which DePuy was a party. At the time Plaintiffs disclosed the Prior Engineer Expert, they produced to Defendants a list of his prior testimony that identified five cases in which he had testified on behalf of DePuy or Johnson & Johnson4 and three cases in which he had been retained by Barnes & Thornburg, DePuy's counsel in this action. (See DePuy 11/20/20 Reply at 3 & Ex. A (ECF No. 223-1).) Thus, Plaintiffs knew, or should have known, of the Prior Engineer Expert's prior relationship with DePuy at the time they served the Prior Engineer Expert's report, and cannot now complain of some possible bias that such expert had in favor of DePuy.

*ECF# 232, pp.6-7.*

On November 30, 2020, Plaintiff received a sworn declaration from Attorney Matt

Morrison who testified:[4]

"I represent Bryon D. Rowe and Melanie A. Rowe in the civil product liability case against Johnson and Johnson, Inc., Depuy Orthopaedics, Inc et al. See Bryon D. Rowe and Melanie A. Rowe v. Depuy Orthopaedics, Inc et al., No. 3:12-cv-04354-K (N.D. Tex – Dallas Division). The case has been transferred under the MDL Case captioned and numbered In Re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Product Liability Litigation, MDL No. 2244 (N.D. Tex – Dallas Division) (case pending) (hereinafter referred to as "MDL case")."

"This MDL case as of the date of executing this declaration, is still an open and pending litigation."

"Specifically, Depuy Orthopaedics, Inc. named and offered up its expert witnesses in this MDL case, one of whom is [Plaintiff's disqualified expert], a biomechanical engineer.

---

[4] Pursuant to S.D.N.Y. Local Rule 6.3, Plaintiffs request that the Court enter an order directing Plaintiffs to file the declaration of Attorney Matt Morrison for further consideration by this Court in the instant Rule 59(e) proceeding.

> My clients, Bryon D. Rowe and Melanie A. Rowe have not accepted or
> executed a settlement agreement with DePuy and other named defendants.
> Rather, this MDL case is still pending."

Given Attorney Morrison is the counsel in a federal civil action which involves DePuy as

a party defendant and Plaintiffs' disqualified engineer expert as expert for DePuy in that pending

civil action, Attorney Morrison has direct knowledge of the disqualified expert's continual duty

to DePuy and its counsel as DePuy's expert witness in that pending federal civil action.

## II.    <u>Reasons For Granting the Rule 59(e) Motion</u>

Federal Rule of Civil Procedure 59(e) permits parties to file a motion to alter or amend a

district court judgment within 28 days after the judgment is entered. Local Rule 6.3 permits

parties to file a motion for reconsideration or re-argument of a court order within fourteen days

after the order is entered. "The standards set forth in both Fed. R. Civ. P. 59(e) and Local Rule

6.3 are identical." *In re New York Comm. Bancorp, Inc., Sec. Litig*., 244 F.R.D. 156, 159

(E.D.N.Y. 2007). A motion under either rule should be granted only where "the moving party

can point to controlling decisions or data that the court overlooked—matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX*

*Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "There are generally three grounds for

reconsideration: (1) an intervening change in the law, (2) the availability of evidence not

previously available, and (3) the need to correct a clear error or prevent manifest injustice." *In re*

*Zyprexa Prods. Liability Litig*., 653 F. Supp. 2d 181, 182 (E.D.N.Y. 2009) (Weinstein, J.) (citing

*Doe v. N.Y.C. Dep't of Soc. Servs*., 709 F.2d 782, 789 (2d Cir. 1983)).

A motion to amend a judgment pursuant to Fed. R. Civ. P. 59(e) is properly granted when

the record establishes that the judgment was based on a manifest error of law or fact. *Bowers v.*

*Andrew Weir Shipping, Ltd*., 817 F.Supp. 4, 5 (S.D.N.Y. 1993); *Cray v. Nationwide Mut. Ins.*

*Co.*, 192 F. Supp.2d 37, 39 (W.D.N.Y. 2001). However, "the moving party has a heavy burden to establish factual error sufficiently serious to merit an amendment." *Wallace v. Brown*, 485 F.Supp. at 79. Whether to grant or deny a motion to alter or amend a judgment is within the court's discretion. *Atlantic States Legal Foundation, Inc. v. Karg Bros. Inc.*, 841 F. Supp. 51, 55 (N.D.N.Y. 1993); *see also Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

In briefing before this Court, DePuy represented that it did not move to disqualify Plaintiff's disqualified expert because the disqualified expert did not render an opinion establishing liability on DePuy with respect to Plaintiffs' claims of wrongdoing in this case. DePuy did not disclose it and its counsel relationship with the disqualified expert until moving to strike certain paragraphs of the report and opinion submitted by Plaintiffs' alternate engineer expert, Dr. Jarrell. Although Plaintiffs' request to file a surreply wherein Plaintiffs claimed their disqualified expert must have deliberately omitted opining on DePuy's wrongdoing or liability because of the duty of loyalty the disqualified expert owed to DePuy and its counsel in ongoing cases, this Court allowed said arguments and claims to be raised at the oral argument.

