# Exhibit 1

KBOTROUA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JODI ROUVIERE and ANDRE
ROUVIERE,

           Plaintiffs,

    v.                            18 CV 4814 (LJL)(SDA)

DEPUY ORTHOPAEDICS, INC. and
HOWMEDICA OSTEONICS
CORPORATION,

           Defendant.

------------------------------x
                          New York, N.Y.
                          November 24, 2020
                          3:00 p.m.

Before:

            HON. STEWART D. AARON,

                      Magistrate Judge

            APPEARANCES (Telephonic)

LAW OFFICES OF ANDRE A. ROUVIERE
    Attorneys for Plaintiff
BY:  ANDRE A. ROUVIERE

BARNES & THORNBURG
    Attorneys for Defendant DePuy Orthopaedics
BY:  JOEL LARSON, JR.

GIBBONS PC
    Attorneys for Defendant Howmedica Osteonics
BY:  PAUL ASFENDIS

1          (Via telephone)
2          THE COURT:  Good afternoon, this is Magistrate Judge
3    Aaron.  This is the matter of Rouviere against DePuy
4    Orthopaedics, 18 CV 4814.
5          If I could have the parties identify themselves,
6    please, starting with the plaintiffs.
7          MR. ROUVIERE:  For the plaintiff, Andre Rouviere.
8          MR. LARSON:  For DePuy Orthoapedics this is JT Larson
9    and Joe Eaton from Barnes & Thornburg.
10         MR. ADFENDIS:  For Howmedica Osteonics Corp., this is
11    Paul Asfendis from Gibbons PC.
12         THE COURT:  Good afternoon.  This is oral argument in
13    connection with the letter motion for discovery, specifically a
14    motion to strike the -- I'm now reading the title of the
15    document as filed by DePuy -- Motion to Strike Untimely Expert
16    Opinion of John Jarrell, PhD, filed at ECF 214.  I have read
17    all the parties' submissions, but I am prepared to hear briefly
18    from each side.
19         So obviously there's no need to repeat that which is
20    in your papers, but if you want to do so briefly just to
21    emphasize any points, you should do so.  And in particular, I
22    want to hear from plaintiffs in terms of the points that they
23    had wanted to make.  I denied leave to file a surreply but I
24    wanted to give an opportunity for the plaintiffs to make
25    whatever points they wish to make.  But since this is DePuy's

1   motion, I will hear from DePuy first.
2           MR. LARSON:  Thank you, your Honor.  This JT Larson
3   from B&T on behalf of DePuy.
4           DePuy, again, as your Honor correctly stated, wishes
5   that the Court strike the prefatory language before paragraph
6   16 and paragraph 16 through 22 in John Jarrell's November 9,
7   2020 report.  DePuy has set forth the reasons for this relief
8   in its briefing, but just briefly, pursuant to what the Court
9   just mentioned, I would like to very briefly state our
10  arguments.
11          We believe these opinions are untimely and should be
12  acquitted for two reasons:  First, they're entirely new
13  opinions that are not within the same scope of subject areas as
14  were covered by the disqualified expert.  Rouviere has had two
15  and a half years to disclose and finally disclosed the
16  testifying expert in this case.  They chose --
17          THE COURT:  If I could just interrupt you for a
18  minute, I would appreciate it if you would, since this is a
19  public line, not mention the disqualified expert's surname but
20  rather refer to that person as the disqualified expert, please.
21          MR. LARSON:  Of course, thank you, your Honor.
22          The disqualified expert's report did not contain any
23  opinions regarding DePuy, its components, or any failure to
24  warn.  The disqualified expert's opinions listed on pages 11
25  and 12 of his report, they clearly are aimed at Stryker and the

