UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JODI ROUVIERE and ANDRE ROUVIERE, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) ) | Case No. 1:18-cv-04814-LJL-SDA |
| DEPUY ORTHOPAEDICS, INC. n/k/a MEDICAL DEVICE BUSINESS SERVICES, INC. and HOWMEDICA OSTEONICS CORPORATION d/b/a STRYKER ORTHOPAEDICS, | ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**DEPUY ORTHOPAEDICS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO ALTER, AMEND OR SET ASIDE THE COURT'S NOVEMBER 24, 2020 ORDER**

DePuy Orthopaedics, Inc., now known as Medical Device Business Services, Inc. ("DePuy"), respectfully requests that the Court deny Plaintiffs' Motion to Alter, Amend, or Set Aside the Court's November 24, 2020 Order ("Motion to Reconsider") [ECF No. 242] and award DePuy costs and attorneys' fees incurred in responding to this Motion.

# TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................................1

II.  FACTUAL BACKGROUND .............................................................................2

      A.  Plaintiffs' Disclose the Disqualified Expert as Their Engineering Expert
          Along With a List of Prior Testimony Identifying DePuy Cases ...........................2

      B.  HOC Moves to Disqualify Plaintiffs' Engineering Expert and DePuy
          Moves for Summary Judgment .................................................................................3

      C.  The Court Grants HOC's Motion to Disqualify and Allows Plaintiffs
          Two Weeks to Disclose an Alternate Engineer Expert Limited to the
          "Same Scope of Subject Areas"...............................................................................4

      D.  Plaintiffs Disclose John Jarrell and DePuy Moves to Strike Jarrell's Belated
          and Out of Scope Expert Opinions Alleging Failure to Warn Against DePuy........5

      E.  Plaintiffs Seek To Re-Open Discovery Regarding the Disqualified Expert............6

      F.  November 24, 2020 Oral Argument on DePuy's Motion to Strike ........................7

      G.  The Court Grants DePuy's Motion to Strike ..........................................................8

      H.  Plaintiffs Motion to Reconsider Under Rule 59(e) and the Declaration of
          Matt Morrison .........................................................................................................9

      I.  The Pinnacle MDL Litigation Generally ...............................................................9

      J.  The *Rowe* Case......................................................................................................10

      K.  The Disqualified Expert Has Had No Role In The Pinnacle MDL And
          *Rowe* Case Since 2015 ..........................................................................................12

III. ARGUMENT ...................................................................................................13

      A.  Legal Standard ......................................................................................................13

      B.  Plaintiffs' Motion to Reconsider Must Be Denied Because DePuy Does
          Not Have an Ongoing Relationship With the Disqualified Expert.......................13

          1.  The Morrison Declaration Does Not Support Plaintiffs' Argument That
              DePuy Has An Ongoing Relationship With the Disqualified Expert .............14

2.  DePuy Does Not Have An Ongoing Relationship With The Disqualified
    Expert and The Disqualified Expert Had No Role In the Pinnacle MDL,
    Including the Rowe Case, Since 2015 ...........................................................14

C.  Plaintiffs' Motion to Reconsider Must Be Denied Because It Simply Repeats
    the Same Disingenuous Theories Previously Rejected by The Court ..................17

D.  The Court Should Award DePuy Attorneys' Fees and Costs Because All
    Statements Made To the Court by DePuy Were True and Correct and
    Plaintiffs' Motion Only Renews Arguments Already Rejected By The Court .....18

IV. CONCLUSION....................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alicea et al v. DePuy Orthopaedics Inc et al*,
   3:15-cv-03489-K (N.D. Tex. Nov. 16. 2017) ..........................................................................10

*Andrews et al v. DePuy Orthopaedics Inc et al*,
   3:15-cv-03484-K (N.D. Tex. Dec. 1, 2016)............................................................................10

*Aoki v. Johnson & Johnson Services, Inc. et al*,
   3:13-cv-01071-K (N.D. Tex. Jan. 30, 2019)..........................................................................10

*Byron and Melanie Rowe v. DePuy Orthopaedics*,
   3:12-cv-4354-K (N.D. Texas) ....................................................................................... *passim*

*Davidson v. Scully*,
   172 F. Supp. 2d 458 (S.D.N.Y. 2001) ....................................................................................13

*Degrafinreid v. Ricks*,
   452 F. Supp. 2d 328 (S.D.N.Y. 2006) ....................................................................................13

*Herlihy-Paoli v. DePuy Orthopaedics, Inc. et al*,
   3:12-cv-04975-K (N.D. Tex. Oct. 23, 2014) ..........................................................................10

*Jones et al v. DePuy Orthopaedics, Inc. et al*,
   3:11-cv-3594-K (N.D. Texas)(not a bellwether, dismissed by stipulation on
   March 19, 2020)................................................................................................................12, 16

*Katz v. Mogus*,
   2008 WL 2605072 (S.D.N.Y. July 1, 2008) ...........................................................................20

*Lay et al v. DePuy Orthopaedics, Inc. et al*,
   3:11-cv-03590-K (N.D. Texas)(not a bellwether, dismissed by stipulation on
   June 15, 2020)...................................................................................................................12, 16

*LCS Grp., LLC v. Shire LLC*,
   2020 WL 5077075 (S.D.N.Y. Aug. 27, 2020) ........................................................................13

*Marriott Corp. v. Ramada Inc.*,
   No. 1994 WL 150828 (S.D.N.Y. Apr. 21, 1994)....................................................................20

*Mello et al v. DePuy Orthopaedics, Inc. et al*,
   3:12-cv-0641-K (N.D. Texas).............................................................................................12, 16

*Peterson et al v. Johnson & Johnson Services, Inc. et al*,
   3:11-cv-01941-K (N.D. Tex. July 5, 2016) ............................................................................10

