*Law Offices of*
**ANDRE A. ROUVIERE**
Merrick Park Law Center
4070 Laguna Street
Coral Gables, Florida 33146
e-mail: Andre@Rouvierelawfirm.com

André A. Rouviere                                                                                  Telephone (305) 774-7000
Lissette B. Cruz                                                                                       Fax (305) 946-6121

December 14, 2020

VIA ECF

Honorable Stewart D. Aaron, U.S.M.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

        **Re:    Rouviere v. DePuy Orthopaedics, et al.
                 Civil Action No. 1:18-cv-4814 (AJN)**

Dear Judge Aaron:

        On behalf of the Plaintiffs, I submit this response in opposition to Defendant DePuy Orthopaedics Inc.'s ("DePuy") letter motion to seal its response in opposition to Plaintiffs' Rule 59(e) motion, and DePuy's exhibits attached to its response. For the reasons stated below, Plaintiffs urge this Court to deny Depuy's motion to seal its response and exhibits thereto.

        The right of public access to judicial documents is "firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d. Cir. 2006). Without this access, the public would have "no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id*. (*quoting United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). As a result, in order for a court to seal judicial documents, parties must make compelling arguments in favor of sealing, which the court must evaluate on a document-by-document basis in light of the strong presumption of public access.

        In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), the United States Supreme Court explained that there is a "general right to inspect and copy public records and documents, including judicial records and documents." This presumption of access is "based on the need for federal courts, although independent . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Amodeo*, 71 F.3d at 1048. The presumption is derived from two sources: the common law and the First Amendment to the United States Constitution. Where documents "directly affect an adjudication or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, and thus

can be overcome only be extraordinary circumstances." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016). [1]

Where information is offered on a party's own initiative and for the purpose of advancing their own case on the merits of a request for relief, disclosure is more appropriate. *FTC v. Standard Fin. Mgmt. Corp*., 830 F.2d at 412 ("appellants themselves chose to submit the documents to the FTC as part of the settlement process—a process they could have foregone"); *United States v. Hubbard*, 650 F.2d at 321 ("single most important element" militating against disclosure was fact that evidence was offered solely for the purpose of challenging a search and seizure, not to influence the merits of the criminal case).

Here, DePuy chose to offer the declarations that contain the allegedly sensitive testimony of settlement strategy to the Court for the purpose of supporting DePuy's claim for that Depuy and its counsel did not misrepresent a material fact to this Court – an alleged falsehood by an officer of this Court on behalf of his corporate client, DePuy, and in addition, DePuy's position on the merits of Plaintiffs' Rule 59(e) motion. This is decidedly not a case where a party seeks to protect sensitive information that was seized involuntarily or that was obtained through discovery. *See United States v. Hubbard*, 650 F.2d at 319 (documents were seized in connection with criminal case); *Friedman v. Sebelius*, 672 F. Supp. 2d at 61 ("Given that the plaintiffs introduced those documents to support their motion for preliminary injunction, and sought to seal those documents only through that motion's disposition, this factor weighs in favor of unsealing the case.").

Second, the possibility of prejudice to DePuy's declarants is vague and conjectural in this case. To support a claim of prejudice, more than conclusory assertions are necessary; the party requesting secrecy must offer a particularized, factual demonstration of potential harm. *See FTC v. Standard Fin. Mgmt. Corp*., 830 F.2d 404, 412 (1st Cir. 1987) (claims of prejudice from disclosure of financial statements, without supporting affidavits or meaningful details, could not overcome presumption in favor of access to judicial records). Here, the Motion to Seal contains a few generalized and speculative assertions to the effect that the evidence sought to be withheld from public view relates to possibly revealing settlement strategy of a non-party litigant to the instant case. There is no declaration that the information contained in the declarations offered by DePuy contain "commercially sensitive facts" that "could cause competitive harm to the declarants." *Motion to Seal* ¶ 3 (emphasis added). Although courts are sometimes persuaded to protect "trade secrets," *In re National Broadcasting Co*., 653 F.2d 609, 613 (D.C. Cir. 1981), DePuy offers no claim of trade secrets here. DePuy's vague statement that publishing the evidence "could" cause harm to the settlement negotiations between DePuy and plaintiffs in the

---

[1] It is impermissible to seal documents without a particularized review of the documents. *Brown v. Maxwell*, 929 F.3d 41,46, 51 ("failure to conduct an individualized review of the sealed materials," ordered documents related to dispositive motions unsealed, and remanded the case to the District Court to conduct this analysis as to other judicial documents.) *see also Khurana*, 2019 WL 3294170, at *2 (S.D.N.Y. July 19, 2019) ("A protective order authorizing the parties themselves to designate confidential material and to file such material under seal — without prior 'individualized review' and 'specific, on-the record findings' by the Court that such sealing or redaction is warranted — is inappropriate.").

MDL in Dallas, Texas case falls short of the burden DePuy must carry to justify sealing of the records. Moreover, a major factor in determining if a party wishing to file under seal faces prejudice is "whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal." *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 60 (D.D.C. 2009) (*citing United States v. Hubbard*, 650 F.2d at 320-21); *see also In re National Broadcasting Co.*, 653 F.2d at 616 (possibility of a retrial and the uncertain impact of disclosure on such a retrial were too speculative to overcome presumption).

