

March 31, 2021

*VIA ECF*
Honorable Stewart D. Aaron, U.S.M.J.
Daniel Patrick Moynihan
United States Courthouse, 500 Pearl St.
New York, NY 10007-1312

      Re:    *Rouviere v. DePuy Orthopaedics, et al.* **(Civil Action No. 1:18-cv-4814 (AJN))**
              **Plaintiffs' Request For Modification Of Scheduling Order**

Dear Judge Aaron:

    We represent the Plaintiffs, Jodi and Andre Rouviere ("Plaintiffs"), in the above-referenced case, and we write to request the Court modify the current scheduling order pursuant to Rule 16(d), Federal Rules of Civil Procedure ("FRCP"), to permit the submission of supplemental expert reports by previously disclosed experts Dr. Francis Gannon, Disqualified Expert[1], Dr. John Jarrell, and Dr. Sol Bobst, for the reasons and good cause set forth below.[2] Plaintiffs also respectfully request the Court impose appropriate sanctions against Defendant Howmedica Osteonics ("HOC") pursuant to FRCP 37, based on their conduct necessitating this motion.

    In short, Plaintiffs very recently learned that in November 2019, counsel for HOC obtained from Baptist Hospital three slides containing Plaintiff Jodi Rouviere's tissue specimens (the "undisclosed slides") despite having never obtained from Ms. Rouviere an authorization for release of medical records and without ever notifying Plaintiffs that they had obtained or possessed such slides. Immediately upon learning of the existence of the undisclosed slides (which they learned by happenstance), Plaintiffs requested that HOC counsel immediately provide the slides to Plaintiffs' expert pathologist, Dr. Francis Gannon, which they ultimately did on March 2, 2021.

    Dr. Gannon reviewed the slides and determined that they do, in fact, provide materially different information regarding Ms. Rouviere's condition than previous slides provided to him. Dr. Gannon informed Plaintiffs he wanted to issue a supplemental report and that if he had seen these slides previously, his original report and deposition would have been very different.

    Immediately upon learning of Dr. Gannon's findings and his desire to present a supplemental report, Plaintiffs contacted counsel for Defendants to speak and confer regarding the findings. Defendants' counsel opposed the request to modify the scheduling order. Plaintiffs also reached out to the Disqualified Expert, Dr. Jarrell, and Dr. Bobst to inquire whether Dr. Gannon's findings regarding the undisclosed slides would affect their findings, and all agreed they would.

---

[1] Pursuant to this Court's October 25, 2020 Order, the Disqualified Expert's name must be redacted from all public court filings. (ECF No.195). Therefore, the Disqualified Expert is not identified by name herein.

[2] Plaintiffs respectfully request this Court accept the instant 5-page letter motion which, due to the need to fully detail the facts and law underlying the requested relief, exceeds the 3-page limit under Section II(B) Individual Practices of this Court.

*Modification Of The Court's Scheduling Order To Permit*
*The Supplemental Reports Of Expert Witnesses Is Necessary And Warranted.*

Rule 16(b)(4) provides that a Court's scheduling order may be modified for good cause and with the Court's consent. Pursuant to the current scheduling order, entered June 22, 2020, Plaintiff's expert witness disclosures were due September 21, 2020. (ECF No. 128). On September 21, 2020, Plaintiffs timely disclosed the original expert witness reports of Dr. Gannon, a pathologist and immunologist, the Disqualified Expert, a biomechanical engineer, and Dr. Bobst, a toxicologist. Plaintiffs later disclosed the expert witness report of Dr. John Jarrell pursuant to this Court's October 25, 2020 Order. (ECF No. 193). On March 18 and March 19, 2021, Plaintiffs learned that Dr. Gannon's review of the undisclosed slides revealed additional material evidence that necessitated a supplement to Dr. Gannon's original report, after which Plaintiffs learned that Dr. Gannon's findings also warranted supplemental reports from the Disqualified Expert, Dr. Jarrell, and Dr. Bobst. Therefore, Plaintiffs now request the Court modify the current scheduling order to permit the supplemental expert reports.

