UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jodi Rouviere, et al.,

                    Plaintiffs,

-against-

Depuy Orthopaedics, Inc. et al.,

                    Defendants.

1:18-cv-04814 (LJL) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Before the Court is Plaintiffs' motion, pursuant to Rules 16(d) and 37(c) of the Federal Rules of Civil Procedure, requesting that the Court (1) modify the scheduling order in this action to permit the submission of supplemental expert reports by Plaintiffs' four previously disclosed experts, and (2) sanction Defendant Howmedica Osteonics Corporation ("HOC") for alleged discovery misconduct. (Pls.' 3/31/21 Mot., ECF No. 287.) For the reasons set forth below, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

This medical device product liability case, commenced on May 31, 2018, arises from injuries allegedly sustained by Plaintiff Jodi Rouviere after receiving a purportedly defective hip implant containing components manufactured by Defendants HOC (doing business as Stryker Orthopaedics) and DePuy Orthopaedics, Inc. ("DePuy"). (*See* Compl., ECF No. 1, ¶ 1; Am. Compl., ECF No. 26, ¶ 1.) The instant motion arises from Plaintiffs' recent discovery that HOC obtained certain "recut" slides of Mrs. Rouviere's tissue specimens in 2019 (the "At-Issue Slides"), allegedly without authorization, and then declined to inform Plaintiffs that it had done so, such that Plaintiffs' experts' reports were prepared without the benefit of an analysis of those slides.

The instant motion follows several Opinions and Orders issued by the Court on the issue of expert discovery. *See*, *e.g.*, *Rouviere v. DePuy Orthopaedics, Inc.*, No. 18-CV-04814 (LJL) (SDA), 2020 WL 6265659 (S.D.N.Y. Oct. 25, 2020) (granting HOC's motion to disqualify Plaintiffs' original engineer expert); *Rouviere v. DePuy Orthopaedics, Inc.*, No. 18-CV-04814 (LJL) (SDA), 2020 WL 6939646 (S.D.N.Y. Nov. 24, 2020) (granting DePuy's motion to strike DePuy-related opinions from substitute engineer expert's report); *Rouviere v. Depuy Orthopaedics, Inc.*, No. 18-CV-04814 (LJL) (SDA), 2020 WL 7480602 (S.D.N.Y. Dec. 19, 2020) (denying Plaintiffs' motion to alter, amend or set aside the November 24 Order). Familiarity with these prior Opinions is presumed. A discussion of the events leading up to the instant motion is provided below.

**I.     HOC Obtains the At-Issue Slides**

During fact discovery, Mrs. Rouviere executed an Authorization, dated March 20, 2019 (the "Baptist Authorization"), authorizing Baptist Hospital—the Miami, Florida, site of Mrs. Rouviere's 2016 and 2017 hip surgeries—to release her medical records to DePuy's counsel, Barnes & Thornburg LLP ("B&T"). (*See* HOC Opp. Ex. B, ECF No. 291-2, at 10-12.) Plaintiffs provided this and related authorizations to DePuy subject to DePuy's agreement that it would produce copies of the medical records it collected using the authorizations. (*See* Pls.' 3/31/21 Mot. at 2 n.3; DePuy 4/23/21 Ltr. Ex. B, ECF No. 294-1, at 1; DePuy 4/23/21 Ltr. Ex. C, ECF No. 294-2, at 1; A. Rouviere Decl., ECF No. 295-1, ¶¶ 5-6.)

HOC requested its own such authorization from Plaintiffs on or about April 9, 2019, but did not receive one from Plaintiffs until November 2020, after the key events at issue here. (*See* Pls.' 3/31/21 Mot. at 2 n.4.) In the interim, in November 2019, HOC obtained the At-Issue Slides from Baptist Hospital with the assistance of the Baptist Authorization.

