UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. 1:18-cv-04814-LJL-SDA

JODI ROUVIERE and
ANDRE ROUVIERE,

     *Plaintiffs*,

v.

DEPUY ORTHOPAEDICS, INC. n/k/a
MEDICAL DEVICE BUSINESS
SERVICES, INC., and HOWMEDICA
OSTEONICS CORPORATION
d/b/a STRYKER ORTHOPAEDICS,

     *Defendants*.

_____/

PLAINTIFFS' MOTION FOR RECONSIDERATION
OF OPINION AND ORDER GRANTING
DEFENDANT DEPUY'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Jodi Rouviere and Andre Rouviere ("Plaintiffs"), in the above-referenced case, respectfully submit this Motion for Reconsideration of this Court's Opinion and Order Granting Defendant DePuy Orthopaedics, Inc.'s ("DePuy") Motion for Summary Judgment (ECF No. 318) pursuant to Southern District of New York Local Rule 6.3, and state:

I.     **INTRODUCTION AND RELEVANT BACKGROUND**

On September 17, 2021, this Court entered its Opinion and Order granting Defendant DePuy's Motion for Summary Judgment (ECF No. 318). In its Opinion and Order, this Court held that the Motion for Summary Judgment should be granted as to the failure to warn claims against DePuy because the record evidence does not support Plaintiffs' claims that DePuy's failure to warn proximately caused Ms. Rouviere's injuries.

1

Plaintiffs respectfully submit that this Court overlooked material facts that should reasonably be expected to alter the above conclusion.

That is, the record evidence demonstrates that Dr. Buly chose to implant the products at issue in this case, the DePuy "Summit Tapered Hip System Stem and Biolox Head" hip arthroplasty system (the "Summit System") and MDM/X3 ADM/MDM System and Trident Shell manufactured and sold by Howmedica Osteonics Corporation ("Stryker") (the "Stryker System"), because he was not aware of the risk that metal components of the two Systems would impinge when used together and could cause the dangerous release of metals and because he was not aware that the DePuy product had not been FDA approved for use as implanted in Ms. Rouviere.

The Court appears to have focused on a lack of evidence that if Dr. Buly had been warned of the types of metals found in DePuy's titanium stem, he would not have acted any differently. However, the record evidence demonstrates that Dr. Buly was not warned about the risk that the metal components of DePuy's System would impinge with the metal components of Stryker's System. Moreover, the evidence demonstrates that Dr. Buly determined that he could use the two combined Systems for Ms. Rouviere's hip implant because he was unaware of these material facts, and, in fact, had he been aware that the products were not safely compatible, he would not have used them.

The record evidence also demonstrates that because he was unaware of the risks of metal-on-metal impingement when the Systems are combined, Dr. Buly did not warn Ms. Rouviere of these dangerous risks. And the record unequivocally demonstrates that had Ms. Rouviere been warned that the use of the DePuy System with the Stryker System had a risk of metal on metal impingement, she would not have gone through with any surgery that permitted them to be implanted in her.

Finally, the record evidence demonstrates that Ms. Rouviere's injuries and damages were exacerbated because she was not properly treated when her metallosis and metal exposure resulting from the combined use of the DePuy System with the Stryker System presented because her treating doctors were unaware that metal-on-metal impingement was a risk of the combined use of the products because they had not been warned by DePuy or Stryker of such risks.

Had the Court considered these material facts presented in the record, viewing the evidence in the light most favorable to the Plaintiffs, summary judgment could not have been granted because, at a minimum, there are disputed material facts regarding proximate cause that preclude summary judgment.

## II.  **LEGAL STANDARD**

Pursuant to Local Civil Rule 6.3, a party seeking reconsideration must "set [] forth concisely the matters or controlling decisions which [it] believes the court has overlooked." "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to . . . matters . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995); *see EEOC v. Fed. Express Corp*., 268 F. Supp. 2d 192, 195 (E.D.N.Y. 2003) (holding that local rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court").

