| | | |
|---|---|---|
| JODI ROUVIERE and ANDRE ROUVIERE, | ) ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-04814-LJL-SDA |
| | ) | |
| DEPUY ORTHOPAEDICS, INC. n/k/a MEDICAL DEVICE BUSINESS SERVICES, INC. and HOWMEDICA OSTEONICS CORPORATION d/b/a STRYKER ORTHOPAEDICS, | ) ) ) ) ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**DEPUY ORTHOPAEDICS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION [ECF NO. 321]**

DePuy Orthopaedics, Inc., now known as Medical Device Business Services, Inc. ("DePuy"), respectfully requests that the Court deny Plaintiffs' Motion for Reconsideration [ECF No. 321] (the "Motion"), and leave in place its Order granting DePuy's Motion for Summary Judgment [ECF No. 318].

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

LEGAL STANDARD ............................................................................................... 2

ARGUMENT ............................................................................................................ 3

I. The Court Should Deny Plaintiffs' Motion Because It Fails to Establish Any Permissible Grounds for Reconsideration Under Local Rule 6.3. ................ 3

II. The Court Should Deny Plaintiffs' Motion Because The Court Did Not Commit Any Clear Error or Create Manifest Injustice ......................................... 5

A. The Summit Stem with DUOFIX™ HA Coating Was Cleared by the FDA ....... 5

B. Different Warnings Would Not Have Led Dr. Buly to Select A Different Stem or Give Additional Warnings to the Rouvieres ........................................... 7

C. Plaintiffs' Argument that Ms. Rouviere Would Not Have Consented If Given Different Warnings Is Irrelevant and Erroneous ..................................... 10

D. Plaintiffs' New Proximate Causation Theory Is Improper, Not Supported by the Record, and Pure Speculation ................................................................... 11

CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aoki v. DePuy Orthopaedics, Inc.*,
   888 F.3d 753 (5th Cir. 2018) .........................................................................................9

*Aquilio v. Police Benevolent Ass'n of New York State Troopers, Inc.*,
   No. 91 Civ. 325, 1994 WL 494639 (N.D.N.Y. Aug. 15, 1994)..................................3

*Associated Press v. U.S. Dep't of Def.*,
   395 F. Supp. 2d 17 (S.D.N.Y. 2005).....................................................................2, 11

*Bldg. Serv. 32BJ Health Fund v. GCA Servs. Grp.*,
   2017 WL 1283843 (S.D.N.Y. Apr. 5, 2017)..............................................................3

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001).....................................................................................................6

*Carolco Pictures Inc. v. Sirota*,
   700 F. Supp. 169 (S.D.N.Y. 1988) ...........................................................................11

*Conroy v. N.Y. State Dep't of Corr. Servs.*,
   333 F.3d 88 (2d Cir. 2003).........................................................................................12

*Goonan v. Fed. Reserve Bank of N.Y.*,
   2013 WL 1386933 (S.D.N.Y. Apr. 5, 2013)...............................................................2

*Naiman v. New York Univ. Hosps. Ctr.*,
   No. 95 CIV. 6469 (RPP), 2005 WL 926904 (S.D.N.Y. Apr. 21, 2005) ....................3

*Polsby v. St Martin's Press, Inc.*,
   97 Civ. 690 (MBM), 2000 WL 98057 (S.D.N.Y. Jan. 18, 2000) ..............................2

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
   207 F. Supp. 2d 292 (S.D.N.Y. 2002).........................................................................3

*UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*,
   No. 20-CV-2043 (LJL), 2021 WL 3292519 (S.D.N.Y. Aug. 2, 2021)......................4

**State Cases**

*In Re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability
   Litigation*, 3:11-md-02244-K.....................................................................................8

**Rules**

S.D.N.Y. Local Rule 6.3 ...............................................................................................1, 2, 3, 4

S.D.N.Y. Local Rule 56.1 .................................................................................................4, 5

