Case No. 1:18-cv-04814-LJL-SDA

JODI ROUVIERE and
ANDRE ROUVIERE,

     *Plaintiffs*,

v.

DEPUY ORTHOPAEDICS, INC. n/k/a
MEDICAL DEVICE BUSINESS
SERVICES, INC., and HOWMEDICA
OSTEONICS CORPORATION
d/b/a STRYKER ORTHOPAEDICS,

     *Defendants*.

_____/

## PLAINTIFFS' REPLY IN SUPPORT OF
## THEIR MOTION FOR RECONSIDERATION

In their Motion for Reconsideration (ECF 321), Plaintiffs submit that this Court overlooked material record evidence that demonstrates or, at a minimum, creates a genuine factual dispute regarding whether Dr. Buly and Mrs. Rouviere would have acted differently had they been adequately warned about the risks of metal-on-metal impingement and metal wear when DePuy's "Summit Tapered Hip System Stem and Biolox Head" hip arthroplasty system (the "DePuy System") is used in combination with the MDM/X3 ADM/MDM System and Trident Shell manufactured and sold by Howmedica Osteonics Corporation ("Stryker") (the "Stryker System"). That is, there is direct documentary evidence that Dr. Buly would not have used these combined systems in Mrs. Rouviere if he had been warned that these systems would cause metal-on-metal impingement, and Mrs. Rouviere would not have consented to their use if she had been warned of this risk.

The evidence pointed out in the Motion for Reconsideration directly contradicts the Court's conclusion that there is an absence of any such evidence of proximate cause, and, therefore, it does appear that it was overlooked, and it is clearly material. Therefore, reconsideration is appropriate.

Whereas Plaintiffs were careful to identify the overlooked evidence rather than reargue the Motion for Summary Judgment, it is Defendant DePuy that is now rearguing their Motion for Summary Judgment rather than simply address how it is that the cited evidence can possibly be reconciled with the Court's conclusion that such evidence does not exist. Defendants do not point to anything contravening Plaintiffs' submission that the cited evidence is in the summary judgment record and altogether inconsistent with the Court's conclusion that there is no issue of fact relating to probable cause.

Plaintiffs below address Defendants' responsive arguments in the order the original points are raised in the Motion for Reconsideration:

> **A. *The Evidence Cited By Plaintiffs In The Motion For Reconsideration Demonstrates That Dr. Buly Would Have Heeded Warnings Of The Risk Of Metal-On-Metal Impingement With The Combined Use of The DePuy And Stryker Systems.***

DePuy first argue that the record evidence reflects that Dr. Buly was aware of the risk of "component impingement." (ECF 323 (Response to Motion for Reconsideration) at 12). They then argue that Plaintiffs' argument is based on a theory that the products implanted in Mrs. Rouviere are analogous to the now infamous and extremely dangerous metal-on-metal implants that are the subject of multi-district litigation. DePuy misses the point.

Plaintiffs do not disagree that Dr. Buly was aware of the risk of component impingement when he made the decision to use the Stryker and DePuy products at issue. Plaintiffs argue, however, that reconsideration is warranted because the evidence demonstrates that Dr. Buly was <u>not</u> aware of the risk of impingement of metal components with other metal components. *See* ECF

No. 321 at pp. 4-5. There is a tremendous difference between non-metal components impinging and metal components impinging, because when metal components impinge with other metal components they cause metal wear and the release of dangerous metal debris into patients' bodies. Metal-on-metal hip implants are no longer used by doctors, like Dr. Buly, because of the risks of this very dangerous metal wear, which is associated with those metal-on-metal implants.

Indeed, Dr. Buly did not use a metal-on-metal implant in Mrs. Rouviere because he believed he was avoiding the risks and dangers associated with such implants, that is, metal wear debris, by instead pairing the DePuy titanium stem with ceramic and polyethylene heads. *Id*., p.5. In the absence of any warning otherwise, he believed that if the components impinged, the impingement would not be metal on metal impingement, and therefore he believed he was avoiding the risk of metal wear debris.  Id. He believed this because he was not warned that when the DePuy and Stryker systems he used are combined, metal components impinge with other metal components (titanium on cobalt chromium), as it did in Mrs. Rouviere, when the DePuy titanium stem impinges with the Stryker cobalt chromium liner.

