UNITED STATES DISTRICT COURT CIRCUIT
SOUTHERN DISTRICT OF NEW YORK


CASE NO. 1:18 - cv - 4814-AJN



JODI ROUVIERE, Individually and,
ANDRE ROUVIERE, her husband, Individually,

    Plaintiff,

    vs.

DUPUY ORTHOPAEDICS, INC.,
DUPUY PRODUCTS, INC.,
DUPUY INTERNATIONAL, LIMITED,
JOHNSON & JOHNSON, INC.,
and JOHNSON & JOHNSON SERVICES, INC.,
and STRYKER CORPORATION,
STRYKER SALES CORPORATION, and
HOWMEDICA OSTEONICS CORPORTATION,
d/b/a STRYKER ORTHOPAEDICS

    Defendant.




30(b)(6) ZOOM DEPOSITION

OF

STRYKER ORTHOPAEDICS, inc.

VOLUME I


Thursday, August 13, 2020
9:30 a.m. - 5:30 p.m.

COPY Type text here

APPEARANCES

For the Plaintiff:

ANDRE A. ROUVIERE, ESQ.
LAW OFFICE OF ANDRE A. ROUVIERE
4070 LAGUNA STREET
CORAL GABLES, FLORIDA 33146
305-774-7000

For the Defendant:

PAUL ASFENDIS, ESQ.
GIBBONS, P.C.
ONE PENNSYLVANIA PLAZA
37th FLOOR
NEW YORK, NY 10119-3701
ON BEHALF OF HOWMEDICA OSTEONICS
CORPORATION, d/b/a STRYKER ORTHOPAEDICS

JT. LARSON, ESQ.
BARNES & THORNBURG LLP
11 SOUTH MERIDIAN STREET
INDIANAPOLIS, IN 46204
ON BEHALF OF DEPUY ORTHOPAEDICS, INC.

Also Present:

BOB RATINER
JODI ROUVIERE

I N D E X

| Witness | Direct | Cross |
|---|---|---|
| Christopher Hefferman | 4 | -- |

BY MR. ROUVIERE:

Q.    Mr. Hefferman, I have been referred to page 8099.  Is that the page that you recall reviewing?

A.    Yes.

Q.    Did you review the entire report from beginning to end?

A.    No, I did not.

Q.    For what reason did you review only page 8099?

MR. ASFENDIS:  Note my objection.  We'll allow you to answer.

THE WITNESS:  My focus was to understand the devices that were involved, to understand if there were any concerns or issues with those devices.

BY MR. ROUVIERE:

Q.    Were there any concerns or issues?

A.    No.

Q.    Why not?

MR. ASFENDIS:  Objection.  You can answer.

THE WITNESS:  Upon looking into the device, I realize -- I was able to determine that there was no recalls related to that

reports?

BY MR. ROUVIERE:

Q. Similar to the reports to the one prepared which appears on page 8097 and forward on the Bates numbers that you showed us. A similar report as it applies to the MDM X3.

MR. ASFENDIS: Note my objection. You can answer.

THE WITNESS: I didn't review those pages.

BY MR. ROUVIERE:

Q. Why not?

MR. ASFENDIS: Objection. You can answer, but again, this is getting onto the attorney/client. You can answer.

THE WITNESS: As previously stated, I was able to make a determination as to the state of the devices from the manufacturer information without having to see those pages.

BY MR. ROUVIERE:

Q. When you say the state of the devices, what do you mean?

A. Whether or not the devices had any recalls associated with them.

Q.     Did any of them have recalls?

A.     No.

Q.     And you only looked for recalls?  You didn't look for complaints?

MR. ASFENDIS:  Note my objection.  You can answer.

THE WITNESS:  I did not look at information beyond the scope, no.

BY MR. ROUVIERE:

Q.     Beyond the scope of what, sir?

A.     Beyond the scope of understanding whether or not these devices were recalled or not.

Q.     Are you aware, sir, that there was an active recall on the MDM X3 at the time it was placed into Jodi Rouviere?

MR. ASFENDIS:  Objection, form, foundation.  You can answer.

THE WITNESS:  I am aware that there was a singular recall for the MDM X3 product that was lot-specific.  In that, these devices were not within the scope of that recall.

BY MR. ROUVIERE:

Q.     Did you check to see if that lot

was any recalls and you said there weren't. Is it your testimony still that there were no recalls on this product, or just no recalls on this product as it applied to my client?

MR. ASFENDIS: Objection to form. And I think there's some confusion there, but if you understand, you can answer.

THE WITNESS: With respect to the specific devices involved here, there were no recalls.

BY MR. ROUVIERE:

Q. Were you aware of a recall to the Trident device which was still in effect up until September of 2012?

MR. ASFENDIS: Object to form and scope. I will allow him to answer.

THE WITNESS: Again, with respect to the device specific to this case, there were no recalls.

BY MR. ROUVIERE:

Q. Do you have those lot numbers available to you here today?

A. Which lot numbers would those be?

Q. For each of the three devices that we are talking about that were implanted into Jodi

Q. The matching lot number? Did you do this research yourself, or did someone tell you this information?

MR. ASFENDIS: Just object to form and foundation. You can answer.

THE WITNESS: So, as part of the documents provided, there was a -- excuse me -- I was made aware that the devices were manufactured in 2012. And as previously stated, there is a lot-specific recall only for devices prior to 2011, and so I was able to determine that there were no recalls for this device.

BY MR. ROUVIERE:

Q. Where did you get this specific information from?

A. Which information?

Q. The specific information about the lot numbers, about the recall, and that it was not the correct lot number? Where did you obtain the information you used it to make that conclusion? Where did you obtain that information?

A. The DHR -- the DMR, the device manufacturing record that was part of the discovery included the lot code for the X3