UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODI ROUVIERE and ANDRE ROUVIERE, )<br><br>*Plaintiffs*, )<br><br>v. )<br><br>DEPUY ORTHOPAEDICS, INC. n/k/a MEDICAL DEVICE BUSINESS SERVICES, INC. and HOWMEDICA OSTEONICS CORPORATION d/b/a STRYKER ORTHOPAEDICS, )<br><br>*Defendants*. ) | Case No. 1:18-cv-04814-GHW-GS |

**DEPUY ORTHOPAEDICS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JODI ROUVIERE'S MOTION FOR RELIEF FROM JUDGMENT**

Defendant DePuy Orthopaedics, Inc., n/k/a Medical Device Business Services, Inc., submits this Memorandum of Law in opposition to Plaintiff Jodi Rouviere's Motion for Relief of Judgment Pursuant to Fed. R. Civ. P. 60(b)(6) (Dkt. 364, "Motion to Vacate") and Motion for Evidentiary Hearing (Dkt. 373, "Evidentiary Hearing Motion", and together with the Motion to Vacate, the "Motions").

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND AND PROCEDURAL HISTORY .............................................. 2

    A. Proceedings in District Court ............................................................. 2

    B. Second Circuit Appeal ...................................................................... 4

    C. Rouviere's Motion to Vacate and Evidentiary Hearing Motion ............................. 6

III.    ARGUMENT ............................................................................................... 6

    A. Rule 60(b)(6) Motions Are Granted Sparingly and Only Upon a Showing of *Exceptional Circumstances* ......................................................................... 7

    B. Judge Liman's Failure to Recuse Was Harmless Error Because He Was Not Conflicted When He Ruled on Stryker's Summary Judgment Motion and That Decision Was Affirmed by a Panel of Unconflicted Second Circuit Judges on *De Novo* Review ........................................................................................ 9

    C. The Underlying Orders Do Not Risk Prejudice to the Parties, Other Cases, or the Judicial Process .................................................................................. 10

    D. Rouviere's Motion Should Be Denied With Respect to Judge Aaron's Numerous Orders ............................................................................................. 12

        1. There Is No Basis to Find That the Payments Judge Aaron Received From Arnold & Porter Pursuant to His Partnership Agreement Constitute a Violation of 28 U.S.C. § 455 ........................................................ 12

        2. Even if Judge Aaron Were Conflicted, Rouviere's Motion Would Fail to Satisfy the *Lileberg* Factors Necessary for Vacatur ............................... 14

    E. Rouviere's Request for an Evidentiary Hearing Should Be Denied ..................... 15

IV.    CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brock v. Zuckerberg*,
    No. 21-1796, 2022 WL 1231044 (2d Cir. Apr. 27, 2022) ......................................11

*Cablevision Sys. New York City Corp. v. Okolo*,
    197 F. App'x 61 (2d Cir. 2006) ...............................................................................16

*ExxonMobil Oil Corp. v. TIG Ins. Co.*,
    2021 WL 4803700 (S.D.N.Y. Oct. 14, 2021) ...........................................................8

*ExxonMobil Oil Corp. v. TIG Ins. Co.*,
    44 F.4th 163 (2d Cir. 2022), *cert. dismissed*, 143 S. Ct. 480 (2022) .............................. *passim*

*Faulkner v. Nat'l Geographic Enterprises Inc.*,
    409 F.3d 26 (2d Cir. 2005) .......................................................................................8

*Gomez v. City of New York*,
    805 F.3d 419 (2d Cir. 2015) ....................................................................................15

*Holmes v. Apple Inc.*,
    No. 17-CV-4557 (RA), 2022 WL 2316373 (S.D.N.Y. June 27, 2022), *aff'd*,
    No. 22-1745, 2023 WL 6619358 (2d Cir. Oct. 11, 2023) .................................8, 12

*Howard v. MTA Metro-N. Commuter R.R.*,
    866 F. Supp. 2d 196 (S.D.N.Y. 2011) ..................................................................8, 14

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) .............................................................................................9, 15

*Litovich v. Bank of Am. Corp.*,
    106 F.4th 218 (2d Cir. 2024) ..................................................................................11

*Saada v. Golan*,
    No. 21-876-CV, 2021 WL 4824129 (2d Cir. Oct. 18, 2021)....................................15

