UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                     :

JODI ROUVIERE,                             :
                                       :
                      Plaintiff,    :         1:18-cv-4814-GHW
                                       :
        -against-                    :    MEMORANDUM OPINION &
                                       :             ORDER
DEPUY ORTHOPAEDICS, INC., *et al.*,   :
                                       :
                  Defendants.   :
                                       :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/25

**GREGORY H. WOODS**, United States District Judge:

      Plaintiff Jodi Rouviere litigated this product-liability action against Defendants DePuy

Orthopaedics ("DePuy") and Howmedica Osteonics Corporation ("Howmedica") for six years,

from 2018 to 2024, through multiple motions for summary judgment and an appeal to the Second

Circuit. In the end, her claims were dismissed. The district judge granted summary judgment to

both Defendants, and the Second Circuit, after conducting a *de novo* review, unanimously affirmed.

      Plaintiff has since discovered financial conflicts that the parties agree warranted the district

judge's recusal. She also claims that the magistrate judge who presided over the case's general

pretrial matters was conflicted because he received post-employment compensation while presiding

over the case from a law firm that has done work for DePuy's parent company in the past. Plaintiff

seeks vacatur of both judges' rulings against her pursuant to Fed. R. Civ. P. 60(b)(6) on the ground

that the judges were allegedly conflicted when the rulings were issued. She also seeks an evidentiary

hearing regarding the alleged conflicts.

      The Court concludes that neither vacatur nor an evidentiary hearing are warranted in this

case. The magistrate judge was not required to recuse merely by virtue of his receipt of

compensation from a law firm that at some point represented DePuy's parent company. And while

the district judge was indisputably conflicted, a panel of judges from the Second Circuit Court of

Appeals has since reviewed the judge's rulings *de novo* and come to the same conclusions that he did.

Because these circumstances do not justify forcing the parties to relitigate this entire case, and

because the Court's conclusion is based on an undisputed factual record, Plaintiff's motions for

vacatur and for an evidentiary hearing of the judges' rulings are DENIED.

## I.    BACKGROUND[1]

### A.  The Underlying Proceedings

Plaintiff Jodi Rouviere brought this action on May 31, 2018, alleging various product-liability

claims arising from complications from a hip-replacement surgery in 2012.  Dkt. No. 1 ¶¶ 279–395.

Medical parts made by the defendants had allegedly impinged on one another and caused Plaintiff a

wide variety of conditions and side effects.  *See id.*; *see also* Dkt. No. 364 at 1 ("Memorandum").

Plaintiff's husband Andre Rouviere was a co-plaintiff in the action, bringing derivative claims

for loss of consortium.  Dkt. No. 1 ¶¶ 396–99.  Mr. Rouviere is an attorney based in Florida.  On

October 2, 2019, he moved to appear *pro hac vice* on behalf of Plaintiff.  Dkt. No. 88.  His motion

was granted the next day.  Dkt. No. 89.  Outside counsel also represented the plaintiffs beginning in

January 2021 through the end of summary-judgment proceedings in December 2022.  *See* Dkt. Nos.

284, 369.

On June 5, 2018, the district judge to whom the action was originally assigned referred the

action to the assigned magistrate judge ("the Magistrate Judge") for general pretrial matters.  Dkt.

No. 4.

Plaintiff and her husband originally brought the action against eight defendants:  DePuy

Orthopaedics, Inc. ("DePuy"); Howmedica Osteonics Corporation ("Howmedica," and together

---

[1] The following facts are undisputed and are drawn from the parties' submissions and from the trial-court and appellate dockets in this case.  *Passman v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LGS), 2025 WL 1284718, at *1 (S.D.N.Y. May 2, 2025) (drawing facts on Rule 60(b) motion from case docket and parties' submissions).

with DePuy, "Defendants"); Depuy International, Limited; Depuy Products, Inc.; Johnson &
Johnson Services, Inc.; Johnson & Johnson, Inc. (together with Johnson & Johnson Services, Inc.,
"Johnson & Johnson"); Stryker Corporation; and Stryker Sales Corporation.  Dkt. No. 1 at 1.
Relevant here, Johnson & Johnson is the parent company of DePuy.  Memorandum at 7; Dkt. No.
379 at 1 ("Howmedica Opposition"); Dkt. No. 381 at 7 ("DePuy Opposition").

In December 2018, the plaintiffs dismissed their claims against six of the defendants,
including the Johnson & Johnson entities, leaving only DePuy and Howmedica.  Dkt. Nos. 43, 44,
51, 52.  On December 7, 2018, DePuy filed an answer to the plaintiffs' operative complaint.  Dkt.
No. 39.  Howmedica filed an answer one month later on January 7, 2019.  Dkt. No. 54.

The parties engaged in extensive discovery and discovery motion practice over the next
several years.  From January 2019 through December 2022, the Magistrate Judge issued at least
seventeen orders resolving substantive discovery motions and disputes, *see* Dkt. Nos. 83, 104, 115,
140, 144, 150, 155, 157, 162, 167, 193, 221, 232, 266, 296, 307, 320, in addition to resolving various
disputed sealing and scheduling motions, *see, e.g.*, Dkt. Nos. 128, 195, 278, 354.

On February 6, 2020, while the parties were conducting discovery, the action was reassigned
to a new district judge (the "Recused Judge").

### B.  The Challenged Orders

On October 25, 2020, the Magistrate Judge granted Howmedica's motion to disqualify
Plaintiff's expert because the expert had worked as a consultant for Howmedica in other litigations
with significantly overlapping issues, Dkt. No. 193 at 4, and had received substantial amounts of
confidential information from Howmedica in the process, *id.* at 4–5.  The Magistrate Judge extended
the expert-discovery deadline to permit the plaintiffs to submit a report by an alternative expert
"regarding the same scope of subject areas as were covered by the [disqualified expert]."  *Id.* at 6.

On November 9, 2020, the plaintiffs submitted a replacement report pursuant to the

Magistrate Judge's October 25, 2020 order. Dkt. No. 214-1. In addition to opining about Howmedica's medical devices, the report also opined about DePuy's. *See, e.g.*, *id.* ¶¶ 16–22. On November 13, 2020, DePuy moved to strike the DePuy-related portions of the report. Dkt. No. 214 at 1. On November 24, 2020, the Magistrate Judge granted DePuy's motion because the expert's testimony regarding DePuy did not fall within the "same scope of subject areas" that were covered by the expert he was replacing. Dkt. No. 232 at 5–6; Dkt. No. 193 at 6.