In rejecting this theory of the disqualified engineer expert being an expert for DePuy and its counsel in ongoing civil actions, the Court relied on the DePuy's counsel Larson representation "as an officer of the Court that there is no ongoing litigation in which the disqualified expert is engaged." *Exhibit 1, p.14*. However, we now know such representation by Attorney Larson and DePuy are not true when reviewing the sworn declaration of Attorney Morrison. [5]

---

[5] Although the ABA and all state Codes of Ethics or Professional Conduct require attorneys to zealously represent their clients, attorneys may not knowingly make a false statement of law or fact to a court. *Rule 3.3 of the ABA's Model Rules of Professional Conduct*; *see also ABA Model Rules 8.4(c)* (an attorney shall not engage in conduct involving dishonestly, fraud, deceit or misrepresentation).

In light of this revelation, it is beyond peradventure that this Court was misled at the oral argument hearing by and relied on DePuy and its counsel's representation that the disqualified expert was not involved in any pending litigation. To dispel Plaintiffs' claim "that this disqualified expert was somehow engaged in some shenanigans, for lack of a better term, or might have been engaged in some shenanigans in not giving an expert opinion against one of his other clients," (e*xhibit 1, p. 11*), DePuy and its counsel told this Court the disqualified expert was not engaged in any ongoing litigation as an expert for DePuy and its counsel. *Id., p.14.*

It is clear that the disqualified expert duty of loyalty to protect DePuy appears to be the basis for not opining on the wrongdoing of DePuy in this case. In other terms, there was good cause to allow Dr. Jarrell's report and opinion to stand and not be stricken as to opining on liability of DePuy. Yet, in light of the misrepresentations made by DePuy and its counsel, and this Court affording DePuy's counsel a presumption of truth as to his representations to the Court at the oral argument hearing, this Court determined there was no good cause to allow Plaintiffs to present Dr. Jarrell's report and his opinion in its entirety.

One thing is clear, "our adversary system depends on a most jealous safeguarding of truth and candor," *United States v. Shaffer Equip. Co*., 11 F.3d 450, 463 (4th Cir. 1993), and "[t]he system can provide no safe harbor for clever devises to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." Id. at 457-58. "Every attorney is an officer of the court . . . [and] he always has a duty of candor to the tribunal." *Burns v. Windor, Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). DePuy and its counsel knew Plaintiffs' disqualified engineer expert worked for, owed a continual duty of loyalty to DePuy and its counsel, but DePuy and its counsel not only intentionally kept silent given the disqualified engineer expert, while identifying the scope of areas he was going to examine and

render an expert opinion on, did not throw DePuy under the proverbial city bus, but its counsel represented to this Court that the disqualified expert was not involved in any ongoing litigation as an expert for DePuy.

Plaintiffs have pointed to specific evidence, *i.e.* Declaration of Attorney Matt Morrison not available to the Plaintiffs or this Court at the time this Court reached the merits of and granted DePuy's motion to strike. Had this Court had the benefit of Attorney Matt Morrison's testimony, this Court may very well been left with the definitive appearance and evidence of "shenanigans," and/or disqualified expert "engaged in some shenanigans in not giving an expert opinion against one of his other clients" meaning DePuy in the instant case.

Plaintiffs are entitled to a fundamental fair discovery process and trial in prosecuting their claims against Depuy. Plaintiffs were induced to believe the disqualified expert had no conflict in this case by receiving a written document from the disqualified expert and his former employer. Second, given the declaration of Attorney Matt Morrison, DePuy and its counsel and the disqualified expert knew the disqualified expert was and still is involved as an expert for DePuy in the case of *Bryon D. Rowe and Melanie A. Rowe v. Depuy Orthopaedics, Inc et al.*, No. 3:12-cv-04354-K (N.D. Tex – Dallas Division). Third, DePuy and its counsel remained silent after the disqualified expert and his report was disclosed to DePuy and its counsel. Clearly, DePuy and its counsel were elated to see the disqualified expert did not render an opinion adverse to DePuy. Fourth, this Court now has the evidence available (declaration of Attorney Matt Morrison) to demonstrate the disqualified expert is still the expert for DePuy in ongoing litigation in the Northern District of Texas.

III.    **CONCLUSION**

WHEREFORE, and pursuant to Rule 59(e), Plaintiffs urge this Court to alter or amend its

November 24, 2020 order to find there is good cause to (1) allow Dr. Jarrell's report and opinion

stand in its entirety, (2) not strike any portion of his expert opinion as to DePuy and (3) deny

DePuy's motion to strike based on the foregoing facts and law; and enter an order granting same

and other relief this Court deems proper and just under the circumstances

Miami, Florida.                              Respectfully submitted,

**LAW OFFICES OF ANDRE A. ROUVIERE**
4070 Laguna Street
Coral Gables, Florida 33146
Tel: (305)774-7000
Fax:(305)946-6121
*Attorney for Plaintiffs*

*//ss// Andre Rouviere*
ANDRE A. ROUVIERE

*Attorney for Plaintiffs*.

**CERTIFICATE OF SERVICE**

I, Andre Rouviere, hereby certify that a true and correct copy of the foregoing was served on the
following counsel of record by ECF on this 4th day of December 2020.

*//ss// Andre Rouviere*
ANDRE ROUVIERE

13