1    MDM liner system.  DePuy takes no position on the veracity of
2    those opinions, but certainly in reading through these, there
3    is no opinion in here regarding the Summit stem, the Biolox
4    head or DePuy generally.
5           If the itemized opinions, your Honor, weren't enough,
6    the disqualified expert only relied on three DePuy documents in
7    its discussion section, and the details of the analysis focuses
8    entirely on Howmedica and Stryker components.  Based on this,
9    your Honor, DePuy, after years of protracted discovery and
10   after the conclusion of expert discovery at the conclusion of
11   the depositions of plaintiffs' expert, filed this motion for
12   summary judgment.  And this motion for summary judgment, your
13   Honor, was timely because we had finally gotten to the point in
14   the case where all the fact discovery was completed and any
15   evidence the plaintiffs were going to bring to the table to
16   oppose DePuy's motion for summary judgment was in the record.
17   DePuy did not wait until Stryker's motion to disqualify the
18   engineering expert was ruled upon because the disqualified
19   expert gave no opinions regarding DePuy.
20          A few days after DePuy filed for summary judgment the
21   Court disqualified this expert and gave the plaintiffs until
22   November 9 to disclose a replacement expert and limited the
23   replacement expert to the same scope of subject areas as
24   recovered by the disqualified engineering expert.
25          As was shown in its briefing -- this was a typical and

1    appropriate measure that courts, in situations where a
2    substitute expert is necessary, often do.  Courts allow the
3    parties to replace the disqualified or unavailable expert.
4    They do not give the party a complete do-over.  This is not a
5    second bite at the apple.  It's just like what your Honor did
6    here.
7            Then on November 9, plaintiffs disclosed John Jarrell.
8    Unlike the disqualified expert, John Jarrell goes way beyond
9    the Stryker MDM system and testifies extensively about these
10   the new opinions regarding DePuy and alleges failure to warn.
11   This is a second bite at the apple.  It's a complete do over
12   that allows plaintiffs the opportunity to inject opinions about
13   DePuy well after the timeline to disclose expert testimony.
14           It's clear the plaintiffs made a strategic decision to
15   only disclose expert testimony as to Howmedica.  They saw our
16   motion for summary judgment and regretted that decision and
17   used the replacement of the disqualified expert as an
18   opportunity to add new opinion.
19           Your Honor, other reasons the Court should not allow
20   these untimely opinions is because Rule 16, good cause.  There
21   is no good cause for this untimely disclosure.  Plaintiffs have
22   given no reason why such a two-month delinquent disclosure
23   would be appropriate.  The Court limited the scope of the
24   replacement expert.  Plaintiffs had more than enough time to
25   find and disclose the proper testifying expert to go on

1   engineering subjects and did not disclose anyone with respect
2   to DePuy.  So DePuy respectfully requests that the Court strike
3   paragraph 16 through 22 and the prefatory language before
4   paragraph 16 in John Jarrell's November 9, 2020 report.  And
5   DePuy is open to any questions the Court might have.
6           THE COURT:  Okay.  I don't have any questions at this
7   time, so let me hear from Mr. Rouviere, please.
8           MR. ROUVIERE:  Judge, first of all, the position of
9   the plaintiff is that the scope that the Court would have been
10  speaking about is the scope that the expert would have walked
11  into the assignment to investigate and determine his opinions.
12  And the scope that the disqualified expert and the scope that
13  Mr. Jarrell were both given were identical.  And they, with
14  their own eyes and experience, reviewed the documents, reviewed
15  the evidence, and came up with opinions.
16          It is -- and we raised this with the Court, it is a
17  question that DePuy knew that the disqualified expert was in
18  fact a prior expert for them, had conflict.  We have concern
19  that they still have conflict ongoing with the case that is
20  still pending within the multidistrict litigation, that the
21  attorneys are right out of that office in Indiana.  It is clear
22  that DePuy kept that information close to the vest in an effort
23  to try to gain an unfair advantage.  They had a duty to advise
24  the Court and advise the defense that this expert, who Stryker
25  was already moving to disqualify, in fact also had a conflict