*Polsby v. St. Martin's Press, Inc.*,
    2000 WL 98057 (S.D.N.Y. Jan 18, 2000) ...............................................................................13

**State Cases**

*IN RE: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability*
    *Litigation*,
    3:11-md-02244-K ........................................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs' Motion to Reconsider falsely claims DePuy's counsel misrepresented facts to this Court during oral argument on November 24, 2020, leading the Court to grant DePuy's Motion to Strike the Untimely Opinions of John Jarrell, Ph.D. [ECF No. 232.]  Plaintiffs' Motion has no factual or legal basis and the Court should deny it for at least two reasons. ***First***, Plaintiffs' new declaration from attorney Matt Morrison is erroneous and does not support Plaintiffs' allegations that DePuy's counsel made misrepresentations to the Court at oral argument.  Everything DePuy's Counsel represented to the Court is true: (1) The *Rowe* lawsuit *is not* ongoing; (2) the Pinnacle MDL *is* in the process of being resolved; (3) the Disqualified Expert has *had no role* in the Pinnacle MDL since July 2015; and – most importantly – (4) there is *no ongoing litigation* in which DePuy engages the Disqualified Expert.  DePuy has presented declarations of its counsel and plaintiffs' counsel in the unrelated Pinnacle MDL and *Rowe* case at issue to clarify the record and refute Plaintiffs' allegations.  ***Second***, the Motion to Reconsider is nothing more than re-packaging already rejected arguments – *i.e.* that Plaintiffs are entitled to re-do their expert disclosures because the Disqualified Expert somehow "looked out for" DePuy.  The Court properly rejected this argument in its November 24, 2020 Order and found it disingenuous.  Plaintiffs knew prior to the September 21, 2020 expert disclosure deadline that the Disqualified Expert did not provide any expert opinions regarding DePuy and knew (or should have known) that the Disqualified Expert's Rule 26 list of prior testimony disclosed that he had previously testified on behalf of DePuy.

Plaintiffs' Motion to Reconsider is simply another attempt by Plaintiffs to disparage DePuy and its counsel with false accusations.  Plaintiffs do not genuinely allege that the Disqualified Expert criminally sabotaged their case against DePuy; they only seek to use his known prior work

in the Pinnacle MDL to re-do their expert disclosures.   The Court should deny Plaintiffs' Motion to Reconsider and award DePuy costs and attorneys' fees incurred in responding to this motion.

## II.    FACTUAL BACKGROUND

Plaintiffs brought this personal injury, product liability case against two medical device companies: DePuy and Howmedica Osteonics Corp. ("HOC" or "Stryker"), because both companies manufactured components implanted in Jodi Rouviere in August 2012.   From the outset of the case, counsel for DePuy and various treating doctors have informed Plaintiffs that there were no defects in DePuy's components.   And when the time came to disclose expert testimony on September 21, 2020, Plaintiffs only presented expert opinions regarding alleged defects in HOC's components and warnings.   After Plaintiffs' original engineering expert was disqualified by the Court regarding his expert opinions as to HOC's components and warnings, they tried to take a "second bite of the apple" and re-do their expert disclosures adding untimely opinions regarding DePuy's components.   The Court properly struck the untimely opinions. Plaintiffs are now requesting through this motion that the Court reconsider the Order striking these opinions, but have not provided any factual or legal basis to do so.

### A.    Plaintiffs' Disclose the Disqualified Expert as Their Engineering Expert Along With a List of Prior Testimony Identifying DePuy Cases.

After more than two-years of discovery, on September 21, 2020, Plaintiffs disclosed their testifying experts pursuant to Federal Rule 26.  [ECF No. 158.]  Plaintiffs' lone engineering expert was the Disqualified Expert.  [*Id*.]  The Disqualified Expert offered opinions regarding the design and warnings associated with HOC's acetabular components, but did not offer any opinions regarding the manufacture, design, or warnings associated with DePuy's components.  [ECF No. 171-1.]  Plaintiffs' counsel conceded at the November 24, 2020 oral argument that the Disqualified

Expert's report and opinions did not include any opinions regarding DePuy's components or its alleged failure to warn. [ECF No. 232 at 6.]

Plaintiffs Rule 26 expert disclosures served the evening of September 21, 2020 included a list of the Disqualified Expert's prior testimony consistent with Rule 26. [ECF No. 222-1.] The list clearly identifies five cases in which the Disqualified Expert testified in 2014 on behalf of DePuy or its parent company, Johnson & Johnson, and three cases in which Barnes & Thornburg LLP retained him. [*Id*.] Plaintiffs' counsel conceded at the November 24, 2020 oral argument that he did not read the complete list of prior testimony before he served it but it plainly discloses the Disqualified Expert testified on behalf of DePuy in several cases in 2013 and 2014. [ECF No. 242-1 at 10.]

### B.    HOC Moves to Disqualify Plaintiffs' Engineering Expert and DePuy Moves for Summary Judgment.

On October 14, 2020, HOC filed its Motion to Disqualify the Engineering Expert for conflicts of interests entirely related to his previous and ongoing work on behalf of HOC. [ECF No. 171.] Even though the Disqualified Expert had previously testified on behalf of DePuy in hip litigation [*see* ECF No. 222-1], DePuy played no role in the Motion to Disqualify because the Disqualified Expert expressed no expert opinions regarding DePuy's components.

Significantly, even though HOC claimed that the Disqualified Expert was conflicted here and was engaged in ongoing litigation on behalf of HOC, Plaintiffs **opposed** the Motion to Disqualify him. [ECF No. 181.] In doing so, Plaintiffs took the exact opposite position with respect to HOC that they now proclaim: that even though a Defendant argued that the Disqualified Expert was conflicted he should be able to testify on their behalf. [*Id*.]