To be clear, the MDL litigation involving DePuy has been widely reported in the internet and news media outlets as recent as May 20, 2020. *See*, https://thelawfirm.com/depuy-hip-lawsuit/depuy-hip-lawsuit-updates/ ("*DEPUY HIP LAWSUIT SETTLEMENT UPDATE: DEPUY PINNACLE METAL-ON-METAL HIP SETTLEMENTS ARE NOT FAIR*") *see also*, https://www.prnewswire.com/news-releases/dallas-jury-returns-1-billion-plus-verdict-in-defective-depuy-hip-implants-lawsuit-300371867.html ("*Dallas Jury Returns $1 Billion-Plus Verdict in Defective DePuy Hip Implants Lawsuit*"); https://www.drugwatch.com/hip-replacement/depuy/lawsuits/ ("DePuy ASR & Pinnacle Hip Replacement Lawsuits DePuy ASR and Pinnacle hip lawsuits allege the devices caused serious complications that required revision surgery. DePuy agreed to pay $4 billion to settle almost 8,000 ASR hip lawsuits in 2013. In May 2019, the company agreed to pay a settlement amount of roughly $1 billion to resolve nearly 6,000 Pinnacle hip cases."). https://www.cnbc.com/2019/01/22/jj-us-states-settle-hip-implant-claims-for-120-million.html ("*Johnson & Johnson and its DePuy Orthopaedics unit have agreed to pay $120 million to resolve deceptive marketing claims by several U.S. states over the company's metal-on-metal hip implants.*")

The public, consumers and news outlets have an inherent right to know what is happening in this case, especially where DePuy's counsel has been alleged to have committed a serious violation of ethics and rules governing his conduct before the judiciary. District courts in the Second Circuit have repeatedly held that a court cannot seal information once it has been publicly revealed. *See In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012) ("Any balancing of the interests here, however, would be academic as the information the Government and Doe seek to maintain sealed has already been publicly revealed; the cat is out of the bag, the genie is out of the bottle."); *Under Seal*, 273 F. Supp. 3d at 472 ("Although the scope of the confidentiality provision at issue is broader than this disclosure, the fact that aspects of [plaintiff's] involvement in the Book have been revealed to the public weighs against sealing and against a finding of irreparable harm."). The discussion of the settlements engaged in by DePuy in the MDL has been widely reported and criticized by the news media and law firms as demonstrated above.

Further, this is not a case in which the court must worry about "preserving the right of an accused to fundamental fairness in the jury selection process, the protection of attorney-client privilege, the danger of impairing law enforcement or judicial inefficiency, or the privacy interests of those who resist disclosure." *Brown*, 929 F.3d at 47 n.13 (*citations and quotes omitted*). This is a civil case, so there is no "accused" party, and DePuy's involvement in a plethora of lawsuits have not only been reported widely throughout the world, but the most recent reported article published by a CNBC was on May 20, 2020. Further, there is no

implication of attorney-client privileges. To the extent the Sealed Exhibits do contain any personal or privileged information (that has not already been disclosed in the internet or by the news media), they can still be provided to the public with narrow redactions for any such information. Finally, potential negative publicity to DePuy or its counsel that may result from the release of these documents is not enough to prevent their disclosure. *Cf. Under Seal*, 273 F. Supp. 3d at 470 ("[A] possibility of future adverse impact on employment or the celebrity status of a party is not a 'higher value' sufficient to overcome the presumption of access to judicial documents.").

The other factors in *Hubbard* are less significant and they do little to support the DePuy's position to seal its response and exhibits thereto. There are no requests for confidential treatment from the actual individuals or firms that made the declarations on behalf of DePuy. This undermines the DePuy's claim for secrecy. The "strength of any property and privacy interest" presented is relatively weak insofar as no privacy interest is at stake, only an unquantified pecuniary interest. Finally, whether or not the information sought to be sealed is otherwise available to the public through, for example, disclosure by other plaintiffs and their counsel to the news media is unclear, but certainly the news articles noted above make clear the public interest in DePuy and its hip system products. In any event, the proffer by DePuy to justify secrecy of its response and exhibits may establish the rudiments of a claim for secrecy, it does little to help illuminate the best resolution of such a claim, which must be decided in light of the other factors, and which in this case should be decided in favor of disclosure and transparency.

If anything, we now know for sure that the federal case *Bryon D. Rowe and Melanie A. Rowe v. Depuy Orthopaedics, Inc et al.*, No. 3:12-cv-04354-K (N.D. Tex – Dallas Division) is open and pending, has not been settled and the Plaintiffs' disqualified expert was deposed in this OPEN and PENDING case, and disqualified expert still is an expert witness for DePuy in that case. This will be addressed in Plaintiffs' Reply to be filed on Friday, December 18, 2020.

"**Sunlight is . . . the best of disinfectants**." "**If the broad light of day could be let in upon men's actions, it would purify them as the sun disinfects.**" – *Supreme Court Justice Louis Brandeis*. These are important statements and clear messages from Justice Brandeis which are certainly applicable here. DePuy and its counsel must be required to answer to this Court, Plaintiffs and the citizenry of this country in the brightest light of day, not behind the cloak of secrecy. The Plaintiffs, public and those expressing a continual duty to report the activities of DePuy and its products as they impact so many consumers in this country and worldwide must be able to see DePuy and its counsel when seeking relief in this Court. Plaintiffs urge this Court to deny DePuy's motion to seal its response and exhibits thereto. Justice and the integrity of the judiciary demands transparency in this case, nothing less, or so Plaintiffs' respectfully opine.

Sincerely,

*//ss// Andre Rouviere*
Andre Rouviere


cc: all counsel of record (via CM/ECF)