The facts underlying Defendant HOC's obtaining and failing to disclose the existence of the tissue specimens for more than a year are problematic to say the least, but, at a minimum, they certainly present good cause for the modification of the scheduling order as requested herein.

**Facts Demonstrating Good Cause**
1. HOC used DePuy's HIPPA Form to Obtain the Undisclosed Slides.

On October 28, 2019, HOC's counsel, Gibbons PC, sent a fax to Baptist Hospital in Miami, Florida, confirming a "conversation" and attaching "an authorization to obtain tissue samples from the 11/11/16 and 2/16/17 surgeries" of Jodi Rouviere. (*See* **Exhibit 1** at pp. 3-5.) The authorization attached to HOC counsel's request was an authorization provided by Mrs. Rouviere to counsel for DePuy, Barnes & Thornburg, to obtain medical records,[3] not HOC.[4] On November 7, 2019, Baptist Pathology Department issued a statement of costs for preparing and sending the tissue specimens of Jodi Rouviere to Shiva Khansari, paralegal for Gibbons, PC. (*Id.* at 6). Thereafter, Baptist accepted payment from Gibbons PC and sent the tissue specimen slides to Shiva Khansari and/or Gibbons PC. *Id.* HOC did not inform Plaintiffs they had requested slides from Baptist nor that they had obtained any. Indeed, Plaintiffs were unaware the slides existed.

2. Defendants Sought Court Intervention Regarding Slides Possessed By Plaintiffs' Expert.

On September 21, 2020, Plaintiffs served Defendants with Dr. Gannon's expert report in which Dr. Gannon indicates he reviewed three pathology slides containing Mrs. Rouviere's tissue specimens. On October 2, 2020, Counsel for HOC requested Plaintiffs provide the slides referenced by Dr. Gannon so that Defendants' experts may review the same specimens prior to Dr. Gannon's deposition. (*See* ECF No. 163-1.) After disagreement over whether Dr. Gannon could ship the slides directly to HOC's counsel, Defendants

---

[3] Importantly, DePuy's counsel and Plaintiffs agreed that DePuy would provide copies to Plaintiff of any records or materials obtained pursuant to the signed release provided to DePuy's counsel. Thus, Plaintiffs reasonably expected that they would have received notice regarding any records or materials obtained pursuant to the signed release to Barnes & Thornburg, like the undisclosed slides.

[4] On April 9, 2019, HOC requested signed medical releases from Plaintiffs but did not provide a release for signature and, therefore, had not yet obtained them when they sent the DePuy release to Baptist. HOC counsel did not obtain a signed authorization from Plaintiffs until November 2020.

sought this Court's intervention to require Plaintiffs to provide the slides to HOC's counsel (*See* ECF No. 163). The parties briefed the request and appeared for a telephonic hearing on Defendants' letter motion. Although Defendants urged throughout the briefing and the hearing that all parties should have the opportunity to review the same specimens, Defendants' counsel never informed Plaintiffs nor the Court that they had, in fact, obtained and possessed other specimens cut from the same tissue block a year earlier.

### 3. Plaintiffs Immediately Requested Access Upon Learning Of The Undisclosed Slides.

On August 26, 2020, Plaintiffs requested Baptist Hospital ("Baptist") provide copies of any requests made by third parties for Mrs. Rouviere's medical records. Plaintiffs routinely checked with Baptist for a response, but it was not until January 19, 2021, that counsel for Baptist first responded in writing to Plaintiffs' August 26, 2020, request and provided copies of correspondence and records. The documents provided by Baptist contained the above-described correspondence with Gibbons PC paralegal Shivia Khansari in which Ms. Khansari requested and Baptist provided slides containing Mrs. Rouviere's tissue specimens based on the use of a medical authorization and release that had been given exclusively to Defendant DePuy counsel Barnes & Thornburg. (*See* Ex. 1.)

Immediately upon realizing that Defendants had obtained tissue specimens that Plaintiffs did not know existed, Plaintiffs' counsel wrote to Defendant HOC's counsel on January 22, 2021, requesting information about the undisclosed slides and their status. (Ex. 1 at 1-2.)  Defendant HOC's counsel acknowledged they had obtained the tissue specimens using a release given to Defendant DePuy's counsel and represented that the slides had been sitting in a paralegal's desk drawer at the Gibbons firm's offices since they were obtained in November 2019. DePuy's counsel also represented that no one had reviewed the specimens. Acceding to Plaintiffs' requests, HOC's counsel shipped the undisclosed slides to Dr. Gannon on March 2, 2021.