2

The exact chronology that led to HOC's receipt of the At-Issue Slides is not entirely clear. There are two communications reflecting transmittals of the Baptist Authorization to Baptist Hospital—*i.e.*, a May 10, 2019 letter from Laura Wolverton, a paralegal at DePuy's counsel, B&T, and an October 28, 2019 fax from Shiva Khansari, a paralegal at HOC's counsel, Gibbons P.C. ("Gibbons"). (*See* HOC Opp. Ex. B at 10-12; Pls.' 3/31/21 Mot. Ex. 1, ECF No. 287-1, at 3-5.) On October 31, 2019, Baptist Hospital sent correspondence to Ms. Wolverton at B&T enclosing pathology reports from Mrs. Rouviere's 2016 and 2017 surgeries. (HOC Opp. Ex. B at 3-4.)[1] Ms. Wolverton then circulated this correspondence to Plaintiffs and HOC, also on October 31, 2019. (*Id.* at 2.) In that correspondence, Baptist Hospital stated that "[r]ecuts will be provided at a price of $35.00 per slide." (*Id.* at 4.) HOC asserts that it purchased the At-Issue Slides pursuant to that offer, which, HOC underscores, also had been forwarded to Plaintiffs. (HOC Opp. at 2.) On November 7, 2019, Baptist Hospital invoiced HOC's counsel, Gibbons, for the three At-Issue Slides, indicating that they "will be released on receipt of your check." (Pls.' 3/31/21 Mot. Ex. 1 at 6.)

HOC asserts that, after receiving the three slides in November 2019, it stored the slides in "a locked cabinet near [a] paralegal's desk in an office which, notably, has remained closed since

---

[1] The 10/31/19 correspondence from Baptist Hospital, addressed to Ms. Wolverton at B&T (DePuy's counsel) stated that it was sent "[f]urther to your fax dated October 28, 2019" and that it attached a "copy of your letter dated October 28, 2019," but attached Ms. Wolverton's 5/10/19 letter instead. (*See* HOC Opp. Ex. B at 4, 10-12.) At oral argument, the Court suggested, and Defendants stated that they suspected to be correct, that the 10/28/19 fax from Ms. Khansari at Gibbons (HOC's counsel) to Baptist Hospital (*see* Pls.' 3/31/21 Mot. Ex. 1, at 3-5) also may have included a copy of Ms. Wolverton's 5/10/19 letter. The first page of the 10/28/19 fax indicates in the upper left-hand corner that it is "Page 1 of 4," but only three pages from that fax are contained in Exhibit 1 to Plaintiffs' motion (*see id*. at 3-5); thus, the missing page may have been Ms. Wolverton's 5/10/19 letter. This could explain why, although Ms. Khansari sent Baptist Hospital the 10/28/19 fax requesting tissue samples (*see id*. at 3), Baptist Hospital responded with its 10/31/19 fax to Ms. Wolverton instead. (*See* HOC Opp. Ex. B at 3-4.)

3

March 2020 due to the pandemic," where the slides sat until Plaintiffs brought them to HOC's attention in January 2021. (HOC Opp. at 2 & n.3.) HOC asserts that, prior to Plaintiffs filing the instant motion, HOC never had the slides reviewed and never used or relied on the slides for any purpose. (*See id.* at 2.) HOC does not dispute that it never informed Plaintiffs (or DePuy) that it had requested, obtained or possessed the recut slides; however, it asserts that Plaintiffs were aware that DePuy and HOC were "coordinat[ing] on collecting materials from Mrs. Rouviere's many healthcare providers." (*Id.* Ex. A at 1; *see also id.* at 1 (declaring "false" Plaintiffs' assertion "that HOC secretly used DePuy's Baptist Hospital authorization").)

**II.    The Parties Proceed Through Expert Discovery and Related Motion Practice**

On June 22, 2020, already having granted several extensions of discovery deadlines (*see* ECF Nos. 93, 100, 106), the Court ordered that Plaintiffs' expert disclosures were to be served by September 21, 2020. (6/22/20 Order, ECF No. 128.) On September 21, 2020, Plaintiffs disclosed the original expert witness reports of Dr. Gannon, a pathologist and immunologist; Dr. Bobst, a toxicologist; and a biomechanical engineer who was subsequently disqualified (the "Prior Engineer Expert"), among others. (*See* Pls.' Rule 26 Disclosure, ECF No. 158.)

On October 14, 2020, HOC filed a motion seeking to disqualify the Prior Engineer Expert on the ground that HOC previously had retained him as a paid consultant in the defense of litigations where issues were raised that were similar to those raised in the present case. (*See* HOC Mem., ECF No. 172, at 1.) On October 21, 2020, while HOC's motion to disqualify was pending, DePuy filed a motion for summary judgment based on Plaintiffs' failure to present any expert testimony or any other evidence to support any of their liability claims against DePuy. (*See* DePuy Mot. Sum. J., ECF No. 178.) According to DePuy, the Prior Engineer Expert "was the only

4

expert disclosed by Plaintiffs that rendered opinions regarding design defect and failure to warn issues[,] but all of those opinions were directed at HOC," and thus Plaintiffs had "no admissible expert testimony (or any other evidence) as to DePuy and the DePuy components to support any product defect or warning claims[.]" (DePuy 11/13/20 Ltr. Mot., ECF No. 214, at 2.) DePuy's summary judgment motion remains *sub judice* before District Judge Liman.