Whether or not to grant a motion to reconsider "is within the sound discretion of the district court," *id.*, but it "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Rather, "reconsideration allows a court to correct for clear error, to prevent manifest injustice, or to review in the light of newly available evidence." *Asia Project Servs. v. Usha Martin Ltd*., 09-CV-5084, 2010 U.S. Dist. LEXIS 37801,

at *3 (S.D.N.Y. Apr. 8, 2010); *see RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) ("The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'") (*quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Here, Plaintiffs respectfully submit that there are matters that were not considered by the Court that would alter the Court's conclusions and prevent manifest injustice.

## III.   **RECORD EVIDENCE WARRANTING RECONSIDERATION**

> ### A. *The Record Evidence Demonstrates That Dr. Buly Would Have Heeded Warnings Of Metal-On-Metal Impingement Risks And Warnings That The Components Of The DePuy System Used For Ms. Rouviere's Implant Was Not Approved By The FDA.*

In its Opinion and Order, the Court holds that the Rouvieres proffered no facts that would allow a jury to infer that a warning would have been heeded by Dr. Buly such that the absence of the warning was not a proximate cause of Ms. Rouviere's injuries. Plaintiffs respectfully submit that this Court overlooked evidence to the contrary.

> a. Dr. Buly Would Have Heeded A Warning That DePuy's Titanium Stem Would Impinge With Stryker's Chromium Cobalt Liner And Trident Shell When The Products Are Used Together Because He Was Already Avoiding Metal-On-Metal Implants In Order To Avoid The Very Same Risk.

In their Response to the Motion for Summary Judgment, the Rouvieres argue that Dr. Buly was not aware that DePuy's titanium stem would impinge with Stryker's chromium cobalt liner when the products were used together, as in the Systems he implanted in Ms. Rouviere. (*See* Response to Motion for Summary Judgment (ECF No. 226) at 6, 10, 31-33). In support, the Rouvieres cite Dr. Buly's deposition testimony, in which Dr. Buly testifies:

(1) He does not use metal-on-metal implants, and chose not to use one for Ms. Rouviere, because they are more likely to impinge (Buly Depo. (ECF No. 233-1) at 140:2-7); and when metal-on-metal implants impinge, "[m]etallosis can occur" and "[p]atients can react to metal particles" (*Id.* at 163:10, 15-16); and the problem with impingement of metal on metal is that they may release metals into the body and he "want[s] to avoid that" (*Id.* at 248);

(2) He was not aware that either Stryker or DePuy knew that the metal components of their products, when used together as in Ms. Rouviere, would impinge (*Id.* at 244-245); nor was he made aware of any reason why their products should not be used together (*Id.* at 225-226);

(3) He was not aware that there was a risk of metals released into a patient's body with ceramic on poly implants (id. at 220:13), so he did not check Ms. Rouviere's blood levels for metal ions as he would have with a metal-on-metal implant (id. at 218-219; 222:16-23);

(4) He did not inform patients, including Ms. Rouviere, of the risk of metal-on-metal impingement and the risk of metals in the body because he was not aware this was a risk with these ceramic on poly implants like it was with metal-on-metal implants;

(5) And had he known that there was a reason to be concerned about the compatibility of the Stryker and DePuy Systems, he "would not have done it [implanted them together]." (*Id.* at 225)

In other words, Dr. Buly intentionally did not use a metal-on-metal implant in Ms. Rouviere because he wanted to avoid the risks, of which he was aware, associated with metal-on-metal impingement. Instead, he used the combination of the DePuy System and the Stryker System

because he was not warned that they would do the exact same thing as the metal-on-metal systems he was avoiding – cause the impingent of metal on metal causing the release of dangerous metals into the patient's body. A reasonable trier of fact could absolutely infer that Dr. Buly would have heeded such a warning as he heeded warnings associated with other products that had the same risks.