**INTRODUCTION**

Plaintiffs' Motion is nothing more than an attempt to re-litigate issues already decided in the Court's Order on Summary Judgment (the "Order"). This Court's precedent is clear: Local Rule 6.3, which provides deadlines for motions to reconsider, is not an invitation to re-litigate rejected arguments, introduce new arguments, or bulk up old arguments with new citations to the record. But that is exactly what Plaintiffs' Motion does. Plaintiffs do not point to any new evidence, change in applicable law, or any admissible and relevant evidence that the Court "overlooked" – the only proper grounds for reconsideration. Instead, Plaintiffs simply re-argue the evidence that was already before the Court when it properly decided DePuy's Motion for Summary Judgment. This is improper, and the Court should deny Plaintiffs' Motion for this reason.

Even if the Court considers the substance of Plaintiffs' Motion, it should still deny reconsideration. Plaintiffs argue that the Court failed to understand the evidence and effectively seek to appeal the Court's decision in four ways:

*First*, Plaintiffs allege that the FDA either did not clear DePuy's Summit Stem component or cleared it based on "false information." This is a complete fabrication. The Summit Stem component was cleared by the FDA and DePuy did not defraud the FDA. Plaintiffs falsely argue that there is evidence to support this claim, but point to none because none exists.

*Second*, Plaintiffs try to reframe their proximate cause arguments by adding citations to Dr. Buly's deposition and analogizing to "metal-on-metal" total hip replacements, even though Ms. Rouviere did not receive a metal-on-metal hip replacement. But the Court already considered and repeatedly relied on Dr. Buly's deposition testimony – it did not "overlook" this evidence. And, in any event, the cited evidence does not prove that Dr. Buly would have selected a different stem or given additional warnings, so it does not contradict the Court's Order.

***Third***, Plaintiffs add citations to the record and argue that Ms. Rouviere would not have consented to the 2012 surgery if given additional warnings. This argument misses the mark entirely because the premise is irrelevant and, in any event, not supported by the record. Ms. Rouviere relied entirely on Dr. Buly to select the hip components and Dr. Buly did not even select Howmedica's MDM Liner until Ms. Rouviere was sedated, mid-surgery.

***Fourth***, Plaintiffs raise a new argument of proximate causation: that different warnings would have led to different medical treatment by her healthcare providers after implantation. This is improper, not supported by the record, and pure speculation.

None of these arguments merits reversing the Court's Order.

## LEGAL STANDARD

The standard for reconsideration is strict and such motions should be denied absent a showing of controlling decisions or data previously overlooked by the court. *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (denying the motion to reconsider). The Southern District of New York's Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Goonan v. Fed. Reserve Bank of N.Y.*, 2013 WL 1386933 at *1 (S.D.N.Y. Apr. 5, 2013) (citation omitted).

The Court views motions for reconsideration unfavorably because they are ripe for misuse by dissatisfied parties. A motion for reconsideration is not an excuse to re-litigate previously rejected arguments nor the appropriate means to introduce new arguments and facts. *Associated Press*, 395 F. Supp. 2d at 19; *Polsby v. St Martin's Press, Inc.*, 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (denying the motion to reconsider). Bolstering an argument with a few new citations is not grounds for reconsideration and "courts do not tolerate such efforts to obtain a second bite at the apple." *Goonan*, 2013 WL 1386933, at *2 (denying the motion to

reconsider). The court's initial decision is not an opening for the party seeking reconsideration to create a narrative advancing new theories or new evidence in response to the court's ruling. *Bldg. Serv. 32BJ Health Fund v. GCA Servs. Grp.*, 2017 WL 1283843, at *1 (S.D.N.Y. Apr. 5, 2017) (denying the motion to reconsider).

Accordingly, motions to reconsider – like this one – that do nothing more than assume that the Court misunderstood the evidence and seek to re-argue the significance of the evidence in the record must be denied.