Plaintiffs therefore cited to record evidence demonstrating that Dr. Buly expressly stated that he avoided metal on metal hip implants because he wanted to avoid metal on metal impingement and the risks associated with such impingement, including metal wear and the release of metals into the body that can cause metallosis and metal toxicity. (*See* citations on page 5 of Plaintiffs' Motion (ECF 321)). Plaintiffs also cited to Dr. Buly's testimony that he was not aware that metal on metal impingement was a risk associated with the combined use of the DePuy and Stryker systems as used in Mrs. Rouviere. (*Id*.) And, Plaintiffs cited Dr. Buly's testimony in which he stated that if he had known there was a reason to be concerned about the compatibility of the DePuy and Stryker components, he would not have used them together. (*Id*.).

The foregoing evidence, identified in Plaintiffs' Motion, simply cannot be reconciled with the Court's conclusion that there is a lack of evidence or the absence of a question of fact that Dr. Buly would not have implanted these devices in Mrs. Rouviere if he had been adequately warned.

DePuy altogether avoids directly addressing this previously overlooked record evidence, choosing instead to misconstrue Plaintiffs' arguments. Again, Plaintiffs do not argue that this is a "metal-on-metal" implant case as that industry term is understood, because it is not. Mrs. Rouviere was not implanted with a metal-on-metal implant because her doctors believed they were avoiding the risks associated with those devices. Unfortunately, her doctors were unaware, because they were not warned, that the combined use of the DePuy and Stryker systems, which contain other, non-metal components, also present the risk of metal-on-metal component impingement. As a result, they implanted devices in Mrs. Rouviere that were known by DePuy to cause metal-on-metal impingement and did, in fact, cause metal wear and metallosis and metal toxicity in Mrs. Rouviere. Dr. Buly would not have implanted these devices in Mrs. Rouviere if he had been warned of such a risk, and we know this because he testified, consistently throughout his deposition, that he no longer uses metal-on-metal hip implants because he wants to avoid the risks associated with metal-on-metal impingement and metal wear. (*Id.* at p.5).

It is clear the Court did not consider this evidence, and had it done so, the decision would have been different. Reconsideration is warranted so the Court may consider this previously overlooked evidence.

**B. The Evidence Cited By Plaintiffs In The Motion For Reconsideration Demonstrates That Dr. Buly Would Not Have Used The DePuy And Stryker Systems If He Had Known That The DePuy System Was Not FDA Approved For Such Use.**

DePuy argues that Plaintiffs' arguments regarding the lack of FDA clearance for DePuy's Summit Stem with DUOFIX HA coating is not supported by record evidence.[1] However, Plaintiffs cited the record evidence in their response to DePuy's Motion for Summary Judgment that the DePuy product was never cleared by the FDA or was fraudulently cleared by the FDA. (*See* Response to Motion for Summary Judgment (ECF 226) at page 9). At a minimum, the parties dispute whether the product is FDA cleared or properly FDA cleared. The significance of the issue that warrants reconsideration is that Dr. Buly testified that he relied on the FDA's clearance in determining that the products were safe to implant in Mrs. Rouviere. (*See* Motion for Reconsideration (ECF 321) at 6). Plaintiffs have presented material evidence disputing whether the DePuy products used in Mrs. Rouviere actually were FDA cleared or whether they were cleared based on false information. Based on his testimony that he relied on the products' FDA status in determining that they were safe to use, a reasonable jury could absolutely infer that if Dr. Buly had been warned that the products were not FDA cleared or that there was doubt about whether they were, Dr. Buly would not have used the devices. Plaintiffs should be permitted to present this material evidence to the finder of fact.

DePuy ignores Dr. Buly's testimony regarding his reliance on FDA status when determining to use products like those used in this case and instead attempts to defend their questionable FDA approval status. Further, DePuy's argument that claims of FDA fraud are

---

[1] In the 510K application to the FDA for the Summit Duofix Stem provided by Depuy [(DKT 233-4), DEPUY_ROUVIERE_5073-5185], the Triflange Acetabular Cup is designated as the substantially equivalent predicate device for the Duofix coating in order to gain approval [(DKT 233-4), DEPUY_ROUVIERE_0005084], but there is no coating on the Triflange [(DKT 233-4), DEPUY_ROUVIERE_0005165-67] which is required for it to serve as the predicate device, making the FDA clearance fraudulent.

preempted by federal FDA law is irrelevant, as Plaintiffs are not asserting causes of action for FDA fraud but only pointing out that Mrs. Rouviere's doctors made decisions based on a lack of information about the controversy regarding the products FDA status.