*Mendell ex rel. Viacom, Inc. v. Gollust*,
    909 F.2d 724 (2d Cir. 1990).....................................................................................14

**Statutes**

28 U.S.C. § 455 ....................................................................................................... *passim*

**Other Authorities**

Hon. Stewart D. Aaron: Biography, Practicing Law Institute,
  https://www.pli.edu/faculty/hon.-stewart-d.-aaron-i1682951...................................................13

Fed. R. Civ. P. 60................................................................................................................. *passim*

## I.    INTRODUCTION

Plaintiffs *zealously* litigated this case for more than six years and received thorough, well-reasoned judicial attention at every turn.   The docket bears this out.   District Judges Alison J. Nathan and Lewis J. Liman, Magistrate Judge Stewart D. Aaron, and a panel of three judges on the Second Circuit Court of Appeals have, combined, issued more than ***twenty written orders*** on substantive issues—excluding purely administrative orders for extensions of time—including rulings favoring both sides.  For example, when Plaintiffs demanded to drive a recreational vehicle from Florida to Indiana and New Jersey during the peak of the COVID-19 pandemic to conduct in-person depositions, the Court denied the request and ordered Plaintiffs to proceed with depositions remotely.  Dkt. 140.  But when Plaintiffs sought to compel DePuy to produce documents and corporate representative testimony on an irrelevant medical device component, the Court granted that request and DePuy complied.  Dkt. 144.  Most often, the Court granted and denied relief to both parties.  Dkt. 8, 83, 115, 128, 167, 256, 296, 315, 320, and 354.  And whenever the Court ruled in favor of defendants, Plaintiffs typically filed objections to discovery rulings by the magistrate judge, sought reconsideration (twice), and eventually appealed five different orders to the Second Circuit.  Rouviere's Motions are simply the latest in the Plaintiffs' efforts to undo well-reasoned court orders she does not like.

The Court should deny Rouviere's Motions for three independent reasons.  ***First***, DePuy was already dismissed and terminated from this case by the time Judge Liman decided Stryker's motion for summary judgment based on New York's statute of limitations.  Rouviere makes no argument that Judge Liman had any conflict with Stryker, so she has no basis to argue that Judge Liman was improperly conflicted when he decided Styker's motion for summary judgment.  Any mistake that Judge Liman made in failing to recuse himself when DePuy was still in the case was therefore harmless error.  ***Second***, even if Judge Liman's statute of limitations decision was

tainted by conflict (it is not), the Second Circuit conducted a *de novo* review and reached the same conclusion. And this court has held that *de novo* review by an unconflicted judge resolves the concerns raised by Rouviere's Motions. ***Third***, to the extent that Rouviere seeks to undo years of discovery litigation as decided in Judge Aaron's numerous orders, which make up the overwhelming majority of the relief Rouviere seeks, the Motions' speculation and conjecture fail to support the extraordinary relief requested. The Motions before the Court do not create an inference or support any finding that Judge Aaron was conflicted by virtue of his former law firm. Accordingly, the Court should deny these Motions in their entirety.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Proceedings in District Court

Plaintiff Jodi Rouviere[1] filed this lawsuit over six years ago, in May 2018, against DePuy Orthopaedics, Inc. n/k/a Medical Device Business Services, Inc. ("DePuy") and Howmedica Osteonics Corp. ("Stryker"), as well as several DePuy and Stryker corporate affiliates, including Johnson & Johnson. Dkt. 1 (Compl.).[2] The case was initially assigned to Judge Allison Nathan, who referred the action to Magistrate Judge Stewart Aaron for general pre-trial purposes. Dkt. 4.

In her complaint, Rouviere alleged various causes of action against DePuy and Stryker, including negligence, products liability, and breach of warranty claims relating to injuries Rouviere allegedly experienced due to an August 2012 total hip replacement surgery. Dkt. 26 (the "Amended Complaint") ¶¶ 6, 279–399. During that surgery, Rouviere's surgeon used medical device components manufactured by two different manufacturers: DePuy and Stryker.

---

[1]    Rouviere's husband, Andre Rouviere, joined her as a plaintiff to raise a derivative claim for loss of consortium. His claims were later dismissed and are irrelevant to the subject of these motions. He initially joined, but ultimately withdrew from Rouviere's appeal of the District Court's dismissal of Plaintiffs' claims.