On December 5, 2020, the plaintiffs moved for reconsideration of the Magistrate Judge's order striking the DePuy-related portions of their expert report. Dkt. No. 244. The Magistrate Judge denied their motion on December 19, 2020. Dkt. No. 266.

On January 4, 2021, the plaintiffs filed objections before the Recused Judge to the Magistrate Judge's November 24, 2020 order striking the DePuy-related portions of their expert report and his December 19, 2020 order denying reconsideration of the November 24, 2020 order. Dkt. No. 267.

Meanwhile, on October 21, 2020, DePuy moved for summary judgment before the close of discovery. Dkt. No. 178; *see* Dkt. No. 128. On September 17, 2021, the Recused Judge issued a decision granting DePuy's motion for summary judgment and dismissing the action against DePuy. Dkt. No. 318. The Recused Judge concluded, among other things, that the plaintiffs had failed to offer expert testimony in support of their defective-design claims against DePuy, *id.* at 24, and had failed to introduce any material disputes of fact that DePuy's alleged failures to warn of their products' defects proximately caused the plaintiffs' injuries, *id.* at 32–33. In the same decision, the Recused Judge overruled the plaintiffs' objections to the Magistrate Judge's orders striking portions of their expert report. *Id.* at 7–23.

On March 18, 2022, after discovery closed, Howmedica moved for summary judgment on the ground that the plaintiffs' claims were time-barred. Dkt. No. 332. On December 5, 2022, the Recused Judge granted summary judgment in favor of Howmedica on limitations grounds and

dismissed the action against Howmedica.  Dkt. No. 351.  The next day, the Clerk of Court entered judgment against the plaintiffs and closed the case.  Dkt. No. 352.

### C.  The Appeal

On December 22, 2022 and January 10, 2023, Plaintiff appealed the Recused Judge's orders granting summary judgment to Defendants to the United States Court of Appeals for the Second Circuit.  Dkt. Nos. 356, 362.  She proceeded *pro se* on appeal, though she was represented by counsel in the district court proceedings.  Dkt. No. 363 at 3 (the "Appellate Decision").  Plaintiff's husband did not appeal the dismissal of his claims.  *Id.* at 4 n.2.

Plaintiff's appeal was fully briefed by September 12, 2023.  *Rouviere v. Howmedica, et al.*, No. 22-3205 (L), Dkt. Nos. 150, 213, 217, 219.  Oral argument was held on April 2, 2024.  *Rouviere*, No. 22-3205 (L), Dkt. Nos. 265, 266.

On April 5, 2024, the Second Circuit issued a summary order unanimously affirming the dismissal of Plaintiff's claims against Defendants.  Appellate Decision at 2.  The three-judge panel conducted a *de novo* review of the Recused Judge's summary-judgment decisions, *id.* at 4, and upon review, concluded that "[t]he record reveals no genuine dispute of material fact" that Plaintiff's claims against both Defendants were "time-barred," *id.* at 5.  The panel observed that, although the Recused Judge had not granted summary judgment to DePuy on limitations grounds, DePuy's limitations defense was preserved because it was raised as an affirmative defense in DePuy's answer to the operative complaint, *id.* (citing *Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 124–25 (2d Cir. 1991)), and a district judge's rulings may be affirmed "on any ground with support in the record, including grounds upon which the district court did not rely," *id.* at 4–5 (quoting *Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022)).  The panel held that DePuy, in addition to Howmedica, was entitled to summary judgment on each of Plaintiff's claims based on the applicable statutes of limitations.  *Id.* at 6–10.  Accordingly, it affirmed the Recused Judge's orders on

limitations grounds.  *Id.* at 10.

### D.  The Alleged Conflicts

On July 2, 2024, the Second Circuit issued its decision in *Litovich v. Bank of Am. Corp.*, 106 F.4th 218 (2d Cir. 2024), a case involving conflicts in an action before the Recused Judge.  The Second Circuit held that recusal had been required and that vacatur of the Recused Judge's decision dismissing the case was warranted.  *Id.* at 228.

On July 3, 2024, Plaintiff read an article about *Litovich*.  Memorandum, Ex. 6 ¶ 2 ("Rouviere Declaration").  The article "prompted [her] to investigate potential conflicts of interest" involving the Recused Judge and the Magistrate Judge.  *Id.* ¶ 3.  She looked through both judges' annual financial disclosures, published pursuant to the Ethics in Government Act, 5 U.S.C. § 13101, *et seq.* *See id.*

The conflicts Plaintiff alleges stem from information included in the judges' public financial disclosures.  According to the Recused Judge's financial disclosures, he owned stock in Johnson & Johnson, DePuy's parent company, while presiding over the action.  Memorandum, Ex. 4 at 10.  He bought more stock in Johnson & Johnson on March 11, 2021, while discovery was still ongoing and while DePuy's motion for summary judgment was pending.  *Id.* at 17; *see* Dkt. No. 178.  He sold Johnson & Johnson stock on December 1, 2021, after ruling on Depuy's motion for summary judgment and before Howmedica moved for summary judgment.  Memorandum, Ex. 4 at 17; *see* Dkt. No. 332.  The parties do not dispute that the Recused Judge's ownership of and transactions in Johnson & Johnson stock required his recusal from the case.  *See* Memorandum at 7; Howmedica Memorandum at 2–3; DePuy Memorandum at 16.

According to the Magistrate Judge's financial disclosures, he received five fixed annual payments from Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), at which he was a partner before taking the bench, while he presided over Plaintiff's action.  Memorandum, Exs. 1–2

(disclosing fixed annual payments of $168,723.00 "for a five-year term starting in 2019").  The payments were made pursuant to a "nonemployee compensation agreement" related to Arnold & Portner's "Articles of Partnership."  Memorandum, Ex. 1 at 1; Memorandum, Ex. 2 at 1.  According to Arnold & Porter's website, its "Consumer Products group" at some point "help[ed]" and "advis[ed]" Johnson & Johnson, among many other major clients.  Memorandum, Ex. 3.  The website does not specify when Arnold & Porter did work for Johnson & Johnson or in what capacity.  *See id.*  Plaintiff does not contend that the Magistrate Judge did any work for Johnson & Johnson while at Arnold & Porter.  *See* Memorandum at 7.  She contends that his receipt of payments from Arnold & Porter alone establishes a disqualifiable conflict.  *See id.*