1    in this case.
2             And to --
3             THE COURT:  Mr. Rouviere, if I could stop you there.
4    As you know, in their reply letter DePuy attached as an
5    exhibit -- and I know the public record version is redacted but
6    I have the unredacted version, and there do appear to be in the
7    disclosure that I believe you filed, it discloses cases in
8    which the disqualified expert testified where DePuy was a
9    party, and it lists Barnes & Thornburg as counsel.
10            So you were aware of that --
11            MR. ROUVIERE:  Well --
12            THE COURT:  Let me finish.  Let me pose the question
13   and I will hear from you.
14            You were aware of those prior engagements, were you
15   not?
16            MR. ROUVIERE:  Judge, I have to tell the Court exactly
17   how it occurred.  As Court remembers from our last oral
18   conversation we had, the first thing that was done was a
19   conflict check with that company and with that expert.  And
20   that hurdle was cleared, as far as I was concerned, because in
21   fact it was represented to me that there was no conflict.  And
22   the conflict form which I filed with the Court clearly lays out
23   the attorneys, the companies and the defendants.
24            So going forward from that point in time, as the Court
25   remembers, we were running on a short string of time because of

1    what happened with our prior expert.  I received a list of
2    prior testimony.  The rule is that it goes four years back, and
3    I may have perused the whole thing but I only focused on the
4    previous four years because I wasn't looking for a conflict
5    because I had already cleared that conflict.
6             Now beyond that, Judge, we're not just talking about a
7    prior conflict.  There's issues that the plaintiffs have with
8    this ongoing, that the disqualified expert still has with this
9    company and with this defendant and with this law firm.  And
10   it's working to the plaintiffs' detriment that there was
11   dishonesty on the sides of the other players that why would I
12   want to pay a second expert?  It doesn't make any sense, Judge.
13            I was led to believe this man had no conflicts.  I
14   find out the hard way from Stryker that there was a conflict,
15   and DePuy sits on it and doesn't incorporate and enjoin with
16   their motion to disqualify, and how do I know that the
17   disqualified expert didn't deliberately minimize the
18   responsibility of DePuy.  A separate set of eyes with the same
19   exact evidence has several opinions, and the scope of what they
20   evaluated and what they look at was the same.
21            Like the Court said, it's going to be regarding the
22   same scope.  We gave the same exact information to both
23   experts.  We have to do the same exact thing, the same exact
24   scope.  We did not go to the expert --
25            THE COURT:  So Mr. Rouviere, it sounds like in answer

1    to my question that you were -- and tell me if I have this
2    wrong, you were aware that this expert had given testimony in
3    cases where DePuy was a party but you didn't attach any
4    significance to it.  Would that be a fair way to characterize
5    your response?
6             MR. ROUVIERE:  No, your Honor.  Frankly, as I was
7    telling the Court, I had already put in my mind, based on the
8    conflict check, that I wasn't even looking for conflicts.  I
9    reviewed briskly through that report.  I never saw -- I don't
10   know if I went that far down to the bottom because, as the
11   Court knows, the rules as far as production of testimony is
12   four years back, and the testimony of the excluded witness was
13   many years behind that.
14            So I was not aware, Judge.  Had I been aware, I would
15   not have gone forward or I would have made note of it.  I would
16   not sit here and bring myself deliberately to this point in the
17   game if I knew that information.
18            And again, to the point --
19            THE COURT:  So let me stop you there.  So you did file
20   this document, right?  You said you weren't aware --
21            MR. ROUVIERE:  I tried --
22            THE COURT:  Let me finish, please.
23            MR. ROUVIERE:  I apologize.
24            THE COURT:  So you filed this document, right?
25            MR. ROUVIERE:  I did, your Honor.

1          THE COURT:  And at the time that you submitted the
2    disqualified expert report, you were aware, weren't you, that
3    that expert did not give any expert opinion regarding DePuy,
4    correct?
5          MR. ROUVIERE:  Judge, I will say this in the most
6    honest manner that I can.  If the Court remembers, we were
7    under a 72-hour gun from the time I hired this expert until a
8    report was due.  I was provided with the final version of that
9    report about 20 minutes before midnight, your Honor.  So my
10   knowledge and ability to examine it with any in-depth
11   evaluation at the time it was filed was very limited.  And I
12   did not put two and two together that this is a possible
13   deliberate withdrawal of information by this expert until DePuy
14   comes clean in their motion that he's been their expert for
15   years.  They don't say that he's still their expert, but we
16   have reason to think that he is still is.
17         But no, I was not aware of it, Judge.
18         THE COURT:  And you don't have any evidence that this
19   was -- what you're suggesting quite frankly borders not on only
20   unethical but possibly illegal conduct by the disqualified
21   expert if he deliberately sabotaged your case.  You don't have
22   any proof of that, do you?  You're just --
23         MR. ROUVIERE:  I don't --
24         THE COURT:  Let me finish.
25         You're making argument based upon the fact that you