As the Motion to Disqualify was pending and after the depositions of the Plaintiffs' other medical and damages expert witnesses had been completed, DePuy filed its Motion for Summary

Judgment based on Plaintiffs' failure to present any expert testimony or any other admissible evidence to support any of their liability claims against DePuy.  [ECF No. 178.]  The Disqualified Expert was the only expert disclosed by Plaintiffs that rendered opinions regarding design defect and failure to warn but all of those opinions were directed at HOC.  [*Id*.]  Therefore, Plaintiffs have no admissible expert testimony (or any other admissible evidence) as to DePuy and DePuy's components to support any product defect or warning claims and DePuy is entitled to judgement as a matter of law.  [*See id*.]

### C. The Court Grants HOC's Motion to Disqualify and Allows Plaintiffs Two Weeks to Disclose an Alternate Engineer Expert Limited to the "Same Scope of Subject Areas."

On October 25, 2020, four days after DePuy filed its Motion for Summary Judgment, the Court disqualified Plaintiffs' engineering expert for conflicts of interest against HOC. [ECF No. 193.] The Court's opinion acknowledges that the Disqualified Expert "switched sides" to testify against HOC and makes no mention of DePuy.  [ECF No. 193 at 2]  The Court allowed Plaintiffs until November 9, 2020 to disclose an "alternate engineer expert" to provide opinions relating to HOC and the HOC components at issue (the "Alternate Engineer Expert").  [*Id*. at 4.]  The Alternate Engineer Expert's opinions were limited to ***"the same scope of subject areas as were covered by the [Disqualified Expert]."***  [*Id*. (emphasis added).]  And the Court further stated "that any expert disclosure ***by Howmedica*** addressed to opinions offered by Plaintiffs' alternate engineer expert shall be served by January 14, 2021." [*Id*. at 4 (emphasis added).]  Accordingly, all relief in connection with the exclusion of the Disqualified Expert and the disclosure of the Alternate Engineer Expert was specifically focused towards Plaintiffs and HOC, not DePuy. The

Court reasonably understood and ordered that since the "scope of subject areas" of the Disqualified Expert's Opinions were limited to HOC, so too are the Alternate Engineer Expert's opinions.

Shortly thereafter, on October 31, 2020, Plaintiffs filed a letter motion requesting additional time to respond to DePuy's Motion for Summary Judgment. [ECF No. 201.] DePuy opposed the extension because Plaintiffs' stated reason for needing additional time – the disclosure of the Alternate Engineer Expert – would not affect their response to DePuy's Motion. [ECF No. 202.] Instead, DePuy anticipated that Plaintiffs would attempt to introduce new opinions, not expressed by the Disqualified Expert, regarding DePuy. [*Id.*] District Court Judge Liman granted Plaintiffs' request for additional time, but took no position on the scope of the Alternate Engineer Expert's report and directed any such challenges to be directed to this Court. [ECF No. 203.]

### D. Plaintiffs Disclose John Jarrell and DePuy Moves to Strike Jarrell's Belated and Out of Scope Expert Opinions Alleging Failure to Warn Against DePuy.

On November 9, 2020, Plaintiffs disclosed John Jarrell, Ph.D. as the Alternate Engineer Expert and produced his case-specific report. [ECF No. 212 (Disclosure); ECF No. 214-1 (*Report of John Jarrell*).] Unlike the Disqualified Expert, Jarrell ***does*** give opinions regarding DePuy. Specifically, Jarrell provides unsupported and conclusory opinions that DePuy's warnings were inadequate. [214-1 at 8-10.] Jarrell's Report stands in stark contrast to the Disqualified Expert's Report [ECF No. 173-1] and *explicitly* states that he is providing opinions as to the warnings accompanying the DePuy Summit Stem and Biolox Delta components. [ECF No. 214-1 at 8.] As DePuy anticipated, now that Plaintiffs had seen DePuy's Motion for Summary Judgment they were clearly using this opportunity to take a second bite at the apple and re-do their expert disclosures.

On November 13, 2020, DePuy filed a Motion to Strike the untimely and new expert opinions of Jarrell regarding DePuy's alleged failure to warn arguing that the Court should strike these opinions for two reasons. [ECF No. 214.] *First*, Jarrell's failure to warn opinions regarding

DePuy were not within the "same scope of subject areas" as were covered by the Disqualified Expert (who offered no opinions as to DePuy) and therefore violated the Court's or on the Motion to Disqualify.  *Second*, Plaintiffs had not demonstrated good cause to permit the disclosure of new opinions months after the expert disclosure deadline.  Plaintiffs' Opposition half-heartedly argued that Jarrell's opinions were within the same scope of subject areas addressed by the Disqualified Expert.  [ECF No. 220.]   Plaintiffs also suggested, at the end of their opposition, that they should be able to replace the Disqualified Expert with new opinions because, somehow, the Disqualified Expert improperly looked out for DePuy and owed a duty of candor to disclose the same information already disclosed in his list of prior testimony.  [*Id.*]  DePuy's reply brief emphasized that Jarrell's expert opinions were clearly outside the scope of the Disqualified Expert's opinions and refuted any allegation that it somehow concealed a conflict with the Disqualified Expert. [ECF No. 222.]  Most notably, DePuy attached the Disqualified Expert's prior testimony list – ***which Plaintiffs produced with their Rule 26 Expert Disclosures*** – that clearly shows that the Disqualified Expert had testified on behalf of Johnson & Johnson, DePuy, and Barnes & Thornburg in 2013 and 2014.  [ECF No. 222-1.]