### 4. Dr. Gannon Found The Undisclosed Slides Reveal Materially Different Evidence.

On March 4, 2021, Dr. Gannon received the undisclosed slides and examined them as soon as possible. On March 18 and 19, 2021, Dr. Gannon contacted Plaintiffs' counsel to inform them he had found compelling and materially different evidence of metal wear debris in the undisclosed slides, which evidence was not present in the previous specimens reviewed prior to his initial report and deposition. Dr. Gannon informed Plaintiffs' counsel that he wanted to prepare a supplemental report to update his opinion regarding metal wear debris in Mrs. Rouviere's tissue. Dr. Gannon also informed Plaintiffs' counsel that if he had seen the undisclosed slides previously, his original report and his responses to deposition questions would have been very different. Dr. Gannon executed a declaration setting forth the foregoing. (*See* **Exhibit 2** hereto.).

The evidence revealed by the undisclosed slides is very important for numerous reasons, including: (1) the slides indicate that significantly more metals were ingested and locked into the macrophages, indicating the metals stayed there for years and are causing continued damage and pain; (2) the slides show a significantly higher volume of titanium than the previous slides, indicating metals from DePuy's product is in her tissue and causing damage; and (3) the slides indicate that Mrs. Rouviere's immune system has been attacking the foreign substances (metals) in her body to a degree that was not visible in previous slides.

Immediately upon learning of Dr. Gannon's findings, Plaintiffs reached out to Defendants' counsel and to other expert witnesses whose opinions may be affected by Dr. Gannon's findings regarding the undisclosed slides. As indicated in their attached Declarations, after learning of Dr. Gannon's findings regarding the additional metal wear debris shown in the undisclosed slides, the Disqualified Expert (**Exhibit 3**), Dr. Jarrell

(**Exhibit 4**), and Dr. Bobst (**Exhibit 5**) informed Plaintiffs their opinions would be affected by the findings and that supplemental opinions and reports are warranted.

Plaintiffs requested Defendants agree to a request to modify the scheduling order to permit supplemental opinions based on findings revealed by the undisclosed slides, and they did not agree, indicating they wanted more time to review the proposed supplemental opinions.

### **Legal Authority**

A court-ordered discovery schedule may be modified with the court's consent, for good cause shown. *See* Fed. R. Civ. P. 16(b)(4). Rule 16 does not set forth a definition of "good cause." The Second Circuit has emphasized that the primary consideration in determining good cause warranting modification of a scheduling order is whether the moving party can demonstrate diligence. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (explaining that diligence is the primary but not only consideration); *see also High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013). This consideration has been applied in the context of motions to reopen discovery or permit certain discovery after expiration of a court-established deadline. *See Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("A party seeking to reopen expert discovery must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence.").

Courts additionally consider a number of other factors in determining whether good cause exists, including the moving party's explanation for failing to comply with the scheduling order and diligence in seeking a modification to the schedule, the importance and relevance of the expert testimony to the case, whether the party seeking the additional discovery has had an adequate opportunity for discovery, prejudice to the opposing party, and imminence of trial. *See Rubik's Brand*, 329 F.R.D. at 58, and cases cited therein.

As demonstrated above, Plaintiffs' need to modify the Court's scheduling order to permit the supplemental expert reports is not the result of Plaintiffs' lack of diligence but, instead, is directly the result of Defendant HOC's counsel's failure to disclose they had requested and possessed the undisclosed slides. Plaintiffs acted diligently and immediately upon learning of the undisclosed slides to determine whether a modification of the scheduling order was necessary, and any delay in analyzing the slides to make that determination is strictly attributable to Defendant HOC's actions.