On October 25, 2020, I granted HOC's motion to disqualify the Prior Engineer Expert and stated that, "[n]o later than November 9, 2020, Plaintiffs may serve an expert disclosure by an alternate engineer expert regarding the same scope of subject areas as were covered by the [Prior] Engineer Expert." *Rouviere*, 2020 WL 6265659, at *3. On November 9, 2020 Plaintiffs disclosed the expert witness report of their alternate engineer expert, Dr. John Jarrell. (*See* Pls.' Rule 26 Disclosure, ECF No. 212.) Unlike the report of the Prior Engineer Expert, Dr. Jarrell's report contained opinions regarding DePuy, including that DePuy failed to warn of product defects. (*See* Jarrell Rpt., ECF No. 214-1, at 8-10.) On November 13, 2020, DePuy moved to strike or otherwise preclude these DePuy-related opinions. (*See* DePuy 11/13/20 Ltr. Mot.) In opposition, at oral argument, Plaintiffs suggested that the Prior Engineer Expert and Defendants might have conspired to sabotage Plaintiffs' case. (*See* 11/24/20 Tr., ECF No. 248, at 10-11.) On November 24, 2020, the Court granted DePuy's motion, finding that Plaintiffs had failed to make a showing of good cause for their failure to offer any DePuy-related opinions by the September 21, 2020 deadline for expert disclosures. *See Rouviere,* 2020 WL 6939646, at *3.

On December 4, 2020, Plaintiffs moved for reconsideration of the Court's November 24, 2020 ruling, contending that DePuy's counsel had made misrepresentations to the Court about the Prior Engineer Expert's ongoing relationship with DePuy. (*See* Pls.' Reconsid. Mem., ECF No.

5

242.)[2] On December 19, 2020, the Court rejected this contention and denied Plaintiffs' motion.[3] *See Rouviere*, 2020 WL 7480602.

### III.     Plaintiffs Learn of the At-Issue Slides

Plaintiffs assert they first learned that HOC might have obtained recut slides on January 19, 2021, when Baptist Hospital's counsel first responded in writing to Plaintiffs' August 26, 2020 request for copies of any third-party requests for Mrs. Rouviere's medical records. (*See* Pls.' 3/31/21 Mot. at 3.) By letter dated January 22, 2021, Plaintiffs contacted HOC to confirm the existence of the At-Issue Slides and to request that HOC immediately provide them to Dr. Gannon. (*See id.* Ex. 1.) Dr. Gannon received the recut slides from HOC "[o]n or about March 3, 2021." (*See id.* Ex. 2, at 1.)

According to Plaintiffs, on March 18 and 19, 2021, having examined the recut slides "as soon as possible," Dr. Gannon informed Plaintiffs that "he had found compelling and materially different evidence of metal wear debris in the undisclosed slides, which evidence was not present in the previous specimens reviewed prior to his initial report and deposition." (Pls.' 3/31/21 Mot. at 3; *see also id.* Ex. 1 ¶¶ 4-7.) Plaintiffs then relayed Dr. Gannon's findings to Dr. Bobst, the Prior Engineer Expert and Dr. Jarrell, each of whom also "informed Plaintiffs [that] their opinions would be affected by the findings and that supplemental opinions and reports are warranted," and to Defendants, from whom Plaintiffs unsuccessfully sought consent to a request to modify the

---

[2] In asserting their contention, Plaintiffs stated: "It is clear that the disqualified expert's duty of loyalty to protect DePuy appears to be the basis for not opining on the wrongdoing of DePuy in this case." (Pls.' Reconsid. Mem. at 11.)

[3] Plaintiffs' objections to my November 24 and December 19, 2020 Opinions and Orders (*see* Pls.' Objection, ECF No. 267) remain pending before District Judge Liman. Thus, Plaintiffs are continuing to assert before the Court that they were misled by the Prior Engineer Expert and DePuy about his relationship with DePuy. (*See id*. at 4, 14.)