This Court focused on Dr. Buly's apparent lack of concern regarding the presence of various dangerous substances in the DePuy titanium stem. However, the Court appears to have overlooked the very real issue, the significance of which Dr. Buly did acknowledge, which is the risk that DePuy's titanium stem would (and did) impinge with Stryker's chromium cobalt liner and cause metal wear, the very risk Dr. Buly testified he was trying to avoid by not using traditional metal-on-metal implants. The record supports the conclusion that this is an issue that would have made Dr. Buly change his mind about using the combined Stryker and DePuy Systems, and a reasonable trier of fact could find this to be a proximate cause of Ms. Rouviere's injuries.

   b.  <u>Dr. Buly Would Not Have Used The DePuy System If He Had Been Informed That The Combined DePuy Components Were Not Approved For Use By The FDA</u>.

The Rouvieres also argue in their Response to the Motion for Summary Judgment that Dr. Buly relied on the Systems' purported FDA clearance when determining that the products were safe to use. In support, the Rouvieres cite to Dr. Buly's deposition testimony, in which he states:

   (1) "They're all FDA approved implants, and we feel that if they're FDA approved, they're safe to use" (Buly Depo. at 185:1-4; 199:7-11 (same)); and

   (2) "As long as they're FDA approved, I feel comfortable using them…" (Id. at 207:21-23).

However, as the record evidence demonstrates, the DePuy components were not approved by the FDA for use together, and, in fact, the Rouvieres have cited evidence throughout the case

and in the Response to the Motion for Summary Judgment that the DePuy System actually implanted in Ms. Rouviere was approved by the FDA based on false information, making Dr. Buly's reliance on such FDA approval mistaken.

Notably, DePuy argues in its Reply that its product approvals can all be found on the FDA's website. (ECF 261 - Reply at note 1). DePuy claims Plaintiffs are making false allegations regarding the fraudulent clearance and lack of clearance for their products that were implanted in Mrs. Rouviere and offers the Court three hyperlinks to the 510K Summaries made publicly available by the FDA. However, DePuy failed to provide or intentionally omitted a specific hyperlink to the Triflange's 510K (K001277) [1], that would have revealed the device at issue here didn't have the Duofix and/or Hydroxyapatite coating which served as the predicate device for the coating for the Summit Duofix stem. DePuy omitted in the footnote of its Reply this very hyperlink to the Triflange's 510K (K001277):

[https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K001277] [2]

In other words, a reasonable trier of fact could certainly determine, based on the record evidence, that had Dr. Buly been informed that the products he used were not FDA approved, he would have heeded information of the absence of such FDA approval and would not have determined the DePuy and Stryker Systems were safe to use together in Ms. Rouviere's case.

As this Court points out in the Opinion and Order, reconsideration is appropriate when the moving party can point to data that the court overlooked that might reasonably be expected to alter the conclusion reached by the Court. (Opinion and Order (ECF No. 318) at 23 (*citing In re*

---

[1] K001277 is the FDA application number assigned to the 510K application for the Triflange Acetabular Cup which was filed by DePuy with FDA.

[2] The summary of the Triflange Acetabular Cup  510K (K001277) has been removed from the FDA's site even though it should also be available to the public just like the others listed by DePuy. Summaries are available for other FDA 510k's, like the Summit "Duofix" stem K011489. [https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K011489 ]

*Palermo*, 2011 WL 446209 at \*4 (S.D.N.Y. Feb. 7, 2011)). Here, this Court determined that the Rouvieres failed to present evidence that Dr. Buly would have acted differently or would not have implanted DePuy's product in Ms. Rouviere as he did had he been adequately warned.

However, as indicated above, the Rouvieres did present arguments and evidence that Dr. Buly's lack of warnings concerning the metal-on-metal impingement risks of the combined Systems and Dr. Buly's belief that the DePuy products and the combined Systems he used were approved by the FDA were material to his decision to implant the Systems in Ms. Rouviere such that the lack of such information was a proximate cause of Ms. Rouviere's injuries. At a minimum, a reasonable jury could conclude that Dr. Buly would not have implanted the DePuy products and combined Systems in Ms. Rouviere as he did if he was aware of the dangerous metal-on-metal impingement risks. It does appear this Court may have overlooked this data which could be expected to alter the conclusion reached by this Court as to proximate cause.