## ARGUMENT

I.     **The Court Should Deny Plaintiffs' Motion Because It Fails to Establish Any Permissible Grounds for Reconsideration Under Local Rule 6.3.**

Plaintiffs' Motion is nothing more than an attempt to re-argue DePuy's Motion for Summary Judgment. This is a misuse of Rule 6.3, and the Court should deny Plaintiffs' Motion on these grounds alone.

The "purpose of Local Rule 6.3 is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 CIV. 6469 (RPP), 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005). "A motion for reconsideration is not a substitute for appeal." *Id.* (quoting *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 296 (S.D.N.Y. 2002)). A motion for reconsideration may only be granted where the Court has "*overlooked* matters or controlling decisions." *Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d at 296 (emphasis added); *see also Aquilio v. Police Benevolent Ass'n of New York State Troopers, Inc.*, No. 91 Civ. 325, 1994 WL 494639, at *4 (N.D.N.Y. Aug. 15, 1994) (rejecting arguments on reconsideration that amount to nothing more than a "disagreement between an understandably disappointed litigant and the Court").

Plaintiffs' Motion entirely relies on the depositions of her surgeons, Dr. Robert Buly, Dr. Carlos Alvarado, and Jodi Rouviere herself. All of these depositions were in the evidentiary record and before the Court in connection with DePuy's Motion for Summary Judgment. Both Plaintiffs and DePuy referenced these depositions in their separate Rule 56.1 statements, [ECF Nos. 182 (DePuy SUMF); 227 (Plaintiffs' Decl. of Disputed Facts)], and argued the significance of the same as they relate to summary judgment in their briefing [ECF Nos. 178 (DePuy Motion); 233 (Opposition)]. The Court, prior to issuing the Order, even ordered the Rouvieres to file the full deposition transcripts of Dr. Buly and Jodi Rouviere [ECF No. 313], and then cited to all three of the subject depositions in the Order. The Court did not "overlook" this evidence at all. Plaintiffs simply disagree with the Court's assessment of this evidence and its holding, and misuse Rule 6.3 as an invitation to examine the decision and reargue the evidence.

This is altogether improper. The repetition of arguments already decided by the Court is a waste of judicial and party resources and destroys Rule 6.3's purpose of finality. Plaintiffs have repeatedly tried to re-litigate settled issues or ignore court deadlines to try to get a "second bite at the apple," [ECF Nos. 212 (Pls. Untimely Disclosure of New Opinions); 242 (Pls. First Motion to Reconsider Striking Jarrell); 264 (Pls. Appeal of Order Striking Jarrell)], and this Motion is no different. In order to discourage future litigants from filing similar motions to reconsider unfavorable rulings, the Court should deny Plaintiffs' Motion on these grounds alone.[1]

---

[1] This practice is particularly inappropriate with respect to motions for summary judgment. Plaintiffs' Motion is prejudicial to DePuy because it does not comply with Local Rule 56.1, which "sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented." *UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, No. 20-CV-2043 (LJL), 2021 WL 3292519, at *4 (S.D.N.Y. Aug. 2, 2021). Without a separate statement, DePuy cannot easily address each factual allegation that Plaintiffs make in this Motion, many of which are not supported the evidentiary record. For example, the ***very first*** new fact introduced in Plaintiffs' Motion, that Dr. Buly does not use metal-on-metal hip implants because they "are more likely to impinge," is false and misunderstands his testimony. [Motion, 5.] Dr. Buly testified that a metal-on-metal construct would have been more likely to impinge in Ms. Rouviere than the constrained liner he implanted, but not because of the materials themselves. A metal-on-metal implant would have required a smaller femoral head component than a

<div align="center">4</div>

**II.    The Court Should Deny Plaintiffs' Motion Because The Court Did Not Commit Any Clear Error or Create Manifest Injustice.**

Even if the Court considers the substance of Plaintiffs' Motion, it should still deny reconsideration because Plaintiffs have not shown any reason to disturb the Order. Plaintiffs read the Court's detailed summary judgment Order as committing "clear error" and imposing "manifest injustice." [Motion, 3-4.] Plaintiffs make four general arguments trying to convince the Court to reverse its own ruling, but each fails.