This Court appears to have overlooked evidence that Dr. Buly relied on the products' FDA status in determining to use the products in Mrs. Rouviere as well as the evidence that there is a dispute regarding whether the products were actually FDA cleared. The evidence warrants reconsideration because it would alter the decision that there was no genuine issue of material fact regarding whether Dr. Buly would have heeded warnings regarding the products' FDA status.

### C. Mrs. Rouviere's Testimony Leaves No Doubt That She Would Not Have Consented To Use Of The Combined DePuy And Stryker Systems Had She Been Warned Of The Risk Of Metal Impingement And Metal Wear.

Plaintiffs' Motion for Reconsideration cites unequivocal evidence that Mrs. Rouviere would "absolutely not" have consented to use of the products at issue if given appropriate warnings. Mrs. Rouviere testified, flat out, that if she had been warned that the devices' metal components could wear in her body, she absolutely would not have undergone the surgery to have them implanted in her. Plaintiffs point out Mrs. Rouviere's relevant testimony in which she states that she was concerned about the dangers of metal-on-metal implants and that she was informed that the risks associated with those implants were not present with ceramic and polyethylene products, like the DePuy and Stryker combination. *See* ECF 321 at 9. Based on this misinformation, stemming from Dr. Buly's lack of proper information from DePuy, Mrs. Rouviere consented to the use of the products at issue.

DePuy argues that it does not matter how Mrs. Rouviere would have responded to adequate warnings because of the apparent lack of evidence that Dr. Buly would have changed his behavior or relayed adequate warnings had he been adequately warned. As explained above, Dr. Buly's

6

testimony reflects that he most certainly would have heeded warnings of a risk of metal-on-metal impingement, and, in turn, he would not have told Mrs. Rouviere that the dangers associated with metal-on-metal implants were not a risk with the DePuy and Stryker systems if he had been informed otherwise.

DePuy also argues that Mrs. Rouviere would not have changed her consent to the implants based on warnings from Dr. Buly because Dr. Buly ultimately chose the specific implants he used when Mrs. Rouviere was under anesthesia. This argument certainly misconstrues the evidence. As Plaintiffs point out in the Motion for Reconsideration, Mrs. Rouviere and Dr. Buly both testified that Dr. Buly discussed with Mrs. Rouviere the options available for implants prior to the actual surgery, and Dr. Buly explained that he would be using ceramic and polyethylene inserts and, most importantly, that he would <u>not</u> be using implants that had the metal wear dangers associated with the metal-on-metal hip implants. Dr. Buly was not aware that there were risks of metal wear and metal-on-metal impingement with ceramic and polyethylene systems and, therefore, he did not warn Mrs. Rouviere of those risks even when she directly asked about them.

Mrs. Rouviere testified that she was concerned about implants with a risk of metal wear and she discussed those concerns with Dr. Buly, who, given his lack of adequate information from DePuy, assured her there was no cause for such concern. Mrs. Rouviere also testified that she would not have consented to use of the products if she had been made aware of those risks. Therefore, the record evidence most certainly does demonstrate that Mrs. Rouviere gave her consent to the products implanted in her prior to her surgery based on her belief that Dr. Buly would not have used an implant with risks of metal-on-metal impingement.

The cited evidence contradicts the Court's finding that that there is a lack of evidence or no material question of fact that adequate warnings would have changed Mrs. Rouviere's ultimate

decision to consent to use of the products at issue, and DePuy's arguments do nothing to dispel that conflict. Reconsideration is warranted based on this previously overlooked material evidence that would have altered the Court's ultimate finding that there is no question of fact of relevant to the issue of proximate cause.

**D. The Evidence Demonstrating That Mrs. Rouviere's Doctors Did Not Realize That Mrs. Rouviere May Have Been Exposed To Metal Wear From Her Hip Implant Is Directly Relevant To The Issue Of Whether DePuy's Failure To Warn Was A Proximate Cause Of Her Injuries.**

Finally, DePuy argues that the evidence that Mrs. Rouviere's doctors ignored or failed to recognize or test for metallosis and metal toxicity post-surgery is not relevant to whether Dr. Buly would have acted differently had he been adequately warned. DePuy also argues the Court should not consider this evidence because, according to DePuy, the evidence that Mrs. Rouviere's doctors failed to recognize or treat her metallosis and metal toxicity after her surgery is a new theory of proximate cause.