[2]    Unless otherwise specified, all "Dkt. __" citations refer to No. 18-cv-04814.

Rouviere claimed that some of these components impinged—that is, rubbed against—one another, allegedly releasing metal particles into her body and causing "elevated metal levels and instability" as well as "pain and loss of range of motion." Am. Compl. ¶¶ 6, 11 and 134.

In December 2018, Rouviere voluntarily dismissed her claims against all of the defendants (including Johnson & Johnson) other than DePuy and Stryker. Dkt. 45, 46 and 52. In February 2020, the case was reassigned to Judge Lewis Liman. *See* February 6, 2020 Minute Entry.

The parties exchanged extensive discovery over the course of several years. DePuy made nine separate productions of documents, including thousands of pages of confidential and proprietary information. As is clear from the sheer number of orders issued by Judge Aaron at issue in Rouviere's Motion to Vacate, the parties also engaged in significant motion practice on discovery issues. *See* Motion to Vacate (challenging 14 orders issued by Judge Aaron).

On September 17, 2021, Judge Liman granted summary judgment to DePuy, rejecting Rouviere's claims as to DePuy on proximate causation grounds, Dkt. 318, and DePuy was terminated from the case. *See* September 17, 2021 Minute Entry. Rouviere quickly moved for reconsideration on multiple grounds, which Judge Liman denied in a thoroughly reasoned opinion in December 2021. Dkt. 325. From this point on, DePuy no longer participated in any substantive litigation at the district court and only Plaintiffs and Stryker proceeded before Judges Liman and Aaron.

After DePuy was removed from the case, Stryker moved forward with a dispositive motion of its own. Stryker wrote to Judge Liman on January 27, 2022 and requested a conference to discuss its plan to file a motion for summary judgment limited to the sole issue of whether Rouviere's claims were time-barred under New York law. Dkt. 330. Counsel for DePuy

did not participate in the status conference.  The Court granted that request for briefing on this dispositive issue, and Plaintiffs and Howmedica filed their respective papers.  *See* Dkt. 332, 346, and 347.  Although DePuy preserved its statute of limitations defense in its responsive pleading, counsel for DePuy did not participate in this briefing or any conferences on these issues.

On December 5, 2022—nearly a full year after DePuy had been "dismissed" and "terminated" from this case—Judge Liman granted summary judgment to Stryker on statute of limitations grounds, thereby rejecting all of Rouviere's remaining claims.  Dkt. 351.  The next day, on December 6, the clerk of court entered a final judgment, which stated that Stryker's summary judgment motion was granted, and that the case was closed.  Dkt. 352.  Rouviere appealed, which the Second Circuit docketed as No. 22-3205.  Dkt. 356.  At the court's direction, Rouviere filed an amended notice of appeal on December 30, 2022.  *See* Dkt. 358, 359.  In her amended notice of appeal, Rouviere also designated two orders entered by Judge Aaron relating to DePuy's successful motion to strike portions of an expert report.  Dkt. 232, 266[3]; *id.*

At Rouviere's request, on January 4, 2023, Judge Liman also entered a final judgment specifically naming DePuy.  Dkt. 360, 361.  Rouviere subsequently filed a second notice of appeal from this judgment, which the Second Circuit docketed as No. 23-50 and consolidated with 22-3205.  *See* Dkt. 362.

B.    <u>Second Circuit Appeal</u>

In April 2024, the Second Circuit affirmed Judge Liman's summary judgment decision for both DePuy and Stryker on statute of limitations grounds and rejected Rouviere's remaining arguments on appeal.  *See* Summary Order, *Rouviere v. Depuy Orthopaedics, Inc.*, No. 22-3205

---

[3]    Rouviere challenges Judge Aaron's orders at Dkt. Nos. 232 and 266 in her Motion to Vacate, among numerous other orders entered by Judge Aaron.

(2d Cir. April 5, 2024)[4] (also at Dkt. 363), attached to the *Declaration of J.T. Larson in Support of DePuy Orthopaedics, Inc.'s Memorandum of Law in Opposition to Plaintiff Jodi Rouviere's Motion for Relief from Judgment*, filed contemporaneously herewith, as Exhibit 1 (the "Summary Order"). The Second Circuit panel, comprised of Judges Reena Raggi, Eunice C. Lee and Beth Robinson, found that each of Rouviere's product liability and breach of warranty claims were time barred because they expired prior to the initiation of her lawsuit in May 2018. Larson Decl., Exh. 1 at 5–8. The Second Circuit also rejected Rouviere's arguments for the application of equitable estoppel and tolling. *Id.* at 8–10.