In their opposition briefs, Defendants noted that a panel of three judges on the Second Circuit had reviewed the record *de novo* and concluded that Plaintiff's claims must be dismissed.  Howmedica Memorandum at 1; DePuy Memorandum at 6–7.  In response, Plaintiff introduced the financial disclosures of one of the three judges on the panel (the "Circuit Judge").  Reply at 5–6; Reply, Ex. 1.  According to the Circuit Judge's financial disclosures, she received family income from Seyfarth Shaw LLP ("Seyfarth") through her husband, who is a partner at the firm.  Reply, Ex. 1 at 2.  While Plaintiff's appeal was pending, Seyfarth was representing Howmedica in a separate litigation in Colorado, *ORP Surgical, LLP v. Howmedica Osteonics Corp.*, No. 1:20-cv-01450 (RBJ), (D. Colo. 2020).  Plaintiff does not contend that the Circuit Judge's husband represented Howmedica in that case or in any other capacity.  *See* Reply at 5–6.  She contends that the receipt of payments by the Circuit Judge's spouse from Seyfarth alone establishes a disqualifiable conflict.  *See id.*

### E.  Procedural History

Plaintiff moved for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6) ("Rule 60(b)(6)") from certain of the Magistrate Judge's and Recused Judge's orders on October 31, 2024.  Dkt. No. 364.  She brought the motion *pro se*, and her husband has not joined in the motion.  *See id.*

at 1; Dkt. No. 366 (motion by Andre Rouviere to withdraw as counsel). She seeks vacatur of thirteen of the Magistrate Judge's orders, including his orders striking portions of her expert report and denying her motion for reconsideration. *See* Memorandum at 8–11; Dkt. Nos. 83, 104, 115, 120, 136, 140, 144, 153, 157, 193, 232, 266, 296. She seeks vacatur of both of the Recused Judge's orders granting summary judgment to DePuy and Howmedica, Dkt. Nos. 318, 351, and of the Recused Judge's order overruling her objections to the Magistrate Judge's orders striking parts of her expert report and denying reconsideration, Dkt. No. 318 at 7–23. *See* Memorandum at 11–18.

On November 7, 2024, following Plaintiff's motion for relief from judgment, this case was reassigned to this Court. *See* Dkt. No. 367.

Plaintiff moved for an evidentiary hearing regarding her motion for relief from judgment on November 13, 2024. Dkt. No. 373 ("Hearing Memorandum"). Her motion seeks live testimony from the Magistrate Judge, the Recused Judge, Arnold & Porter, and any third-party firms that facilitated payments "related . . . to Johnson & Johnson" to the Recused Judge and the Magistrate Judge. *Id.* at 3–4.

Howmedica opposed Plaintiff's motions for relief from judgment and for an evidentiary hearing in an omnibus brief on December 6, 2024. Dkt. No. 379 (Howmedica Opposition); Dkt. No. 380 ("Asfendis Declaration"). DePuy did the same. Dkt. No. 381 (DePuy Opposition); Dkt. No. 383 ("Larson Declaration").

Plaintiff filed an omnibus reply brief in support of both of her motions on January 8, 2025. Dkt. No. 389 ("Reply"). As discussed, Plaintiff's reply brief argued, for the first time, that one of the three judges on the panel that affirmed the Recused Judge's rulings was conflicted. *Id.* at 5–6. The Court granted Defendants' request to file a sur-reply in response to those arguments on January 11, 2025. Dkt. No. 388. Defendants filed a joint sur-reply on January 17, 2025. Dkt. No. 392 ("Sur-Reply"). The Court granted Plaintiff's request to respond to Defendants' sur-reply on January

21, 2025.  Dkt. No. 394.  Plaintiff filed a response to the Sur-Reply on January 28, 2025.  Dkt. No.

395 ("Sur-Sur-Reply").[2]

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 60(b)(6)

Plaintiff moves to vacate the rulings made by the Recused Judge and the Magistrate Judge

pursuant to Rule 60(b)(6).  Memorandum at 1.  Rule 60(b) provides that "[o]n motion and just

terms, the court may relieve a party or its legal representative from a final judgment, order, or

proceeding for the following reasons:"

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been
> discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
> misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier
> judgment that has been reversed or vacated; or applying it prospectively is no longer
> equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Rule 60(b)(6) is a "catch-all provision" that may only be invoked "when the

asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule."  *Metzler Inv. Gmbh v.*

*Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (quotation omitted).  Like any motion

brought under Rule 60(b), a motion for relief from judgment under Rule 60(b)(6) "is generally not

favored and is properly granted only upon a showing of exceptional circumstances."  *United States v.*

*Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).  "The burden is on the moving party to

---

[2] The parties dispute whether Plaintiff's contentions regarding the Circuit Judge are properly before the Court given that they were raised for the first time in her Reply Brief.  *See* Dkt. Nos. 387, 390, 393.  Even assuming Plaintiff's contentions were untimely, *see United States v. Pepin*, 514 F.3d 193, 203 n.13 (2d Cir. 2008) (observing that courts "generally do not consider issues raised in a reply brief for the first time" because the nonmovant "may not have an adequate opportunity to respond"), the Court "ha[s] discretion to consider" arguments first raised in a reply brief, *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).  Since Defendants were "afforded the opportunity to file a surreply" responding to Plaintiff's contentions regarding the Circuit Judge, the Court has considered the contentions in Plaintiff's reply brief.  *Videri, Inc. v. ONAWHIM (OAW) Inc.*, No. 1:23-cv-2535 (GHW), 2024 WL 4027980, at *10 n.8 (S.D.N.Y. Sept. 3, 2024) (quoting *Sacchi v. Verizon Online LLC*, No. 14-cv-423 (RA), 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015).

demonstrate that it is entitled to relief, and courts generally require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quotation marks and alterations omitted).

The decision whether to grant relief under Rule 60(b) "is addressed to the sound discretion of the district court." *Id.* "In exercising that discretion, courts aim to 'strike[] a balance between serving the ends of justice and preserving the finality of judgments.'" *Id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Rule 60(b) "should be broadly construed to do substantial justice," but at the same time, "final judgments should not be lightly reopened." *Nemaizer*, 793 F.2d at 61 (internal quotation marks and citations omitted).