1    see he previously represented or previously was engaged by
2    DePuy, right?
3              MR. ROUVIERE:  Well, Judge, with the exception that I
4    think I identified one open case that's still pending with a
5    plaintiff who the defendant is being represented by -- the
6    defendant is Johnson & Johnson being represented by the
7    Thornburg Law Firm, which is one of the cases that the
8    disqualified expert was involved in and apparently is still an
9    open case.
10             THE COURT:  I do want to ask DePuy's counsel about
11   that, but when it came to Howmedica, your disqualified expert
12   had clear in that case -- and I do want to hear from DePuy's
13   counsel in this case, but clear in that case that the
14   litigation was in fact still pending and you were willing to
15   hold on to -- I'm using my words, not yours -- that expert
16   because that expert was prepared to give testimony against
17   Howmedica.
18             And here we have the situation where you say that this
19   disqualified expert was somehow engaged in some shenanigans,
20   for lack of a better term, or might have been engaged in some
21   shenanigans in not giving an expert opinion against one of his
22   other clients.  Do I have that right?
23             MR. ROUVIERE:  Judge, that is a reasonable possible
24   conclusion.  I can't prove that, but it does have the air of
25   impropriety.  If they've got an expert witness that is still

1   around and they know that he filed an opinion in a case that is
2   with them and because they believe it's -- because they like
3   the opinion, then so be it.
4           Judge, do I have one other matter.
5           THE COURT:  Yes, please.
6           MR. ROUVIERE:  The opinions of the disqualified expert
7   did not completely leave DePuy out of this case.  They did
8   indicate that there was a significant amount of metal debris
9   that came from the titanium stem and that that was a cause of
10  damage to the plaintiff, that it developed metal wear.  He does
11  speak to the fact that DePuy was aware of DePuy's knowledge of
12  Stryker's defective product, and that that wear debris that the
13  stem came off of, the DePuy stem, did lead to metallosis.
14  Those are opinions that are in his report that are against
15  DePuy.
16          THE COURT:  But he doesn't give any opinions regarding
17  DePuy's failure to warn, right?
18          MR. ROUVIERE:  Not directly, Judge.
19          THE COURT:  Okay.  So let me hear from DePuy's counsel
20  about this pending -- well, first of all, a question, what is
21  the relationship between Johnson & Johnson and DePuy, please?
22  Just remind me.
23          MR. LARSON:  DePuy is an operating company underneath
24  Johnson & Johnson.  It's an operating company.
25          THE COURT:  So now let me please hear from you with

1  respect to the arguments that Mr. Rouviere just made.
2              MR. LARSON:  Sure, your Honor.  Very briefly, your
3  Honor, it's extremely offensive.  Mr. Rivera has time and time
4  again in public filings accused Mr. Eaton and I of unethical
5  and unprofessional conduct based on nothing more than
6  speculation, what he believes the case to be, and not on any
7  kind of facts, and this is another example of that.  This call
8  to a federal court today accuses us of dishonesty bordering on
9  criminal conduct.  We did not choose the disqualified expert.
10 We did not -- the report that you're referring to, the prior
11 testimony was at 223:1, was produced by Mr. Rouviere.  Nothing
12 was concealed at all in this case.
13             Mr. Rouviere, if he had reviewed the materials that he
14 produced to the defendants in this case, would have known from
15 at least the time he disclosed the disqualified expert that he
16 had worked in the past for Barnes & Thornburg, Johnson &
17 Johnson, and DePuy Orthopaedic.  There is nothing below board
18 on this and we did not sit quietly.  And to accuse us of
19 anything unprofessional and unethical here is sanctionable,
20 honestly, your Honor.  He needs to stop making comments in
21 public filings about myself and Mr. Eaton and our client that
22 are based on nothing more than his personal dislike for us.
23             Beyond that, your Honor, I guess I will briefly
24 address the allegation that there's a current case.  That's
25 new.  We hadn't heard that before.  Looking at the prior