### E.    Plaintiffs Seek To Re-Open Discovery Regarding the Disqualified Expert.

On November 19, 2020 – the same day Plaintiffs filed their Opposition – Plaintiffs' counsel e-mailed all counsel and requested that DePuy consent to re-opening discovery so that Plaintiffs could conduct discovery regarding the scope and nature of DePuy's prior relationship with the Disqualified Expert.  [Nov. 19, 2020 e-mail from A. Rouviere, attached as **Exhibit A.**]  Plaintiff threatened to file a motion to re-open discovery if DePuy did not consent.  [*Id.*]  Counsel for DePuy responded the same day, and informed Plaintiffs that there was no basis for any such discovery

since Plaintiffs were aware that the Disqualified Expert had previously worked with DePuy in 2013 and 2014. [Nov. 19, 2020 e-mail from J. Larson, attached as **Exhibit B**.]

The parties then participated in a meet-and-confer call on Friday, November 20, 2020. [See 242-2.] During the call, Plaintiffs' counsel stated: "I believe B&T has an ongoing conflict of interest with [the Disqualified Expert] and there is enough there to investigate it." [*Id*.] But when asked what evidence he had to support this belief, Mr. Rouviere stated that he did not have obligation to tell DePuy any basis or evidence for this belief and he would put it in his Motion to Re-Open Discovery instead. [*Id*.] Counsel for DePuy asked – repeatedly – that Mr. Rouviere explain any factual basis for this belief and he refused. [*Id*.] Mr. Rouviere never identified or mentioned the *Rowe* case or any other specific case that he believed evidenced a continued relationship between DePuy and the Disqualified Expert. Instead, he failed to exercise good faith in the meet-and-confer, maintained that he did not have to provide DePuy any evidence to support his claims, and refused to provide any support for his allegations. [*Id*.]

Plaintiffs never filed a motion to reopen discovery and did not make any arguments about the *Rowe* case until oral argument on November 24, 2020.

### F.    November 24, 2020 Oral Argument on DePuy's Motion to Strike.

The Court heard oral argument on DePuy's Motion to Strike on November 24, 2020. During oral argument, Plaintiffs' counsel conceded that Jarrell's expert report included opinions regarding DePuy's alleged failure to warn, but the Disqualified Expert expressed no failure to warn opinions. [ECF No. 232 at 6.]

The Court also questioned Plaintiffs on their arguments related to the prior relationship between DePuy and the Disqualified Expert – which the Court characterized as bordering "not on only unethical but possibly illegal conduct by the Disqualified Expert if he deliberately sabotaged your case." [242-1, p. 11.] Plaintiffs for the first time stated that that they believed that they had

identified one open case that is still pending in which Barnes & Thornburg had retained the Disqualified Expert on behalf of Johnson & Johnson. [*Id*. p. 11.] But Mr. Rouviere admitted he had no evidence of that fact and could not prove it. [*Id*.]

In response, DePuy's counsel and the Court engaged in this short exchange:

> **Mr. Larson:** "… I will briefly address the allegation that there's a current case. That's new. We hadn't heard that before. Looking at the prior testimony list, I assume that Mr. Rouviere is referring to the *In Re Pinnacle MDL* down in Dallas, the Northern District of Texas. Disqualified Expert did testify at deposition in 2014. That MDL has been resolved publicly. They're in the process of settling those claims. There are no more bellwether cases. That is not an ongoing litigation in which the disqualified expert has any role.
>
> **The Court:** So is your representation as an officer of the Court that there is no ongoing litigation in which the Disqualified Expert is engaged?
>
> **Mr. Larson:** That's correct.

[ECF No. 242-1, 14-15.] Everything DePuy's counsel stated was true at the time and remains true now. [*See infra* Section III.D.]

## G.    The Court Grants DePuy's Motion to Strike.

On November 24, 2020, the Court granted DePuy's Motion to Strike Jarrell's opinions. [ECF No. 232.] The Court found that the Disqualified Expert did not provide any opinions "regarding design defect and failure to warn issues as to DePuy" and that Plaintiffs "failed to make a showing of good cause for their failure to offer the DePuy-related opinions by the September 21, 2020 deadline." [*Id*. at 5.] The Court further clarified that its October 25, 2020 Order, which disqualified the Disqualified Expert and gave Plaintiffs two-weeks to disclose an Alternate Expert, "was not intended to, and did not, grant permission to Plaintiffs to submit expert opinions regarding DePuy." [*Id*.] Instead, the Court intended that "the alternate engineer expert report was to be limited to the opinions already expressed, which were addressed to Howmedica, not DePuy." [*Id*.

8

at 6.]  The Court then turned to Plaintiffs' arguments that DePuy concealed a relationship with the Disqualified Expert and found this argument "disingenuous."  [*Id*. at 6-7.]  The Court noted that Plaintiffs were aware of the content and scope of the Disqualified Expert's Report – and its lack of any opinions regarding DePuy – when they served it.  [*Id*.]  And the Court also observed that Plaintiffs were aware, or should have been aware, of the prior relationship with DePuy based on the Rule 26 list of prior testimony, and rejected Plaintiffs attempt to "now complain of some possible bias that such expert had in favor of DePuy."  [*Id*. at 7]  Accordingly, the Court struck the DePuy-related opinions from Jarrell's report.

### H.   Plaintiffs Motion to Reconsider Under Rule 59(e) and the Declaration of Matt Morrison.

On December 4, 2020, Plaintiffs subsequently filed the present Motion to Reconsider. [ECF No. 242.]  Plaintiffs renew their argument that the Disqualified Expert is currently working with DePuy in connection with one case from the Pinnacle MDL, *Byron and Melanie Rowe v. DePuy Orthopaedics*, 3:12-cv-4354-K (N.D. Texas) and rely on the declaration of attorney Matt Morrison.  Mr. Morrison's declaration states that he is an attorney representing the Rowes and that DePuy disclosed the Disqualified Expert in that case.  [ECF No. 245.]  The declaration also states that *Rowe* is an "open and pending" litigation.  [*Id*.]  The Morrison declaration does not allege any knowledge of DePuy's ongoing relationship with the Disqualified Expert or contradict DePuy's statement that it is not engaged with the Disqualified Expert in any ongoing matter.  [*Id*.]