The supplemental opinions are extremely relevant and important to pending issues in the case as they go directly to Plaintiffs' claims that their damages were caused by the release of metals from Defendants' products and because there is presently pending a motion for summary judgment based on the purported absence of evidence that is now evident from these supplemental reports.[5] The importance of the evidence is reflected in the attached expert declarations in which all four experts declare their opinions would have been materially different had they been aware of the evidence revealed by the undisclosed slides. (Ex. 2-4).

---

[5] DePuy's Motion to Strike DePuy-related opinions of expert witness (ECF No. 214) (presently pending appeal before the District Judge (*see* ECF No. 267)) and DePuy's Motion for Summary Judgment (ECF No. 233) (presently ripe before the District Judge) are directly impacted by the proposed supplemental reports.

Plaintiffs have offered to permit Defendants the opportunity to take additional discovery regarding the supplemental opinions necessitated by the undisclosed slides, and, as such, they will not be prejudiced by the supplemental opinions. Finally, no trial date has been set, and, therefore, trial is not imminent.

Accordingly, Plaintiffs have demonstrated good cause for modification of the Court's scheduling order and respectfully request this Court modify its scheduling order to permit the disclosure of the supplemental reports and opinions of Dr. Gannon, the Disqualified Expert, Dr. Jarrell, and Dr. Bobst as set forth above. The Supplemental Report of Dr. Gannon is attached hereto as **Exhibit 6**.

### *The Imposition of Sanctions Against HOD Is Warranted Under Rule 37*

Under Rule 37(c)(1), a court may sanction a party that fails to comply with their discovery obligations. "Pursuant to Rule 37(c)(1), preclusion of evidence . . . not identified in initial disclosures under Rule 26(a)(1)(A)(iii) or supplemental disclosures under Rule 26(e)(1)(A) or another listed sanction is automatic unless the non-disclosure was substantially justified or harmless." *Vaccaro v. Waterfront Homes Marina*, No. 10 Civ. 4288(NRB), 2011 U.S. Dist. LEXIS 137036, 2011 WL 5980997, at *5 (S.D.N.Y. Nov. 30, 2011) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297-98 (2d Cir. 2006)).

A party's discovery obligations include the duty to supplement discovery responses if it later becomes known that a response is incorrect or incomplete, unless the information has otherwise been made known to the party during the discovery process. FED. R. CIV. P. 26(e). This duty is a "continuing one," and "parties must undertake efforts to ensure that discoverable information is not lost or misplaced." *Gotlin v. Lederman*, No. 04 CV 3736, 2009 U.S. Dist. LEXIS 78818, 2009 WL 2843380, at *3 (E.D.N.Y. Sept. 1, 2009) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433 (S.D.N.Y. 2004); *Feltenstein v. City of New Rochelle*, No. 14-cv-5434 (NSR), 2018 U.S. Dist. LEXIS 138393, at *13-15 (S.D.N.Y. Aug. 8, 2018).

Defendants were obligated to supplement their initial disclosures and discovery requests pursuant to Rule 26 and Plaintiffs' discovery requests, in which Plaintiffs requested all slides and other materials that relate to the defenses in this action. HOC's failure to disclose the slides in their original disclosures or responses or as supplements thereto was a violation of their discovery obligations warranting sanctions pursuant to Rule 37.[6]

Therefore, Plaintiffs respectfully request the Court impose sanctions against Defendant HOC requiring HOC to pay all fees and costs incurred by Plaintiffs as the result of Defendants' failure to comply with their discovery obligations, including fees and costs incurred in the preparation of the instant letter motion. *See* Fed. R. Civ. P. 37(c)(A) ("the court, on motion, and after giving an opportunity to be heard ... may order payment of the reasonable expenses, including attorney's fees, caused by the failure."); *see also M.B. v. CSX Transp.*, 299 F.R.D. 341 at 345-46 (N.D.N.Y.2014).

Sincerely,

*/s/ Melissa Damian Visconti*
Melissa Damian Visconti
Damian & Valori, LLP
*Co-counsel for Plaintiffs*

---

[6] Notably, Defendant DePuy's counsel represented to Plaintiffs they were also completely unaware of HOC's use of the authorization given to DePuy's counsel to request the undisclosed slides and/or that HOC had obtained and possessed the undisclosed slides.

Attachments
cc: all counsel of record (via CM/ECF)