6

scheduling order. (*Id.* at 3-4.) On March 31, 2021, less than two weeks after learning the results of Dr. Gannon's examination of the recut slides, Plaintiffs filed the instant motion.

IV.     **The Instant Motion**

On March 31, 2021, Plaintiffs filed the instant motion, supported by a contemporaneous Declaration from each of Dr. Gannon, Dr. Bobst, the Prior Engineer Expert and Dr. Jarrell. (*See* Pls.' 3/31/21 Mot. Exs. 2-5, ECF Nos. 287-2 through 287-5.) On April 12, 2021, Defendants each filed an opposition to Plaintiffs' motion. (DePuy Opp., ECF No. 290; HOC Opp., ECF No. 291.) DePuy submitted with its opposition, *inter alia*, a redacted version of the Prior Engineer Expert's September 2020 report; Dr. Gannon's original September 2020 report; and excerpts from Dr. Gannon's October 19, 2020 deposition. (*See* DePuy Opp. Exs. A-C, ECF Nos. 290-1 through 290-6.) HOC submitted with its opposition, *inter alia*, a contemporaneous Declaration from its pathology expert, Dr. Scott Nelson, M.D.; Dr. Gannon's proposed supplemental report and original September 2020 report; Dr. Nelson's November 2020 expert report; and excerpts from the October 19, 2020 deposition of Dr. Gannon and the October 14, 2020 deposition of Dr. Bobst. (*See* HOC Opp. Exs. C-H, ECF Nos. 291-3 through 291-8.) On April 16, 2021, Plaintiffs filed their reply, supported by, *inter alia*, a set of Requests for Documents they served on HOC in February 2018 and an April 13, 2021 letter from Dr. Gannon. (Pls.' Reply & Exs. 1, 3, ECF Nos. 292, 292-1, 292-3.) On April 23, 2021, at the Court's instruction, Plaintiffs and DePuy filed submissions regarding DePuy's agreement to produce copies of the records it collected via the Baptist Authorization. (*See* ECF Nos. 294, 295.) On April 28, 2021, the Court heard oral argument.

## LEGAL STANDARDS

I.  **Rule 16(b) Motion to Amend Scheduling Order**

Rule 16(b) of the Federal Rules of Civil Procedure addresses scheduling orders, and "serves an important function in ensuring fairness, certainty, and expedition of litigation." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-CV-03749 (KMW) (DCF), 2009 WL 3467756, at *6 (S.D.N.Y. Oct. 28, 2009) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)). Under this rule, scheduling orders "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The Rule 16(b)(4) 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) (citation omitted); *see also id.* ("A party seeking to reopen expert discovery must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence."). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether [modifying the schedule] at this stage of the litigation will prejudice [the non-moving parties]." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Other factors a court may consider include the movant's "diligence in seeking a modification to the schedule, the importance and relevance of the expert testimony to the case, whether the party seeking the additional discovery has had an adequate opportunity for discovery, . . . and imminence of trial." *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019). "The burden of demonstrating good cause rests with the movant." *Ritchie Risk-Linked Strategies*, 282 F.R.D. at 79.

I am deciding that part of Plaintiffs' motion that is addressed to amending the scheduling order pursuant to the prior referral to me of all non-dispositive pretrial motions. *See RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-CV-05587 (PKL) (RLE), 2000 WL 420548, at *2 n.1 (S.D.N.Y. Apr. 18, 2000) ("A decision to admit or exclude expert testimony is considered 'nondispositive' of the litigation."). A magistrate judge has discretion with respect to whether or not to permit the late submission of an expert report. *See Reynolds v. Sealift, Inc.*, 311 F. App'x 422, 426 (2d Cir. 2009) (finding no error in magistrate judge exercising discretion to refuse to extend discovery for submission of expert report); *see also Frydman v. Verschleiser*, No. 14-CV-08084 (JGK) (JLC), 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017) ("It was well-within Magistrate Judge Cott's discretion to enforce the discovery deadline for expert disclosure in this case by striking the untimely expert reports.").

## II. Rule 37(c) Motion for Sanctions

Plaintiffs seek sanctions under Rule 37(c)(1) of the Federal Rules of Civil Procedure, which provides in relevant part:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1).

"Despite Rule 37(c)(1)'s self-executing nature, courts have broad discretion in determining whether and how to impose sanctions." *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 175 (S.D.N.Y. 2013) (citations omitted). "It is well settled that the court has broad discretion to determine the type of sanction to impose upon a party, based on all the facts of the case." *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-CV-02275 (JGK) (DF), 2016 WL 11271874, at *18 (S.D.N.Y. Nov. 4, 2016) (citation and alteration omitted), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017).