### B. The Record Evidence Demonstrates That Ms. Rouviere Would Not Have Consented To The Surgery Had She Been Adequately Warned.

This Court also held that there was a lack of evidence that Dr. Buly would have heeded adequate warnings and, therefore, there is a lack of support for the argument that he would have conveyed warnings to Ms. Rouviere that would have caused her to forego the surgery. The Court also found that there is a lack of evidence that Ms. Rouviere would not have consented to the surgery if made aware of the metal-on-metal impingement risks. The Court appears to have overlooked material evidence to the contrary.

As the Court acknowledges in part, the Rouvieres argue in their Response that if Ms. Rouviere had been aware that DePuy's titanium stem would impinge with Stryker's chromium cobalt liner and trident shell and presented the risks associated with metal-on-metal impingement, she would not have consented to the surgery and implant of the combined Systems. (*See* Response

8

to Motion for Summary Judgment at 33). The Court considered Ms. Rouviere's deposition (ECF No. 316-6), which the Court cites at Note 8 of its Opinion and Order. In Ms. Rouviere's Deposition testimony, she states:

(1) When Dr. Buly told her he recommended a total hip replacement, she asked "Isn't that dangerous?" to which Dr. Buly responded that they "don't use that [metal-on-metal] any more" (Jodi Rouviere Depo. at 152);

(2) She was not told there was a risk that components of the products could wear and that wear debris could enter her body (*Id*. at 289:21-24);

(3) When asked whether she would still have undergone the surgery had she been told that device components could wear in her body, she responded "Absolutely not" (*Id*. at 290:25-291:3);

(4) She was told that only the DePuy ceramic head and the Stryker polyethelene liner would come into contact (*id*. at 292:1-6); and

(5) When she informed Dr. Buly that she was worried about metal-on-metal implants and metallosis, Dr. Buly told her this was not a risk with this implant because it was not a metal-on-metal implant (*id*. at 293:1-10).

Thus, the record evidence demonstrates that Ms. Rouviere was very concerned about the risks of metal-on-metal impingement and metallosis but was never warned that these were risks associated with the implants used in her because, as indicated above, Dr. Buly was not aware of these risks himself. Importantly, Ms. Rouviere unequivocally testified that if she had known that there was a possibility of metal-on-metal impingement, she would not have consented to the surgery to have the DePuy parts and Stryker Systems implanted in her.

Therefore, a reasonable trier of fact could most certainly have found, based on the record evidence, that had Ms. Rouviere been adequately warned of the risks associated with these products, she would have heeded those warnings. Accordingly, it does appear this Court overlooked material facts regarding proximate cause that could very likely be expected to alter this Court's conclusions.

### C. The Evidence Demonstrates That The Failure To Warn Of The Risk Of Metal-On-Metal Impingement Proximately Caused Further Exacerbation Of Mrs. Rouviere's Injuries Because Her Doctors Did Not Know To Test For Metal Exposures Nor To Remove The Components Contributing To Her Metallosis.

The Rouvieres also pointed to important evidence that her doctors did not even think to check whether metals in her body may have been causing her extreme symptoms and injuries causing further exacerbation of her injuries because they were not warned that such exposure may be a risk associated with the Systems implanted in her. Record evidence supporting this material issue includes:

(1) Dr. Buly testified that he did not do any foreign body reaction tests on Ms. Rouviere because he had no such suspicion (Dr. Buly Depo. at 177:2);

(2) Dr. Buly also testified that he does check blood ion levels with patients who have metal-on-metal implants because he is aware of that risk but that the ceramic-on-poly implants do not present the same type of risk (*id*. at 218:14-219:7);