**A. The Summit Stem with DUOFIX™ HA Coating Was Cleared by the FDA.**

Plaintiffs inexplicably allege – without any citation to the record or any other evidence – that the DePuy Summit Stem with DUOFIX™ HA coating was either not cleared by the FDA or was cleared "based on false information." [Motion at 6.] They argue that "the record evidence" that "the Rouvieres have cited throughout this case" supports this claim. [*Id.*] This is a complete fabrication. As DePuy demonstrated in its reply brief and as shown through the FDA's publically available database, the DePuy Summit Stem that Ms. Rouviere received in 2012 was approved by the FDA under the 510(k) process. [ECF No. 261 at 4, n.1 (citing 510(k) approvals and caselaw taking judicial notice of 510(k) database).] DePuy even *produced* the entire 510(k) to Plaintiffs in discovery, which definitively proves that the FDA cleared the device. Plaintiffs have had this evidence in their possession for more than a year, but remarkably still told the Court that the device was not approved. This is not true.

Similarly, there is not even a scintilla of evidence that the FDA cleared the Summit Stem "based on false information." Plaintiffs make this claim without any evidentiary support and

---

constrained liner and, as Dr. Buly says, "the bigger the head, the less likely it's going to impinge." [Buly Dep. 140:11-15.] Plaintiffs misinterpret this testimony and many other portions of evidence in their Motion. And DePuy cannot easily respond to each and every allegation in Plaintiffs' Motion without a Rule 56.1 statement. DePuy will refer to its Statement of Undisputed Material Facts (SUMF) wherever possible to avoid recreating the evidentiary record.

without clarifying what exactly they mean.  This is improper.  The parties conducted extensive discovery over the course of three years, including Plaintiffs taking a 30(b)(6) deposition of DePuy's corporate representative.  Plaintiffs had years to develop this theory with actual evidence, but there is none.  DePuy did not provide false information to the FDA to clear the Summit Stem.[2]

Plaintiffs also accuse DePuy and its counsel of omitting key information by not including a website link to the Triflange Acetabular Cup.  [Motion at 7.]  Again, this is wrong.  Ms. Rouviere never received DePuy acetabular components – she received Howmedica acetabular components. The Triflange Acetabular Cup that Plaintiffs reference was one of the "predicate devices" for the Summit Stem, which DePuy demonstrated and the FDA agreed was "substantially equivalent" to the Summit Stem.[3]  It has no relevance to this case and there was no reason for DePuy to reference it in the briefing.

The FDA cleared the Summit Stem and it is pure speculation for Plaintiffs to now argue that DePuy defrauded the FDA.  There is no factual basis or evidentiary support for these allegations and it is improper for Plaintiffs to continue to assert unsupported claims.  These false allegations do not merit reconsideration.

---

[2] This argument fails as both a matter of fact and law on every level.  Had Plaintiffs raised this issue before a motion to reconsider, DePuy would have explained in its Motion for Summary Judgment that state law claims based entirely on alleged fraud on the FDA are impliedly preempted by the Food, Drug, and Cosmetic Act, as amended by the Medical Device Amendments of 1976. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).  Since there is no evidence to support this claim, no such argument is necessary here.

[3] The Summit Stem with DuoFix™ was approved by the FDA under the 510(k) process.  *See Buckman*, 531 U.S. at 344-347 (explaining 510(k) and the "substantial equivalence" standard).