Again, DePuy is avoiding the point. The evidence cited by Plaintiffs regarding Dr. Buly's and Dr. Alvarado's post-operative conduct is directly relevant to the proximate cause issue identified in the Court's Opinion and Order. That is, the Court held that there is a lack of evidence that Dr. Buly would have acted differently had he been adequately warned of the risks of metal wear associated with the DePuy and Stryker product combinations. Plaintiffs pointed out in the Motion for Reconsideration that this conclusion is inconsistent with the evidence that Dr. Buly does not use implants he knows to have risks of metal wear and that he was not aware of such risks with the implants he used for Mrs. Rouviere. Similarly, Plaintiffs pointed out that Dr. Buly testified that he does not test patients, like Mrs. Rouviere, for foreign body reactions and metal ions if they were not implanted with a metal-on-metal implant because he was not aware those are risks associated with other types of implants like those used in Mrs. Rouviere. This evidence directly

contradicts DePuy's argument that Dr. Buly was aware of the risks associated with the products' component impingement. He was clearly not aware of the risks of metal component impingement because he did not even think to test for metal wear exposure when Mrs. Rouviere presented post-operatively with symptoms of metallosis and metal toxicity.

A reasonable jury could certainly infer from such testimony that he would have behaved differently and tested Mrs. Rouviere for such reactions if he was aware that metal wear risks are associated with the products he implanted in her. He was not aware of such risks before making the decision to implant the devices in Mrs. Rouviere, which is also evidenced by the fact that he was not aware of that risk after her surgery. Indeed, the lack of such warnings of these particular risks is even more clear when the evidence that Dr. Alvarado was also unaware is also considered. Dr. Alvarado, like Dr. Buly, did not consider that Mrs. Rouviere was suffering from metal wear exposure because he was not aware it was a risk with the products at issue. A reasonable jury could certainly infer, based on Dr. Alvarado's testimony, that he would have acted differently post-implant, if he knew metal wear was a risk associated with the products.

In short, the evidence demonstrates that when Mrs. Rouviere presented with symptoms of metallosis and metal toxicity, her doctors did not even consider that as a possibility and, therefore, Mrs. Rouviere's injuries were exacerbated by the continued use of the Defendants' products. Dr. Buly's and Dr. Alvarado's testimony that they would have acted differently post-surgery, had they known that metal wear was a risk of the components at issue is directly relevant to the issue of whether Dr. Buly would have heeded such warnings when determining to use the components in the first place. DePuy ignores the significance of this evidence relative to the Court's holding.

**CONCLUSION**

As set forth in Plaintiffs' Motion for Reconsideration and above, the evidence of Dr. Buly's avoidance of products that have a known risk of metal wear is directly inconsistent with this Court's finding that there is no evidence that Dr. Buly would have acted differently had he been warned of the risk of metal wear from the use of the combined DePuy and Stryker products used in Mrs. Rouviere. Likewise, the evidence that Dr. Buly and Mrs. Rouviere specifically discussed that metal wear is not a risk with the products at issue and that Mrs. Rouviere expressly stated that she would not have consented to the use of these products if she had been told otherwise, is also entirely inconsistent with the Court's finding of a lack of proximate cause evidence.

The cited evidence is material to the Court's decision and, had it been considered, would certainly have altered the Court's holdings, and therefore, reconsideration is warranted to prevent manifest injustice.

WHEREFORE, Plaintiffs respectfully request this Court reconsider its Opinion and Order granting DePuy's Motion for Summary Judgment and deny their Motion because the record evidence does demonstrate that DePuy's failure to adequately warn of the risk that its metal components would impinge with Stryker's metal components and cause dangerous metals to enter Ms. Rouviere's body was a proximate cause of Ms. Rouviere's injuries. Moreover, Mr. Rouviere's loss of consortium claim should survive summary judgment because it would no longer be a stand-alone claim.

Respectfully Submitted,

LAW OFFICES OF ANDRE ROUVIERE
4070 Laguna Street
Coral Gables, Florida 33146
Tel: (305)774-7000
Fax:(305)946-6121

*/s/Andre Rouviere*
By: Andre Rouviere


DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone:  (305) 371-3960

*/s/Melissa D. Visconti*
By: Melissa D. Visconti

*/s/ Robert E. Godosky*
Robert E. Godosky, Esq.
GODOSKY & GENTILE, P.C.
100 Wall Street, Suite 1702
New York, New York 10005
Telephone: (212) 742-9700
Fax: (212) 742-9706
reg@godoskygentile.com

*Attorneys for Plaintiffs*