While Judge Liman had not granted DePuy summary judgment based on the statute of limitations, the Second Circuit held that they could affirm summary judgment for DePuy on such grounds because DePuy had raised the affirmative defense in its answer to Rouviere's Amended Complaint. *Id.* at 5. They also observed that the statute of limitations arguments were identical for DePuy and Stryker, and that Rouviere had had the opportunity to respond to such arguments in her opposition to Stryker's motion for summary judgment. *Id.*

Following the entry of the Second Circuit's order, Rouviere filed a petition for panel rehearing or a rehearing *en banc*, which was denied. *See* Second Circuit Dkt. 277, 286. Rouviere filed a petition for certiorari on or around August 29, 2024, and that petition is pending before the Supreme Court of the United States. *Jodi Rouviere v. Howmedia Osteonics Corporation dba Stryker Orthopaedics, and Medical Device Business Services, Inc. f/k/a DePuy Orthopaedics, Inc.*, Case No. 24-5945 (2024).

---

[4] All "Second Circuit Dkt. ___" citations refer to No. 22-3205.

### C.     Rouviere's Motion to Vacate and Evidentiary Hearing Motion

 Now, Rouviere brings this Motion to Vacate and Evidentiary Hearing Motion, seeking to challenge at least sixteen orders entered by Judges Liman and Aaron on the grounds that they were allegedly conflicted during the pendency of the litigation.  In her Motions, Rouviere makes numerous ethical allegations against not only Judges Liman and Aaron, but also accuses DePuy's and Stryker's counsel of misconduct—without providing any evidence in support her claims.  *See* Motion to Vacate at 10.  In her Evidentiary Hearing Motion, she seeks discovery from numerous parties in order to prove her theories outlined in her Motion to Vacate, including discovery from Judges Liman and Aaron, as well as third parties, including Judge Aaron's former law firm, and "the brokerage firm or third-party conducting transactions on behalf of and/or sending money to Judge Liman and Judge Aaron . . ."  Evidentiary Hearing Motion at 4.

## III.    ARGUMENT

Rouviere's Motions seek to capitalize on her discovery of Judge Liman's stockholdings to re-do nearly seven years of litigation in which her claims were thoroughly defeated.  To do so, her arguments attach outsized weight on the alleged influence Judge Liman's stockholdings had on his decision-making, obfuscate as to the two defendants involved in the case and the timing of decisions, and rely on pure speculation.  Rouviere's Motions should be denied in their entity for four reasons.  ***First***, any failure to recuse by Judge Liman was ***harmless error*** because there is no argument that he was conflicted as to Stryker and Stryker's motion for summary judgment— which was briefed and decided without any involvement by DePuy because it had already been "dismissed" and "terminated" from the case—resolves this entire dispute.  ***Second***, and relatedly, Judge Liman's summary judgment decision as to New York's statute of limitations was affirmed by an unconflicted panel of Second Circuit judges on appeal ***de novo***.  This standalone dispositive issue was decided by two unconflicted courts: Judge Liman, who was unconflicted as

to Stryker, and the Second Circuit, unconflicted as to all parties.  And, under clear Second Circuit precedent, even a conflicted decision can be cleansed, and need not be vacated, when it has been affirmed on *de novo* review by an unconflicted judge or panel of judges.  **Third**, the overwhelming majority of orders that Rouviere's Motions seek to vacate were discovery orders decided by Judge Aaron.  Rouviere's Motions provide mere speculation that Judge Aaron, by virtue of his former firm, was conflicted when he presided over this case, and speculation does not merit the extraordinary relief requested.  **Finally**, Rouviere is not entitled to any evidentiary hearing or discovery on these issues because, even viewing her allegations in the light most favorable, she is not entitled to relief.

A.      **Rule 60(b)(6) Motions Are Granted Sparingly and Only Upon a Showing of Exceptional Circumstances**

Even if Judge Liman likely should have recused himself from consideration of this case because he owned stock in DePuy's parent corporation,[5] a violation of 28 U.S.C. § 455 does not merit the dramatic relief requested here.  The Supreme Court has explained that "Section 455 does not, on its own, authorize the reopening of closed litigation but Federal Rule[ ] of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment."  *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 172 (2d Cir. 2022), *cert. dismissed*, 143 S. Ct. 480 (2022) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)) (internal quotations removed).