Because Plaintiff is proceeding *pro se*, she is entitled to "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Accordingly, the Court construes Plaintiff's submissions "liberally," interpreting them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotations and emphases omitted). This does not absolve Plaintiff of her burden of demonstrating that there are "exceptional circumstances" in this case that warrant vacatur. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quotation omitted). "A party seeking vacatur under Rule 60(b), whether proceeding *pro se* or not, must present highly convincing evidence, show good cause for the failure to act sooner, and show that no undue hardship would be imposed on the parties." *Lawtone-Bowles v. U.S. Bank Nat'l Ass'n as Tr. for Holders of MLMI Tr. 2002-AFC Asset-Backed Certificates, Series 2002-AFC1*, No. 19-cv-05786 (PMH), 2021 WL 1518329, at *2 (S.D.N.Y. Apr. 16, 2021), *aff'd sub nom. Lawtone-Bowles v. Brown*, No. 21-1242-cv, 2022 WL 839280 (2d Cir. Mar. 22, 2022) (internal quotation marks and citations omitted); *accord Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (explaining that *pro se* plaintiff was required to make these showings on his Rule 60(b) motion).

**B.  28 U.S.C. § 455**

Plaintiff argues that vacatur is warranted because the rulings in the Underlying Proceedings were issued by judges who should have recused themselves pursuant to 28 U.S.C. § 455 ("Section 455" or "§ 455").  Section 455 provides the statutory framework for when a presiding judge must "disqualify himself."  28 U.S.C. § 455; *see Passman*, 2025 WL 1284718, at *3; *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably questioned."  28 U.S.C. § 455(a).  Section 455(a) is a "catchall recusal provision."  *Litovich*, 106 F.4th at 224 (quotation omitted).  It "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown."  *Chase Manhattan Bank*, 343 F.3d at 127.  "The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude."  *Id.*

In addition to the catchall recusal provision in Section 455(a), Section 455(b) enumerates particular circumstances where recusal is required.  Relevant here, Section 455(b) requires recusal if a judge or magistrate judge "knows that he . . . or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(4).  "Section 455(c) imposes the additional duty that a federal judge 'should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse.'"  *Litovich*, 106 F.4th at 225 (quoting 28 U.S.C. § 445(c)).  With certain inapplicable exceptions, Section 455(d)(4) defines "financial interest" as an "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party."  28 U.S.C. § 455(d)(4).

"Section 455(b)(4) requires disqualification when a judge knows of his or her financial interest in a party." *Chase Manhattan Bank*, 343 F.3d at 127. Section 455(a), by contrast, is not concerned with what judge knows, but rather "the appearance of partiality." *Litovich*, 106 F.4th at 225. One instance where "an appearance of partiality requiring disqualification under Section 455(a) results" is "when a reasonable person would conclude that a judge was violating Section 455(b)(4)." *Chase Manhattan Bank*, 343 F.3d at 128. Where "'the record lacks clarity on precisely when the district judge learned of the conflict,'" "[a] court should focus 'on § 455(a), rather than § 455(b)(4) itself.'" *Passman*, 2025 WL 1284718, at *4 (quoting *Litovich*, 106 F.4th at 226).

While "Section 455 does not, on its own, authorize the reopening of closed litigation," Rule 60(b) "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). "In *Liljeberg*, the Supreme Court held in the context of a Rule 60(b) motion that in determining how best to address a violation of § 455(a), three factors are considered: (i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process." *United States v. Amico*, 486 F.3d 764, 777 (2d Cir. 2007) (citing *Liljeberg*, 486 U.S. at 863).

### C. Evidentiary Hearing on a Motion Pursuant to Fed. R. Civ. P. 60(b)

Plaintiff has also moved for an evidentiary hearing regarding her motion under Rule 60(b). Hearing Memorandum at 1. "Whether to grant a hearing on such a motion[] is within the discretion of the court." *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15-cv-6519 (KAM) (RLM), 2023 WL 3455057, at *23 (E.D.N.Y. May 15, 2023) (collecting cases); *accord Flaks v. Koegel*, 504 F.2d 702, 712 (2d Cir. 1974) (reviewing denial of evidentiary hearing on Rule 60(b) motion for abuse of discretion); *Saada v. Golan*, No. 21-876-cv, 2021 WL 4824129, at *3 (2d Cir. Oct. 18, 2021) (summary order) (same). "Generally, evidentiary hearings are appropriate only when there is a dispute of material

12

fact." *Wells v. Miller*, No. 21-cv-11231 (LJL), 2023 WL 3948628, at *5 (S.D.N.Y. June 12, 2023)

(collecting cases); *accord Saada*, 2021 WL 4824129, at *3 ("As a general matter, in the Rule 60(b)

context, evidentiary hearings should be held to decide disputes concerning 'material issued of fact.'"

(quoting *Flaks*, 504 F.2d at 712)).

## III.    DISCUSSION

The Court concludes that vacatur is not warranted in this case.  Nothing in the record

suggests that the Magistrate Judge should have recused under Section 455(a), and accordingly,

nothing in the record suggests that Plaintiff is entitled to relief from his rulings.  And while there is

no dispute that the Recused Judge should have recused under Section 455(a), the Recused Judge's

rulings were reviewed *de novo* and affirmed.

The Court also concludes that an evidentiary hearing is not warranted.  The purpose of

evidentiary hearings is to resolve disputes of material fact, and there are no disputes of material fact

before the Court on this motion.

Accordingly, Plaintiff's motions for vacatur and for an evidentiary hearing are denied.

### A.  Vacatur of the Magistrate Judge's Rulings Is Not Warranted

Vacatur of the Magistrate Judge's rulings is not warranted because nothing in the record

suggests that he should have recused himself pursuant to Section 455.  Plaintiff's only purported

basis for vacating the Magistrate Judge's rulings is that he issued the rulings despite a conflict that

required his recusal.  *See* Memorandum at 7.  Plaintiff argues that the Magistrate Judge should have

recused himself because his former law firm, Arnold & Porter, lists Johnson & Johnson, DePuy's

parent company, as one of the clients that it has "help[ed]" and "advis[ed]," *see* Memorandum, Ex. 3,

and the Magistrate Judge received annual "nonemployee compensation" payments from Arnold &

Porter during the time that he presided over the Underlying Proceedings, *see* Memorandum, Ex. 1 at

1–2 (Magistrate Judge's 2021 Financial Disclosure Report) (disclosing payment of $168,723.00 from

Arnold & Porter pursuant to "nonemployee compensation agreement" providing for payments "for a five-year term stating in 2019"); Memorandum, Ex. 2 at 1–2 (Magistrate Judge's 2022 Financial Disclosure Report) (same). The mere fact that the Magistrate Judge received compensation from a law firm that at some point represented Johnson & Johnson, however, does not suffice to warrant his recusal pursuant to Section 455. Plaintiff, accordingly, has not met her burden of establishing that vacatur of the Magistrate Judge's rulings is warranted.