1    testimony list, I assume that Mr. Rouviere is referring to the
2    In Re Pinnacle MDL down in Dallas, the Northern District of
3    Texas.  Disqualified expert did testify at deposition in 2014.
4    That MDL has been resolved publicly.  They're in process of
5    settling those claims.  There are no more bellwether cases.
6    That is not an ongoing litigation in which the disqualified
7    expert has any role.
8            THE COURT:  So is your representation as an officer of
9    the Court that there is no ongoing litigation in which the
10   disqualified expert is engaged?
11           MR. LARSON:  That's correct.
12           THE COURT:  Okay.  So Mr. Rouviere, what else did you
13   want to cover?
14           MR. ROUVIERE:  Well, your Honor, I just do know
15   that -- and I take Mr. Larson to his word, but just so the
16   Court doesn't know that I'm throwing things against the wall,
17   the last record activity in that MDL was November 4 of this
18   year.  So my reasoning is based on what I had an opportunity to
19   look up.
20           THE COURT:  Okay.
21           MR. ROUVIERE:  My position is that we should be
22   entitled to rely upon the opinions of Mr. Jarrell who it was
23   reviewed with him the same subject areas as the disqualified
24   expert did.  We didn't give him any more, we didn't give him
25   any less, we didn't ask him to do anything different.  If you

1    notice in our response that the specific marching orders for
2    each expert was identical.  And they put it in their own
3    reports.  They're identical.  So that, I think, does place us
4    in the same subject areas for the expert.
5              As the case law indicates, nobody is expecting an
6    expert to come up with an identical opinion.  That would kind
7    of defeat the purpose, Judge, of an expert having their own
8    opinions.  And I think, your Honor, that we should be entitled
9    to rely upon Mr. Jarrell's opinions going forward in this case.
10   To not permit us to do so would be a severe prejudice to our
11   case, particularly under the circumstances of how it all came
12   about.
13             THE COURT:  Okay.  Is there anything else from DePuy?
14             MR. LARSON:  Your Honor, I very briefly reiterate that
15   plaintiffs in their opposition brief, in making this argument
16   regarding the disqualified expert, quote, unquote, looking out
17   for us, and today in this argument have admitted that there
18   were no failure to warn opinions in the disqualified expert's
19   report.  He's admitted that.  And the report of Jarrell then
20   goes way beyond.  In the cases we cited to you, *Lincoln*
21   *National*, we are not saying that plaintiffs have to give a
22   carbon copy or a cloned expert report, but they can't introduce
23   new theories.  And beyond a new theory, this is an entirely new
24   scope of opinion that's coming from Jarrell.
25             So we respectfully request that the Court preclude

1    those opinions and strike those portions of his report.
2         MR. ROUVIERE:  Your Honor, may I respond?
3         THE COURT:  Okay.
4         MR. ROUVIERE:  Your Honor, if the Court is inclined to
5    consider striking any of the opinions, we would ask the Court
6    to look at each opinion of Mr. Jarrell and evaluate each single
7    opinion as to whether or not it remains inside the scope, if
8    the Court is looking at it from that perspective, in lieu of
9    either granting completely one way or the other.
10        THE COURT:  But they're all failure to warn opinions,
11   right?
12        MR. ROUVIERE:  I believe so, your Honor.  And that
13   would go with the disqualified expert's dicta that was in there
14   that talked about DePuy's knowledge of a defective product.
15        THE COURT:  Okay.  Very well.  So I will have a
16   decision out promptly.
17        Thank you.  This matter is adjourned.
18        (Adjourned)
19
20
21
22
23
24
25