### I.   The Pinnacle MDL Litigation Generally.

On May 24, 2011, the Judicial Panel on Multidistrict Litigation established *IN RE: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, 3:11-md-02244-K (the "Pinnacle MDL") to consolidate litigation concerning the Pinnacle Acetabular Cup System hip

implants in the Northern District of Texas before Judge Ed Kinkeade (the "MDL Court"). [Transfer Order, ECF No. 1.]

There have been five bellwether trials in the Pinnacle MDL: *Herlihy-Paoli*,[1] *Peterson*,[2] *Andrews*,[3] *Alicea*,[4] and *Aoki*.[5]    [Declaration of Joseph G. Eaton ("Eaton Decl."), attached as **Exhibit C**.] The last bellwether trial to reach verdict, *Alicea*, concluded in November 2017.  [*Id.*] The final bellwether trial began in January 2019 and was resolved before verdict.  [*Id.*]

There will be no more bellwether trials in the Pinnacle MDL. [*Id.*] All bellwether cases have resolved.  [*Id.*]  All other cases in the Pinnacle MDL are stayed and all parties are working to resolve the claims in the Pinnacle MDL (the "Pinnacle Plaintiffs").  [*Id.*]

## J.    The *Rowe* Case.

In 2014, the parties selected a small group of cases for the first round of bellwether trials and *Rowe et al v. Johnson & Johnson, Inc. et al,* 3:12-cv-4354-K, was part of that group.  [*Id.*] DePuy and the Pinnacle Plaintiffs' counsel began to work up the *Rowe* case for trial, and DePuy disclosed the Disqualified Expert in connection with that case on June 16, 2014.  [*Id.*]  The Disqualified Expert was deposed in the *Rowe* case on August 28, 2014.  [*Id.*]  However, after the first bellwether trial in October 2014, the MDL Court ordered that the parties work up *other* cases for bellwether trials and stayed *Rowe* and the other cases originally selected as bellwethers.  [*Id.*] This is what makes *Rowe* unique – there are only a small number of cases that were prepared for

---

[1] *Herlihy-Paoli v. DePuy Orthopaedics, Inc. et al*, 3:12-cv-04975-K (N.D. Tex. Oct. 23, 2014).
[2] *Peterson et al v. Johnson & Johnson Services, Inc. et al*, 3:11-cv-01941-K (N.D. Tex. July 5, 2016).
[3] *Andrews et al v. DePuy Orthopaedics Inc et al*, 3:15-cv-03484-K (N.D. Tex. Dec. 1, 2016).
[4] *Alicea et al v. DePuy Orthopaedics Inc et al*, 3:15-cv-03489-K (N.D. Tex. Nov. 16. 2017).
[5] *Aoki v. Johnson & Johnson Services, Inc. et al*, 3:13-cv-01071-K (N.D. Tex. Jan. 30, 2019).

trial but never tried. [*Id*.] Ever since it was de-selected as a potential bellwether case, *Rowe* has remained stayed and in the same status as all other non-bellwether trial cases. [*Id*.]

Beginning in early 2019, attorneys from Barnes & Thornburg have worked with attorney Billy Davis of the Harrison Davis Steakley Morrison Jones, P.C. law firm to resolve claims on behalf of Pinnacle Plaintiffs. [Declaration of Billy Davis ("Davis Decl."), attached as **Exhibit D**, ¶ 4.] And in early 2019 they successfully and confidentially resolved Harrison Davis' clients' claims, including the claims of Byron and Melanie Rowe. [*Id*. ¶ 5.] On November 7, 2019, the parties executed a Master Settlement Agreement regarding the confidential resolution of these cases, which recommends the agreed terms of settlement to each of Harrison Davis's Pinnacle clients, including Byron and Melanie Rowe. [*Id*. ¶ 6.] Although Byron and Melanie Rowe have not returned a release to DePuy, they have not in any way repudiated the settlement. [*Id*. ¶ 7.] They are waiting for the resolution of medical lien claims against the settlement. [*Id*.] Given the status of the settlement and prior communications between Mr. Davis and his clients Byron and Melanie Rowe, there is no reason to believe the Rowes will not execute the release. [*Id*. ¶ 8.] Mr. Davis has no reason to believe there will be future litigation between the Harrison Davis firms' clients and DePuy related to the Pinnacle claims. [*Id*. ¶ 9.] Mr. Davis and his now deceased

colleague Zollie Steakley were the only attorneys from Harrison Davis who have been working with Barnes & Thornburg to resolve the firm's Pinnacle claims.  [*Id*. ¶ 4.]

**K.     The Disqualified Expert Has Had No Role In The Pinnacle MDL And *Rowe* Case Since 2015.**

DePuy disclosed the Disqualified Expert in five cases in the Pinnacle MDL: *Rowe*, *Paoli*, *Lay*,[6] *Jones*,[7] and *Mello*.[8]    [Eaton Decl., ¶ 4.]    The last time DePuy disclosed the Disqualified Expert in the Pinnacle MDL was on October 21, 2014.  [*Id*. ¶ 18.]    He was deposed in connection with the *Paoli, Lay,* and *Rowe* (and all three of these depositions were listed on his list of prior testimony).  [*Id*. ¶ 19.]  The deposition in the *Rowe* case was on August 28, 2014.  [*Id*. ¶ 10.]  The Disqualified Expert's final invoice to DePuy for work performed in the Pinnacle Litigation is dated July 9, 2015.  [*Id*. at ¶ 20.]    The Disqualified Expert has had no role in connection with DePuy's defense of the Pinnacle MDL including the *Rowe* case since that time.  [*Id*. at ¶ 21.]  There is no ongoing litigation in which DePuy has engaged the Disqualified Expert.  [*Id*. at ¶ 22.]