Motions seeking Rule 37 sanctions "are ordinarily considered non-dispositive . . . unless the sanction employed disposes of a claim." *Seena Int'l Inc. v. One Step Up, Ltd.*, No. 15-CV-01095 (PKC) (BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) (internal quotation marks omitted). Because I decline to impose sanctions, that part of Plaintiffs' motion seeking sanctions falls within the scope of the prior referral to me of all non-dispositive pretrial motions.

## ANALYSIS

I.  **Rule 16(b) Motion to Amend Scheduling Order**

The Court will permit Dr. Gannon and Dr. Bobst to submit supplemental reports, but not the Prior Engineer Expert or Dr. Jarrell.[4] Defendants shall have the opportunity to submit supplemental rebuttal reports and to reopen their depositions of Dr. Gannon and Dr. Bobst. The Court addresses the experts at issue in turn below.

---

[4] The Court may grant Plaintiffs' Rule 16(b) motion with respect to certain requested relief while denying it with respect to others. *See*, *e.g.*, *Sokol Holdings*, 2009 WL 3467756, at *1 (affirming Magistrate Judge's Opinion granting Rule 16(b) motion vis-à-vis certain amendments that plaintiffs sought to include in amended complaint but denying vis-à-vis others).

### A. Dr. Gannon

While it is a close call, the Court finds that good cause exists to allow Dr. Gannon to submit a supplemental report.

With respect to Plaintiffs' diligence during discovery, the analysis is not straightforward or one-sided. As Defendants rightly point out, nothing prevented Plaintiffs from requesting recut slides from Baptist Hospital directly, just as HOC did. (*See* HOC Opp. at 2.) Nevertheless, the Court finds that Plaintiffs were diligent in taking steps that should have led to their timely awareness of the existence of the At-Issue Slides, were it not for HOC's discovery noncompliance.[5] First, Plaintiffs provided the Baptist Authorization, which HOC used to obtain slides from Baptist Hospital, subject to an agreement that Plaintiffs would be notified of any materials obtained with it. (*See* Pls.' 3/31/21 Mot. at 2 n.3.) Second, Plaintiffs served HOC with discovery requests that obligated HOC to disclose, among other things, "[a]ny . . . materials . . . that evidence or document Plaintiff's hip surgeries," which on its face would include the At-Issue Slides. (Pls.' Reply Ltr. Ex. 1, ECF No. 292-1, at 8.) Third, prior to their expert disclosure deadline, Plaintiffs requested from Baptist Hospital records of any third-party requests for Mrs. Rouviere's medical records. (*See* Pls.' 3/31/21 Mot. at 3.) Any one of these mechanisms should have resulted in Plaintiffs timely learning of HOC's possession of the At-Issue Slides, and Plaintiffs were justified in relying

---

[5] To be clear, the Court agrees with Plaintiffs that HOC was obligated to disclose the At-Issue Slides to Plaintiffs during fact discovery. HOC contends that the slides need not have been disclosed because HOC never determined that it would rely on the slides in any way—and in fact never has relied on them. (*See* HOC Opp. at 2.) This might excuse HOC from including the slides in its initial disclosures (or in any supplement thereto). *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring disclosure of all tangible things that a party "may use to support its claims or defenses"). Even if so, however, this would not excuse HOC from failing to disclose the slides in response (or supplementary response) to Plaintiffs' discovery requests, the scope of which encompasses the slides, as discussed in the text above.

on these mechanisms to prevent the precise circumstances now before the Court. In crafting and implementing these mechanisms, Plaintiffs thus demonstrated substantial diligence.

Plaintiffs further demonstrated diligence, prior to close of expert discovery, by retaining Dr. Gannon for purposes of examining the very category of evidence to which the At-Issue Slides belong, and analyzing the very issues with respect to which the At-Issue Slides are relevant. (*See* HOC Opp. Ex. E (Gannon Orig. Rpt.), ECF No. 291-5, at 1 ("My opinions herein are . . . based upon my . . . review and/or examination of . . . tissue specimens taken from the right hip revision surgeries as well as other records provided to me.").) That is, it is *not* the case that Plaintiffs, through lack of diligence, simply failed to have an expert timely consider certain relevant questions or evidence at hand, and now, realizing their mistake, seek the Court's permission to have the expert do so after the fact. *Cf. Ritchie Risk-Linked Strategies*, 282 F.R.D. at 77-78 (denying motion of plaintiffs who elected not to submit damages expert, then untimely sought leave to present rebuttal experts after defendants served actuarial expert report). Rather, here, the Court is reasonably confident that, had HOC timely discharged its obligation to apprise Plaintiffs of the existence of the At-Issue Slides, then Dr. Gannon would have timely examined and analyzed them in his original report.