(3) Dr. Buly further testified that he is not aware of metals being detected in the patient's body without a cobalt chromium head, as used in the metal-on-metal implants (id. at 220:13) and that since Ms. Rouviere does not have a metal-on-metal implant, she would not have high levels of chromium (*id*. at 222:16-23);

(4) Dr. Alvarado, whom Ms. Rouviere visited for revision consultation and surgery, testified that to his knowledge, the products implanted in Ms. Rouviere are not typically associated with metal debris or metallosis (Dr. Alvarado Depo. (ECF No. 233-3) at 43);

(5) Dr. Alvarado also testified that although he noted a gouge on the DePuy titanium stem, he thought the gouge must have been caused by impingement with the polyethelene shell (*id*. at 115), unaware that metal-on-metal impingement was associated with these Systems, and therefore he did not replace either component when he did the first two revision surgeries (*id*. at 54-55); and

(6) Unaware of the risk of metal-on-metal impingement, he had no explanation for her clinical presentation with symptoms of metallosis (*id*. at 75).

Thus, not only was DePuy's failure to adequately warn of the risks of metal-on-metal impingement a proximate cause of Ms. Rouviere's injuries in the first place, but because her doctors were unaware of these risks, the failure to warn was also a proximate cause of the severity of her injuries because no one was inclined to consider whether metal wear exposure was causing her severe symptoms.

It does not appear that this Court considered these material facts whereas a reasonable trier of fact would have been inclined to find that the failure to warn of the risk of metal wear was a proximate cause of Ms. Rouviere's severe injuries that may have been resolved or avoided altogether had her doctors been aware of the risks of metal wear exposure.

## IV.    CONCLUSION

Motions for reconsideration are governed by Local Civil Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked." Thus, in a motion to reconsider, "the moving party must point to controlling

decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995). The Second Circuit has held that a motion for reconsideration should be granted "when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, *or the need to correct a clear error or prevent manifest injustice*." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr*., 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted, emphasis added).

Plaintiffs respectfully submit this Court overlooked material facts and evidence regarding DePuy's failure to warn of the very dangerous risk that its metal component would impinge with Stryker's metal component and cause the dangerous release of metals in Ms. Rouviere's body, which is what the evidence shows happened here. And, as such, the Court overlooked the evidence that Dr. Buly and Ms. Rouviere both would have acted differently and not undertaken the surgery to implant these components or combined Systems in her had they been warned of this dangerous risk – a risk different from that presented by the dangerous substances found in the DePuy titanium stem.

Plaintiffs do not intend to waive nor do they waive any objection to any other holdings by this Court in the Opinion and Order for purposes of appeal, but Plaintiffs submit the arguments set forth above support reconsideration pursuant to Local Rule 6.3.

WHEREFORE, Plaintiffs respectfully request this Court reconsider its Opinion and Order granting DePuy's Motion for Summary Judgment and deny their Motion because the record evidence does demonstrate that DePuy's failure to adequately warn of the risk that its metal components would impinge with Stryker's metal components and cause dangerous metals to enter Ms. Rouviere's body was a proximate cause of Ms. Rouviere's injuries.  Moreover, Mr. Rouviere's

loss of consortium claim should survive summary judgment because it would no longer be a stand-alone claim.

Respectfully Submitted,

LAW OFFICES OF ANDRE ROUVIERE
4070 Laguna Street
Coral Gables, Florida 33146
Tel: (305)774-7000
Fax:(305)946-6121

DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone:  (305) 371-3960

*/s/Melissa D. Visconti*
By: Melissa D. Visconti
*Attorneys for Plaintiffs*

## CERITFICATE OF SERVICE

I hereby certify that on October 1, 2021, the foregoing Motion for Reconsideration was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Paul E. Asfendis
GIBBONS, P.C.
One Pennsylvania Plaza
New York, NY 10119

Joseph G. Eaton
J.T. Larson
Barnes & Thornburg, LLP
11 South Meridian Street
Indianápolis, Indiana 46204

*//ss Melissa D. Visconti*
Melissa D. Visconti

14