**B. Different Warnings Would Not Have Led Dr. Buly to Select A Different Stem or Give Additional Warnings to the Rouvieres.**

Plaintiffs spend the majority of the Motion re-arguing the Court's twin holdings on proximate causation. The Court held that Plaintiffs had failed to show that any issue with DePuy's warnings was the proximate cause of her injuries under two different theories. *First*, there was no evidence that if DePuy had given different warnings it would have led Dr. Buly to choose a different stem. [ECF No. 318 at 33-36.] *Second*, there is similarly no evidence that different warnings in the IFU would have led Dr. Buly to give different warnings to Jodi Rouviere and, in turn, caused her to not consent to the surgery. [*Id.* at 36-38.] Plaintiffs attack both holdings, unsuccessfully.

Although the Court and the Rouvieres address these issues separately, they can be addressed together because they both turn on Dr. Buly's testimony. As the Court observed, **there is no actual evidence that different warnings in DePuy's IFU would have led Dr. Buly to choose different components or give different warnings**. As the Court points out in its ruling, it is undisputed that Dr. Buly was aware of the risk of component impingement at the time of the 2012 surgery. [Order at 33, citing ECF No. 227 ¶ 26.] The medical records and testimony are abundantly clear that Dr. Buly was aware that component impingement was a known and anticipated risk – especially in treating Ms. Rouviere given her tissue laxity issues – and did his best based on his education, training, and experience in selecting the components to minimize that risk. [SUMF ¶¶ 10, 16, 17; Defs. Exhibit 10.] He even removed a trial acetabular component (manufactured by Biomet) and selected different components (manufactured by Stryker) because he was concerned about impingement with the Biomet construct. [Buly Dep., 87:15-88:5.] After implanting the final components, Dr. Buly checked Ms. Rouviere's range of motion to confirm

that there was no impingement intraoperatively. [SUMF ¶ 16; Buly Dep., 302:15-303:12.] There is no evidentiary support for the argument that Dr. Buly was unaware of the risk of impingement.

There is similarly no support for Plaintiffs' argument that Dr. Buly would have given different warnings to Ms. Rouviere or that he relied on DePuy's IFU for the warnings he did give. At the close of his second deposition, Dr. Buly testified that he would continue using DePuy's Summit Stem and that he saw no need for additional or different warnings. [SUMF ¶ 66; Buly Dep., 289:2-20.] Furthermore, although not addressed in the Court's Order, there is no evidence that Dr. Buly actually relied on DePuy's IFU in forming his opinions regarding risks of the device or warnings to give to Ms. Rouviere. [SUMF ¶ 15; see also Buly Dep., 35:18-37:1 (testifying that the most he could say about what's in the IFU is that he's "sure there is one" and he's "sure he looked at it at some point").] Plaintiffs had two depositions of Dr. Buly to try to establish evidence that he relied on specific language in DePuy's IFU or would have given different warnings if presented with their theories, but did not do so. In fact, the testimony was the exact opposite.

Amazingly, Plaintiffs simply repeat the same argument that the Court addressed in its Order: That additional warnings by DePuy regarding impingement would have changed Dr. Buly's choice of implant or warnings. [Motion at 4.] The only new twist on this argument is that Plaintiffs now argue that DePuy should have given warnings related to *metal-on-metal* impingement and analogize the Summit Stem to metal-on-metal hip implants. [*Id*.] This fails because, as discussed above, Dr. Buly was aware of the risk of impingement at the time of the 2012 surgery, he did not rely on DePuy's IFU, and planned to continue using the Summit Stem. [*Supra*, 7-8.] Moreover, this argument is also altogether wrong for the simple reason that the Summit Stem is not a metal-on-metal hip construct. Throughout this case, Plaintiffs have tried to analogize Ms. Rouviere's theories to *In Re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, 3:11-md-02244-K (the "Pinnacle MDL") and claim this is a "metal-on-metal" case. The Pinnacle