Moreover, motions brought pursuant to Fed. R. Civ. P. 60(b)(6) are granted sparingly, and only in exceptional circumstances.  "Rule 60(b)(6) is a catch-all provision that is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment

---

[5]      DePuy acknowledges that Judge Liman's annual financial disclosures indicate that he held stock in Johnson & Johnson, the parent company of DePuy, during the pendency of the litigation.

may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Holmes v. Apple Inc.*, No. 17-CV-4557 (RA), 2022 WL 2316373 (S.D.N.Y. June 27, 2022), *aff'd*, No. 22-1745, 2023 WL 6619358 (2d Cir. Oct. 11, 2023) (quoting *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020)) (internal quotations and citations omitted).[6]

Rouviere requests that the Court "liberally construe" her pleadings as a *pro se* litigant, but she still must make a substantial showing in order to succeed on her request. While courts "hold[] papers submitted by *pro se* litigants to a less rigorous standard than those drafted by attorneys, *pro se* litigants are not excused from the requirement that they produce highly convincing evidence to support a Rule 60(b) motion." *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 210 (S.D.N.Y. 2011) (*quoting Chiulli v. IRS*, 2006 WL 3008084, at *2 (S.D.N.Y. Oct. 20, 2006)).

In evaluating a motion under Fed. R. Civ. P. 60(b) when there has been a violation of § 455, "a new, unconflicted judge may, but is not required to, vacate the judgment or any decisions rendered by the conflicted judge." *ExxonMobil*, 44 F.4th at 172 (*citing Liljeberg*, 486 U.S. at 863–64). The Second Circuit applies a harmless error standard to § 455 violations. *See Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005); *accord ExxonMobil Oil Corp. v. TIG Ins. Co.*, 2021 WL 4803700, at *2 (S.D.N.Y. Oct. 14, 2021) (denying vacatur). In applying Rule 60(b) "it is appropriate [for the unconflicted judge] to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the

---

[6]     Rouviere styles her motion as a request for relief under Fed. R. Civ. P. 60(b)(6). For avoidance of doubt, to the extent the Court construes Rouviere's Motion to Vacate as a request under any of the preceding sections of Rule 60, for example due to the fact that Rouviere cites numerous cases considering applications under Rule 60(b)(1)–(5), DePuy respectfully submits that Fed. R. Civ. P. 60(b)(1)–(5) are inapposite.

judicial process." *Liljeberg*, 486 U.S. at 864. *Liljeberg* does not outline a formal or definitive test, and the factors are applied on a case-by-case basis. *ExxonMobil*, 44 F.4th at 172. As the Second Circuit made clear, vacatur is not required where a challenged decision has already been affirmed on *de novo* review by unconflicted judges. *Id*. at 173 ("Applying the principles from *Liljeberg*, we conclude that vacatur was not required in light of [an unconflicted district court judge's] *de novo* review.")

### B. Judge Liman's Failure to Recuse Was Harmless Error Because He Was Not Conflicted When He Ruled on Stryker's Summary Judgment Motion and That Decision Was Affirmed by a Panel of Unconflicted Second Circuit Judges on *De Novo* Review

Rouviere fails to show that Judge Liman's alleged conflict caused any harm for two related and independent reasons.

*First*, Plaintiffs do not present any argument that Judge Liman was conflicted as to co-defendant Stryker and Stryker's motion for summary judgment was dispositive. After Judge Liman granted DePuy's motion for summary judgment and denied Plaintiffs' motion to reconsider, DePuy was terminated from the case and played no role in the ongoing substantive litigation. Even under Rouviere's view of the record, Judge Liman was conflict-free as to Stryker. Stryker raised the issue of whether New York's statute of limitations barred this case in early 2022, after DePuy had received its own summary judgment. By sleight of hand, Rouviere conflates DePuy and Stryker to gloss over this important timing issue and exaggerate the significance of Judge Liman's stock ownership. Because Judge Liman was not conflicted as to Stryker, his decision granting Stryker's motion for summary judgment is not a proper subject of Rouviere's Rule 60 motion.