### i. Section 455(a)

The nonemployee compensation payments the Magistrate Judge received did not warrant recusal under Section 455(a) because they did not provide a basis for "his impartiality to be reasonably questioned." 28 U.S.C. § 455(a). The test for whether Section 455(a) applies is objective: whether "a reasonable person, knowing all the facts," would "conclude that the trial judge's impartiality could reasonably be questioned[.]" *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992); *accord In re Digital Music Antitrust Litig.*, No. 06-mdl-1780 (LAP), 2007 WL 632762, at *11 (S.D.N.Y. Feb. 27, 2007). "[T]he grounds asserted in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001). "[T]he appearance of impartiality . . . must have an objective basis beyond the fact that claims of partiality have been well publicized." *Id.* "[W]here an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality." *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir. 1988).

The payments the Magistrate Judge received are too remote to raise reasonable questions about his impartiality. Courts have found recusal unwarranted in cases with far more significant relationships between the parties and a judge or his former law firm than those present here. "A judge's prior representation of one of the parties in a proceeding, for example, does not

automatically warrant disqualification." *Lovaglia*, 954 F.2d at 815; *accord, e.g., National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072 (1979) (finding trial judge's prior membership at a firm which represented a litigant in unrelated matters did not require recusal); *Fifty-Six Hope Road Music Ltd. v. UMG Recordings, Inc.,* No. 08-cv-6143 (KBF), 2011 WL 5825321, at *2 (S.D.N.Y. Nov. 16, 2021) (similar).  Nor does the fact that "a judge's spouse is a partner in a law firm that represents a litigant in matters other than the case before the judge," so long as "the spouse did not perform any work at the law firm for the litigant or worked for the litigant on unrelated matters." *In re Digital Music*, 2007 WL 632762, at *12 (collecting cases); *accord Canino v. Barclays Bank, PLC,* No. 94-cv-6314 (SAS), 1998 WL 7219, at *3 (S.D.N.Y. Jan. 7, 1998).

The Magistrate Judge's relationship to DePuy in this case is even more attenuated.  Arnold & Porter is a large firm with many clients, *see* Memorandum, Ex. 3 (listing twelve major clients just in the firm's "Consumer Products group"), and it is unrealistic to assume that every partner at such a law firm has a relationship—let alone an ongoing relationship—with every client that the firm has represented, *see Gordon v. McGinley*, No. 11-cv-1001 (RJS), 2013 WL 12617130, at *1 (S.D.N.Y. June 4, 2013) (Sullivan, J.) (finding recusal unwarranted under Section 455(a) where judge worked at large law firm that represented defendant and worked as a general counsel for company that did business with defendant).  Plaintiff does not contend that the Magistrate Judge represented or did any work on behalf of Johnson & Johnson while at Arnold & Porter.  *See* Memorandum at 7–11.  Plaintiff also does not contend that Arnold & Porter represented Johnson & Johnson (let alone DePuy) in any matter that in any way relates to this one.  *See id.*; Memorandum, Ex. 3.  The Magistrate Judge's only connection to DePuy is his receipt, for a period of five years, of fixed annual payments from a firm which listed DePuy's parent company as one of the many clients that it has at some point "help[ed]" and "advis[ed]."  Memorandum, Ex. 3.  "This chain of causation is too attenuated to satisfy the

requirements of [Section] 455(a)." *Canino*, 1998 WL 7219, at *3 (finding Section 455(a) did not require recusal where judge's spouse was presently a partner at a law firm that once represented the defendant in the matter before her); *see, e.g.*, *Fifty-Six Hope Road Music*, 2011 WL 5825321, at *2 (finding judge's prior representation of defendant in unrelated matter did "not come close to meeting any principle or standard suggesting that recusal would be appropriate" under Section 455(a)); *In re SunEdison, Inc.*, No. 16-10992 (SMB), 2016 WL 2849482, at *4 (Bankr. S.D.N.Y. May 10, 2016) (finding receipt by judge's spouse of monthly pension payments from former law firm representing party in proceedings did not warrant recusal under Section 455(a)).

### ii.   Section 455(b)(4)

Recusal was also unwarranted pursuant to Section 455(b)(4) because the Magistrate Judge's entitlement to the fixed annual payments from his former law firm was not an "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). Section 455(b)(4) requires disqualification in two scenarios: first, if a judge knows that he "has a financial interest in the subject matter in controversy or in a party to the proceeding," and second, if a judge knows that he has "any other interest that could be substantially affected by the outcome of the proceeding." *Id.* The first scenario is inapplicable because the annual payments were not a qualifying "financial interest" for purposes of Section 455. Section 455(d)(4) defines "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant *in the affairs of a party*," not in the affairs of a law firm that once advised a party. 28 U.S.C. § 455(d)(4) (emphasis added).[3]

The second scenario requiring recusal, if a judge knows that he has "any other interest that could be substantially affected by the outcome of the proceeding," 28 U.S.C. § 455(b)(4), is also

---

[3] As discussed, Section 455(d)(4) provides certain exceptions to the definition of "financial interest." 28 U.S.C. § 455(d)(4). The exceptions are inapplicable in this case.

inapplicable because the outcome of the Underlying Proceedings could not possibly have

"*substantially* affected" the Magistrate Judge's interest in the annual payments, *id.* (emphasis added).

In *Pashaian v. Eccelston Props., Ltd.*, the Second Circuit explained that "[i]t would simply be unrealistic

to assume . . . that partners in today's law firms invariably 'have an interest that could be *substantially*

*affected* by the outcome of' any case in which any other partner is involved." 88 F.3d 77, 83 (2d Cir.

1996) (emphasis in original). It found that the district judge was not required to recuse even though

his brother-in-law was a partner at a law firm presently representing a defendant in the case because

it was reasonable to conclude, based on the law firm's substantial size and revenue, that the brother-

in-law's partner interest "would not be 'substantially affected' by the outcome of [the] case." *Id.* at

83–84.