\*        \*        \*        \*        \*

In sum, while DePuy disclosed the Disqualified Expert in the *Rowe* case in 2014, it is not true that the *Rowe* case was unresolved at the time the Disqualified Expert prepared his report in

---

[6] *Lay et al v. DePuy Orthopaedics, Inc. et al*, 3:11-cv-03590-K (N.D. Texas)(not a bellwether, dismissed by stipulation on June 15, 2020)
[7] *Jones et al v. DePuy Orthopaedics, Inc. et al*, 3:11-cv-3594-K (N.D. Texas)(not a bellwether, dismissed by stipulation on March 19, 2020)
[8] *Mello et al v. DePuy Orthopaedics, Inc. et al*, 3:12-cv-0641-K (N.D. Texas)(like *Rowe*, resolved, but not yet dismissed)

this case or that the Disqualified Expert has had any role with DePuy in connection with the Pinnacle litigation since 2015.

### III.     ARGUMENT

#### A.     Legal Standard.

A motion to reconsider "is to be treated as a Rule 59(e) motion if filed within 10 days of entry of the challenged order." *Degrafinreid v. Ricks*, 452 F. Supp. 2d 328, 331 (S.D.N.Y. 2006). A "motion for reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). A party seeking reconsideration "is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y. Jan 18, 2000). It is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *LCS Grp., LLC v. Shire LLC*, 2020 WL 5077075 at *2 (S.D.N.Y. Aug. 27, 2020).

Accordingly, motions to reconsider like the present one – which only relies on incorrect facts and arguments already considered and rejected by the Court – must be denied.

#### B.     Plaintiffs' Motion to Reconsider Must Be Denied Because DePuy Does Not Have an Ongoing Relationship With the Disqualified Expert.

Plaintiffs' Motion to Reconsider rests entirely on the incorrect belief that the *Rowe* case is actively ongoing and that DePuy is still working with the Disqualified Expert in 2020. This belief is simply false.    The *Rowe* case is not actively ongoing and the Disqualified Expert has had no

13

role in DePuy's defense of the Pinnacle MDL or the *Rowe* case since July 2015. The Motion to Reconsider therefore must be denied.

        **1.**     **The Morrison Declaration Does Not Support Plaintiffs' Argument That DePuy Has An Ongoing Relationship With the Disqualified Expert.**

The Morrison Declaration repeats the same information that the Disqualified Expert's prior testimony list disclosed. Mr. Morrison simply states that he represents the Rowes in the Pinnacle litigation (¶ 2), that DePuy disclosed the Disqualified Expert in the *Rowe* case (¶ 4), and that the *Rowe* case has not been formally dismissed yet (¶ 5). [ECF No. 245-2.] All of this information is accurate and was available to Plaintiffs at the time they retained and disclosed the Disqualified Expert in September 2020. [*See id.*] The Morrison Declaration contains nothing new in that regard.

Plaintiffs' Motion to Reconsider focuses on Mr. Morrison's representation that the *Rowe* case is technically "open and pending." [*Id.* ¶3.] Plaintiffs improperly extrapolate from that statement and argue that the Morrison Declaration shows that DePuy is still actively engaged in a pending case in which it has retained and disclosed the Disqualified Expert. [ECF No. 242 at 1.] This is not true. The Morrison Declaration does not allege any factual knowledge regarding DePuy's relationship with the Disqualified Expert after 2015 or in the present. [*See* ECF No. 245-2.] The Morrison Declaration does not contradict anything DePuy represented to the Court regarding DePuy's prior relationship with the Disqualified Expert. Furthermore, as shown below, DePuy has presented evidence to clarify that the *Rowe* case is not actively ongoing and to demonstrate that everything it represented to the Court is true and accurate.

        **2.**     **DePuy Does Not Have An Ongoing Relationship With The Disqualified Expert and The Disqualified Expert Had No Role In the Pinnacle MDL, Including the *Rowe* Case, Since 2015.**

DePuy's representation to the Court during oral argument that the Disqualified Expert was not presently engaged in any actively ongoing litigation on behalf of DePuy was correct. The

*Rowe* case has been resolved for nearly two years and is not an active litigation. And the Disqualified Expert has had no role in the Pinnacle MDL or in the *Rowe* case since 2015. Though closely related, DePuy will address these two issues separately.

**First**, the *Rowe* case is not an active ongoing and pending litigation. *Rowe* is unique in that it is one of the few cases that was selected as a bellwether, worked up for trial, but was not tried. [Eaton Decl., ¶ 11.] It was originally selected in 2014 to be one of the bellwether trials and the parties prepared the case for trial. [*Id*. at ¶ 13.] As part of the pre-trial litigation in *Rowe*, DePuy disclosed the Disqualified Expert as a witness pursuant to Rule 26 on June 16, 2014. [*Id*. at ¶ 9.] Mr. Morrison's statement that DePuy named the Disqualified Expert in the *Rowe* case (Morrison Decl., ¶ 4) is accurate but fails to note that the disclosure took place six years ago. The MDL Court later ordered that *Rowe* and other cases would not be tried as bellwethers and selected new cases. [*Id*. at ¶ 11.] Since it was de-selected as a potential bellwether case, *Rowe* has remained stayed. [*Id*. at ¶ 13.]