As to the various other factors that may be considered in the good-cause analysis—the movant's diligence in seeking a modification to the schedule; the importance and relevance of the discovery at issue; whether the movant has had adequate opportunity for discovery; prejudice to the opposing party; and imminence of trial, *see Rubik's Brand Ltd.*, 329 F.R.D. at 58— these also generally weigh in favor of permitting a supplemental report from Dr. Gannon. First, by all appearances, once Plaintiffs learned of the At-Issue Slides, they diligently and promptly

conferred with their experts and Defendants and petitioned the Court via the instant motion. (*See* Pls.' 3/31/21 Mot. at 3-4 & Ex. 1.) Second, Plaintiffs have submitted several sworn declarations attesting to the importance and relevance of the At-Issue Slides (*see, e.g.*, Gannon Decl., ECF No. 287-2, ¶¶ 4, 8); although Defendants and their expert argue otherwise (*see* DePuy Opp. at 4-5; HOC Opp. at 5-6), Plaintiffs' showing of "potential relevance" is sufficient at this time for purposes of the good-cause analysis. *See Rubik's Brand Ltd.*, 329 F.R.D. at 60 (in granting Rule 16(b) motion to allow for supplemental expert report, finding that the defendant's "merits" arguments "as to relevance and admissibility of [the] proposed expert testimony are premature and should be made in the context of an *in limine* or *Daubert* motion"). Third, while Plaintiffs may have had "adequate opportunity for discovery" in a general sense (indeed, the parties received numerous extensions of expert discovery), the Court finds that HOC's conduct effectively deprived Plaintiffs of the opportunity to review and analyze the particular information at issue here. Fourth, while the allowance of a supplemental Gannon report will entail prejudice to Defendants by further extending expert discovery, the Court finds that prejudice proportionate to the needs of the case. *See Rubik's Brand Ltd.*, 329 F.R.D. at 60. Fifth, no trial date has been set, so the "imminence of trial" is a non-factor.

Finally, as a matter of completeness and basic "fairness," *Sokol Holdings*, 2009 WL 3467756, at *6, the Court finds that Dr. Gannon should be permitted to supplement his report. Dr. Gannon already has performed an analysis of a body of evidence that turns out to have been incomplete through no fault of Plaintiffs; barring Dr. Gannon from supplementing that analysis as appropriate after review of the full evidentiary picture would, in effect, simply reward and incentivize discovery noncompliance. The Court declines to do so. *See Rubik's Brand Ltd.*, 329

F.R.D. at 59 ("[Plaintiff] should not be prejudiced by [Defendant]'s delay in producing information on the issue of product safety.").[6]

### B. Dr. Bobst

The Court will allow Dr. Bobst to submit a supplemental report under the same reasoning as provided above with respect to Dr. Gannon. Critically, Dr. Bobst affirms in his Declaration that he relied on the "Gannon Pathology Report," among other things, in preparing his original, September 2020 expert report. (*See* Bobst Decl., ECF No. 287-5, ¶ 4.) Thus, the Court is persuaded that Plaintiffs' diligence during expert discovery would have led to Dr. Bobst considering Dr. Gannon's analysis of the At-Issue Slides, but for HOC's discovery noncompliance.

### C. The Engineer Experts

The Court denies Plaintiffs' motion with respect to their two engineering experts, the Prior Engineer Expert and Dr. Jarrell, on two independent grounds: diligence and prejudice.

With respect to diligence, the Court finds that Plaintiffs did not diligently obtain a timely engineering expert opinion that considered tissue specimen slides or Dr. Gannon's pathology report. As Defendants point out (*see* DePuy Opp. at 3; HOC Opp. at 8), and as Plaintiffs fail to rebut in their reply (*see generally* Pls.' Reply), there is no evidence that Plaintiffs' engineer experts reviewed either the original slides or Dr. Gannon's original report in preparing their own original reports. (*See* DePuy Opp. Ex. A (Prior Engineer Expert Report) at 3-5 (citing materials reviewed); Pls.' 11/18/20 Opp., ECF No. 218, at 5 (stating that Dr. Jarrell "examine[d] facts, evidence and materials relating to DePuy and HOC which w[ere] the same as the [Prior] [E]ngineer [E]xpert");

---

[6] *Cf. also* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.").