MDL was created in 2011 to centralize claims related to DePuy's Pinnacle Acetabular Cup System and its metal-on-metal construct. "Metal-on-metal" is an industry term of art that only refers to hip constructs where both the femoral head component and acetabular liner component are made of metal. *See Aoki v. DePuy Orthopaedics, Inc.*, 888 F.3d 753, 763-64 (5th Cir. 2018). Neither Ms. Rouviere's femoral head component or acetabular line component were made of metal. [Defs. Exh. 81.] The parties litigated this issue at the beginning of fact discovery as Plaintiffs sought broad discovery on DePuy's metal-on-metal hip construct. Ultimately, Magistrate Judge Aaron properly granted DePuy's motion for a protective order prohibiting discovery regarding Pinnacle devices and metal-on-metal hip constructs because these issues are irrelevant to the case. [ECF No. 115 at 5.] This wrinkle to Plaintiffs' previously rejected argument regarding component impingement is irrelevant and fares no better than Plaintiffs' more general argument about impingement warnings.[4]

In the end, the various deposition excerpts that Plaintiffs cite and references to DePuy's metal-on-metal hip implants do not contradict the Court's holdings and do not show that anything in DePuy's warnings caused Ms. Rouviere's injuries. Plaintiffs' Motion simply re-raises arguments already rejected by the Court with different references to the record, this is improper.

---

[4] This wrinkle to Plaintiffs' argument also rests on Plaintiffs' misunderstanding of the evidence. Plaintiffs argue that Dr. Buly sought to avoid "metal on-metal impingement," which they say is supposedly associated with metal-on-metal hip constructs. [Motion, 5.] It is true that Dr. Buly actively sought to avoid impingement entirely, regardless of the materials. [*Supra*, 7.] But metal-on-metal hip constructs are not associated with *impingement*. By design, a metal-on-metal construct involves *articulation* of metal-on-metal surfaces. This is completely different from unintended component impingement. There is no evidence that Dr. Buly was even considering implanting a metal-on-metal hip construct in Ms. Rouviere, so there is no evidence that any warning regarding metal-on-metal articulating surfaces would have led him to different warnings or different components.

### C. Plaintiffs' Argument that Ms. Rouviere Would Not Have Consented If Given Different Warnings Is Irrelevant and Erroneous.

Plaintiffs' Motion also urges the Court to overrule its Order because, Plaintiffs allege, Ms. Rouviere would not have consented to the surgery with different warnings. This argument does not support reconsideration for two reasons.

*First*, the significance of whether Ms. Rouviere would or would have consented to her 2012 total hip replacement if given different warnings is entirely dependent on whether Dr. Buly would have given different warnings. Since there is no evidence that Dr. Buly would have given any different warnings, this issue is irrelevant to the proximate cause analysis. The Court, in a footnote on this topic, even explicitly stated that it did not need to address this issue for this specific reason. Since Plaintiffs have failed to show any non-speculative evidence that Dr. Buly would have given a different warning, there is no need to even address this re-raised argument now.

*Second*, Plaintiffs' conclusion that Ms. Rouviere would not have consented to the total hip replacement if she had been given warnings about the Summit Stem and Stryker's MDM Liner is flawed because it miscomprehends the evidence of the surgery. The evidence in the record demonstrates that Ms. Rouviere relied entirely on Dr. Buly to select the components, [SUMF ¶ 14, Jodi Dep. 115:7-21], and that Dr. Buly did not select the MDM Liner until *intraoperatively*, when Ms. Rouviere was under anesthesia [SUMF ¶ 15, Buly Dep. 128:5-8; Def. Exh. 81]. So the proximate causation theory that Dr. Buly would have given additional warnings specific to the components themselves (when he did not even know at the time that was the device he was going to use) and then Ms. Rouviere would have not consented to that surgery is belied by the facts and beyond speculative.

This argument fails on multiple levels and does not merit reconsideration.

10

**D. Plaintiffs' New Proximate Causation Theory Is Improper, Not Supported by the Record, and Pure Speculation.**

As a final matter, Plaintiffs raise a new theory of proximate causation to try to avoid summary judgment. Plaintiffs vaguely claim that different warnings by DePuy would have led to different post-operative treatment by Ms. Rouviere's medical providers, including Drs. Buly and Alvarado. [Motion at 10.] The Court should reject reconsideration on these grounds because it does not consider new arguments raised in a motion to reconsider and, in any event, there is no evidence to support this speculation.