*Second*, even if Judge Liman's statute of limitations order were tainted—and it is not—a panel of non-conflicted judges on the Second Circuit have already reviewed that decision and

affirmed it on a *de novo* review.  Rouviere has made no allegation that any of the Second Circuit judges who affirmed Judge Liman's summary judgment orders were conflicted.  Nor can she. None of the Circuit Judges on the panel in Rouviere's appeal—Judges Reena Raggi, Eunice C. Lee and Beth Robinson—held stock in DePuy or Johnson & Johnson during 2022 or 2023. *See* Larson Decl., Exhs. 2–7.  The Second Circuit panel gave no deference to Judge Liman's prior decision and allowed Rouviere the opportunity to be heard at oral argument.  Rouviere appeared, presented oral argument before this panel, and made it clear that she was challenging the very same summary judgment decision and discovery orders that the Motions now seek to re-litigate.  Despite Rouviere's briefing and oral argument, the Second Circuit's *de novo* application of New York law reached the exact same conclusion as Judge Liman: Rouviere's own pleadings and expert witness opinions established that her case was time-barred.

Rouviere's Motions try to stretch Judge Liman's stock ownership beyond its farthest possible reach.  When the court dives into the record, three facts become clear: Judge Liman was not conflicted as to Stryker, Judge Liman granted Stryker's summary judgment motion as to New York's statute of limitations *after* DePuy had already ceased participating in the litigation, and an impartial Second Circuit panel reached the exact same holding on this dispositive issue and extended the holding to DePuy.  Accordingly, Rouviere's Motions, even taken in the light most favorable to her, fail to create a *prima facie* showing that Judge Liman's stock ownership affected his statute of limitations analysis or the outcome of this case.  The Court should deny the Motions.

C.    **The Underlying Orders Do Not Risk Prejudice to the Parties, Other Cases, or the Judicial Process**

Beyond the lack of any evidence of harm, the *Lileberg* factors all firmly support denial of the instant vacatur motion as to Judge Liman's summary judgment decision.

*First*, with respect to the risk of injustice to the parties in this case, Rouviere identifies no basis to conclude that Judge Liman would have ruled any differently but for having owned stock in Johnson & Johnson, which is underscored by the Second Circuit's affirmance of his decisions. Furthermore, Rouviere can point to no evidence that Judge Liman was even aware of the conflict, let alone how it specifically impacted his adjudication of the issues in this case. As Rouviere acknowledges in her Motion to Vacate, in other cases where Judge Liman has discovered a conflict, he has disclosed it the Clerk of Court of the Southern District of New York, who subsequently notified to the parties in the case (in both instances due to his wife's stockholdings). *See Litovich v. Bank of Am. Corp.*, 106 F.4th 218, 223–24 (2d Cir. 2024); s*ee also* Motion to Vacate, Exh. 5 (letter from clerk of court to the parties in *Tiffany and Company v. Costco Wholesale Corporation*, No. 13-cv-01041). He issued no such letter here, suggesting only that the conflict was not brought to his attention until Rouviere filed the instant motion.

Rouviere asks this Court to reopen the case so that she can start from scratch, relitigating the entirety of her claims after six months has passed since the Second Circuit affirmed Judge Liman's orders. Permitting her to do so would pose a significant hardship and injustice to DePuy. *See ExxonMobil*, 44 F.4th at 173–74 ("There is no reason to force the parties to relitigate the entire case, likely causing significant delay, in the absence of any basis to conclude that doing so would lead to a more just outcome."); *see also Brock v. Zuckerberg*, No. 21-1796, 2022 WL 1231044, at *4 (2d Cir. Apr. 27, 2022) (denying vacatur of district court's (Judge Liman) decision on motion to dismiss where risk of injustice to the parties was "extremely low," even though other two factors weighed in favor of vacatur).

*Second*, there is minimal risk that the denial of Rouviere's requested relief will produce injustice in other cases. Here, as noted above, the summary judgment decisions were affirmed

on appeal by a panel of unconflicted judges, and Rouviere has had ample opportunity to challenge Judge Liman's orders, as evidenced by her appeal of his summary judgment orders to the Second Circuit, as well as her subsequent petition for rehearing of that panel's affirmance. *See supra* at 5; *ExxonMobil,* 44 F.4th at 174 (observing that risk of harm in future cases is minimal where "[movant] has had ample opportunity to challenge [conflicted judge's] rulings both in the district court and on appeal").