  The Magistrate Judge's interest in the payments from Arnold & Porter presents a

significantly less compelling case for recusal than that in *Pashaian*. Unlike the firm in *Pashaian*,

Arnold & Porter did not represent any of the parties in the Underlying Proceedings. The extent of

Arnold & Porter's connection to this case is that it at some point "help[ed]" and "advis[ed]" the

parent company of one of the defendants, Memorandum, Ex. 3, in matters that Plaintiff does not

contend were related to the matter before the Magistrate Judge, *see* Memorandum at 7. Moreover,

unlike the partnership interest in *Pashaian*, the payments the Magistrate Judge received from Arnold

& Porter were fixed by agreement. *See* Memorandum, Exs. 1–2. The Magistrate Judge was entitled

to the same payments regardless of the outcome of the Underlying Proceedings. So, for his interest

to be "affected," Arnold & Porter would have had to lose the ability to remit the payments—a

possibility so remote that Plaintiff does not contend it exists, *see* Memorandum at 7, and indeed is

belied by the long list of clients that Arnold & Porter reports in addition to Johnson & Johnson, *see*

Memorandum, Ex. 3 (listing eleven other major clients in just its Consumer Products group, and

noting that the list in not exhaustive); *Pashaian*, 88 F.3d at 83 (affirming decision not to recuse

17

because the law firm representing defendant, which listed judge's relative as a partner, employed

sixty partners and had a gross revenue of over one hundred million dollars, and the relative did not

represent the defendant before the judge); *In re Digital Music*, 2007 WL 632762, at *12 (finding

recusal was not required under Section 455(b)(4) where judge's husband represented defendants in

"prior, assertedly related litigation"); *In re SunEdison*, 2016 WL 2849482, at *3–4 (finding recusal

unwarranted where judge's wife received monthly pension payments and was entitled to return of

capital from law firm representing party in proceedings).

 For these reasons, the Magistrate Judge's recusal in the Underlying Proceedings was not

warranted.  Because there was no basis for him to recuse, there is no basis for the court to vacate his

rulings pursuant to Rule 60(b)(6).  Plaintiff's motion for vacatur of the Magistrate Judge's rulings is

denied.

### B.  Vacatur of the Recused Judge's Rulings Is Not Warranted

 Vacatur of the Recused Judge's rulings is unwarranted because his rulings were upheld by the

Second Circuit after a *de novo* review.  Plaintiff moves to vacate the Recused Judge's rulings based on

his ownership of and transactions in stock in Johnson & Johnson, DePuy's parent company, during

the time that he presided over the Underlying Proceedings.  *See* Memorandum at 4; Memorandum,

Ex. 4.  As discussed, no party disputes that these were conflicts requiring the Recused Judge's

recusal under Section 455(a).[4]  *See* Memorandum at 7; Howmedica Memorandum at 2–3; DePuy

---

[4] Both sides agree that the Recused Judge's conflicts should be analyzed under Section 455(a).  *See* Reply at 1 (arguing that the Recused Judge "violat[ed] ethical obligations under § 455(a)"); Howmedica Opposition at 6.  As discussed, "[a] court should focus 'on § 455(a), rather than § 455(b)(4) itself, [if] the record lacks clarity on precisely when the district judge learned of the conflict.'"  *Passman*, 2025 WL 1284718, at *4 (quoting *Litovich*, 106 F.4th at 226).  That is the case here.  The Recused Judge's conflict arose from his ownership of stock in Johnson & Johnson.  Memorandum at 7.  The Recused Judge was not assigned to this case until after Johnson & Johnson had been dismissed from the case, *see* Dkt. No. 52, and it is not clear that the Recused Judge was aware that his ownership of the Johnson & Johnson stock created an additional conflict through its subsidiary DePuy.  Plaintiff acknowledges, for example, that the Recused Judge has disclosed conflicts presented by his stock ownership in other cases.  *See* Memorandum, Ex. 5 (letter from Clerk of Court alerting the parties in *Tiffany and Company v. Costco Wholesale Corporation*, No. 13-cv-01041, over which the Recused Judge presided for a period of time, that the Recused Judge informed her of his wife's ownership of stock in defendant).

Memorandum at 16.  Vacatur, however, is not necessarily "the proper remedy . . . when such a conflict is discovered after the judge's ruling." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 172 (2d Cir. 2022).  That is because "Section 455 does not, on its own, authorize the reopening of closed litigation." *Liljeberg*, 486 U.S. at 863.  To reopen a case based on a violation of Section 455, a litigant must demonstrate that relief from judgment is appropriate under Rule 60(b), *id.*; *ExxonMobil*, 44 F.4th at 172, and relief from judgment under Rule 60(b) "should only be applied in extraordinary circumstances," *Liljeberg*, 486 U.S. at 864 (observing that "Rule 60(b)(6) relief is neither categorically available nor categorically unavailable for all § 455(a) violations").  In determining whether extraordinary circumstances warranting recusal are present as a result of "a violation of [Section] 455(a)," the Court "considers three factors:  (i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases; and (iii) the risk of undermining the public's confidence in the judicial process." *Litovich*, 106 F.4th at 226–27 (quotations omitted).[5]

The Court concludes that these factors weigh against vacatur "in light of [the Second Circuit's] *de novo* review" of the Recused Judge's decisions on summary judgment. *ExxonMobil*, 44 F.4th at 173.  With respect to the first factor, "there is little 'risk of injustice' to [Plaintiff] absent vacatur" because a separate and unconflicted panel of judges "considered the issues afresh and rendered an independent decision after reviewing the record." *Id.* (quoting *Liljeberg*, 486 U.S. at 864).  As discussed, Plaintiff appealed both of the Recused Judge's grants of summary judgment to the Second Circuit. *See* Memorandum at 4.  A panel of three judges reviewed the Recused Judge's

---

[5] The Supreme Court recently had the occasion to reiterate "the stringency of the 'extraordinary circumstances' test" applicable to motions for vacatur pursuant to Rule 60(b)(6) in *BLOM Bank SAL v. Honickman*, 605 U.S. ___, ___ (2025) (slip op., at 7), on the way to holding that the Second Circuit had improperly "dilute[d] Rule 60(b)(6)'s stringent standard by balancing it with Rule 15(a)'s liberal pleading principles" in determining whether vacatur was warranted to permit an amendment of the plaintiffs' complaint, *id.* (slip op., at 10).  For the reasons stated below in the Court's discussion of the *Liljeberg* factors—and in particular, the Second Circuit's *de novo* review of the Recused Judge's rulings—Plaintiff has failed to carry her burden, as articulated in *BLOM*, of "demonstrat[ing] any extraordinary circumstances warranting relief under Rule 60(b)(6)." *Id.* (slip op., at 11) (quotations and alterations omitted).