The *Rowe* case has been resolved more nearly two years and the Rowes' attorneys confirm this to be true. Beginning in January 2019, attorneys from Barnes & Thornburg have worked with attorney Billy Davis of the Harrison Davis Steakley Morrison Jones, P.C. law firm to resolve claims by that firm's clients. [Davis Decl., ¶ 4.] And in early 2019 they successfully and confidentially resolved Harrison Davis' clients' claims, including the claims of Byron and Melanie Rowe. [*Id*. ¶ 5.] On November 7, 2019, the parties executed a Master Settlement Agreement regarding the confidential resolution of these cases, which recommends the agreed terms of settlement to each of Harrison Davis's Pinnacle clients, including Byron and Melanie Rowe. [*Id*. ¶ 6.] Although Byron and Melanie Rowe have not returned a release to DePuy, they have not in any way repudiated the settlement. [*Id*. ¶ 7.] They are waiting for the resolution of medical lien claims against the settlement. [*Id*.] Given the status of the settlement and prior communications

15

between Mr. Davis and his clients Byron and Melanie Rowe, there is no reason to believe the Rowes will not execute the release.  [*Id*. ¶ 8.]  Mr. Davis has no reason to believe there will be future litigation between Harrison Davis and DePuy related to the Pinnacle claims.  [*Id*. ¶ 9.]  Mr. Davis and his colleague Zollie Steakley are the only attorney from Harrison Davis who have been working with Barnes & Thornburg to resolve the firm's Pinnacle claims.  [*Id*. ¶ 4.]  In this light, Mr. Morrison's representation that the *Rowe* case in an "open and pending" litigation does not indicate that the matter is an active litigation.

Therefore, it is simply not true that the Rowe case is an active ongoing and pending litigation or that the Disqualified Expert has any role in DePuy's defense of this case.

***Second,*** the Disqualified Expert has had no role in DePuy's defense of the Pinnacle MDL since July 2015 at the very latest.  DePuy disclosed the Disqualified Expert in five cases in the Pinnacle MDL: *Rowe*, *Paoli*, *Lay*, *Jones*, and *Mello*, and none of these cases are still ongoing.  [Eaton Decl. ¶ 14.]  *Paoli* was the first bellwether trial, which resulted in a defense verdict and has been terminated on the docket.  [*Id*. at ¶ 15.]  *Lay* and *Jones* have both been resolved and dismissed.  [*Id*. at ¶ 16.]  *Rowe* and *Mello* have both been resolved, but not formally dismissed on the docket.  [*Id*. at ¶ 17.]  The Disqualified Expert was last deposed in the Pinnace MDL on October 21, 2014.  [*Id*. at ¶ 18.]  The Disqualified Expert's final invoice to DePuy for work performed in the Pinnacle Litigation is dated July 9, 2015.  [*Id*. at ¶ 20.]   The Disqualified Expert has had no role in

connection with DePuy's defense of the Pinnacle MDL since that time. [*Id*. at ¶ 21] There is no active and ongoing litigation in which DePuy has engaged the Disqualified Expert. [*Id*. at ¶ 22]

Accordingly, it is not accurate that the *Rowe* case is an ongoing and pending litigation or that the Disqualified Expert has had any role in DePuy's defense of the Pinnacle MDL since 2015. The Court should deny Plaintiffs' Motion to Reconsider.

C.    **Plaintiffs' Motion to Reconsider Must Be Denied Because It Simply Repeats the Same Disingenuous Theories Previously Rejected by the Court.**

Since the Morrison Declaration does not support the argument that the Disqualified Expert has a current relationship with DePuy and is mistaken that the *Rowe* case is ongoing, Plaintiffs' Motion to Reconsider provides no new and correct information. Therefore, the Court should deny Plaintiffs' Motion to Reconsider for the same reasons it granted DePuy's Motion to Strike.

The Court correctly held that Jarrell's failure to warn opinions were outside of the scope of subject areas as were covered by the Disqualified Expert and therefore not permitted under its October 25, 2020 Order. [ECF No. 232 at 5.] Plaintiffs' Motion to Reconsider does not reargue this point, and it was correctly decided.

The Court also correctly held that Plaintiffs failed to show good cause to allow them to present untimely expert opinions regarding DePuy. [*Id*.] To the extent that Plaintiffs argue that the Morrison Declaration amounts to good cause, they are wrong. Plaintiffs filed this lawsuit in 2018 and had more than two years to identify and disclose a testifying engineering expert. Discovery was burdensome and extensive and DePuy produced thousands of pages of confidential documents concerning its components. Yet, when it came time to disclose expert testimony, Plaintiffs only disclosed opinions regarding co-defendant HOC. [ECF No. 232 at 5.] And, as this Court correctly noted, Plaintiffs were aware that the Disqualified Expert did not provide opinions regarding DePuy and were aware (or should have been aware) that the Disqualified Expert

17

previously testified in cases on behalf of DePuy.  [*Id*. at 6.]  The *Rowe* case was explicitly identified

on the Disqualified Expert's list of prior testimony, which Plaintiffs produced to DePuy.  [ECF

No. 222-1.]  If Plaintiffs were concerned about this issue, they should have raised it before the

expert disclosure deadline.  [ECF No. 232 at 7.]

As the Court noted, Plaintiffs' argument that the Disqualified Expert looked out of DePuy

in rendering his opinions is "disingenuous." [ECF No. 232 at 6.]  The argument is particularly

empty in light of the fact that Plaintiffs fought to keep the Disqualified Expert even after HOC

informed them that they believe that the Disqualified Expert was conflicted.  [ECF No. 181.]

Plaintiffs' inconsistency here is striking.  They previously argued that the Court should allow the

Disqualified Expert to testify as to HOC (even though HOC informed the Court and Plaintiffs that

he was engaged in current litigation on their behalf) and now argue that the Disqualified Expert

was improperly compromised as to DePuy (even though DePuy had not engaged him in years).