14

Pls.' 3/31/21 Mot. Ex. 3 (Prior Engineer Expert Decl.) ¶¶ 4, 6, 7 (declaring what he would have done differently, "[h]ad [he] been provided the information contained in Dr. Gannon's [draft supplemental report]," but nowhere declaring that Plaintiffs ever provided Dr. Gannon's *original* report to him); *id.* Ex. 4 (Jarrell Decl.) ¶¶ 4, 9 (same).) The Court sees no reason to grant these experts leave to supplement their reports on the basis of the At-Issue Slides when there is no evidence that these experts would have considered those slides or any analysis of them had they been timely produced.

Nor would the Court find plausible any contention that, *if* Dr. Gannon had been given the opportunity to review the At-Issue Slides, *then* Plaintiffs would have provided his report to the engineer experts, who would have reviewed and relied upon it—*e.g.*, because *then* his report would have been significant enough for them to do so. First, even under Plaintiffs' account, the At-Issue Slides contained no qualitatively novel information; rather, Plaintiffs articulate the differences between the original slides and the recuts as matters of degree. (*See* Pls.' 3/31/21 Mot. at 3 (describing such differences in terms of "significantly more," "significantly higher," and "to a degree that was not visible" relative to the original slides).) And with respect to the key qualitative issue to which the slides are relevant—*i.e.*, the presence of titanium in Mrs. Rouviere's body—both the original Gannon report and the Prior Engineer Expert's report flagged the issue in September 2020, yet apparently Plaintiffs saw no need at that time to provide the Gannon report to the Prior Engineer Expert. (*See* DePuy Opp. Ex. B (Gannon Original Report), at 1 (stating, in opening sentence, that "[s]ubstantial amounts of wear debris from the . . . [t]itanium . . . from metal hip implants were released into the joint tissue environment"); DePuy Opp. Ex. A (Prior Engineer Expert Report), at 9-10 (discussing "substantial volume of metal debris that migrated

throughout [Mrs. Rouviere's] body," and noting the "significant[]" "amount of metal loss" from her "titanium alloy stem").) Second, the original slides and the recut slides are sufficiently similar to one another as to have confused Dr. Gannon himself, who mistakenly included—and marked up—images of the former in his draft supplemental report, thinking that they were the latter. (*See* HOC Opp. at 5; *see also* Pls.' Reply at 5 (acknowledging that Dr. Gannon "inadvertently switched the demonstrative photographs").)[7] Given that the recut slides not only contained no qualitatively new information, but also were sufficiently similar to the originals as to be mistaken for them by Plaintiffs' own pathology expert, the Court finds farfetched the idea that Dr. Gannon's review of the recut slides would have resulted in Plaintiffs providing, and the engineer experts reviewing and relying upon, his report.[8]

With respect to prejudice, allowing supplemental engineering expert reports would profoundly prejudice DePuy.[9] DePuy already has briefed a motion for summary judgment predicated on Plaintiffs' failure to introduce any engineering expert opinion with respect to any

---

[7] Dr. Gannon's mix-up thus substantiates the proposition, stressed by HOC in its opposition, that recut and original slides tend to be "identical in all material respects" (*see* HOC Opp. at 2-3 & n.2; *id.* Ex C ¶¶ 5-6)— so much so that they are treated as interchangeable in certain contexts. *See, e.g.*, *Paslar v. Stamford Hosp.*, No. 16-CV-01645 (JCH), 2017 WL 3055508, at *4 (D. Conn. July 19, 2017) (in denying motion to quash subpoena, expressly relying on expert's representation that "'[r]ecut' pathology slides . . . are considered representational 'duplicates' in the field of anatomic pathology"); *Palestrant v. Garcia*, 244 A.D.2d 199, 200 (1st Dep't 1997) (declining to exclude expert's testimony "based on his use of slides recut from the original specimen" after observing that, in the context of medical malpractice litigation, "the use of recut slides from the same specimen is recognized as an alternative to examining the original specimen in the hospital"). Indeed, in their reply, Plaintiffs themselves cite to a 2009 article that states, in part, that "recuts are generally the same as the original." (*See* Pls.' Reply at 3.)