The Court does not need to consider this argument because it was not raised in the parties' original briefing. This Court has long held that "a party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." *Associated Press*, 395 F. Supp. 2d at 20. The failure to raise the argument in the first instance constitutes "a clear waiver" and the Court does not need to address the argument. *Id.*; *Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169, 172 (S.D.N.Y. 1988). Plaintiffs did not raise this theory regarding post-operative treatment in their Opposition to DePuy's Motion for Summary Judgment. [ECF No. 233.] Like so many things in this case, Plaintiffs are simply seeking a second bite at the apple. The Court may dismiss this argument out of hand.

Moreover, even if the Court considers this new theory of proximate causation, it should deny reconsideration because there is no actual evidence that any different warning would have caused Dr. Buly or Dr. Alvarado to do anything different. Plaintiffs again cite to portions of Dr. Buly's deposition, [Motion at 10-11], but fail to put forward any testimony by Dr. Buly that he would have provided different treatment to Ms. Rouviere, either in selecting the implants or in his post-operative care if he had been given different warnings. Similarly, there is no evidence that

Dr. Alvarado ever relied on DePuy's warnings when treating Ms. Rouviere, let alone any evidence that he would have done anything differently if given different warnings.   So this argument fails for the same reasons as Plaintiffs other theories of proximate causation.

Finally, Plaintiffs also have presented no evidence that any different action would have actually prevented or alleviated her injuries beyond their own speculation.  They could have asked Dr. Buly or Dr. Alvarado what they would have done if presented with different warnings or, better yet, with the actual results of Ms. Rouviere's bloodwork.  They could have retained an expert orthopedic surgeon to opine on what a reasonable surgeon would do given different warnings or presented with Ms. Rovuiere's bloodwork.  They did nothing to develop this theory, and the citations to the record do not evidence any injuries caused by DePuy's warnings.  This argument is nothing more than pure speculation and conjecture, which is insufficient to create a genuine issue of material fact and survive summary judgment.  *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) ("Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.").  The Court should not disturb its decision granting DePuy summary judgment based on this speculative argument.

**CONCLUSION**

This is not a motion for reconsideration; it is a wholesale re-argument of DePuy's Motion for Summary Judgment. The Court did not "overlook" any evidence or create manifest injustice, it just did not rule the way that Plaintiffs want and so Plaintiffs re-argue the significance of the evidence already considered. The Court should reject Plaintiffs' Motion out of hand for this reason. Even if the Court entertains the substance of Plaintiffs' Motion, none of the arguments that Plaintiffs raise merit reconsideration or reversal of the Court's Order. Accordingly, DePuy respectfully requests that the Court deny Plaintiffs' Motion for Reconsideration and leave in place its Order granting DePuy's Motion for Summary Judgment [ECF No. 318].

Respectfully Submitted,

*/s/ J.T. Larson*
Joseph G. Eaton (#15731-29)
J.T. Larson (#31392-29)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Email: joe.eaton@btlaw.com
        jt.larson@btlaw.com

James F. Murdica
BARNES & THORNBURG LLP

43 West 43rd Street, Suite 175
New York, NY 10036
(312) 357-1313
Email: jmurdica@btlaw.com

*Attorneys for DePuy Orthopaedics, Inc. nka*
*Medical Device Business Service, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was electronically served on the following counsel of record by operation of the Court's e-filing system on this 15th day of October, 2021.

<div style="margin-left: 2em;">

Andre Rouviere
Jodi Rouviere
4070 Laguna Street
Coral Gables, Florida 33146

Melissa Visconti
Damian & Valori LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

Paul E. Asfendis
Kim M. Catullo
GIBBONS, P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119

</div>

*/s/ J.T. Larson*
J.T. Larson