*Third*, any risk to the public's confidence in the judicial process by denying the motion is low. While any violation of 28 U.S.C. § 455 should be taken seriously, there is no indication that Judge Liman knowingly violated the federal disqualification requirements. His analysis was given a "fresh look by three unconflicted judges." *Holmes*, 2023 WL 6619358 at *1. Furthermore, "[t]he public also has an interest in speedy adjudication of disputes, an interest that would not be furthered by forcing the parties to re-brief the same issues. . ." *ExxonMobil,* 44 F.4th at 174. Here, the public has an interest in civil disputes being resolved in fewer than seven years.

### D. Rouviere's Motion Should Be Denied With Respect to Judge Aaron's Numerous Orders

#### 1. There Is No Basis to Find That the Payments Judge Aaron Received From Arnold & Porter Pursuant to His Partnership Agreement Constitute a Violation of 28 U.S.C. § 455

Rouviere's motion should also be denied with respect to her request to vacate numerous orders issued by Judge Aaron over the course of the litigation. After identifying Judge Liman's alleged conflict, Rouviere presumably sought a means to re-do as much of the prior unsuccessful litigation as possible. Toward that end, she has now also seized upon Judge Aaron's receipt of partnership payments from his former firm, Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), to craft an attenuated theory for his disqualification as well, based only on the fact that

Arnold & Porter, per the firm website, has at some point has represented Johnson & Johnson. There is no basis in law to support a finding of a violation of 28 U.S.C. § 455 based on this tenuous connection and Rouviere's conclusory and unsubstantiated allegations of conflict.

Judge Aaron was a partner at Arnold & Porter prior to taking the bench. *See* Hon. Stewart D. Aaron: Biography, Practicing Law Institute, https://www.pli.edu/faculty/hon.-stewart-d.-aaron-i1682951 (accessed November 20, 2024). Based on his financial disclosure reports, he has been receiving payments pursuant to the firm's partnership agreement for a five-year term starting in 2019, which is typical for partners who have departed their firm, for example, for judicial service. Rouviere asserts, with no support, that Johnson & Johnson was the "principal client and revenue maker" for Arnold & Porter, but the only evidence that Plaintiff proffers in support of this statement is a screenshot of Arnold & Porter's website simply identifying Johnson & Johnson as an example of a client of the firm. Motion to Vacate at 21, Exh. 3.

Furthermore, there is no indication on the face of Judge Aaron's financial disclosures that the payments he has received as part of Arnold & Porter's partnership agreement are related to the profitability of the firm, and Rouviere makes no specific allegations of hostility or bias, other than generic and conclusory allegations that this theoretical conflict caused Judge Aaron to rule against Rouviere on at least 14 different occasions.

There is no basis to conclude that Judge Aaron should have recused himself under 28 U.S.C. § 455 based on the conclusory allegations in Rouviere's Motion to Vacate. As noted above, under 28 U.S.C. § 455(a), a judge should disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." It is also true that a judge must recuse himself, for example, "where in private practice he served as lawyer in the matter in controversy…" 28 U.S.C. § 455(b)(2), but there is so such obvious conflict here. Rouviere cites no authority, nor

has DePuy identified any, directing a judge who continues to receive payments (*e.g.* partnership or retirement payments) from his former firm to disqualify himself from any case involving a party that has been a client of his former firm. A rule requiring disqualification in any such case would also prove to unworkable, as it would require a sitting judge to maintain a list of active firm clients of his former firm of employment, not to mention inconsistent with the already capacious ethical obligations for federal judicial officers. *See* 28 U.S.C. § 455 and Code of Conduct for United States Judges.

Here, the payments Judge Aaron receives are temporary and relate to his former partnership agreement at Arnold & Porter. Arnold & Porter has not appeared in this lawsuit, and there is no indication that Judge Aaron has a vested interest in the ongoing financial position of Arnold & Porter, let alone its relationship with Johnson & Johnson. On this strained argument, Rouviere asks this Court to reopen some 14 discovery orders issued by Judge Aaron, and a nearly blank slate to relitigate her case. The absence of any specific allegations of bias—coupled with Rouviere's motion for an evidentiary hearing—demonstrate her requests for discovery are a mere fishing expedition so that she might get a second bite at the apple and reopen discovery in her case.