rulings *de novo*—that is, without any deference to the Recused Judge's determinations. *Rouviere v. Howmedica Osteonics Corp.*, No. 22-3205, 2024 WL 1478577, at *1 (2d Cir. Apr. 5, 2024), *cert. denied*, 145 S. Ct. 995 (2024). After reviewing the record *de novo*, the panel unanimously granted summary judgment to Defendants on statute-of-limitations grounds, finding that "[t]he record reveal[ed] no genuine dispute of material fact that . . . [Plaintiff's] complaint [was] time barred." *Id.* Plaintiff, accordingly, has already received what she is asking for on this motion: an independent review of her case by a different and unconflicted decisionmaker. Because there is no basis to conclude that yet another independent review "would lead to a more just outcome," "[t]here is no reason to force the parties to relitigate the entire case, likely causing significant delay." *ExxonMobil*, 44 F.4th at 173–74.

Plaintiff claims that the Second Circuit's review was not really *de novo*, but the Second Circuit explicitly stated otherwise, Appellate Decision at 4 ("We review decisions granting summary judgment, including those based on a statute of limitation defense, *de novo*."), and in any event, Plaintiff's arguments merely take issue with the merits of the Second Circuit's findings, not the standard of its review. *See* Reply at 6 (arguing that "[t]he Second Circuit's purported de novo review was compromised by its misapplication of [a relevant statute]"); *id.* at 6–7 (arguing that the Second Circuit found that Plaintiff's claims accrued too early); *id.* at 7 (arguing that the Second Circuit misapplied the concept of proximate causation). The Court does not, and cannot, question the Second Circuit's statements about the standard of the review that it applied or its findings after applying that review. District courts "are obliged to follow [the Second Circuit's] precedent, even if that precedent might be overturned in the near future." *Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 54 (2d Cir. 2024), *cert. denied sub nom. Raging Cap. Mgmt., LLC v. Packer*, 145 S. Ct. 550 (2024) (quotations omitted). The Court here is bound by the Second Circuit's determination that Defendants were entitled to summary judgment because Plaintiff's claims were

time-barred.  *See id.*; *Rouviere*, 2024 WL 1478577, at *1.

Plaintiff also claims that vacatur is warranted despite the Second Circuit's unanimous ruling because one of the three judges on the Second Circuit panel (the "Circuit Judge") was conflicted, *see* Reply at 5–6, but the alleged conflicts Plaintiff identifies would not warrant vacatur under Section 455.  Despite Plaintiff's arguments, the fact that the Circuit Judge's husband is a partner at a law firm that represented Howmedica in a separate matter at the same time as the Underlying Proceedings, without more, did not create a conflict requiring recusal.  *See* Reply at 5–6.  "Courts have uniformly rejected the argument that an appearance of impropriety exists in the following situation:  (i) a judge's spouse is a partner in a law firm that represents a litigant in matters other than the case before the judge; and (ii) the spouse did not perform any work at the law firm for the litigant or worked for the litigant on unrelated matters."  *In re Digital Music*, 2007 WL 632762, at *12 (collecting cases); *accord Canino*, 1998 WL 7219, at *3 (finding no appearance of impropriety where judge's husband was a partner in a firm which represented a defendant); *see also Gench v. Hostgator.com, LLC*, No. 14-cv-3592 (RA), 2015 WL 4579147, at *2 (S.D.N.Y. July 29, 2015) ("Courts have held that even where a judge's spouse represented the same defendants in the case in prior, purportedly related matters, this relationship does not rise to the level of an appearance of impropriety." (quotation omitted)).  That is exactly the situation Plaintiff presents here.  Plaintiff does not contend or proffer any evidence that the Circuit Judge's husband did any work on behalf of Howmedica. She contends only that he was a partner at a law firm that represented Howmedica in a separate litigation.  *See* Reply at 5–6; Reply, Ex. 1.  His partnership and receipt of income from the law firm does not, on its own, suffice to raise reasonable questions about the Circuit Judge's impartiality.  *See, e.g.*, *In re Digital Music*, 2007 WL 632762.

Even if there were a reason to question the Circuit Judge's impartiality, the decision of two out of the three members of the Second Circuit panel suffices to constitute a *de novo* review of the

merits of Defendants' summary-judgment motions. Majority rules in a panel of three on the Second Circuit. *See, e.g.*, *Gristina v. Merchan*, 131 F.4th 82, 93 (2d Cir. 2025) (affirmance despite panel member's dissent). Moreover, "if for any reason a panel judge ceases to participate in consideration of the matter," the Second Circuit's local rules do not require the remaining two panelists to designate a third judge. *See* 2d Cir. IOP E(b). They may designate a third judge, but they may also "decide the matter" themselves as long as they are in agreement. *Id.*; *see, e.g.*, *In re Nordlicht*, 115 F.4th 90, 97 (2d Cir. 2024) (noting that a member of the three-judge panel had died and that "[t]he two remaining members of the members of the panel, who are in agreement, have determined the matter"). Plaintiff does not dispute that at least two of the three circuit judges on the panel that reviewed the Recused Judge's rulings were unconflicted and admitted of no appearance of partiality. *See* Reply at 5–6. That is all that is required to establish a finding that Defendants were entitled to summary judgment. *See In re Nordlicht*, 115 F.4th at 97. The Second Circuit's independent finding ensures that the "risk of injustice" to Plaintiff absent vacatur of the Recused Judge's summary-judgment decisions is minimal, *ExxonMobil*, 44 F.4th at 173 (quotation omitted), and, again, is binding on this Court, *see, e.g.*, *Packer*, 105 F.4th at 54.

The risk of injustice to Plaintiff absent vacatur the Recused Judge's decision overruling her objections to two of the Magistrate Judge's discovery orders, Dkt. No. 318 at 7–23, is also minimal. In addition to seeking vacatur of the Recused Judge's decisions on summary judgment, Plaintiff also seeks vacatur of the Recused Judge's decision not to overturn an order by the Magistrate Judge excluding portions of one of Plaintiff's expert reports, Dkt. No. 232, and an order by the Magistrate Judge denying reconsideration of that exclusion, Dkt. No. 266. Unlike the Recused Judge's decisions granting summary judgment to Defendants, his decision overruling Plaintiff's objections to the Magistrate Judge's orders was not reviewed *de novo* by the Second Circuit panel. *See* Appellate Decision at 4.