This inconsistency underscores the obvious: Plaintiffs' Motion to Reconsider is not about any

concerns of actual bias on behalf of the Disqualified Expert; it is about Plaintiffs wanting to re-do

their expert disclosures.

Since Morrison Declaration does not support Plaintiffs' theory that the Disqualified Expert

was working for DePuy and "looking out" for it in this case, the Motion to Reconsider simply rests

on the same empty theories this Court has already rejected.  This is not proper basis for a Motion

to Reconsider.  The Court deny Plaintiffs' Motion to Reconsider and leave its prior Order in place.

**D.    The Court Should Award DePuy Attorneys' Fees and Costs Because All Statements Made To the Court by DePuy Were True and Correct and Plaintiffs' Motion Only Renews Arguments Already Rejected By The Court.**

DePuy did not mislead the Court during oral argument on November 24, 2020.  Plaintiffs'

allegation that DePuy intentionally misled the Court and concealed information regarding its prior

relationship with the Disqualified Expert is frivolous and one in a long line of accusations that Plaintiffs have made against DePuy and its counsel without factual support.

Counsel's statements regarding DePuy's prior relationship with the Disqualified Expert were accurate and remain true. The Court asked DePuy's counsel, as an officer of the Court, to represent "that there is no ongoing litigation in which the Disqualified Expert is engaged" and Counsel did so. [ECF No. 242 at 7.] As explained in detail in this brief, that representation was true at the time and remains true now. Nothing in Plaintiffs' Motion to Reconsider or the Morrison Declaration changes that answer. Plaintiffs have now publically accused DePuy and its counsel of violations of the duty of candor on multiple occasions. Plaintiffs see no risk in making such accusations. This unethical conduct has significantly increased the cost of litigation and warrants monetary sanctions to compensate DePuy and to deter Plaintiffs from continuing to litigate in this matter.

Counsel's statement at oral argument that he first heard of Plaintiffs' claim that there was "one ongoing case" involving DePuy and the Disqualified Expert was and remains true as well. The summary of the November 20, 2020 meet and confer bear this out. [*See* ECF No. 242-2.] Counsel repeatedly asked Mr. Rouviere for any basis for his "belief" that there was a relationship and he refused. [*Id.*] Mr. Rouviere did not tell DePuy's Counsel that he believed there was a ***current*** case, which was clearly what Counsel's statement at oral argument addressed. DePuy was aware of Plaintiffs' general theory that the Disqualified Expert was bound to DePuy because Plaintiffs raised this in their Opposition to DePuy's Motion to Strike [ECF No. 218] and DePuy addressed it in its Reply Brief. [ECF No. 222.] But DePuy was not aware of an allegation there

was a current case involving DePuy and the Disqualified Expert, and Plaintiffs' allegation that DePuy's counsel's statement misled the Court is false.

All of the statements that DePuy made in its briefing and oral argument regarding its relationship with the Disqualified Expert remain true.  Plaintiffs' allegations that DePuy misled the Court or concealed a relationship with the Disqualified Expert are simply more lies that they have told about DePuy and its attorneys.   The argument that DePuy has breached its duty of candor to this Court is similarly baseless.   Counsel's representations to the Court were truthful, not evasive, and correct.

Once the mistaken Morrison declaration is properly viewed in light of the complete context, Plaintiffs Motion to Reconsider is seen as simply renewing its speculation that the Disqualified Expert was compromised, which this Court already rejected as disingenuous. Plaintiffs admitted at oral argument that he "could not prove" his speculative accusation that the Disqualified Expert sabotaged his case, which the Court correctly described as possibly criminal, but still filed this Motion to Reconsider.  There is no good faith basis for Plaintiffs' repeated and already rejected theories and the Court should award DePuy its attorneys' fees and costs incurred in defending against these bad faith claims.  *Marriott Corp. v. Ramada Inc.*, No. 1994 WL 150828, at *1 (S.D.N.Y. Apr. 21, 1994)(awarding attorneys' fees for defense of arguments so baseless in fact and law as to be frivolous); *Katz v. Mogus*, 2008 WL 2605072, at *2 (S.D.N.Y. July 1, 2008)(awarding attorneys' fees for repeatedly presenting rejected theories to the Court).

## IV.    CONCLUSION

The Court properly granted DePuy's Motion to Strike the Untimely Opinions of John Jarrell, Ph.D.  DePuy has now gone to great lengths to show that any relationship with the Disqualified Expert ended long before this two-year-old litigation began and certainly years before

their expert disclosures in September 2020. Plaintiffs' Motion to Reconsider adds nothing new. It simply renews the same arguments that the Court previously rejected and correctly described as disingenuous. The Court should deny Plaintiffs' Motion to Reconsider and award DePuy its costs and attorneys' fees incurred in responding to the same.

Respectfully Submitted,

*/s/ Joseph G. Eaton*
Joseph G. Eaton (#15731-29)
J.T. Larson (#31392-29)
Barnes & Thornburg, LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Email: joe.eaton@btlaw.com
        jt.larson@btlaw.com

James F. Murdica
BARNES & THORNBURG LLP
43 West 43rd Street, Suite 175
New York, NY 10036
(312) 357-1313
Email: jmurdica@btlaw.com

*Attorneys for DePuy Orthopaedics, Inc. nka*
*Medical Device Business Service, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was electronically served on the following counsel of record via e-mail on this 14th day of December, 2020.

> Andre Rouviere
> Jodi Rouviere
> 4070 Laguna Street
> Coral Gables, Florida 33146
>
> Paul E. Asfendis
> Kim M. Catullo
> GIBBONS, P.C.
> One Pennsylvania Plaza, 37th Floor
> New York, NY 10119
>
>
> */s/ Joseph G. Eaton*
> Joseph G. Eaton

22