[8] Further straining the plausibility of Plaintiffs' current position is the fact that this is not Plaintiffs' first attempt to establish a basis for revising their engineer expert report to add DePuy-related opinions. Indeed, in a prior attempt, Plaintiffs essentially characterized the Prior Engineer Expert as DePuy's co-conspirator and as a saboteur of Plaintiffs' case (*see* footnote 2, *supra*); this being the same Prior Engineer Expert that Plaintiffs now propose to have submit a supplemental report on their behalf.

[9] It would also prejudice HOC by further reextending expert discovery.

product defect in its components. (*See generally* DePuy Mot. Sum. J.) To reopen engineering expert discovery at this late stage would not only prejudice DePuy with respect to the presumably significant attorneys' fees it expended on preparation of that motion, but also give Plaintiffs a second, untimely bite at the apple of making a case for establishing DePuy's liability through engineer expert testimony. Especially considering that it was HOC, not DePuy, that failed to discharge the discovery obligations at issue, such an outcome would run counter to each of the Rule 16(b) interests of "fairness, certainty, and expedition of litigation." *Sokol Holdings*, 2009 WL 3467756, at *6; *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 453 (S.D.N.Y. 2017) ("The purpose of supplementation [of expert reports] is to correct inadvertent errors, not to allow a party to engage in 'gamesmanship'—creating a 'new and improved' expert report in order . . . to avert a dispositive motion." (ellipsis in original) (quoting *Rodgers v. Beechcraft Corp.*, No. 15-CV-00129 (CVE) (PJC), 2016 WL 7888048, at *2 (N.D. Okla. Feb. 3, 2017))).

## II.  Rule 37(c) Motion for Sanctions

In their motion, Plaintiffs seek, pursuant to Rule 37(c)(1), to have HOC sanctioned for its failure to comply with its discovery obligations. (*See* Pls.' 3/31/21 Mot. at 5.) Specifically, Plaintiffs ask the Court to require "HOC to pay all fees and costs incurred by Plaintiffs as the result of Defendants' failure to comply with their discovery obligations, including fees and costs incurred in the preparation of [their] motion." (*Id.*)[10]

---

[10] During oral argument, Plaintiffs made clear that they were not seeking as a sanction under Rule 37(c)(1) that HOC "not [be] allowed to use" the recut slides at trial, since HOC has expressed its intention not to do so. *See* Fed. R. Civ. P. 37(c). Rather, Plaintiffs seek the alternative sanction that HOC be ordered to pay their expenses on this motion, which Plaintiffs admitted is discretionary. *See* Fed. R. Civ. P. 37(c)(1)(A) (court "*may* order payment of the reasonable expenses, including attorney's fees" (emphasis added)).

17

In its discretion, the Court declines Plaintiffs' request for sanctions. Although the Court agrees with Plaintiffs that ultimately HOC should have disclosed the At-Issue Slides, the Court sees no indication that HOC's failure to do so was anything other than an innocent error of judgment. In arriving at this conclusion, the Court takes at face value HOC's claim that it never analyzed the At-Issue Slides prior to Plaintiffs' discovery of them. This claim, combined with HOC's argument and evidence that "[i]t would be considered highly unusual for there to be any material difference between a tissue specimen and a recut taken from the same tissue block," makes credible HOC's asserted belief that it was not obligated to disclose the At-Issue Slides. (*See* HOC Opp. at 3; *see also id.* Ex. B at 8, ¶ 3(iii) (appearing to show Baptist Hospital refer to a recut slide as a "duplicate"); Nelson Decl., ECF No. 291-3, ¶¶ 5, 6.)

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion, pursuant to Rules 16(b) and 37(c) of the Federal Rule of Civil Procedure, is GRANTED IN PART and DENIED IN PART. No later than May 14, 2021, Plaintiffs may serve supplemental expert reports of Dr. Gannon and Dr. Bobst. Thereafter, the parties shall meet and confer and submit to the Court, no later than May 17, 2021, a joint letter regarding a proposed schedule for rebuttal reports and for depositions of Dr. Gannon, Dr. Bobst and any rebuttal experts.

**SO ORDERED.**

Dated: New York, New York
April 29, 2021

_____
STEWART D. AARON
United States Magistrate Judge