### 2. Even if Judge Aaron Were Conflicted, Rouviere's Motion Would Fail to Satisfy the Lileberg *Factors Necessary for Vacatur*

Even if we were to assume that Judge Aaron was conflicted here, vacatur of the various orders identified in Rouviere's Motion to Vacate would be inappropriate. Rouviere has not made the substantial showing or "exceptional circumstances" necessary to succeed on a Rule 60(b)(6) motion. *Howard*, 866 F. Supp. 2d at 210; *see also Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990).

Many of Judge Aaron's orders at issue here have already been affirmed by Judge Liman or the Second Circuit. In his summary judgment decision, Judge Liman affirmed a number of Judge Aaron's orders at issue in his decision granting summary judgment. Dkt. 318. Furthermore, as noted above, the Second Circuit has also dismissed claims by Rouviere challenging two of Judge Aaron's decisions concerning DePuy's motion to strike portions of an expert report. *See supra* at 4–5.

Rouviere's request to vacate Judge Aaron's orders would also fail to satisfy the *Lileberg* factors. 486 U.S. at 864. There is no evidence that denial of Rouviere's requested relief would result in injustice to the parties, where Rouviere has only made conclusory allegations of bias on the part of Judge Aaron, and offered no evidence demonstrating that Judge Aaron would have ruled differently had he not been receiving partnership payments from Arnold & Porter.

There is minimal risk that the denial of relief will produce injustice in other cases, nor undermine the public's confidence in the judicial process where here, the alleged conflict is so attenuated. The public's interest in "speedy adjudication" and judicial efficiency are also not served by requiring the parties to relitigate the numerous orders at issue in Rouviere's motion. *See ExxonMobil,* 44 F.4th at 174.

### E.     Rouviere's Request for an Evidentiary Hearing Should Be Denied

Rouviere's request for an evidentiary hearing should also be denied. As she correctly observes, "[i]n the Rule 60(b) context, a party is not automatically entitled to an evidentiary hearing," and "[a]s a general matter, in the Rule 60(b) context, evidentiary hearings should be held to decide disputes concerning material issues of fact," *Saada v. Golan*, No. 21-876-CV, 2021 WL 4824129, at *3 (2d Cir. Oct. 18, 2021) (internal citations and quotations omitted), such as allegations of attorney error or negligence. *See Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015).

Permitting Rouviere to take discovery is inappropriate and unnecessary here as there are no material issues of fact in dispute that are necessary for adjudication of Rouviere's Motion to Vacate. Here, the parties do not dispute that Judge Liman likely should have been recused under 28 U.S.C. § 455. However, because there is no argument that he was conflicted as to Stryker when granting Stryker's motion for summary judgment, which is the dispositive order here, and further because his summary judgment decisions were affirmed by the Second Circuit on a *de novo* review. Finally, there is no reason to believe that he was aware of this conflict at the time of his decisions.

In addition, there is no need for discovery or an evidentiary hearing concerning Judge Aaron's so-called conflict. Even if all the assertions in Rouviere's motion were true (for example, that Johnson & Johnson was a principal client and revenue driver for Arnold & Porter), Rouviere has pointed to no authority that Judge Aaron would have been conflicted under 28 U.S.C. § 455. Rouviere points to no specific facts demonstrating bias on the part of Judge Aaron, *cf. Cablevision Sys. New York City Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006), relying on conclusory allegations to make her case for additional discovery on the subject.

## IV.    CONCLUSION

DePuy respectfully requests that the Court deny Rouviere's Motion to Vacate and Motion for an Evidentiary Hearing.

Dated:  December 6, 2024

Respectfully Submitted,

/s/ J.T. Larson
Joseph G. Eaton (#15731-29)
J.T. Larson (#31392-29)
Barnes & Thornburg, LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Email: joe.eaton@btlaw.com
        jt.larson@btlaw.com

James F. Murdica
Jessica A. Metzger
BARNES & THORNBURG LLP
390 Madison Avenue
12th Floor
New York, New York 10017-2509
Email: jmurdica@btlaw.com
        jametzger@btlaw.com

*Attorneys for DePuy Orthopaedics, Inc. nka
Medical Device Business Service, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was electronically served on the following counsel of record via the Court's electronic filing system on this 6th day of December, 2024:

Jodi Rouviere
10950 SW 84 Ct.
Miami, FL 33156

Paul E. Asfendis
GIBBONS, P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119

*/s/ J.T. Larson*