The risk of injustice is still minimal, however, because the Magistrate Judge's orders were themselves binding, and the judge that issued them—the Magistrate Judge—was not conflicted. *Supra* Part III.A. Where, as here, a case is referred to a magistrate judge for general pretrial matters, Dkt. No. 4, the magistrate judge's orders on discovery matters are just that—orders. They are as controlling as an order issued by the district judge. *See, e.g., Novartis Pharma AG v. Incyte Corp.*, No. 20-cv-400 (GHW) (GWG), ___ F. Supp. 3d ___, 2025 WL 1132303, at *13 (S.D.N.Y. Apr. 17, 2025). In overruling Plaintiff's objections to the Magistrate Judge's orders, the Recused Judge merely reviewed the orders for abuse of discretion. This is a "highly deferential" standard of review, *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quotation omitted), and the objecting party must carry a "heavy burden" before its threshold is reached, *David v. Weinstein Company LLC*, No. 18-cv-5414 (RA), 2020 WL 4042773, at *3 (S.D.N.Y. July 17, 2020) (quotation omitted). The risk of injustice to Plaintiff of declining to vacate the Recused Judge's decision overruling her objections to the Magistrate Judge's orders is, in the Court's view, marginal, and is not grounds to "force the parties to relitigate the entire case," at the cost of "significant delay" and expense to all sides, on the basis of a single non-dispositive order. *ExxonMobil*, F.4th at 174.

As to "the second factor for assessing a violation of § 455(a), the risk that the denial of relief will produce injustice in other cases," *Litovich*, 106 F.4th at 227 (quotation omitted), the Court again concludes that the risk is minimal. Unlike in other cases where a conflicted judge's rulings were vacated, *see Passman*, 2025 WL 1284718, at *5; *Litovich*, 106 F.4th at 227, Plaintiff here has already "had ample opportunity to challenge [the Recused Judge's] rulings . . . on appeal" and had her case "reviewed completely afresh," *ExxonMobil*, 44 F.4th at 174. Denial of vacatur in this case would not, as Plaintiff argues, meaningfully disincentivize federal judges from adhering to their "obligation to exercise reasonable effort in avoiding cases in which they are disqualified," *Litovich*, 106 F.4th at 227 (quoting *Chase Manhattan Bank*, 343 F.3d at 130); *see* Memorandum at 23–24, because the basis

23

for denying vacatur here is that a panel of judges happens to have already independently reviewed and ruled on the same record as the Recused Judge before his conflicts were discovered.  In the Court's view, the possibility that a judge's decisions may be protected from vacatur because they were independently reviewed and ruled on before his conflicts are discovered adds little incentive for the judge to be less vigilant about avoiding cases where he is disqualified.  *See ExxonMobil*, 44 F.4th at 174 (finding risk of injustice in other cases was minimal where case had been reviewed *de novo* by an unconflicted judge).

The final factor to consider, "the risk of undermining the public's confidence in the judicial process," *Litovich*, 106 F.4th at 227 (quotation omitted), does not tip the scale in favor of vacatur here.  The Court acknowledges that violations of Section 455(a) like the one at issue here "raise[] the appearance of impropriety," and that in many cases, the "best means of dispelling any potential loss of faith in the judiciary" based on a violation of Section 455(a) is vacatur.  *Id.* at 228; *accord Passman*, 2025 WL 1284718, at *7.  In this specific case, however, a panel of unconflicted judges has already given the case a "fresh look," *ExxonMobil*, 44 F.4th at 174, after Plaintiff presented her arguments in a full round of briefing, *Rouviere*, No. 22-3205 (L), Dkt. Nos. 150, 213, 217, 219, and at oral argument, *Rouviere*, No. 22-3205 (L), Dkt. No. 263.  These specific circumstances "assure[] that the final disposition of the case is not affected by any conflict of interest," and in doing so, they alleviate the risk that the public loses confidence that the courts provide "access to fair, efficient, and unbiased adjudication."  *ExxonMobil*, 44 F.4th at 173–74; *accord Brock v. Zuckerberg*, No. 21-1796, 2022 WL 1231044, at *3–4 (2d Cir. Apr. 27, 2022) (declining to vacate award despite violation of Section 455(a) after reviewing underlying ruling "anew, without any deference" to the presiding judge's assessment).  Moreover, "[t]he public also has an interest in speedy adjudication of disputes," and this interest "would not be furthered by forcing the parties to re-brief the same issues for a third time."  *ExxonMobil*, 44 F.4th at 174.  The Court, accordingly, does not find that the third factor

militates in favor of vacatur.

For these reasons, the Court finds that vacatur of the Recused Judge's rulings is not warranted.

### C.  An Evidentiary Hearing Is Not Warranted

An evidentiary hearing regarding Plaintiff's Rule 60(b) motion is not warranted because there are no material facts in dispute.  As discussed, evidentiary hearings are generally only appropriate when there is a dispute of material fact.  *Wells*, 2023 WL 3948628, at *5; *Saada*, 2021 WL 4824129, at *3.  Here, the material facts that Plaintiff has proffered in support of her motion are not in dispute. Defendants do not dispute that the Magistrate Judge received annual payments from his former law firm, and they accept, at least for the purposes of this motion, that Johnson & Johnson was a "client and revenue driver" for the law firm.  DePuy Memorandum at 16; Howmedica at 2.  Defendants also do not dispute that the Circuit Judge's spouse worked at a law firm that represented Howmedica in a separate action, and that the Circuit Judge reported family income from that law firm.  Sur-Reply at 4.  And Defendants do not dispute that the Recused Judge violated Section 455(a) by not recusing himself from the Underlying Proceedings.  Howmedica Memorandum at 2; DePuy Memorandum at 16.  The Court has concluded that, on the basis of these undisputed facts, vacatur of the Magistrate Judge's and Recused Judge's rulings is unwarranted.  Accordingly, there is no need for an evidentiary hearing on Plaintiff's motion.  *See Wells*, 2023 WL 3948628, at *5; *Saada*, 2021 WL 4824129, at *3.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motions for vacatur and for an evidentiary hearing are DENIED.  The Clerk of Court is directed to terminate the motions pending at Dkt. No. 364 and Dkt. No. 373.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

     SO ORDERED.

Dated:  June 12, 2025
New York, New York

                                                GREGORY H. WOODS
                                      United States District Judge