UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODI ROUVIERE and ANDRE ROUVIERE, | ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) Case No. 18-cv-04814-GHW-GLS ) |
| DEPUY ORTHOPAEDICS, INC. n/k/a MEDICAL DEVICE BUSINESS SERVICES, INC. and HOWMEDICA OSTEONICS CORPORATION d/b/a STRYKER ORTHOPAEDICS, | ) ) ) ) ) ) |
| *Defendants.* | ) ) ) |

**NOTICE OF MOTION FOR RELIEF FROM ORDER AND JUDGMENT
PURSUANT TO FED. R. CIV. P. 60(b)(6)
(28 U.S.C. § 455(a) DISQUALIFICATION AND *LILJEBERG* REMEDY)**

PLEASE TAKE NOTICE that Plaintiff Jodi Rouviere, proceeding pro se, moves this Court for an order pursuant to Federal Rule of Civil Procedure 60(b)(6) granting relief from Order and Judgment on the ground that, as ECF 396 states, "there is no dispute that the Recused Judge should have recused under Section 455(a)." (Ex. A at 13.) Because the asserted defect is a § 455(a) disqualification, the remedy analysis is governed by *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

Plaintiff respectfully requests that the Court grant an integrity-based remedy by vacating the case-dispositive summary judgment orders entered during the § 455(a) disqualification period identified in ECF 396, specifically ECF 318 and ECF 351, and allowing such further proceedings as may be required before a non-disqualified judge. (Ex. A at 2–3, 19–25; Ex. C.)

In the alternative, if the Court determines that an appeal or related proceedings limit its authority to grant relief at this time, Plaintiff requests an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1 that the motion raises a substantial issue or that the Court would grant the requested relief upon remand. Fed. R. Civ. P. 62.1(a); (Ex. F.)

This motion is based upon the accompanying Memorandum of Law, the Declaration of Jodi Rouviere, and the exhibits attached thereto.

Dated: January 23, 2026
Miami, Florida

/s/ Jodi Rouviere
Jodi Rouviere

10950 S.W. 84th Ct.
Miami, FL 33156-3526
(305) 608-8076
Jodi.jtm@gmail.com
Plaintiff, Pro se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODI ROUVIERE and<br>ANDRE ROUVIERE,<br><br>*Plaintiffs,*<br><br>v.<br><br>DEPUY ORTHOPAEDICS, INC. n/k/a<br>MEDICAL DEVICE BUSINESS<br>SERVICES, INC. and HOWMEDICA<br>OSTEONICS CORPORATION<br>d/b/a STRYKER ORTHOPAEDICS,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>) Case No. 18-cv-04814-GHW-GLS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF JODI ROUVIERE'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RELIEF FROM ORDER AND JUDGMENT PURSUANT TO FED. R.
CIV. P. 60(b)(6)
(28 U.S.C. § 455(a) DISQUALIFICATION AND *LILJEBERG* REMEDY)**

**COMES NOW,** Jodi Rouviere ("Plaintiff"), proceeding *pro se*, and respectfully submits

this Memorandum of Law in support of her Motion for Relief from Order and Judgment pursuant

to Federal Rule of Civil Procedure 60(b)(6). This motion seeks an integrity-based remedy based

on a § 455(a) disqualification which, as ECF 396 states, 'there is no dispute that Judge Liman

should have recused under § 455(a),' thereby triggering the remedial analysis required by

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). (Ex. A at 13.)

## I. INTRODUCTION

Plaintiff submits this Rule 60(b)(6) motion to obtain an integrity remedy following the

Court's determination that Judge Liman was subject to disqualification under 28 U.S.C. § 455(a).

Plaintiff does not ask the Court to reargue the merits of summary judgment. The relief requested

1

is procedural and remedial: vacatur of dispositive orders entered while the action was assigned to

Judge Liman during the disqualification period identified by the Court, followed by such further

proceedings as may be required before a non-disqualified judge consistent with *Liljeberg* and

governing Second Circuit precedent.

Because Plaintiff proceeds *pro se*, this filing should be construed liberally and interpreted

to raise the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,

474 (2d Cir. 2006).

## II. JURISDICTION AND AUTHORITY TO DECIDE THIS MOTION

This Court has authority to decide this motion under Federal Rule of Civil Procedure

60(b) and to safeguard the integrity of its judgments.

Rule 60(b)(6) authorizes relief for "any other reason that justifies relief," outside Rules

60(b)(1)–(5), where "extraordinary circumstances" warrant reopening. *Buck v. Davis*, 580 U.S.

100, 123–24 (2017); *Liljeberg*, 486 U.S. at 863–64.

Rule 60(b) is an appropriate vehicle where the movant targets a defect in the integrity of

the federal proceedings, as distinct from an attempt to relitigate the merits. *Gonzalez v. Crosby*,

545 U.S. 524, 532 (2005). This motion proceeds on that integrity premise: it seeks the *Liljeberg*

remedy for a § 455(a) disqualification that the Court has recognized and the consequent

reconsideration, as needed, of dispositive rulings entered while the case was assigned to a judge

subject to disqualification. (Ex. A at 1–3.)

This motion is not a substitute for appeal and does not seek to alter, review, or

collaterally attack any decision of the Court of Appeals. It seeks relief directed to this Court's

own docketed orders and the integrity remedy required by *Liljeberg*.

To the extent the Court concludes that pending rehearing proceedings affect its present ability to grant relief, Plaintiff requests an indicative ruling under Federal Rule of Civil Procedure 62.1 stating that the motion raises a substantial issue and that the Court would grant the requested vacatur upon remand.

### III. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The exhibits cited are submitted with Plaintiff's moving papers and are referenced solely to anchor the procedural record (Exs. A–G). Pinpoint citations refer to each exhibit's internal pagination and, where helpful, the CM/ECF header pagination.

#### A.  The Disqualification and Dispositive Orders

During the § 455(a) disqualification period identified by this Court, Judge Liman entered dispositive summary judgment orders in favor of Defendants. See ECF 318 (Order granting DePuy's motion for summary judgment) (Ex. C at 1) and ECF 351 (Order granting Stryker's motion for summary judgment) (Ex. C at 40).

ECF 396 identifies the § 455(a) disqualification period, and ECF 318 and 351 were issued within that period. (Ex. A at 2–3; Ex. C at 1, 40.) As ECF 396 states, there is no dispute that Judge Liman should have recused under § 455(a). (Ex. A at 13.)

#### B.  ECF 396 and the Court's Prior *Liljeberg* Remedy Determination

On June 12, 2025, the Court issued ECF 396 addressing Plaintiff's Rule 60(b)(6) request and applying *Liljeberg's* remedial framework. (Ex. A.) As ECF 396 expressly states, "there is no dispute that the Recused Judge should have recused under Section 455(a)." (Ex. A at 13.) The Court denied vacatur based on its assessment of the *Liljeberg* remedy factors, including the mitigating weight it assigned to prior appellate review and affirmance of the underlying summary judgment rulings at ECF 318 and ECF 351. (Ex. A at 13, 19–20.)

3

### C. December 2025 Second Circuit Disposition and Post-ECF 396 Record Development

Following ECF 396, Plaintiff sought appellate review. On December 18, 2025, the Second Circuit granted Defendants' motion for summary affirmance, stating that the appeal "lacks an arguable basis either in law or in fact." (Ex. B at 1.) Plaintiff filed the present motion within thirty-six (36) days of that disposition.

Plaintiff cites the December 18, 2025 disposition solely as a post-ECF 396 record development bearing on the equitable *Liljeberg* balance reflected in ECF 396, including the extent to which appellate engagement functioned as a practical safeguard in the Court's remedial analysis. (Ex. A at 2, 5; Ex. B at 1.) The docket further reflects payment and receipt of appellate fees. (Ex. D at 1.) Plaintiff cites this sequence for that limited equitable purpose only and does not seek review, alteration, or reconsideration of any decision of the Court of Appeals.

### D. Exhibits

The exhibits submitted with this motion are provided solely to anchor the procedural record and to identify the specific orders for which relief is sought:

- **Exhibit A:** ECF 396 (June 12, 2025 Order), which identifies the § 455(a) disqualification period and applies the *Liljeberg* remedial framework (Ex. A).
- **Exhibit B:** Second Circuit summary affirmance (December 18, 2025 Order) (Ex. B).
- **Exhibit C:** ECF 318 and 351 (summary judgment orders entered during the disqualification period) (Ex. C).
- **Exhibit D:** Second Circuit docket excerpt reflecting payment and receipt of appellate fees (Ex. D).
- **Exhibit E:** Public docket excerpt reflecting case history and procedural chronology (Ex. E).
- **Exhibit F:** Proposed Order (including alternative indicative-ruling language under Fed. R. Civ. P. 62.1) (Ex. F).
- **Exhibit G:** Declaration of Jodi Rouviere in Support of Motion for Relief from Order and Judgment (Ex. G).

These exhibits are cited for record clarity only and not for the purpose of rearguing the merits of the underlying dispositive rulings.

### IV. LEGAL STANDARD

Rule 60(b)(6), the catchall provision, permits relief for "any other reason that justifies relief" not covered by Rules 60(b)(1)–(5). Fed. R. Civ. P. 60(b)(6). Relief is available only in "extraordinary circumstances" and is governed by equitable principles. *Buck v. Davis*, 580 U.S. 100, 123–24 (2017); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988).

Extraordinary circumstances may be present where case-dispositive judgments were entered while the matter was assigned to a judge subject to § 455(a) disqualification**,** because the defect is structural and the appropriate remedy turns on Liljeberg's integrity analysis rather than a reweighing of the merits. *Liljeberg*, 486 U.S. at 864–68.

In evaluating extraordinary circumstances, courts consider the full equitable context, including "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Buck*, 580 U.S. at 123–24 (quoting *Liljeberg*, 486 U.S. at 864). Where the asserted basis is a § 455(a) disqualification, the remedy analysis is governed by *Liljeberg's* three-factor framework and focuses on the integrity of the proceedings rather than the correctness of the outcome. *Liljeberg,* 486 U.S. at 864.

The Second Circuit has treated § 455(a) disqualification as an integrity defect warranting vacatur and remand where a reasonable observer could question impartiality, including where the asserted conflict concerns a judge's spouse. *Litovich v. Bank of Am., N.A.,* 106 F.4th 218, 225–27 (2d Cir. 2024).

A Rule 60(b)(6) motion must be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1). Reasonableness depends on the facts, including diligence and when the grounds for relief became reasonably available. See *Liljeberg*, 486 U.S. at 863–64.

## V. ARGUMENT

### A. Rule 60(b)(6) Permits Integrity-Based Relief for a § 455(a) Disqualification

This motion does not seek to correct "mistake" or ordinary legal error within Rule 60(b)(1). It seeks an integrity remedy for a § 455(a) disqualification that the Court has determined should have resulted in recusal, and for which the remedial analysis is governed by *Liljeberg*. (Ex. A at 1.) See also *Litovich*, 106 F.4th at 225–27 (vacating and remanding under § 455(a)). Where the asserted defect concerns the appearance of impartiality, the integrity interest carries independent weight because public confidence in the judiciary depends on adjudication untainted by disqualification. *Liljeberg*, 486 U.S. at 864–68; *Buck*, 580 U.S. at 123–24.

Consistent with *Gonzalez*, Plaintiff targets a defect in the integrity of the federal proceedings rather than attempting to relitigate the merits. *Gonzalez*, 545 U.S. at 532.

### B. The Relief Sought Is Procedural, Limited, and Directed to This Court's Own Orders

Plaintiff seeks an integrity-based remedy directed to this Court's own case-dispositive orders entered while the action was assigned to a judge who, as the Court recognized, was subject to disqualification under 28 U.S.C. § 455(a). (Ex. A at 1.) Specifically, Plaintiff seeks vacatur of ECF 318 and ECF 351. (Ex. A at 2–3; Ex. C at 1, 40.) As ECF 396 states, recusal under § 455(a) is not disputed; this renewed motion addresses the remedy." (Ex. A at 13.)

The relief requested is procedural and remedial. It asks the Court to apply *Liljeberg*'s remedy framework to the record-identified disqualification period by vacating the dispositive

orders entered during that period and permitting such further proceedings as may be required

before a non-disqualified judge. (Ex. A at 19–25.)

Plaintiff does not ask the Court to revisit the merits; she seeks only the integrity remedy

required by *Liljeberg* for the disqualification period identified in ECF 396. (Ex. A at 19–25.)

This motion is not directed to altering, reviewing, or collaterally attacking the Second Circuit's

December 18, 2025 disposition. It is directed to the integrity of the district-court proceedings and

to whether dispositive orders entered during the disqualification period should remain on this

Court's docket without vacatur under *Liljeberg*. (Ex. A at 19–25; Ex. B at 1.)

Accordingly, Plaintiff requests reconsideration or modification of the remedial

determination in ECF 396 to the extent necessary to grant the vacatur sought on the present

record. (Ex. A at 19–25.) The issue presented is whether the mitigating weight ECF 396 assigned

to prior appellate merits review remains equitable where the subsequent appeal from the Rule

60(b)(6) remedial order was terminated before merits briefing on Plaintiff's integrity-remedy

arguments. (Ex. A at 19–20; Ex. B at 1.) Plaintiff's request is confined to the integrity remedy

and does not ask the Court to revisit the merits or the underlying summary-judgment record.

*Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

### C. The Motion Is Timely Under Rule 60(c)(1)

Plaintiff filed this motion promptly after the December 18, 2025 disposition, which

constitutes the post-ECF-396 record development cited here as relevant to the equitable *Liljeberg*

balance. (Ex. B at 1.) Plaintiff filed within **36 days** of that disposition, reflecting diligence once

the grounds relied upon in this renewed motion became reasonably available. On these facts, the

motion is brought within a reasonable time under Rule 60(c)(1).

### D. *Liljeberg* Supports Vacatur on the Present Record

*Liljeberg* directs courts to consider: (1) the risk of injustice to the parties, (2) the risk that denial of relief will produce injustice in other cases, and (3) the risk of undermining public confidence. *Liljeberg*, 486 U.S. at 864.

### 1. Factor One: Risk of Injustice to the Parties

The § 455(a) disqualification period identified in ECF 396 encompasses the case-dispositive summary judgment rulings at ECF 318 and 351. (Ex. A at 2–3; Ex. C at 1, 40.) Where dispositive rulings are entered while a case is assigned to a judge subject to § 455(a) disqualification, the parties face a structural risk of injustice because the proceeding did not satisfy the appearance-of-impartiality requirement. That risk is heightened where the rulings terminate the action and foreclose adjudication by a non-disqualified judicial officer. *Liljeberg*, 486 U.S. at 864–68.

In ECF 396, the Court weighed prior appellate review and affirmance of the summary judgment orders as a mitigating safeguard in the remedy analysis. (Ex. A at 13, 19–20.) On the present record, the Court may consider whether the mitigating weight assigned to appellate merits review in ECF 396 remains equitable where the later appeal was terminated on a threshold "arguable basis" determination before merits briefing on Plaintiff's integrity-remedy arguments. (Ex. B at 1.) Plaintiff cites this sequence only to inform the equitable remedy analysis under *Liljeberg*, not to seek alteration of the Court of Appeals' disposition. (Ex. B at 1.)

### 2. Factor Two: Risk of Injustice in Other Cases

Denying vacatur where case-dispositive rulings were entered during the § 455(a) disqualification period identified in ECF 396 risks creating uncertainty as to whether appearance-based disqualification carries enforceable procedural consequences. Absent vacatur, future

litigants may question whether § 455(a) violations will be meaningfully remedied once dispositive rulings have issued.

A clear vacatur remedy in these circumstances provides administrable guidance by confirming that § 455(a) disqualification is not merely advisory, but requires corrective action when case-dispositive orders are entered during the disqualification period. *Liljeberg,* 486 U.S. at 868.

That principle applies with particular force where, as here, the disqualification concern involves a judge's spouse and related institutional interests, circumstances the Second Circuit has recognized as implicating systemic judicial integrity beyond the individual case. *Litovich*, 106 F.4th at 225–27.

### 3.  Factor Three: Risk of Undermining Public Confidence

Leaving in place case-dispositive orders entered during the § 455(a) disqualification period identified by the Court creates an appearance-of-impropriety concern independent of the merits. (Ex. A at 2–3.) Where the public record reflects that dispositive rulings were issued while the action was assigned to a judge subject to § 455(a) disqualification, denial of vacatur risks undermining confidence in the judiciary's commitment to impartial adjudication. *Liljeberg*, 486 U.S. at 864; *Buck*, 580 U.S. at 123–24. The integrity concern is structural and does not turn on a post hoc assessment of whether the challenged rulings were substantively correct. *Liljeberg*, 486 U.S. at 864.

### E.  Rule 62.1 Alternative

If the Court concludes that a pending appeal limits its present authority to grant Rule 60(b)(6) relief, Rule 62.1 permits an indicative ruling that the motion raises a substantial issue or that the Court would grant relief upon remand. Fed. R. Civ. P. 62.1(a). Plaintiff requests an indicative

ruling that the motion raises a substantial issue and that the Court would grant vacatur upon

remand. A proposed order is submitted as Exhibit F. (Ex. F at 1.)

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant relief under

Rule 60(b)(6), vacate ECF 318 and ECF 351, and grant such further relief as is necessary to

implement the integrity remedy required by *Liljeberg* in light of the § 455(a) disqualification that

ECF 396 states is not disputed. In the alternative, Plaintiff requests an indicative ruling under

Rule 62.1.

Dated: January 23, 2026                         Respectfully Submitted,
Miami, Florida

                                                /s/ Jodi Rouviere
                                                Jodi Rouviere
                                                10950 S.W. 84th Ct.
                                                Miami, FL 33156-3526
                                                (305) 608-8076
                                                Jodi.jtm@gmail.com
                                                Pro se

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that, pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the

Southern and Eastern Districts of New York, the foregoing Memorandum of Law in Support of

Plaintiff Jodi Rouviere's Motion for Relief from Order and Judgment pursuant to Federal Rule of

Civil Procedure 60(b)(6) uses a proportionally spaced typeface of 12 points or more and,

excluding the portions of the filing exempted by Local Civil Rule 7.1(c), contains **2,476 words**,

as determined by the word-processing system used to prepare this document.


Dated: January 23, 2026
Miami, Florida

/s/ Jodi Rouviere
Jodi Rouviere
10950 S.W. 84th Ct.
Miami, FL 33156-3526
(305) 608-8076
Jodi.jtm@gmail.com
Pro se

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5 and the SDNY ECF and service rules, I certify that on January 23,

2026, I sent the foregoing Motion for Relief from Order and Judgment to the Clerk of Court for

filing by electronic mail to the Southern District of New York Pro Se Intake Unit. I further

certify that on January 23, 2026, a true and correct copy of the foregoing was served by

electronic mail, consistent with the parties' agreement to accept service by email, upon the

following counsel:


Paul E. Asfendis
GIBBONS, P.C.
<u>PAsfendis@gibbonslaw.com</u>

Joseph G. Eaton
J.T. Larson
Barnes & Thornburg
<u>Joe.Eaton@btlaw.com</u>
<u>jt.larson@btlaw.com</u>


Dated: January 23, 2026
Miami, Florida                                           <u>/s/ Jodi Rouviere</u>
                                                         Jodi Rouviere
                                                         10950 S.W. 84th Ct.
                                                         Miami, FL 33156-3526
                                                         (305) 608-8076
                                                         <u>Jodi.jtm@gmail.com</u>
                                                         Pro se

# EXHIBITS

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                        :

JODI ROUVIERE,                        :
                        :
                  Plaintiff,    :

                        :
           -against-         :
                        :

DEPUY ORTHOPAEDICS, INC., *et al.*,   :
                        :
                Defendants.  :
                        :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/25

1:18-cv-4814-GHW

<u>MEMORANDUM OPINION &
ORDER</u>

GREGORY H. WOODS, United States District Judge:

      Plaintiff Jodi Rouviere litigated this product-liability action against Defendants DePuy

Orthopaedics ("DePuy") and Howmedica Osteonics Corporation ("Howmedica") for six years,

from 2018 to 2024, through multiple motions for summary judgment and an appeal to the Second

Circuit. In the end, her claims were dismissed. The district judge granted summary judgment to

both Defendants, and the Second Circuit, after conducting a *de novo* review, unanimously affirmed.

      Plaintiff has since discovered financial conflicts that the parties agree warranted the district

judge's recusal. She also claims that the magistrate judge who presided over the case's general

pretrial matters was conflicted because he received post-employment compensation while presiding

over the case from a law firm that has done work for DePuy's parent company in the past. Plaintiff

seeks vacatur of both judges' rulings against her pursuant to Fed. R. Civ. P. 60(b)(6) on the ground

that the judges were allegedly conflicted when the rulings were issued. She also seeks an evidentiary

hearing regarding the alleged conflicts.

      The Court concludes that neither vacatur nor an evidentiary hearing are warranted in this

case. The magistrate judge was not required to recuse merely by virtue of his receipt of

compensation from a law firm that at some point represented DePuy's parent company. And while

the district judge was indisputably conflicted, a panel of judges from the Second Circuit Court of Appeals has since reviewed the judge's rulings *de novo* and come to the same conclusions that he did. Because these circumstances do not justify forcing the parties to relitigate this entire case, and because the Court's conclusion is based on an undisputed factual record, Plaintiff's motions for vacatur and for an evidentiary hearing of the judges' rulings are DENIED.

## I. BACKGROUND[1]

### A. The Underlying Proceedings

Plaintiff Jodi Rouviere brought this action on May 31, 2018, alleging various product-liability claims arising from complications from a hip-replacement surgery in 2012. Dkt. No. 1 ¶¶ 279–395. Medical parts made by the defendants had allegedly impinged on one another and caused Plaintiff a wide variety of conditions and side effects. *See id.*; *see also* Dkt. No. 364 at 1 ("Memorandum").

Plaintiff's husband Andre Rouviere was a co-plaintiff in the action, bringing derivative claims for loss of consortium. Dkt. No. 1 ¶¶ 396–99. Mr. Rouviere is an attorney based in Florida. On October 2, 2019, he moved to appear *pro hac vice* on behalf of Plaintiff. Dkt. No. 88. His motion was granted the next day. Dkt. No. 89. Outside counsel also represented the plaintiffs beginning in January 2021 through the end of summary-judgment proceedings in December 2022. *See* Dkt. Nos. 284, 369.

On June 5, 2018, the district judge to whom the action was originally assigned referred the action to the assigned magistrate judge ("the Magistrate Judge") for general pretrial matters. Dkt. No. 4.

Plaintiff and her husband originally brought the action against eight defendants: DePuy Orthopaedics, Inc. ("DePuy"); Howmedica Osteonics Corporation ("Howmedica," and together

---

[1] The following facts are undisputed and are drawn from the parties' submissions and from the trial-court and appellate dockets in this case. *Passman v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LGS), 2025 WL 1284718, at *1 (S.D.N.Y. May 2, 2025) (drawing facts on Rule 60(b) motion from case docket and parties' submissions).

with DePuy, "Defendants"); Depuy International, Limited; Depuy Products, Inc.; Johnson & Johnson Services, Inc.; Johnson & Johnson, Inc. (together with Johnson & Johnson Services, Inc., "Johnson & Johnson"); Stryker Corporation; and Stryker Sales Corporation.  Dkt. No. 1 at 1. Relevant here, Johnson & Johnson is the parent company of DePuy.  Memorandum at 7; Dkt. No. 379 at 1 ("Howmedica Opposition"); Dkt. No. 381 at 7 ("DePuy Opposition").

In December 2018, the plaintiffs dismissed their claims against six of the defendants, including the Johnson & Johnson entities, leaving only DePuy and Howmedica.  Dkt. Nos. 43, 44, 51, 52.  On December 7, 2018, DePuy filed an answer to the plaintiffs' operative complaint.  Dkt. No. 39.  Howmedica filed an answer one month later on January 7, 2019.  Dkt. No. 54.

The parties engaged in extensive discovery and discovery motion practice over the next several years.  From January 2019 through December 2022, the Magistrate Judge issued at least seventeen orders resolving substantive discovery motions and disputes, *see* Dkt. Nos. 83, 104, 115, 140, 144, 150, 155, 157, 162, 167, 193, 221, 232, 266, 296, 307, 320, in addition to resolving various disputed sealing and scheduling motions, *see, e.g.*, Dkt. Nos. 128, 195, 278, 354.

On February 6, 2020, while the parties were conducting discovery, the action was reassigned to a new district judge (the "Recused Judge").

### B.  The Challenged Orders

On October 25, 2020, the Magistrate Judge granted Howmedica's motion to disqualify Plaintiff's expert because the expert had worked as a consultant for Howmedica in other litigations with significantly overlapping issues, Dkt. No. 193 at 4, and had received substantial amounts of confidential information from Howmedica in the process, *id.* at 4–5.  The Magistrate Judge extended the expert-discovery deadline to permit the plaintiffs to submit a report by an alternative expert "regarding the same scope of subject areas as were covered by the [disqualified expert]."  *Id.* at 6.

On November 9, 2020, the plaintiffs submitted a replacement report pursuant to the

Magistrate Judge's October 25, 2020 order.  Dkt. No. 214-1.  In addition to opining about

Howmedica's medical devices, the report also opined about DePuy's.  *See, e.g., id.* ¶¶ 16–22.  On

November 13, 2020, DePuy moved to strike the DePuy-related portions of the report.  Dkt. No.

214 at 1.  On November 24, 2020, the Magistrate Judge granted DePuy's motion because the

expert's testimony regarding DePuy did not fall within the "same scope of subject areas" that were

covered by the expert he was replacing.  Dkt. No. 232 at 5–6; Dkt. No. 193 at 6.

On December 5, 2020, the plaintiffs moved for reconsideration of the Magistrate Judge's

order striking the DePuy-related portions of their expert report.  Dkt. No. 244.  The Magistrate

Judge denied their motion on December 19, 2020.  Dkt. No. 266.

On January 4, 2021, the plaintiffs filed objections before the Recused Judge to the Magistrate

Judge's November 24, 2020 order striking the DePuy-related portions of their expert report and his

December 19, 2020 order denying reconsideration of the November 24, 2020 order.  Dkt. No. 267.

Meanwhile, on October 21, 2020, DePuy moved for summary judgment before the close of

discovery.  Dkt. No. 178; *see* Dkt. No. 128.  On September 17, 2021, the Recused Judge issued a

decision granting DePuy's motion for summary judgment and dismissing the action against DePuy.

Dkt. No. 318.  The Recused Judge concluded, among other things, that the plaintiffs had failed to

offer expert testimony in support of their defective-design claims against DePuy, *id.* at 24, and had

failed to introduce any material disputes of fact that DePuy's alleged failures to warn of their

products' defects proximately caused the plaintiffs' injuries, *id.* at 32–33.  In the same decision, the

Recused Judge overruled the plaintiffs' objections to the Magistrate Judge's orders striking portions

of their expert report.  *Id.* at 7–23.

On March 18, 2022, after discovery closed, Howmedica moved for summary judgment on

the ground that the plaintiffs' claims were time-barred.  Dkt. No. 332.  On December 5, 2022, the

Recused Judge granted summary judgment in favor of Howmedica on limitations grounds and

dismissed the action against Howmedica.  Dkt. No. 351.  The next day, the Clerk of Court entered

judgment against the plaintiffs and closed the case.  Dkt. No. 352.

### C.  The Appeal

On December 22, 2022 and January 10, 2023, Plaintiff appealed the Recused Judge's orders

granting summary judgment to Defendants to the United States Court of Appeals for the Second

Circuit.  Dkt. Nos. 356, 362.  She proceeded *pro se* on appeal, though she was represented by counsel

in the district court proceedings.  Dkt. No. 363 at 3 (the "Appellate Decision").  Plaintiff's husband

did not appeal the dismissal of his claims.  *Id.* at 4 n.2.

Plaintiff's appeal was fully briefed by September 12, 2023.  *Rouviere v. Howmedica, et al.*, No.

22-3205 (L), Dkt. Nos. 150, 213, 217, 219.  Oral argument was held on April 2, 2024.  *Rouviere*, No.

22-3205 (L), Dkt. Nos. 265, 266.

On April 5, 2024, the Second Circuit issued a summary order unanimously affirming the

dismissal of Plaintiff's claims against Defendants.  Appellate Decision at 2.  The three-judge panel

conducted a *de novo* review of the Recused Judge's summary-judgment decisions, *id.* at 4, and upon

review, concluded that "[t]he record reveals no genuine dispute of material fact" that Plaintiff's

claims against both Defendants were "time-barred," *id.* at 5.  The panel observed that, although the

Recused Judge had not granted summary judgment to DePuy on limitations grounds, DePuy's

limitations defense was preserved because it was raised as an affirmative defense in DePuy's answer

to the operative complaint, *id.* (citing *Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 124–25 (2d Cir.

1991)), and a district judge's rulings may be affirmed "on any ground with support in the record,

including grounds upon which the district court did not rely," *id.* at 4–5 (quoting *Jusino v. Fed'n of

Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022)).  The panel held that DePuy, in addition to

Howmedica, was entitled to summary judgment on each of Plaintiff's claims based on the applicable

statutes of limitations.  *Id.* at 6–10.  Accordingly, it affirmed the Recused Judge's orders on

limitations grounds.  *Id.* at 10.

### D.  The Alleged Conflicts

On July 2, 2024, the Second Circuit issued its decision in *Litovich v. Bank of Am. Corp.*, 106 F.4th 218 (2d Cir. 2024), a case involving conflicts in an action before the Recused Judge.  The Second Circuit held that recusal had been required and that vacatur of the Recused Judge's decision dismissing the case was warranted.  *Id.* at 228.

On July 3, 2024, Plaintiff read an article about *Litovich*.  Memorandum, Ex. 6 ¶ 2 ("Rouviere Declaration").  The article "prompted [her] to investigate potential conflicts of interest" involving the Recused Judge and the Magistrate Judge.  *Id.* ¶ 3.  She looked through both judges' annual financial disclosures, published pursuant to the Ethics in Government Act, 5 U.S.C. § 13101, *et seq. See id.*

The conflicts Plaintiff alleges stem from information included in the judges' public financial disclosures.  According to the Recused Judge's financial disclosures, he owned stock in Johnson & Johnson, DePuy's parent company, while presiding over the action.  Memorandum, Ex. 4 at 10.  He bought more stock in Johnson & Johnson on March 11, 2021, while discovery was still ongoing and while DePuy's motion for summary judgment was pending.  *Id.* at 17; *see* Dkt. No. 178.  He sold Johnson & Johnson stock on December 1, 2021, after ruling on Depuy's motion for summary judgment and before Howmedica moved for summary judgment.  Memorandum, Ex. 4 at 17; *see* Dkt. No. 332.  The parties do not dispute that the Recused Judge's ownership of and transactions in Johnson & Johnson stock required his recusal from the case.  *See* Memorandum at 7; Howmedica Memorandum at 2–3; DePuy Memorandum at 16.

According to the Magistrate Judge's financial disclosures, he received five fixed annual payments from Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), at which he was a partner before taking the bench, while he presided over Plaintiff's action.  Memorandum, Exs. 1–2

(disclosing fixed annual payments of $168,723.00 "for a five-year term starting in 2019"). The payments were made pursuant to a "nonemployee compensation agreement" related to Arnold & Portner's "Articles of Partnership." Memorandum, Ex. 1 at 1; Memorandum, Ex. 2 at 1. According to Arnold & Porter's website, its "Consumer Products group" at some point "help[ed]" and "advis[ed]" Johnson & Johnson, among many other major clients. Memorandum, Ex. 3. The website does not specify when Arnold & Porter did work for Johnson & Johnson or in what capacity. *See id.* Plaintiff does not contend that the Magistrate Judge did any work for Johnson & Johnson while at Arnold & Porter. *See* Memorandum at 7. She contends that his receipt of payments from Arnold & Porter alone establishes a disqualifiable conflict. *See id.*

In their opposition briefs, Defendants noted that a panel of three judges on the Second Circuit had reviewed the record *de novo* and concluded that Plaintiff's claims must be dismissed. Howmedica Memorandum at 1; DePuy Memorandum at 6–7. In response, Plaintiff introduced the financial disclosures of one of the three judges on the panel (the "Circuit Judge"). Reply at 5–6; Reply, Ex. 1. According to the Circuit Judge's financial disclosures, she received family income from Seyfarth Shaw LLP ("Seyfarth") through her husband, who is a partner at the firm. Reply, Ex. 1 at 2. While Plaintiff's appeal was pending, Seyfarth was representing Howmedica in a separate litigation in Colorado, *ORP Surgical, LLP v. Howmedica Osteonics Corp.*, No. 1:20-cv-01450 (RBJ), (D. Colo. 2020). Plaintiff does not contend that the Circuit Judge's husband represented Howmedica in that case or in any other capacity. *See* Reply at 5–6. She contends that the receipt of payments by the Circuit Judge's spouse from Seyfarth alone establishes a disqualifiable conflict. *See id.*

### E. Procedural History

Plaintiff moved for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6) ("Rule 60(b)(6)") from certain of the Magistrate Judge's and Recused Judge's orders on October 31, 2024. Dkt. No. 364. She brought the motion *pro se*, and her husband has not joined in the motion. *See id.*

at 1; Dkt. No. 366 (motion by Andre Rouviere to withdraw as counsel). She seeks vacatur of thirteen of the Magistrate Judge's orders, including his orders striking portions of her expert report and denying her motion for reconsideration. *See* Memorandum at 8–11; Dkt. Nos. 83, 104, 115, 120, 136, 140, 144, 153, 157, 193, 232, 266, 296. She seeks vacatur of both of the Recused Judge's orders granting summary judgment to DePuy and Howmedica, Dkt. Nos. 318, 351, and of the Recused Judge's order overruling her objections to the Magistrate Judge's orders striking parts of her expert report and denying reconsideration, Dkt. No. 318 at 7–23. *See* Memorandum at 11–18.

On November 7, 2024, following Plaintiff's motion for relief from judgment, this case was reassigned to this Court. *See* Dkt. No. 367.

Plaintiff moved for an evidentiary hearing regarding her motion for relief from judgment on November 13, 2024. Dkt. No. 373 ("Hearing Memorandum"). Her motion seeks live testimony from the Magistrate Judge, the Recused Judge, Arnold & Porter, and any third-party firms that facilitated payments "related . . . to Johnson & Johnson" to the Recused Judge and the Magistrate Judge. *Id.* at 3–4.

Howmedica opposed Plaintiff's motions for relief from judgment and for an evidentiary hearing in an omnibus brief on December 6, 2024. Dkt. No. 379 (Howmedica Opposition); Dkt. No. 380 ("Asfendis Declaration"). DePuy did the same. Dkt. No. 381 (DePuy Opposition); Dkt. No. 383 ("Larson Declaration").

Plaintiff filed an omnibus reply brief in support of both of her motions on January 8, 2025. Dkt. No. 389 ("Reply"). As discussed, Plaintiff's reply brief argued, for the first time, that one of the three judges on the panel that affirmed the Recused Judge's rulings was conflicted. *Id.* at 5–6. The Court granted Defendants' request to file a sur-reply in response to those arguments on January 11, 2025. Dkt. No. 388. Defendants filed a joint sur-reply on January 17, 2025. Dkt. No. 392 ("Sur-Reply"). The Court granted Plaintiff's request to respond to Defendants' sur-reply on January

21, 2025.  Dkt. No. 394.  Plaintiff filed a response to the Sur-Reply on January 28, 2025.  Dkt. No.

395 ("Sur-Sur-Reply").[2]

## II.     LEGAL STANDARD

### A.  Fed. R. Civ. P. 60(b)(6)

Plaintiff moves to vacate the rulings made by the Recused Judge and the Magistrate Judge

pursuant to Rule 60(b)(6).  Memorandum at 1.  Rule 60(b) provides that "[o]n motion and just

terms, the court may relieve a party or its legal representative from a final judgment, order, or

proceeding for the following reasons:"

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been
> discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
> misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier
> judgment that has been reversed or vacated; or applying it prospectively is no longer
> equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Rule 60(b)(6) is a "catch-all provision" that may only be invoked "when the

asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule."  *Metzler Inv. Gmbh v.*

*Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (quotation omitted).  Like any motion

brought under Rule 60(b), a motion for relief from judgment under Rule 60(b)(6) "is generally not

favored and is properly granted only upon a showing of exceptional circumstances."  *United States v.*

*Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).  "The burden is on the moving party to

---

[2] The parties dispute whether Plaintiff's contentions regarding the Circuit Judge are properly before the Court given that they were raised for the first time in her Reply Brief.  *See* Dkt. Nos. 387, 390, 393.  Even assuming Plaintiff's contentions were untimely, *see United States v. Pepin*, 514 F.3d 193, 203 n.13 (2d Cir. 2008) (observing that courts "generally do not consider issues raised in a reply brief for the first time" because the nonmovant "may not have an adequate opportunity to respond"), the Court "ha[s] discretion to consider" arguments first raised in a reply brief, *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).  Since Defendants were "afforded the opportunity to file a surreply" responding to Plaintiff's contentions regarding the Circuit Judge, the Court has considered the contentions in Plaintiff's reply brief. *Videri, Inc. v. ONAWHIM (OAW) Inc.*, No. 1:23-cv-2535 (GHW), 2024 WL 4027980, at *10 n.8 (S.D.N.Y. Sept. 3, 2024) (quoting *Sacchi v. Verizon Online LLC*, No. 14-cv-423 (RA), 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015).

demonstrate that it is entitled to relief, and courts generally require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quotation marks and alterations omitted).

The decision whether to grant relief under Rule 60(b) "is addressed to the sound discretion of the district court." *Id.* "In exercising that discretion, courts aim to 'strike[] a balance between serving the ends of justice and preserving the finality of judgments.'" *Id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Rule 60(b) "should be broadly construed to do substantial justice," but at the same time, "final judgments should not be lightly reopened." *Nemaizer*, 793 F.2d at 61 (internal quotation marks and citations omitted).

Because Plaintiff is proceeding *pro se*, she is entitled to "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Accordingly, the Court construes Plaintiff's submissions "liberally," interpreting them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotations and emphases omitted). This does not absolve Plaintiff of her burden of demonstrating that there are "exceptional circumstances" in this case that warrant vacatur. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quotation omitted). "A party seeking vacatur under Rule 60(b), whether proceeding *pro se* or not, must present highly convincing evidence, show good cause for the failure to act sooner, and show that no undue hardship would be imposed on the parties." *Lawtone-Bowles v. U.S. Bank Nat'l Ass'n as Tr. for Holders of MLMI Tr. 2002-AFC Asset-Backed Certificates, Series 2002-AFC1*, No. 19-cv-05786 (PMH), 2021 WL 1518329, at *2 (S.D.N.Y. Apr. 16, 2021), *aff'd sub nom. Lawtone-Bowles v. Brown*, No. 21-1242-cv, 2022 WL 839280 (2d Cir. Mar. 22, 2022) (internal quotation marks and citations omitted); *accord Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (explaining that *pro se* plaintiff was required to make these showings on his Rule 60(b) motion).

### B.  28 U.S.C. § 455

Plaintiff argues that vacatur is warranted because the rulings in the Underlying Proceedings were issued by judges who should have recused themselves pursuant to 28 U.S.C. § 455 ("Section 455" or "§ 455").  Section 455 provides the statutory framework for when a presiding judge must "disqualify himself."  28 U.S.C. § 455; *see Passman*, 2025 WL 1284718, at *3; *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably questioned."  28 U.S.C. § 455(a).  Section 455(a) is a "catchall recusal provision."  *Litovich*, 106 F.4th at 224 (quotation omitted).  It "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown."  *Chase Manhattan Bank*, 343 F.3d at 127.  "The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude."  *Id.*

In addition to the catchall recusal provision in Section 455(a), Section 455(b) enumerates particular circumstances where recusal is required.  Relevant here, Section 455(b) requires recusal if a judge or magistrate judge "knows that he . . . or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(4).  "Section 455(c) imposes the additional duty that a federal judge 'should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse.'"  *Litovich*, 106 F.4th at 225 (quoting 28 U.S.C. § 445(c)).  With certain inapplicable exceptions, Section 455(d)(4) defines "financial interest" as an "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party."  28 U.S.C. § 455(d)(4).

11

"Section 455(b)(4) requires disqualification when a judge knows of his or her financial interest in a party." *Chase Manhattan Bank*, 343 F.3d at 127.  Section 455(a), by contrast, is not concerned with what judge knows, but rather "the appearance of partiality." *Litovich*, 106 F.4th at 225.  One instance where "an appearance of partiality requiring disqualification under Section 455(a) results" is "when a reasonable person would conclude that a judge was violating Section 455(b)(4)." *Chase Manhattan Bank*, 343 F.3d at 128.  Where "'the record lacks clarity on precisely when the district judge learned of the conflict,'" "[a] court should focus 'on § 455(a), rather than § 455(b)(4) itself.'" *Passman*, 2025 WL 1284718, at *4 (quoting *Litovich*, 106 F.4th at 226).

While "Section 455 does not, on its own, authorize the reopening of closed litigation," Rule 60(b) "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).  "In *Liljeberg*, the Supreme Court held in the context of a Rule 60(b) motion that in determining how best to address a violation of § 455(a), three factors are considered:  (i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process." *United States v. Amico*, 486 F.3d 764, 777 (2d Cir. 2007) (citing *Liljeberg*, 486 U.S. at 863).

### C. Evidentiary Hearing on a Motion Pursuant to Fed. R. Civ. P. 60(b)

Plaintiff has also moved for an evidentiary hearing regarding her motion under Rule 60(b). Hearing Memorandum at 1.  "Whether to grant a hearing on such a motion[] is within the discretion of the court." *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15-cv-6519 (KAM) (RLM), 2023 WL 3455057, at *23 (E.D.N.Y. May 15, 2023) (collecting cases); *accord Flaks v. Koegel*, 504 F.2d 702, 712 (2d Cir. 1974) (reviewing denial of evidentiary hearing on Rule 60(b) motion for abuse of discretion); *Saada v. Golan*, No. 21-876-cv, 2021 WL 4824129, at *3 (2d Cir. Oct. 18, 2021) (summary order) (same).  "Generally, evidentiary hearings are appropriate only when there is a dispute of material

fact." *Wells v. Miller*, No. 21-cv-11231 (LJL), 2023 WL 3948628, at *5 (S.D.N.Y. June 12, 2023)

(collecting cases); *accord Saada*, 2021 WL 4824129, at *3 ("As a general matter, in the Rule 60(b)

context, evidentiary hearings should be held to decide disputes concerning 'material issued of fact.'"

(quoting *Flaks*, 504 F.2d at 712)).

## III.   DISCUSSION

The Court concludes that vacatur is not warranted in this case.  Nothing in the record

suggests that the Magistrate Judge should have recused under Section 455(a), and accordingly,

nothing in the record suggests that Plaintiff is entitled to relief from his rulings.  And while there is

no dispute that the Recused Judge should have recused under Section 455(a), the Recused Judge's

rulings were reviewed *de novo* and affirmed.

The Court also concludes that an evidentiary hearing is not warranted.  The purpose of

evidentiary hearings is to resolve disputes of material fact, and there are no disputes of material fact

before the Court on this motion.

Accordingly, Plaintiff's motions for vacatur and for an evidentiary hearing are denied.

### A.  Vacatur of the Magistrate Judge's Rulings Is Not Warranted

Vacatur of the Magistrate Judge's rulings is not warranted because nothing in the record

suggests that he should have recused himself pursuant to Section 455.  Plaintiff's only purported

basis for vacating the Magistrate Judge's rulings is that he issued the rulings despite a conflict that

required his recusal.  *See* Memorandum at 7.  Plaintiff argues that the Magistrate Judge should have

recused himself because his former law firm, Arnold & Porter, lists Johnson & Johnson, DePuy's

parent company, as one of the clients that it has "help[ed]" and "advis[ed]," *see* Memorandum, Ex. 3,

and the Magistrate Judge received annual "nonemployee compensation" payments from Arnold &

Porter during the time that he presided over the Underlying Proceedings, *see* Memorandum, Ex. 1 at

1–2 (Magistrate Judge's 2021 Financial Disclosure Report) (disclosing payment of $168,723.00 from

13

Arnold & Porter pursuant to "nonemployee compensation agreement" providing for payments "for a five-year term stating in 2019"); Memorandum, Ex. 2 at 1–2 (Magistrate Judge's 2022 Financial Disclosure Report) (same).  The mere fact that the Magistrate Judge received compensation from a law firm that at some point represented Johnson & Johnson, however, does not suffice to warrant his recusal pursuant to Section 455.  Plaintiff, accordingly, has not met her burden of establishing that vacatur of the Magistrate Judge's rulings is warranted.

### i.  Section 455(a)

The nonemployee compensation payments the Magistrate Judge received did not warrant recusal under Section 455(a) because they did not provide a basis for "his impartiality to be reasonably questioned."  28 U.S.C. § 455(a).  The test for whether Section 455(a) applies is objective: whether "a reasonable person, knowing all the facts," would "conclude that the trial judge's impartiality could reasonably be questioned[.]"  *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992); *accord In re Digital Music Antitrust Litig.*, No. 06-mdl-1780 (LAP), 2007 WL 632762, at *11 (S.D.N.Y. Feb. 27, 2007).  "[T]he grounds asserted in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality."  *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).  "[T]he appearance of impartiality . . . must have an objective basis beyond the fact that claims of partiality have been well publicized."  *Id.* "[W]here an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality."  *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir. 1988).

The payments the Magistrate Judge received are too remote to raise reasonable questions about his impartiality.  Courts have found recusal unwarranted in cases with far more significant relationships between the parties and a judge or his former law firm than those present here.  "A judge's prior representation of one of the parties in a proceeding, for example, does not

14

automatically warrant disqualification." *Lovaglia*, 954 F.2d at 815; *accord, e.g.*, *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072 (1979) (finding trial judge's prior membership at a firm which represented a litigant in unrelated matters did not require recusal); *Fifty-Six Hope Road Music Ltd. v. UMG Recordings, Inc.*, No. 08-cv-6143 (KBF), 2011 WL 5825321, at *2 (S.D.N.Y. Nov. 16, 2021) (similar).  Nor does the fact that "a judge's spouse is a partner in a law firm that represents a litigant in matters other than the case before the judge," so long as "the spouse did not perform any work at the law firm for the litigant or worked for the litigant on unrelated matters." *In re Digital Music*, 2007 WL 632762, at *12 (collecting cases); *accord Canino v. Barclays Bank, PLC*, No. 94-cv-6314 (SAS), 1998 WL 7219, at *3 (S.D.N.Y. Jan. 7, 1998).

The Magistrate Judge's relationship to DePuy in this case is even more attenuated.  Arnold & Porter is a large firm with many clients, *see* Memorandum, Ex. 3 (listing twelve major clients just in the firm's "Consumer Products group"), and it is unrealistic to assume that every partner at such a law firm has a relationship—let alone an ongoing relationship—with every client that the firm has represented, *see Gordon v. McGinley*, No. 11-cv-1001 (RJS), 2013 WL 12617130, at *1 (S.D.N.Y. June 4, 2013) (Sullivan, J.) (finding recusal unwarranted under Section 455(a) where judge worked at large law firm that represented defendant and worked as a general counsel for company that did business with defendant).  Plaintiff does not contend that the Magistrate Judge represented or did any work on behalf of Johnson & Johnson while at Arnold & Porter.  *See* Memorandum at 7–11.  Plaintiff also does not contend that Arnold & Porter represented Johnson & Johnson (let alone DePuy) in any matter that in any way relates to this one.  *See id.*; Memorandum, Ex. 3.  The Magistrate Judge's only connection to DePuy is his receipt, for a period of five years, of fixed annual payments from a firm which listed DePuy's parent company as one of the many clients that it has at some point "help[ed]" and "advis[ed]."  Memorandum, Ex. 3.  "This chain of causation is too attenuated to satisfy the

15

requirements of [Section] 455(a)." *Canino*, 1998 WL 7219, at *3 (finding Section 455(a) did not require recusal where judge's spouse was presently a partner at a law firm that once represented the defendant in the matter before her); *see, e.g., Fifty-Six Hope Road Music*, 2011 WL 5825321, at *2 (finding judge's prior representation of defendant in unrelated matter did "not come close to meeting any principle or standard suggesting that recusal would be appropriate" under Section 455(a)); *In re SunEdison, Inc.*, No. 16-10992 (SMB), 2016 WL 2849482, at *4 (Bankr. S.D.N.Y. May 10, 2016) (finding receipt by judge's spouse of monthly pension payments from former law firm representing party in proceedings did not warrant recusal under Section 455(a)).

### ii. Section 455(b)(4)

Recusal was also unwarranted pursuant to Section 455(b)(4) because the Magistrate Judge's entitlement to the fixed annual payments from his former law firm was not an "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). Section 455(b)(4) requires disqualification in two scenarios: first, if a judge knows that he "has a financial interest in the subject matter in controversy or in a party to the proceeding," and second, if a judge knows that he has "any other interest that could be substantially affected by the outcome of the proceeding." *Id.* The first scenario is inapplicable because the annual payments were not a qualifying "financial interest" for purposes of Section 455. Section 455(d)(4) defines "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant *in the affairs of a party*," not in the affairs of a law firm that once advised a party. 28 U.S.C. § 455(d)(4) (emphasis added).[3]

The second scenario requiring recusal, if a judge knows that he has "any other interest that could be substantially affected by the outcome of the proceeding," 28 U.S.C. § 455(b)(4), is also

---

[3] As discussed, Section 455(d)(4) provides certain exceptions to the definition of "financial interest." 28 U.S.C. § 455(d)(4). The exceptions are inapplicable in this case.

inapplicable because the outcome of the Underlying Proceedings could not possibly have "*substantially* affected" the Magistrate Judge's interest in the annual payments, *id.* (emphasis added). In *Pashaian v. Eccelston Props., Ltd.*, the Second Circuit explained that "[i]t would simply be unrealistic to assume . . . that partners in today's law firms invariably 'have an interest that could be *substantially affected* by the outcome of' any case in which any other partner is involved." 88 F.3d 77, 83 (2d Cir. 1996) (emphasis in original). It found that the district judge was not required to recuse even though his brother-in-law was a partner at a law firm presently representing a defendant in the case because it was reasonable to conclude, based on the law firm's substantial size and revenue, that the brother-in-law's partner interest "would not be 'substantially affected' by the outcome of [the] case." *Id.* at 83–84.

The Magistrate Judge's interest in the payments from Arnold & Porter presents a significantly less compelling case for recusal than that in *Pashaian*. Unlike the firm in *Pashaian*, Arnold & Porter did not represent any of the parties in the Underlying Proceedings. The extent of Arnold & Porter's connection to this case is that it at some point "help[ed]" and "advis[ed]" the parent company of one of the defendants, Memorandum, Ex. 3, in matters that Plaintiff does not contend were related to the matter before the Magistrate Judge, *see* Memorandum at 7. Moreover, unlike the partnership interest in *Pashaian*, the payments the Magistrate Judge received from Arnold & Porter were fixed by agreement. *See* Memorandum, Exs. 1–2. The Magistrate Judge was entitled to the same payments regardless of the outcome of the Underlying Proceedings. So, for his interest to be "affected," Arnold & Porter would have had to lose the ability to remit the payments—a possibility so remote that Plaintiff does not contend it exists, *see* Memorandum at 7, and indeed is belied by the long list of clients that Arnold & Porter reports in addition to Johnson & Johnson, *see* Memorandum, Ex. 3 (listing eleven other major clients in just its Consumer Products group, and noting that the list in not exhaustive); *Pashaian*, 88 F.3d at 83 (affirming decision not to recuse

because the law firm representing defendant, which listed judge's relative as a partner, employed

sixty partners and had a gross revenue of over one hundred million dollars, and the relative did not

represent the defendant before the judge); *In re Digital Music*, 2007 WL 632762, at *12 (finding

recusal was not required under Section 455(b)(4) where judge's husband represented defendants in

"prior, assertedly related litigation"); *In re SunEdison*, 2016 WL 2849482, at *3–4 (finding recusal

unwarranted where judge's wife received monthly pension payments and was entitled to return of

capital from law firm representing party in proceedings).

For these reasons, the Magistrate Judge's recusal in the Underlying Proceedings was not

warranted. Because there was no basis for him to recuse, there is no basis for the court to vacate his

rulings pursuant to Rule 60(b)(6). Plaintiff's motion for vacatur of the Magistrate Judge's rulings is

denied.

## B. Vacatur of the Recused Judge's Rulings Is Not Warranted

Vacatur of the Recused Judge's rulings is unwarranted because his rulings were upheld by the

Second Circuit after a *de novo* review. Plaintiff moves to vacate the Recused Judge's rulings based on

his ownership of and transactions in stock in Johnson & Johnson, DePuy's parent company, during

the time that he presided over the Underlying Proceedings. *See* Memorandum at 4; Memorandum,

Ex. 4. As discussed, no party disputes that these were conflicts requiring the Recused Judge's

recusal under Section 455(a).[4] *See* Memorandum at 7; Howmedica Memorandum at 2–3; DePuy

---

[4] Both sides agree that the Recused Judge's conflicts should be analyzed under Section 455(a). *See* Reply at 1 (arguing that the Recused Judge "violat[ed] ethical obligations under § 455(a)"); Howmedica Opposition at 6. As discussed, "[a] court should focus 'on § 455(a), rather than § 455(b)(4) itself, [if] the record lacks clarity on precisely when the district judge learned of the conflict.'" *Passman*, 2025 WL 1284718, at *4 (quoting *Litovich*, 106 F.4th at 226). That is the case here. The Recused Judge's conflict arose from his ownership of stock in Johnson & Johnson. Memorandum at 7. The Recused Judge was not assigned to this case until after Johnson & Johnson had been dismissed from the case, *see* Dkt. No. 52, and it is not clear that the Recused Judge was aware that his ownership of the Johnson & Johnson stock created an additional conflict through its subsidiary DePuy. Plaintiff acknowledges, for example, that the Recused Judge has disclosed conflicts presented by his stock ownership in other cases. *See* Memorandum, Ex. 5 (letter from Clerk of Court alerting the parties in *Tiffany and Company v. Costco Wholesale Corporation*, No. 13-cv-01041, over which the Recused Judge presided for a period of time, that the Recused Judge informed her of his wife's ownership of stock in defendant).

Memorandum at 16. Vacatur, however, is not necessarily "the proper remedy . . . when such a conflict is discovered after the judge's ruling." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 172 (2d Cir. 2022). That is because "Section 455 does not, on its own, authorize the reopening of closed litigation." *Liljeberg*, 486 U.S. at 863. To reopen a case based on a violation of Section 455, a litigant must demonstrate that relief from judgment is appropriate under Rule 60(b), *id.*; *ExxonMobil*, 44 F.4th at 172, and relief from judgment under Rule 60(b) "should only be applied in extraordinary circumstances," *Liljeberg*, 486 U.S. at 864 (observing that "Rule 60(b)(6) relief is neither categorically available nor categorically unavailable for all § 455(a) violations"). In determining whether extraordinary circumstances warranting recusal are present as a result of "a violation of [Section] 455(a)," the Court "considers three factors: (i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases; and (iii) the risk of undermining the public's confidence in the judicial process." *Litovich*, 106 F.4th at 226–27 (quotations omitted).[5]

The Court concludes that these factors weigh against vacatur "in light of [the Second Circuit's] *de novo* review" of the Recused Judge's decisions on summary judgment. *ExxonMobil*, 44 F.4th at 173. With respect to the first factor, "there is little 'risk of injustice' to [Plaintiff] absent vacatur" because a separate and unconflicted panel of judges "considered the issues afresh and rendered an independent decision after reviewing the record." *Id.* (quoting *Liljeberg*, 486 U.S. at 864). As discussed, Plaintiff appealed both of the Recused Judge's grants of summary judgment to the Second Circuit. *See* Memorandum at 4. A panel of three judges reviewed the Recused Judge's

---

[5] The Supreme Court recently had the occasion to reiterate "the stringency of the 'extraordinary circumstances' test" applicable to motions for vacatur pursuant to Rule 60(b)(6) in *BLOM Bank SAL v. Honickman*, 605 U.S. ___, ___ (2025) (slip op., at 7), on the way to holding that the Second Circuit had improperly "dilute[d] Rule 60(b)(6)'s stringent standard by balancing it with Rule 15(a)'s liberal pleading principles" in determining whether vacatur was warranted to permit an amendment of the plaintiffs' complaint, *id.* (slip op., at 10). For the reasons stated below in the Court's discussion of the *Liljeberg* factors—and in particular, the Second Circuit's *de novo* review of the Recused Judge's rulings—Plaintiff has failed to carry her burden, as articulated in *BLOM*, of "demonstrat[ing] any extraordinary circumstances warranting relief under Rule 60(b)(6)." *Id.* (slip op., at 11) (quotations and alterations omitted).

rulings *de novo*—that is, without any deference to the Recused Judge's determinations.  *Rouviere v. Howmedica Osteonics Corp.*, No. 22-3205, 2024 WL 1478577, at *1 (2d Cir. Apr. 5, 2024), *cert. denied*, 145 S. Ct. 995 (2024).  After reviewing the record *de novo*, the panel unanimously granted summary judgment to Defendants on statute-of-limitations grounds, finding that "[t]he record reveal[ed] no genuine dispute of material fact that . . . [Plaintiff's] complaint [was] time barred."  *Id.*  Plaintiff, accordingly, has already received what she is asking for on this  motion:  an independent review of her case by a different and unconflicted decisionmaker.  Because there is no basis to conclude that yet another independent review "would lead to a more just outcome," "[t]here is no reason to force the parties to relitigate the entire case, likely causing significant delay."  *ExxonMobil*, 44 F.4th at 173–74.

Plaintiff claims that the Second Circuit's review was not really *de novo*, but the Second Circuit explicitly stated otherwise, Appellate Decision at 4 ("We review decisions granting summary judgment, including those based on a statute of limitation defense, *de novo*."), and in any event, Plaintiff's arguments merely take issue with the merits of the Second Circuit's findings, not the standard of its review.  *See* Reply at 6 (arguing that "[t]he Second Circuit's purported de novo review was compromised by its misapplication of [a relevant statute]"); *id.* at 6–7 (arguing that the Second Circuit found that Plaintiff's claims accrued too early); *id.* at 7 (arguing that the Second Circuit misapplied the concept of proximate causation).  The Court does not, and cannot, question the Second Circuit's statements about the standard of the review that it applied or its findings after applying that review.  District courts "are obliged to follow [the Second Circuit's] precedent, even if that precedent might be overturned in the near future."  *Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 54 (2d Cir. 2024), *cert. denied sub nom. Raging Cap. Mgmt., LLC v. Packer*, 145 S. Ct. 550 (2024) (quotations omitted).  The Court here is bound by the Second Circuit's determination that Defendants were entitled to summary judgment because Plaintiff's claims were

time-barred.  *See id.*; *Rouviere*, 2024 WL 1478577, at *1.

Plaintiff also claims that vacatur is warranted despite the Second Circuit's unanimous ruling because one of the three judges on the Second Circuit panel (the "Circuit Judge") was conflicted, *see* Reply at 5–6, but the alleged conflicts Plaintiff identifies would not warrant vacatur under Section 455.  Despite Plaintiff's arguments, the fact that the Circuit Judge's husband is a partner at a law firm that represented Howmedica in a separate matter at the same time as the Underlying Proceedings, without more, did not create a conflict requiring recusal.  *See* Reply at 5–6.  "Courts have uniformly rejected the argument that an appearance of impropriety exists in the following situation:  (i) a judge's spouse is a partner in a law firm that represents a litigant in matters other than the case before the judge; and (ii) the spouse did not perform any work at the law firm for the litigant or worked for the litigant on unrelated matters."  *In re Digital Music*, 2007 WL 632762, at *12 (collecting cases); *accord Canino,* 1998 WL 7219, at *3 (finding no appearance of impropriety where judge's husband was a partner in a firm which represented a defendant); *see also Gench v. Hostgator.com, LLC*, No. 14-cv-3592 (RA), 2015 WL 4579147, at *2 (S.D.N.Y. July 29, 2015) ("Courts have held that even where a judge's spouse represented the same defendants in the case in prior, purportedly related matters, this relationship does not rise to the level of an appearance of impropriety." (quotation omitted)).  That is exactly the situation Plaintiff presents here.  Plaintiff does not contend or proffer any evidence that the Circuit Judge's husband did any work on behalf of Howmedica. She contends only that he was a partner at a law firm that represented Howmedica in a separate litigation.  *See* Reply at 5–6; Reply, Ex. 1.  His partnership and receipt of income from the law firm does not, on its own, suffice to raise reasonable questions about the Circuit Judge's impartiality.  *See, e.g.*, *In re Digital Music*, 2007 WL 632762.

Even if there were a reason to question the Circuit Judge's impartiality, the decision of two out of the three members of the Second Circuit panel suffices to constitute a *de novo* review of the

merits of Defendants' summary-judgment motions.  Majority rules in a panel of three on the Second
Circuit.  *See, e.g.*, *Gristina v. Merchan*, 131 F.4th 82, 93 (2d Cir. 2025) (affirmance despite panel
member's dissent).  Moreover, "if for any reason a panel judge ceases to participate in consideration
of the matter," the Second Circuit's local rules do not require the remaining two panelists to
designate a third judge.  *See* 2d Cir. IOP E(b).  They may designate a third judge, but they may also
"decide the matter" themselves as long as they are in agreement.  *Id.*; *see, e.g.*, *In re Nordlicht*, 115 F.4th
90, 97 (2d Cir. 2024) (noting that a member of the three-judge panel had died and that "[t]he two
remaining members of the members of the panel, who are in agreement, have determined the
matter").  Plaintiff does not dispute that at least two of the three circuit judges on the panel that
reviewed the Recused Judge's rulings were unconflicted and admitted of no appearance of partiality.
*See* Reply at 5–6.  That is all that is required to establish a finding that Defendants were entitled to
summary judgment.  *See In re Nordlicht*, 115 F.4th at 97.  The Second Circuit's independent finding
ensures that the "risk of injustice" to Plaintiff absent vacatur of the Recused Judge's summary-
judgment decisions is minimal, *ExxonMobil*, 44 F.4th at 173 (quotation omitted), and, again, is
binding on this Court, *see, e.g.*, *Packer*, 105 F.4th at 54.

The risk of injustice to Plaintiff absent vacatur the Recused Judge's decision overruling her
objections to two of the Magistrate Judge's discovery orders, Dkt. No. 318 at 7–23, is also minimal.
In addition to seeking vacatur of the Recused Judge's decisions on summary judgment, Plaintiff also
seeks vacatur of the Recused Judge's decision not to overturn an order by the Magistrate Judge
excluding portions of one of Plaintiff's expert reports, Dkt. No. 232, and an order by the Magistrate
Judge denying reconsideration of that exclusion, Dkt. No. 266.  Unlike the Recused Judge's
decisions granting summary judgment to Defendants, his decision overruling Plaintiff's objections to
the Magistrate Judge's orders was not reviewed *de novo* by the Second Circuit panel.  *See* Appellate
Decision at 4.

The risk of injustice is still minimal, however, because the Magistrate Judge's orders were themselves binding, and the judge that issued them—the Magistrate Judge—was not conflicted. *Supra* Part III.A.  Where, as here, a case is referred to a magistrate judge for general pretrial matters, Dkt. No. 4, the magistrate judge's orders on discovery matters are just that—orders.  They are as controlling as an order issued by the district judge.  *See, e.g.*, *Novartis Pharma AG v. Incyte Corp.*, No. 20-cv-400 (GHW) (GWG), ___ F. Supp. 3d ___, 2025 WL 1132303, at *13 (S.D.N.Y. Apr. 17, 2025).  In overruling Plaintiff's objections to the Magistrate Judge's orders, the Recused Judge merely reviewed the orders for abuse of discretion.  This is a "highly deferential" standard of review, *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quotation omitted), and the objecting party must carry a "heavy burden" before its threshold is reached, *David v. Weinstein Company LLC*, No. 18-cv-5414 (RA), 2020 WL 4042773, at *3 (S.D.N.Y. July 17, 2020) (quotation omitted).  The risk of injustice to Plaintiff of declining to vacate the Recused Judge's decision overruling her objections to the Magistrate Judge's orders is, in the Court's view, marginal, and is not grounds to "force the parties to relitigate the entire case," at the cost of "significant delay" and expense to all sides, on the basis of a single non-dispositive order.  *ExxonMobil*, F.4th at 174.

As to "the second factor for assessing a violation of § 455(a), the risk that the denial of relief will produce injustice in other cases," *Litovich*, 106 F.4th at 227 (quotation omitted), the Court again concludes that the risk is minimal.  Unlike in other cases where a conflicted judge's rulings were vacated, *see Passman*, 2025 WL 1284718, at *5; *Litovich*, 106 F.4th at 227, Plaintiff here has already "had ample opportunity to challenge [the Recused Judge's] rulings . . . on appeal" and had her case "reviewed completely afresh," *ExxonMobil*, 44 F.4th at 174.  Denial of vacatur in this case would not, as Plaintiff argues, meaningfully disincentivize federal judges from adhering to their "obligation to exercise reasonable effort in avoiding cases in which they are disqualified," *Litovich*, 106 F.4th at 227 (quoting *Chase Manhattan Bank*, 343 F.3d at 130); *see* Memorandum at 23–24, because the basis

for denying vacatur here is that a panel of judges happens to have already independently reviewed and ruled on the same record as the Recused Judge before his conflicts were discovered. In the Court's view, the possibility that a judge's decisions may be protected from vacatur because they were independently reviewed and ruled on before his conflicts are discovered adds little incentive for the judge to be less vigilant about avoiding cases where he is disqualified. *See ExxonMobil*, 44 F.4th at 174 (finding risk of injustice in other cases was minimal where case had been reviewed *de novo* by an unconflicted judge).

The final factor to consider, "the risk of undermining the public's confidence in the judicial process," *Litovich*, 106 F.4th at 227 (quotation omitted), does not tip the scale in favor of vacatur here. The Court acknowledges that violations of Section 455(a) like the one at issue here "raise[] the appearance of impropriety," and that in many cases, the "best means of dispelling any potential loss of faith in the judiciary" based on a violation of Section 455(a) is vacatur. *Id.* at 228; *accord Passman*, 2025 WL 1284718, at *7. In this specific case, however, a panel of unconflicted judges has already given the case a "fresh look," *ExxonMobil*, 44 F.4th at 174, after Plaintiff presented her arguments in a full round of briefing, *Rouviere*, No. 22-3205 (L), Dkt. Nos. 150, 213, 217, 219, and at oral argument, *Rouviere*, No. 22-3205 (L), Dkt. No. 263. These specific circumstances "assure[] that the final disposition of the case is not affected by any conflict of interest," and in doing so, they alleviate the risk that the public loses confidence that the courts provide "access to fair, efficient, and unbiased adjudication." *ExxonMobil*, 44 F.4th at 173–74; *accord Brock v. Zuckerberg*, No. 21-1796, 2022 WL 1231044, at *3–4 (2d Cir. Apr. 27, 2022) (declining to vacate award despite violation of Section 455(a) after reviewing underlying ruling "anew, without any deference" to the presiding judge's assessment). Moreover, "[t]he public also has an interest in speedy adjudication of disputes," and this interest "would not be furthered by forcing the parties to re-brief the same issues for a third time." *ExxonMobil*, 44 F.4th at 174. The Court, accordingly, does not find that the third factor

militates in favor of vacatur.

For these reasons, the Court finds that vacatur of the Recused Judge's rulings is not warranted.

### C.  An Evidentiary Hearing Is Not Warranted

An evidentiary hearing regarding Plaintiff's Rule 60(b) motion is not warranted because there are no material facts in dispute.  As discussed, evidentiary hearings are generally only appropriate when there is a dispute of material fact.  *Wells*, 2023 WL 3948628, at *5; *Saada*, 2021 WL 4824129, at *3.  Here, the material facts that Plaintiff has proffered in support of her motion are not in dispute. Defendants do not dispute that the Magistrate Judge received annual payments from his former law firm, and they accept, at least for the purposes of this motion, that Johnson & Johnson was a "client and revenue driver" for the law firm.  DePuy Memorandum at 16; Howmedica at 2.  Defendants also do not dispute that the Circuit Judge's spouse worked at a law firm that represented Howmedica in a separate action, and that the Circuit Judge reported family income from that law firm.  Sur-Reply at 4.  And Defendants do not dispute that the Recused Judge violated Section 455(a) by not recusing himself from the Underlying Proceedings.  Howmedica Memorandum at 2; DePuy Memorandum at 16.  The Court has concluded that, on the basis of these undisputed facts, vacatur of the Magistrate Judge's and Recused Judge's rulings is unwarranted.  Accordingly, there is no need for an evidentiary hearing on Plaintiff's motion.  *See Wells*, 2023 WL 3948628, at *5; *Saada*, 2021 WL 4824129, at *3.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motions for vacatur and for an evidentiary hearing are DENIED.  The Clerk of Court is directed to terminate the motions pending at Dkt. No. 364 and Dkt. No. 373.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

      SO ORDERED.

Dated:  June 12, 2025
New York, New York

                              GREGORY H. WOODS
                        United States District Judge

# EXHIBIT B

S.D.N.Y.–N.Y.C.
18-cv-4814
Woods, J.

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

———————

At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square,
in the City of New York, on the 18th day of December, two thousand twenty-five.

Present:

        Debra Ann Livingston,
          *Chief Judge,*
        Dennis Jacobs,
        Barrington D. Parker,
          *Circuit Judges.*

---

Jodi Rouviere, Individually,

        *Plaintiff-Appellant,*

Andre Rouviere, Jodi Rouviere's husband, individually,

        *Plaintiff,*

      v.                                 25-1542

DePuy Orthopaedics, Inc., Howmedica Osteonics Corp.,
DBA Stryker Orthopaedics, doing business as Stryker
Orthopaedics,

        *Defendants-Appellees,*

DePuy Products, Inc., et al.,

        *Defendants.*

---

Defendants-Appellees jointly move for summary affirmance or to dismiss the appeal.   Upon due
consideration, it is hereby ORDERED that the motion for summary affirmance is GRANTED
because the appeal "lacks an arguable basis either in law or in fact."   *Neitzke v. Williams*, 490 U.S.
319, 325 (1989); *see also United States v. Davis*, 598 F.3d 10, 13 (2d Cir. 2010).

          FOR THE COURT:
          Catherine O'Hagan Wolfe, Clerk of Court



# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                               :

JODI ROUVIERE, et al.,                :

             Plaintiffs,       :

                         :

       -v-                  :

                         :

DEPUY ORTHOPAEDICS, INC., et al.,  :

             Defendants.     :

                         :
-------------------------------------------------------------------X

18-cv-4814 (LJL)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/17/2021

LEWIS J. LIMAN, United States District Judge:

      This is a product-liability case involving hip replacement components.  In 2012, Plaintiff

Jodi Rouviere ("Rouviere") had a hip replacement surgery.  Her doctor implanted a device that

combined components made by two companies.  Rouviere alleges that some of these components

impinged on other of the components, releasing toxic metal debris into her body.  Rouviere and

her husband sued the two companies that made the components of the hip replacement device—

DePuy Orthopaedics, Inc. ("DePuy") and Howmedica Osteonics, Corp. (also known as

"Stryker").  The Rouvieres now object to a ruling by Magistrate Judge Aaron concerning the

scope of their engineering expert report.  That objection is overruled.  DePuy also moves for

summary judgment.  That motion is granted.

## BACKGROUND

      The following facts are drawn from the parties' Local Rule 56.1 statements.  They are

undisputed unless otherwise noted.  *See* Dkt. Nos. 182, 227, 262.

      Jodi Rouviere injured her hip in a kitchen fall around 2009.  Dkt. No. 227 ¶ 1.  She had

several hip surgeries over the next few years.  *Id.* ¶ 3.  In 2011, Rouviere was diagnosed with

Ehlers-Danlos Syndrome, a rare connective tissue disorder that causes structural weakness in muscles, eyes, heart, skin and other tissue. *Id.* ¶¶ 4–5.

Because of her condition, Rouviere could not find a surgeon in her hometown of Miami that was comfortable operating on her. *Id.* ¶ 6. So Rouviere traveled to New York to meet with Dr. Robert Buly at the Hospital for Special Surgery. *Id.* ¶ 7. Rouviere was in pain at the time and had difficulty walking. *Id.* ¶ 8. After getting a second opinion, Dr. Buly advised Rouviere to undergo a total right hip replacement surgery. *Id.* ¶ 9. Rouviere agreed.

The hip joint consists of a ball-and-socket mechanism. The ball sits at the top of the thighbone, or femur. The socket (or acetabulum) is inside the pelvis. The ball rotates in the socket, giving the hip a wide range of motion. During a hip replacement surgery, these hip joints may be replaced by metal, plastic, or ceramic parts to recreate the ball-and-socket mechanism. *See id.* ¶¶ 19–20. At Rouviere's surgery, both the ball and the socket were replaced with artificial components. *Id.* ¶ 13.

Before the surgery, Dr. Buly explained to Rouviere that there were several types of components that could be used in the implant. Dr. Buly also explained that he would make those choices during the surgery. *Id.* ¶¶ 12, 14. Rouviere agreed to rely on Dr. Buly to determine which components to use. *Id.* ¶ 14. Dr. Buly also warned Rouviere of the risks involved in her surgery, though the parties dispute the exact nature of the warnings. Rouviere underwent the hip replacement surgery in August 2012, performed by Dr. Buly. *Id.* ¶ 13.

At the surgery, Dr. Buly tested various components and ultimately implanted a device that contained five parts, from two different manufacturers:

1. To create the ball, Dr. Buly first implanted a "Summit" titanium stem made by DePuy. *Id.* ¶¶ 15, 60. The bottom half of the stem was placed inside the femur, while the "neck" protruded out from the femur. *Id.* ¶ 20.

2. At the tip of the neck, Dr. Buly attached a "Biolox Delta" ceramic head made by DePuy. *Id.* ¶¶ 15, 63. The below picture shows these two components (the two-tone grey stem and the pink head) inside a femur. *Id.* ¶ 20.



3. Dr. Buly then covered the ceramic head with a polyethylene insert made by Stryker.

4. To create the socket, Dr. Buly first implanted a round titanium shell into the pelvis. This part was made by Stryker.

5. Finally, Dr. Buly placed a round cobalt-chrome liner inside this shell. This part was also made by Stryker.

In the years after her surgery, Rouviere experienced chronic hip pain, dislocations, and other serious health problems. *Id.* ¶¶ 33–38, 40. In 2016, Rouviere underwent surgery with Dr. Carlos Alvarado in Miami. At the surgery, Dr. Alvarado observed that the Stryker acetabular components were impinging upon the DePuy stem and had created a notch in the neck of the stem. *Id.* ¶ 39. Dr. Alvarado also discovered grayish brown tissue in the surrounding area. *Id.* Rouviere underwent three more surgeries in 2016 and 2017, culminating in Dr. Alvarado removing the components that Dr. Buly had implanted five years earlier. *Id.* ¶ 43.

**PROCEDURAL HISTORY**

The Rouvieres filed suit in May 2018. They amended their complaint in October of that year. *See* Dkt. No. 26. They later voluntarily dismissed their claims against all defendants but two: DePuy and Stryker. Dkt. No. 52.

The Rouvieres' theory of the case is that the DePuy titanium stem impinged with the Stryker cobalt-chrome liner, releasing toxic metals into Jodi Rouviere's body. Those metals caused various ailments in Rouviere, including metallosis. In the complaint, Rouviere asserts product-liability claims against DePuy and Stryker under theories of negligence, strict liability, and breach of express and implied warranties. Her husband, Andre Rouviere, also asserts a claim for loss of consortium.[1]

This matter was assigned to Magistrate Judge Stewart D. Aaron for general pretrial purposes. At the expert discovery phase, Judge Aaron ordered the Rouvieres to make their expert disclosures by September 21, 2020. *See* Dkt. No. 128. Three days before that deadline, the Rouvieres informed Judge Aaron that their engineering expert had suddenly withdrawn, and they asked for more time to find a replacement expert. *See* Dkt. No. 154. Judge Aaron denied that request on the ground that the Rouvieres' bare-bones letter did not make the requisite showing of good cause. *See* Dkt. No. 157. The Rouvieres then scrambled and found a second engineer expert in time for the deadline.

The second engineering expert completed a report for the Rouvieres. This report opined almost exclusively on Stryker's components, saying virtually nothing about DePuy. *See* Dkt. No. 188-1. Stryker moved to disqualify the Rouvieres' second expert on the ground that the expert had worked for Stryker in another litigation. Judge Aaron granted Stryker's motion to disqualify, but he allowed the Rouvieres additional time to find another replacement engineering expert. Judge Aaron's order specified that this third engineering expert could opine "regarding

_____

[1] Andre Rouviere is a practicing lawyer in Florida. He represented himself and his wife through most of this litigation, though he is now joined by co-counsel.

the same scope of subject areas as were covered by the [disqualified second expert]." Dkt. No. 193 at 6.

The Rouvieres found a third engineering expert, Dr. John Jarrell. By this time, DePuy had already filed its motion for summary judgment, which rested in large part on the absence of expert testimony about DePuy's products. Dr. Jarrell's report remedied this deficiency by opining extensively about DePuy's products. *See* Dkt. No. 230-5. DePuy then asked Judge Aaron to strike the DePuy-related portions of the Jarrell report. Judge Aaron granted the motion. Judge Aaron explained that, because the second engineering expert had opined solely on Stryker's products, the replacement engineering expert was likewise limited to opining only on Stryker's products. *See* Dkt. No. 232. Judge Aaron later denied the Rouvieres' motion for reconsideration, and the Rouvieres filed an objection to this Court. *See* Dkt. Nos. 266, 267.

After DePuy's summary judgment motion was fully briefed, the Rouvieres asked Judge Aaron to reopen expert discovery due to Stryker's failure to disclose certain discovery materials. Judge Aaron granted the motion in part, allowing two of the Rouvieres' experts (Dr. Francis Gannon, a pathologist and immunologist, and Dr. Sol Bobst, a toxicologist) to supplement their previous expert reports. *See* Dkt. No. 296. But Judge Aaron denied the Rouvieres' request to allow their engineering expert to file a supplemental report. The Rouvieres do not object to this order. Instead, they have filed a motion asking this Court to augment the summary judgment record with Dr. Gannon's and Dr. Bobst's supplemental reports.

In sum, three matters are before this Court: (1) the Rouvieres' objection to Judge Aaron's striking of the DePuy-related opinions in the Jarrell report, (2) the Rouvieres' motion to supplement the record, and (3) DePuy's motion for summary judgment.

**LEGAL STANDARDS**

District courts may designate a magistrate judge to hear and decide a pretrial matter that is "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a). For such nondispositive matters, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "This standard of review is highly deferential, and magistrate judges are afforded broad discretion in resolving nondispositive disputes[;] reversal is appropriate only if their discretion is abused." *Pugh-Ozua v. Springhill Suites*, 2020 WL 6562376, at *3 (S.D.N.Y. Nov. 9, 2020) (cleaned up).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (cleaned up). In determining whether there are any genuine issues of material fact, the Court must view all facts in the light most favorable to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* To

survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and by demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

At the outset, the Court addresses the issues that shape the summary judgment record. First, the Rouvieres' objection to Judge Aaron's order limiting the scope of Dr. Jarrell's report is overruled.  Dr. Jarrell's opinions about the alleged defects in DePuy's products are thus not in the summary judgment record.  Second, the Rouvieres' motion to update the summary judgment record with supplemental reports by Drs. Gannon and Bobst is granted.  These two supplemental reports will be considered as part of the summary judgment record.  But the Rouvieres' request to file additional briefing is denied because the Gannon and Bobst reports are not particularly relevant to the pending motion for summary judgment.

Turning to DePuy's motion for summary judgment, the lack of expert testimony specific to DePuy dooms the Rouvieres' defective-design claims.  And the Rouvieres do not defend their claims for defective manufacture and breaches of express or implied warranties, so those claims are abandoned.  Finally, summary judgment is granted for DePuy on the failure-to-warn claims because the Rouvieres have adduced no evidence as to proximate causation.  While a reasonable juror could find that DePuy failed to adequately warn Dr. Buly about the risk of impingement, there is no evidence to support the Rouvieres' contention that additional warnings would have led Dr. Buly to do anything differently.

## I.    The Rouvieres' Objection to the Order Striking Parts of the Jarrell Report

As detailed above, the Rouvieres' second engineering expert was disqualified after he had rendered a report and DePuy had moved for summary judgment.  Judge Aaron allowed the

Rouvieres to replace this expert with a third expert—Dr. Jarrell—but specified that Dr. Jarrell could testify only "regarding the same scope of subject areas as were covered by the [disqualified second expert]." Dkt. No. 193 at 6. When Dr. Jarrell furnished a report that contained opinions on defects in DePuy's products—opinions that were absent from the Rouvieres' earlier expert report—DePuy moved to strike those opinions. Judge Aaron granted the motion, excluding the DePuy-related portions of the Jarrell report. The Rouvieres moved for reconsideration, which Judge Aaron denied. The Rouvieres now object both to the original ruling and to the ruling on the motion for reconsideration.

As explained below, the objection is likely untimely. And even if it were timely, it is overruled on the merits. Judge Aaron's order striking Dr. Jarrell's DePuy-related opinions was neither clearly erroneous nor contrary to the law.

### A.    Timeliness

Rule 72 requires that all objections to nondispositive orders by a magistrate judge be filed before the district judge "within 14 days after being served with a copy" and that "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). Judge Aaron struck the DePuy-related portions of the Jarrell report on November 24, 2020. *See* Dkt. No. 232. The Rouvieres did not file an objection within 14 days. Instead, they filed a motion for reconsideration before Judge Aaron. Judge Aaron denied that motion on December 19, 2020. *See* Dkt. No. 266. The Rouvieres then filed an objection before this Court on January 4, 2021— 41 days after Judge Aaron's original order. DePuy thus argues that the objection is untimely.

The key question is whether the filing of a motion for reconsideration before the magistrate judge affects Rule 72's 14-day deadline to file an objection before the district judge.

This question can be broken down into two subsidiary questions: First, if a party asks the magistrate judge to reconsider a ruling, does the filing of the motion for reconsideration extend

Rule 72(a)'s 14-day deadline to file an objection before the district court?  And second, if the answer to the first question is no, such that the magistrate judge's original order was not timely objected to, does a timely appeal of the reconsideration decision bring up both the original order (which was not timely objected to) and the reconsideration decision (with was timely objected to), or only the latter?  The Second Circuit has not weighed in on these issues, and courts throughout this district and throughout the country have reached opposite conclusions.[2]

Starting with the first question and the underlying statute, the Federal Magistrates Act provides that "a judge may designate a magistrate judge to hear and determine" certain pretrial matters, and that "[a] judge of the court [*i.e.*, a district judge] may reconsider any pretrial matter under [this provision] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C § 636(b)(1)(A).

---

[2] *See David v. Weinstein Co.*, 2020 WL 4042773, at *5 n.2 (S.D.N.Y. July 17, 2020) (collecting cases for the proposition that "a motion for reconsideration filed directly with the magistrate judge is procedurally defective") (cleaned up); *Graham v. City of New York*, 2010 WL 3034618, at *1 n.1 (E.D.N.Y. Aug. 3, 2010) (collecting cases for the proposition that a timely motion for reconsideration tolls Rule 72's 14-day clock); *Manhattan Constr. Co. v. Phillips*, 2011 WL 13214354, at *4 (N.D. Ga. July 29, 2011) (collecting cases from throughout the country).

Building on this statute, Federal Rule of Civil Procedure 72 provides that:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).

Rule 72's linear chronology appears to make no accommodation for motions to reconsider.[3] The chronology begins when the magistrate judge issues "a written order stating the decision" on a pretrial matter. Next, a party may object to "the order" within 14 days of being

---

[3] There is some disagreement over whether magistrate judges have the power to field motions for reconsideration at all, since Local Civil Rule 6.3 addresses motions for reconsideration but does not specify whether this mechanism applies only to district judges or also to magistrate judges. *Compare, e.g.*, *Koehler v. Bank of Bermuda Ltd.*, 2003 WL 466206, at *1 (S.D.N.Y. Feb. 21, 2003) ("Unlike motions for reconsideration of district judges' orders, provided for by Local Civil Rule 6.3[], there is no provision in the governing statute or the rules of procedure for motions for reconsideration to be made to magistrate judges."), *with Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, 2020 WL 1480465, at *2 n.1 (S.D.N.Y. Mar. 26, 2020) ("[N]othing in the text of Local Civil Rule 6.3 suggests that it is inapplicable to orders issued by magistrate judges.") (cleaned up). But while this district's Local Civil Rules are not entirely clear on this issue, the Court agrees with the many district and magistrate judges who have held that magistrate judges have the power to field motions for reconsideration of their prior rulings. The Local Civil Rules, by their terms, "apply in all civil actions and proceedings governed by the Federal Rules of Civil Procedure." Local Civil Rule 1.1. They do not draw a distinction between those civil actions in which a district court judge is acting and those before a magistrate judge pursuant to authority delegated by the district court. For example, the rules regarding electronic service and filing of documents, Local Civil Rule 5.2; the service and filing of motion papers, Local Civil Rule 6.1; orders on motions, Local Civil Rule 6.2; and motion papers, Local Civil Rule 7.1, apply equally regardless of whether "the Court" in question is the district court judge assigned to the case or a magistrate judge exercising authority pursuant to a delegation from the district court. Thus, it is procedurally proper under Local Civil Rule 6.3 to ask a magistrate judge to reconsider his or her prior ruling. And indeed, magistrate judges in this district routinely entertain and decide motions for reconsideration under Local Civil Rule 6.3, as Judge Aaron did here. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 3738623, at *2 n.2 (S.D.N.Y. June 13, 2019) (collecting cases).

served a copy. And finally, the district judge must consider timely objections and must modify or set aside any part of "the order" that is clearly erroneous or is contrary to law. A plain reading of Rule 72 thus suggests (a) that motions to reconsider filed before the magistrate judge have no bearing on the 14-deadline to file objections before the district court and (b) that an objection before the district court addresses only the order that was served within the preceding 14 days and does not bring up for appeal any earlier orders not timely objected to.

The language of Rule 72 is in stark contrast to its closest analogue, Rule 4 of the Federal Rules of Appellate Procedure. *Cf. Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). Rule 4 provides that a notice of appeal from a district court judgment must be filed within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). But if a party files a timely postjudgment motion for reconsideration, *i.e.*, a Rule 59 motion filed no later than 28 days after entry of judgment or a Rule 60 motion also filed no later than 28 days after entry of judgment, the rule provides that "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A). As the Second Circuit explained, when a litigant files a timely motion for reconsideration, it "toll[s] the time to file a notice of appeal

regarding the underlying order until decision of the motion for reconsideration." *Lora v. O'Heaney*, 602 F.3d 106, 110 (2d Cir. 2010).[4]

This approach with respect to appeals to the courts of appeals is rooted in sound policy. Federal statutes discourage piecemeal appeals. *See Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980). As a general matter, only a final judgment may be appealed to the court of appeals. *See* 28 U.S.C. § 1291 (allowing appeal only from "final decisions" of district courts); *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982) ("[T]he policy of Congress embodied in [28 U.S.C. § 1291] is inimical to piecemeal appellate review of trial court decisions . . . ."). In the context of postjudgment motions, "judicial efficiency is improved by postponing appellate review of the judgment until the District Court has had an opportunity to dispose of all motions that seek to amend or alter what otherwise might appear to be a final judgment." *Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir. 1999) (cleaned up). Given the length of time of most district court proceedings and the length of time necessary for an appeal to be briefed and decided, it would make little sense to require a second appeal for the order on the timely motion for reconsideration. It is far more efficient and consistent with the just, speedy, and inexpensive determination of every action to extend the time for noticing an appeal until after the motion for reconsideration is decided and for the court of appeals then to consider both the underlying judgment and the order on the motion. *See id.*; *see also Osterneck v. Ernst &*

---

[4] Many courts refer to this mechanism as "tolling," but that term is a misnomer. Tolling refers to the *pausing* of a time period. Federal Rule of Appellate Procedure 4, by contrast, *resets* the 30-day time period. *See* 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3950.4 (5th ed.) ("Courts often refer to [Federal Rule of Appellate Procedure 4's] re-starting effect as 'tolling,' . . . but readers should bear in mind that unlike, say, the 'tolling' of a statute of limitations, Rule 4(a)(4)'s 'tolling' (when it applies) re-starts the appeal time period from scratch.").

*Whinney*, 489 U.S. 169, 177 (1989) ("Our conclusion that a postjudgment motion for discretionary prejudgment interest is a Rule 59(e) motion also helps further the important goal of avoiding piecemeal appellate review of judgments.").

The philosophy of the Federal Magistrates Act and Rule 72 is different. The delegation pursuant to Section 636(b)(1)(A) is for pretrial matters and non-dispositive matters only. 28 U.S.C. § 636(b)(1)(A). The rule contains the unusual injunction directing the judicial officer to conduct the required proceeding "promptly." Fed. R. Civ. P. 72(a). Absent consent, as well as an order of the court, a magistrate judge may not order the entry of judgment, conduct a civil trial, or decide a dispositive motion. 28 U.S.C. § 636(c)(1). Those matters are for the district judge. For that reason, because the magistrate judge's orders power is limited to pretrial matters such as the evidence that will be discoverable and that thus will form the basis of a trial or dispositive motion, and because the district judge alone has the power to enter final judgment resolving the case and into which all pretrial matters will be merged, Rule 72 not only requires that the nondispositive matter be addressed "promptly," but also *encourages* speedy interlocutory appeals. Any order can be challenged in the district court on the grounds that it is "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A), a standard different from that used by the court of appeals to review district court discovery orders, but such appeal must be taken within 14 days. The failure to file an objection within 14 days waives the right of a party to assign the magistrate judge decision as error. The rule thus vests control in the district court judge, and not in the parties or in the magistrate judge, as to the timing of briefing on and a decision with respect to a pretrial nondispositive matter. In other words, Rule 72 embodies a policy preference for speedy decisions and quick appeals to district courts rather than drawn-out motion practice before the magistrate judge. Until an appeal has been taken to the district court

13

judge, the nondispositive discovery matter will not be finally settled.  So the filing of a motion

for reconsideration, by the plain terms of Rule 72, has no effect on the 14-day deadline to file an

objection before the district court.

Turning to the second question—whether the timely objection to a denial of

reconsideration brings up the underlying order—the jurisprudence regarding Federal Rule of

Appellate Procedure 4 again provides guidance.  Under Rule 4, when a litigant files an *untimely*

motion for reconsideration, it "[does] not act to toll the time for appealing the underlying order."

*Lora*, 602 F.3d at 110.  In such a case, "[t]he notice of appeal [is] timely only with respect to the

ruling on the motion for reconsideration."  *Id.*  In other words, "[b]y negative implication, Rule

4(a)(4)(A) suggests that failure to file a timely motion for reconsideration, combined with the

failure to file a timely appeal of the substantive ruling, will put consideration of whether the

substantive ruling was erroneous beyond the reach of an appellate court."  *Id.*  If the motion for

reconsideration was *not* timely filed, the resulting appeal can cover only the motion for

reconsideration—which is reviewed very deferentially—and not the underlying order.  *See id.*;

*see also* "*R*" *Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 122 n.5 (2d Cir. 2008); *Wall v. Constr.*

*& Gen. Laborers' Union*, 2009 WL 230122, at *1 (2d Cir. Feb. 2, 2009).

The same logic applies to motions for reconsideration filed before magistrate judges.  If a

party chooses to file a motion for reconsideration instead of a Rule 72 objection—as the

Rouvieres did here—and that party later files an objection to the reconsideration decision, that

objection brings up only the reconsideration decision, not the underlying order.  In other words,

the sole issue before the district court is whether the magistrate judge erred in denying

reconsideration—and not whether the magistrate judge erred in his or her initial decision.  This

conclusion flows from the text of Rule 72, which gives a party 14 days to object to "the order" of

the magistrate judge and requires the district judge to modify or set aside any part of "the order" that is clearly erroneous or is contrary to law. In the context of a motion for reconsideration, "the order" is the reconsideration order (which is reviewed very deferentially), not the underlying order which was not timely objected to. A contrary rule would render meaningless Rule 72's 14-day deadline, since a party that misses the 14-day deadline would be able to simply file a motion for reconsideration and get in through the backdoor.

It may be argued that this rule imposes costs on both parties and the courts, forcing parties to concurrently file *both* an appeal before the district judge *and* a motion for reconsideration, and causing the filing of Rule 72 objections where a motion to reconsider would have sufficed. *See Fox Indus., Inc. v. Gurovich*, 2005 WL 2456896, at *2 (E.D.N.Y. Oct. 5, 2005) ("[I]t would make no sense for a District Judge to decide an appeal pursuant to Rule 72(a) while the order in question was still under consideration by the Magistrate Judge, who might change all or some of the order on reconsideration."). Those concerns are overstated. Where a party seeks reconsideration before a magistrate judge, the same or similar briefing will also support the appeal before the district court judge. After all, to obtain reconsideration, a party must establish *both* that the magistrate court judge overlooked factual matters or controlling decisions, *and* that, as a result, the magistrate judge's original order was in error. Although the standards on Rule 72 review are somewhat different from those on reconsideration, the underlying question remains the same—whether the magistrate judge's determination was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

No persuasive argument has been made that a requirement that a party both brief an appeal and brief a motion for reconsideration will impose inordinate costs on litigants. And as to the courts, any burden on the district judge and the magistrate judge can be easily addressed. A

15

party that wishes to seek reconsideration before the magistrate judge can ask the district judge to extend the time to file a Rule 72 objection until after the motion for reconsideration has been resolved. *See, e.g.*, *Miles v. Wal-Mart Stores, Inc.*, 2007 WL 2230383, at *1 (W.D. Ark. July 31, 2007) (granting motion to extend time to file Rule 72 objections until after resolution of motion to reconsider). If the party does not make such a request, the district court can suspend the Rule 72 briefing if the motion for reconsideration appears to have any merit or if the issue is better addressed by the magistrate judge in the first instance. In either event, the burden on the courts from the filing of a placeholder Rule 72 objection is de minimis, if any.

At the same time, those concerns ignore the offsetting costs that the rule advocated by the Rouvieres would impose on "the just, speedy, and inexpensive determination of every action," that the Federal Rules of Civil Procedure are intended to accomplish. Fed. R. Civ. P. 1; *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("[A]ll of the Federal Rules of Civil Procedure[] are subject to the injunction of Rule 1 that they be construed to secure the just, speedy, and inexpensive determination of every action.") (cleaned up); *Kerman v. City of New York*, 374 F.3d 93, 118 (2d Cir. 2004) (rejecting a construction of Rule 50 where the resulting procedure would be inconsistent with Rule 1's injunction). The Rouvieres no doubt subjectively believed that their motion for reconsideration had merit, even though the magistrate judge decided otherwise. That is not always the case. While a well-founded motion for reconsideration offers the judicial officer the opportunity to correct an oversight, a poorly founded motion imposes costs both on the judicial officer and on the opposing litigant. It can amount to little more than a request for a redo. *See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 137 F. Supp. 3d 336, 338 (W.D.N.Y. 2015) (noting that "[motions for reconsideration] are, in general, not looked upon favorably" because "[a]ll too often, they represent little more than an attempt to reargue issues on which the movant

failed to persuade the court the first time around"). Moreover, in the hands of a crafty litigant, it can also be a tool to delay the inevitable, delaying discovery and delaying the final adjudication of the matter. Far better to require the appeal and to require the appellant to explain—at least to the district court judge and perhaps also to the magistrate judge—why the issue should not be promptly resolved by the only court with the power to finally settle it. To the extent that it discourages needless motions for reconsideration, the interpretation adopted by the Court may reduce the burden on the courts.[5]

In sum, the Rouvieres' objection to Judge Aaron's order of November 24, 2020 is overruled as untimely. The Court will nevertheless review that order on the merits for two reasons. First, because the Second Circuit has not clearly spoken to the timeliness issue, the Court addresses the merits in the alternative. And second, because the merits of the underlying issue may be relevant to the evaluation of the Rouvieres' objection to Judge Aaron's denial of reconsideration, a discussion of the merits will aid the Court's analysis. But, as explained below, the objection to the underlying order is overruled on the merits in any event. The Rouvieres'

---

[5] Some district courts have adopted local rules extending Rule 72's 14-day deadline if a motion for reconsideration is filed. For example, the local rules of the Northern District of New York provide that "[a] motion for reconsideration of a Magistrate Judge's determination of a non-dispositive matter shall toll the fourteen (14) day time period to file objections . . . ." N.D.N.Y. R. 60.1; *see also* D. Haw. R. 74.1(d) ("A reconsideration motion shall toll the time in which any objection must be taken from the magistrate judge's non-dispositive order . . . ."). It is worth noting that these local rules employ the "tolling" misnomer discussed above. This word choice, read literally, yields odd results. For example, suppose a magistrate judge issues a decision on January 1 and the losing party files a timely motion for reconsideration on January 13. Because the filing of the motion only *paused* the 14-day clock, the losing party has only one day from the issuance of the reconsideration order to file an objection before the district court. *See Utica Mut. Ins. Co. v. Century Indem. Co.*, 2017 WL 1052719, at *10 (N.D.N.Y. Jan. 18, 2017) (holding that The Northern District of New York's local rule "did not reset the clock" when the motion for reconsideration was decided but that "the clock resumed running" from its previous place); *see also id.* (citing the Black's Law Dictionary definition of "toll" as "to stop the running of" a time period).

objection to Judge Aaron's December 19, 2020 order denying reconsideration—which was
timely filed—is denied on the merits as well.

### B. Whether Judge Aaron's Orders Were Clearly Erroneous or Contrary to the Law

Even if the Rouvieres' objection were timely, it would be overruled on the merits.  Judge
Aaron's exclusion of Dr. Jarrell's DePuy-related opinions rested on Federal Rule of Civil
Procedure 16(b)(4), which provides that "[a] schedule may be modified only for good cause and
with the judge's consent."[6]  "The Rule 16(b)(4) 'good cause' inquiry is primarily focused upon
the diligence of the movant in attempting to comply with the existing scheduling order and the
reasons advanced as justifying that order's amendment."  *Ritchie Risk-Linked Strategies Trading
(Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012).  The burden of
demonstrating good cause rested with the Rouvieres.  *Id.*

The Rouvieres make two primary arguments:  First, that Judge Aaron erred in concluding
that the Jarrell report exceeded the scope of the disqualified expert's report.  And second, that
even if the Jarrell report exceeded the scope of the disqualified expert's report, Judge Aaron

---

[6] Judge Aaron's exclusion of the DePuy-related portions of the Jarrell report could also
have been framed as a sanction under Rule 37(c)(1), which allows a court to exclude evidence
that was not timely disclosed "unless the failure was substantially justified or is harmless."  This
would be a much closer call under Rule 37(c)(1), since "preclusion of evidence" under Rule 37 is
a "harsh remed[y] and should be imposed only in rare situations."  *Update Art, Inc. v. Modiin*,
843 F.2d 67, 71 (2d Cir. 1988).  But the parties did not raise Rule 37 before Judge Aaron, and
Judge Aaron ruled solely under Rule 16.  *See* Dkt. Nos. 220, 222, 223, 232.  The Rouvieres'
brief before this Court states that they "agree that the Magistrate Judge analyzed the issue
pursuant to Rule 16 as a modification of a scheduling deadline, and therefore, a determination of
whether the Magistrate Judge erred in his analysis is based on Rule 16," but nonetheless asks the
Court to also consider Rule 37.  Dkt. No. 286 at 10.  The Court declines that invitation.  It would
frustrate the purpose of delegation of pretrial nondispositive matters to a magistrate judge if a
party could withhold from the magistrate judge's consideration a rule that the party later argues
is dispositive of an issue.  If allowed, the losing party could then always obtain de novo review
by asserting a new legal theory to the district court.  The Rouvieres made no Rule-37-based
argument to Judge Aaron.  The Court's opinion therefore rests solely on Rule 16.

erred in declining to reopen expert discovery to allow Dr. Jarrell to add new opinions.  Neither of these arguments succeed.  The Jarrell report expressed opinions well beyond those expressed in the disqualified expert's report, and Judge Aaron's denial of the Rouvieres' request to reopen expert discovery was not erroneous or contrary to the law.

*1. The disqualified expert did not opine on any defects in DePuy's products.*  The disqualified expert's report focused almost exclusively on Stryker, not DePuy.  For example, while the disqualified expert's report analyzed the warnings accompanying Stryker's products, it said nothing about DePuy's warnings.  *See* Dkt. No. 188-1 at 11.  And the "Opinions" section of the report speaks entirely of Stryker's defects in design, manufacture, and warning.  *Id.* at 11–12.  In fact, it blames *Stryker* for the impingement of the DePuy stem.  *See id.* at 12 ("The Stryker MDM Liner System was designed to impinge between the neck of the stem and the rim of the liner.").

To be sure, the disqualified expert made scattered references to DePuy:  He stated that he was hired to examine the DePuy and Stryker products.  *Id.* at 2.  He stated that he reviewed the DePuy and Stryker components.  *Id.* at 4–5.  He observed that the DePuy stem was dented.  *Id.* at 8.  And, most significantly, he opined that the Stryker liner impinged with the DePuy stem, resulting in metal debris.  *Id.* at 8, 9–10, 12.  But the disqualified expert expressed no opinions on whether DePuy's products were defectively designed, defectively manufactured, or contained insufficient warnings.

*2. Judge Aaron reasonably ordered that the replacement expert's opinions be limited to defects in Stryker's products.*  Judge Aaron's disqualification opinion said that the new expert could opine "regarding the same scope of subject areas as were covered by the [disqualified second expert]."  Dkt No. 193 at 6.  And since the only subject areas opined on by the

disqualified expert related to Stryker's liability, Judge Aaron's order is best understood as limiting the replacement expert's opinions to Stryker's liability.

A closer look at the disqualification order makes clear that the replacement report could cover only Stryker, which Judge Aaron refers to as "Howmedica." It provides that:

> No later than November 9, 2020, Plaintiffs may serve an expert disclosure by an alternate engineer expert regarding the same scope of subject areas as were covered by [the disqualified expert]. The deposition of any such expert shall be completed no later than December 9, 2020. Any expert disclosure by *Howmedica* addressed to opinions offered by Plaintiffs' alternate engineer expert shall be served by January 14, 2021 and the deposition of such *Howmedica* expert shall be completed no later than February 12, 2021.

*Id.* (emphasis added). If, as the Rouvieres argue, the replacement report could opine on both Stryker and DePuy, Judge Aaron would have provided for responsive disclosures by *both* of these defendants. But Judge Aaron provided for responsive disclosures by Stryker only, a clear indication as to the permissible scope of the replacement expert. The Rouvieres did not file an objection to this order. And even if they had, this limitation by Judge Aaron was reasonable given the scope of the disqualified expert's report. *See Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003) (affirming district court order that a substitute expert not deviate from the prior expert's conclusions as a "sensible compromise" that allowed the replacement of an expert "without unfairly surprising [the other party] with unexpected new opinions").

*3. Dr. Jarrell's report exceeds the scope of the disqualified expert's report.* Dr. Jarrell's report opines extensively about DePuy's liability, far exceeding the scope of the disqualified expert's opinions. For example, the disqualified expert said nothing about manufacturing defects in DePuy's products, while Dr. Jarrell opines that "the DePuy Summit femoral stem with Biolox head is defective." Dkt. No. 230-5 at 8. The disqualified expert offered no opinion about the

warnings that accompanied DePuy's product, while Dr. Jarrell opines that "[t]he DePuy [instructions for use] lacks sufficient [w]arnings." *Id.* ¶ 18. No reasonable reader of the Jarrell report can conclude that it covers "the same scope of subject areas as were covered by the [disqualified expert]." Dkt. No. 193 at 6. By opining on DePuy's liability, the Jarrell report contravened Judge Aaron's order.

The Rouvieres argue that the scope of retention was the same for the two experts. *Compare* Dkt. No. 188-1 at 2 (disqualified expert's mission statement)*, with* Dkt. No. 230-5 ¶ 2 (Dr. Jarrell's mission statement). But Judge Aaron's disqualification order did not permit the Rouvieres to submit a new expert report from a new expert with the same "scope of retention." The scope of the disqualified expert's retention was so broad as to cover anything that could potentially be relevant to the case. The disqualified expert was retained "to evaluate the explanted hip protheses systems manufactured by DePuy Orthopedics and Stryker Orthopedics to determine if the components were defective in either their manufacture, design and/or failure to adequately warn." *See* Dkt. No. 188-1 at 2. Under the Rouvieres' argument, Dr. Jarrell could have offered literally any opinion potentially relevant to the case under Judge Aaron's order with respect to either DePuy or Stryker, regardless of whether it bore any relationship to the scope of opinions offered by the disqualified expert. Judge Aaron's order was not that expansive. It said that the new expert could opine "regarding the same scope of subject areas as were *covered by* the [disqualified second expert]." Dkt No. 193 at 6 (emphasis added). The best reading of this sentence is that it refers to the subject areas that the disqualified expert actually covered, not to subject areas that the disqualified expert *could have* covered under the scope of his retention. Judge Aaron's order sought to mitigate the effect of the disqualification of the Rouvieres' expert. It was not an invitation for the Rouvieres to redo their expert report from scratch.

*4. Judge Aaron reasonably concluded that the Rouvieres had not shown good cause for their request for an extension.* Judge Aaron also reasonably concluded that the Rouvieres "failed to make a showing of good cause for their failure to offer the DePuy-related opinions by the September 21, 2020 deadline." Dkt. No. 232 at 5. The Rouvieres did not explain why their first expert mysteriously withdrew. Nor did they explain why the disqualified expert failed to opine on DePuy. Nor did they seek additional time when they realized (or should have realized) that the disqualified expert did not opine on DePuy. Only after their expert was disqualified—and after DePuy had moved for summary judgment—did the Rouvieres seek to add DePuy-related opinions.

Judge Aaron had patiently extended many discovery deadlines leading up to that point. In granting a final extension, Judge Aaron had warned the parties that "[a]ny discovery not taken in the time periods set forth herein shall be deemed to be waived." Dkt. No. 128 at 4. Judge Aaron's denial of yet another request for an extension was justified. *See Reynolds v. Sealift, Inc.*, 311 F. App'x 422, 426 (2d Cir. 2009) (finding no error in magistrate judge exercising discretion to refuse to extend discovery for submission of expert report); *see also Frydman v. Verschleiser*, 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017) (same); *Ritchie Risk-Linked Strategies*, 282 F.R.D. at 79 ("A party seeking to reopen expert discovery must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence.").

*5. Judge Aaron's denial of reconsideration was neither clearly erroneous nor contrary to the law.* The Rouvieres' briefs do not specifically object to the reasoning in Judge Aaron's order denying reconsideration, focusing almost solely on Judge Aaron's underlying order. The Rouvieres' motion for reconsideration rested on the argument that DePuy's counsel had made a misrepresentation to Judge Aaron about the disqualified expert's relationship with DePuy. Judge

Aaron rejected this argument, finding that DePuy's counsel did not make a misrepresentation and that, in any event, (a) the Rouvieres could have sought an extension to offer DePuy-related opinions and (b) the Rouvieres knew or should have known of the disqualified expert's relationship with DePuy at the time that they served the disqualified expert's opinion. The Rouvieres offer no reason (other than the ones already discussed) to disturb any of these conclusions. Thus, to the extent that the Rouvieres object to Judge Aaron's December 19, 2020 order denying reconsideration, the objection is overruled for the same reasons discussed above. *See In re Palermo*, 2011 WL 446209, at *4 (S.D.N.Y. Feb. 7, 2011) ("The standard for reconsideration under Local Civil Rule 6.3 is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words that might reasonably be expected to alter the conclusion reached by the court.") (cleaned up).

In sum, the Rouvieres' objection is overruled on the merits even if it were timely. Dr. Jarrell's DePuy-related opinions are thus excluded from the record.

Though this result is harsh, it is not unfair. At the end of the day, the Rouvieres are left in the exact same position that they were in before the disqualified expert was disqualified: They have expert testimony on Stryker's liability but not on DePuy's. The disqualification of their expert gave the Rouvieres an opening to retroactively plug the holes in their disqualified expert's report. Judge Aaron rejected that gambit, placing the Rouvieres in the exact same position that they were in on September 21, 2020, when they timely filed their expert disclosures.

## II. The Gannon and Bobst Reports

After expert discovery closed (and after issuing the order to strike), Judge Aaron allowed the Rouvieres to disclose supplemental reports by Dr. Gannon and Dr. Bobst, on the ground that important information had been inadvertently withheld by Stryker during fact discovery. *See*

Dkt. No. 296.  The Rouvieres disclosed these additional reports, and now seek to augment the summary judgment record with these two supplemental reports.  That motion is granted.  The two supplemental reports will be considered as part of the summary judgment record.

In the same motion, the Rouvieres also ask for additional briefing on DePuy's motion for summary judgment.  That part of the motion is denied.  DePuy's motion for summary judgment does not turn on the testimony of Drs. Gannon and Bobst, since DePuy does not raise issues of pathology, immunology, or toxicology in its briefing.  DePuy's summary judgment papers do not challenge the narrative that Jodi Rouviere was injured by metal debris in her body.  DePuy instead focuses on the lack of evidence that DePuy's product was defective or that DePuy failed to warn Dr. Buly of potential risks.  Neither of these issues are addressed by the Gannon and Bobst reports, which focus on whether and how the metal debris caused Jodi Rouviere's injuries.  DePuy's motion for summary judgment is fully briefed, and additional briefing is not needed.

### III.   DePuy's Motion for Summary Judgment

Having addressed the breadth and content of the summary judgment record, the Court turns to DePuy's motion for summary judgment.  After setting forth the general principles of products liability under New York law, the Court concludes as follows:  First, the lack of expert testimony dooms the Rouvieres' defective-design claims.  Second, the Rouvieres have abandoned their claims for defective design, defective manufacture, and breach of express or implied warranties.  Third, there is a genuine dispute about the adequacy of DePuy's warnings but DePuy is nevertheless entitled to summary judgment because the Rouvieres have adduced no evidence that DePuy's insufficient warnings proximately caused Jodi Rouviere's injury.  And fourth, Andre Rouviere's loss-of-consortium claim is not viable as a standalone claim.  Summary judgment is therefore granted to DePuy on all of the Rouvieres' claims against it.

### A. New York Law on Products Liability

"In accordance with a long-standing and evolving common-law tradition, a manufacturer of a defective product is liable for injuries caused by the defect." *In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 786–87 (2016). A product is considered defective if it "(1) contains a manufacturing flaw; (2) is defectively designed; or (3) is not accompanied by adequate warnings for the use of the product." *Id.* (cleaned up).

"In design defect cases, the alleged product flaw arises from an intentional decision by the manufacturer to configure the product in a particular way. In contrast, in strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the fabrication process." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 257 n.3 (1995). Claims under the last category—failure to warn— can be "framed in terms of strict liability or negligence," but the two causes of action are "functionally equivalent." *In re New York City Asbestos Litig.*, 27 N.Y.3d at 87.

### B. The Defective-Design Claims

DePuy moves for summary judgment on the defective-design claims on the ground that— without Dr. Jarrell's DePuy-related opinions—the Rouvieres have adduced no expert testimony that DePuy's products were defectively designed. In New York, defective-design claims must usually be supported by expert testimony as to the feasibility and efficacy of alternative designs. *See Nemes v. Dick's Sporting Goods, Inc.*, 2021 WL 739032, at *4 (S.D.N.Y. Feb. 23, 2021) (collecting cases); *see also Water Pollution Control Auth. of the City of Norwalk v. Flowserve US, Inc.*, 782 F. App'x 9, 15 (2d Cir. 2019) ("We agree with the district court that this is the type of complex case which requires an expert opinion as to defect and as to feasible alternative design.") (cleaned up). The Rouvieres make no argument to the contrary, nor do they point to any non-expert evidence that the DePuy products were defectively designed. Indeed, they make

no argument at all in defense of their defective-design claims. *See Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000) ("Having determined that the district court acted within its discretion in excluding [an expert's] testimony, the plaintiff has no evidence in the record to support his theory that the motor had a design defect which caused the accident or increased its severity. As a result, summary judgment was properly granted."); *Jackson v. Federal Express*, 766 F.3d 189, 197–198 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."). Summary judgment is therefore granted for DePuy on the Rouvieres' negligence and strict-products-liability claims (counts one and two) to the extent they are based on a defective-design theory.

### C.     The Defective-Manufacture Claims

"To prove the existence of a manufacturing defect, a plaintiff must establish that the product was not built to specifications or that it did not conform to the manufacturer's intended design." *Minda v. Biomet, Inc.*, 182 F.3d 900 at *1 (2d Cir. 1999) (unpublished decision). Summary judgment is warranted because the Rouvieres' opposition brief does not point to any evidence of defective manufacture, nor does it defend the defective-manufacture theory of liability. The Rouvieres have thus abandoned this claim by not responding to any of DePuy's arguments. *See Jackson*, 766 F.3d at 197–198. Summary judgment is therefore granted for DePuy on the Rouvieres' negligence and strict-products-liability claims (counts one and two) to the extent they are based on a defective-manufacture theory.

### D.     The Breach-of-Warranty Claims

DePuy moves for summary judgment on the Rouvieres' claims for breach of express and implied warranties. DePuy argues (a) that both of these claims require an underlying design or manufacturing defect, and the Rouvieres have adduced no evidence of either; (b) that DePuy

made no express warranties to the Rouvieres; and (c) that the implied-warranty claim is time-barred.  *See* Dkt. No. 179 at 16–18.  The Rouvieres do not respond to these arguments and do not defend their breach-of-warranty claims in their opposition brief.  In fact, they include no discussion of these claims other than a recitation of their elements.  *See* Dkt. No. 233 at 41–43.  The Rouvieres have abandoned these claims.  *See Nemes*, 2021 WL 739032, at *13.  Summary judgment is therefore granted to DePuy on counts three and four.

### E.    The Failure-to-Warn Claims

The Rouvieres focus all of their energies defending the failure-to-warn claims.  As DePuy concedes, there is no bright-line rule requiring expert testimony for failure-to-warn claims.  *See Billiar v. Minnesota Min. & Mfg. Co.*, 623 F.2d 240, 246–47 (2d Cir. 1980).  DePuy makes three arguments in favor of summary judgment:  First, that it had no duty to warn.  Second, that even if it did have a duty to warn, it adequately warned Dr. Buly of the impingement risk.  And third, that, even if it did not adequately warn Dr. Buly, its failure to warn was not a proximate cause of Jodi Rouviere's injuries.  Each argument is discussed in turn.

#### 1.    Whether DePuy Had a Duty to Warn

A manufacturer has a duty to warn of any "latent dangers resulting from foreseeable uses of its products of which it knew or should have known."  *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297 (1992).  DePuy concedes that it had a duty to warn of dangers resulting from the use of *its* product.  But DePuy argues that it had no duty to warn of any dangers that stem solely from Stryker's products.  While DePuy is correct, it still does not warrant summary judgment in its favor.  That is because the Rouvieres' claim is that DePuy failed to warn of the impingement risk in *DePuy's* product, not just Stryker's product.

To determine whether there existed a duty to warn, "the court must settle upon the most reasonable allocation of risks, burdens and costs among the parties and within society,

accounting for the economic impact of a duty, pertinent scientific information, the relationship between the parties, the identity of the person or entity best positioned to avoid the harm in question, the public policy served by the presence or absence of a duty and the logical basis of a duty." *In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 788 (2016). One "major determinant" is "whether the manufacturer is in a superior position to know of and warn against those hazards." *Id.* at 790. "[T]he existence and scope of a duty to warn are generally fact-specific," and "it is incumbent on the court . . . to decide whether an applicable legal duty exists" by "decid[ing] whether there is any proof in the record that might support the recognition of a duty to warn owed by the manufacturer to the injured party." *Id.* at 787 (cleaned up).

*Rastelli* is the key case here. The defendant in *Rastelli* had manufactured a non-defective tire. A downstream purchaser combined the tire with a defective rim. The rim exploded, killing a person who was inflating the tire. The New York Court of Appeals held that the tire manufacturer had no duty to warn about the rim. The fact that the tire was "compatible for use with a defective product of the other manufacturer" was not enough. *Rastelli*, 79 N.Y.2d at 298. There was no evidence that the tire manufacturer had created the dangerous condition, so it "had no duty to warn about the use of its tire with potentially dangerous multipiece rims produced by another where [the tire manufacturer] did not contribute to the alleged defect in a product, had no

control over it, and did not produce it." *Id.* Thus, DePuy is correct that it had no duty to warn of dangers that were solely attributable to Stryker's products.[7]

But DePuy is still not off the hook. *Rastelli* recognized that "where the combination of one sound product with another sound product creates a dangerous condition," then "the manufacturer of each product has a duty to warn." *Id.* Thus, even if DePuy had no duty to warn about Stryker's products, it still had a duty to warn of "latent dangers resulting from foreseeable uses of *its* products." *Id.* at 297 (emphasis added). The Rouvieres claim that DePuy should have warned about the risk of component impingement in the *DePuy* stem. In this respect, this case is different than *Rastelli*. There, the tire was not defective and did not cause the harm. Here, DePuy's stem allegedly *did* cause the harm by impinging with other components and releasing toxic metals. The alleged risk is thus with DePuy's product, arguably imposing on DePuy a duty to warn.

There is no genuine dispute that the DePuy stem became dented, which the Rouvieres attribute to impingement. Nor is there is a dispute that DePuy was aware of the risk of impingement—indeed, DePuy argues that it *warned* of impingement. And even if there is no evidence that the DePuy stem was defectively designed or manufactured (because the Rouvieres lack expert testimony on that front) the duty to warn applies even to non-defective products. A reasonable juror could find that DePuy had a duty to warn of this risk. *See Greenberg v. Larox,*

---

[7] The New York Court of Appeals has carved out an exception to the *Rastelli* rule, holding that manufacturers do have a duty to warn of dangers associated with a third-party product where "as a matter of design, mechanics or economic necessity, [the third-party product] is necessary to enable the manufacturer's product to function as intended." *In re New York City Asbestos Litig.*, 27 N.Y.3d at 778. But that exception does not apply here because the Stryker acetabular components are not "necessary" to the use of the DePuy stem. Indeed, DePuy makes its own acetabular components and recommends *against* pairing its stem with acetabular components from other manufacturers. *See* Dkt. No. 187-5 at 6.

*Inc.*, 673 F. App'x 66, 71 (2d Cir. 2016) (reversing grant of summary judgment because "the factual dispute over [the defendant]'s contribution to the danger arising from the joint use of its [product] with a [another manufacturer's product] bears on the issue of whether it knew about, and could reasonably foresee, this danger of malfunction and injury" and which, in turn, "affects whether [the defendant] had a duty to warn at all").  Viewing the evidence in the light most favorable to the Rouvieres, the Court cannot conclude, as a matter of law, that DePuy had no duty to warn of the risk of impingement associated with the DePuy stem.

### 2. Whether DePuy Adequately Warned of the Risk of Impingement

DePuy next argues that, even if it did have a duty to warn, it has fulfilled that duty by adequately warning Dr. Buly of the risk of impingement.  A warning is adequate if it is "accurate, clear, consistent on its face, and . . . portrays with sufficient intensity the risk involved."  *Martin v. Hacker*, 83 N.Y.2d 1, 10 (1993).

Under the "learned intermediary" doctrine, DePuy's obligation was to warn Jodi Rouviere's doctor rather than Rouviere herself.  *See Bravman v. Baxter Healthcare Corp.*, 984 F.2d 71, 75 (2d Cir. 1993).  "This rule is based on the theory that the doctor is better able to explain the product's risks and benefits to the patient, who will then be in a position to make an informed decision as to whether or not to have a certain procedure."  *Minda v. Biomet, Inc.*, 1998 WL 817690, at *6 (E.D.N.Y. Feb. 5, 1998).  Thus, "where the warning given to the prescribing physician by the manufacturer through package inserts and other literature gives specific detailed information on the risks of the product, the manufacturer [can be] absolved from liability as a matter of law."  *Fane v. Zimmer, Inc.*, 927 F.2d 124, 129 (2d Cir. 1991) (cleaned up).  DePuy argues that it warned Dr. Buly of the risk of impingement, pointing to the instructions for use ("IFU") that accompanied the DePuy stem.

30

But there are genuine factual disputes about the adequacy of these warnings. The IFU instructs surgeons that, before completing the surgery, "[r]ange of motion should be thoroughly checked for improper mating, instability, or *impingement* and corrected as appropriate." Dkt. No. 227 ¶ 27 (emphasis added); Dkt. No. 187-5 at 8. But this sentence does not appear in the "Warnings" section of the IFU but instead appears among the instructions on how to perform the implant surgery. This sentence says nothing about the risk of impingement *after* the surgery. Nor does it say anything about the risk that impingement could create metal debris. And besides, the Rouvieres argue that the unadorned word "impingement" could refer to either anatomical impingement—which occurs when the implant impinges on the patient's body—or component impingement, which occurs when one part of the implant impinges on another part of the implant. DePuy's reply brief does not respond to this point or explain the difference (if any) between anatomical impingement and component impingement. And while DePuy points to other warnings, none of those even mention impingement. *See* Dkt. No. 187-5 at 7 (warning of "tissue reactions, osteolysis, and/or implant loosening caused by metallic corrosion, allergic reactions, or the accumulation of polyethylene or metal wear debris"); *id.* (warning of "[s]ubluxation or dislocation of the hip joint due to implant size or configuration selection, positioning of components and/or muscle and fibrous tissue laxity").

DePuy also argues that it warned Dr. Buly not to use the DePuy stem with acetabular components made by other manufacturers, pointing to the IFU warning that "[i]mplants and trials components from different manufacturers or implant systems should never be used together." *Id.* at 6. But this warning does not say why mixing and matching should be avoided, nor does it say that mixing and matching can lead to impingement. This warning does not preclude a reasonable juror from finding that this warning was too broad and that the IFU did not sufficiently

31

communicate the risk of impingement.  *See Moretto v. G & W Elec. Co.*, 20 F.3d 1214, 1223 (2d Cir. 1994) ("The ten-word warning in a 403-word letter in no way portrayed with sufficient intensity the risk involved to warrant taking this question from the jury."); *cf. Wu Jiang v. Ridge Tool Co.*, 764 F. App'x 43, 45 (2d Cir. 2019) (affirming grant of summary judgment where "[t]he warnings clearly and emphatically alerted users to the dangers of using the vacuum to collect flammable dust").

In sum, the Court cannot find that any of these warnings were adequate as a matter of law.  When viewed in the light most favorable to the Rouvieres, a reasonable juror could find that these warnings were not "accurate, clear, [and] consistent on its face" as to the risk of component impingement and metal debris or did not "portray[] with sufficient intensity the risk involved."  *Martin*, 83 N.Y.2d at 10.  A reasonable juror could likewise find that the warning about impingement pertained only to anatomical impingement and thus did not warn of "the precise malady incurred."  *Alston v. Caraco Pharm., Inc.*, 670 F. Supp. 2d 279, 284 (S.D.N.Y. 2009) (cleaned up); *cf. Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84, 95 (N.D.N.Y. 2010) (granting summary judgment to manufacturer of knee replacement device because package insert warned of the device's nickel content).

"The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment."  *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) (cleaned up).  Such is the case here.

### 3. Whether the Allegedly Deficient Warnings Proximately Caused Jodi Rouviere's Injuries

Having concluded that there is a genuine dispute over whether DePuy's warnings were deficient, the Court turns to the issue of proximate causation.  At trial, Jodi Rouviere must "prove that [the] defendant's failure to warn was a proximate cause of [her] injury," which

includes "adducing proof that the user of a product would have read and heeded a warning had one been given." *Sosna v. Am. Home Prod.*, 748 N.Y.S.2d 548, 549 (1st Dep't 2002); *see also Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991). The Rouvieres proffer two theories of proximate causation. First, that Dr. Buly would not have used the DePuy components had he been adequately warned about the risk of impingement. And second, that more robust warnings by DePuy would have led Dr. Buly to give Rouviere more detailed warnings, in which case she would not have consented to the surgery. But, as explained below, neither of these theories is supported by evidence in the record.

> ### a. Whether different warnings would have led Dr. Buly not to use the components at issue

The Rouvieres' first theory of proximate causation is that an appropriate warning in the IFU would have dissuaded Dr. Buly from using the components that he implanted in Jodi Rouviere. This theory rests on three premises: (a) that Dr. Buly was not independently aware of the impingement risk at issue; (b) that Dr. Buly read the IFU; and (c) that, had the IFU contained a more robust warning, Dr. Buly would have done something different.

Even assuming that the first two premises are true, the Rouvieres proffer no evidence to support the third premise—that, had Dr. Buly been given additional warnings about impingement, he would have chosen different components or have recommended against the surgery. Indeed, the Rouvieres do not even dispute that Dr. Buly was aware of the impingement risk at the time of the surgery: DePuy's Local Civil Rule 56.1 statement states that "Dr. Buly testified he was aware of [the risk of component impingement] at the time of the August 2012 total hip replacement surgery—particularly so in this case given Mrs. Rouviere's diagnosed Ehlers-Danlos Syndrome." Dkt. No. 227 ¶ 26. Though the Rouvieres object to other portions of

that paragraph, they say nothing in opposition to the quoted language, let alone point to evidence in the record contradicting it.

Dr. Buly sat for two depositions, and the Rouvieres had ample opportunity to elicit facts that would "permit a jury reasonably to infer that a warning, reasonably required, would have been heeded." *Raney v. Owens-Illinois, Inc.*, 897 F.2d 94, 96 (2d Cir. 1990). But the Rouvieres point to no evidence, testimonial or otherwise, that Dr. Buly would have done anything differently. To the contrary: Dr. Buly testified that he planned to continue using the DePuy stem even knowing what he knows now. *See* Dkt. No. 316-1 at 280–89. The Rouvieres do not question Dr. Buly's credibility or recollection (except for a disagreement over the contents of Dr. Buly's pre-surgery warnings to Jodi Rouviere, which is not relevant here). Nor do the Rouvieres have any testimony or evidence, expert or otherwise, that a reasonable surgeon, having received additional warnings, would not have done what Dr. Buly did. There is simply no evidence that a warning—if it had been given—would have been so material or important that Dr. Buly would have heeded it or would have done something different.

The Second Circuit has rejected the notion that New York has a "heeding presumption" under which a jury may "infer, whenever the facts show that a warning is required, that a warning would have been heeded." *Raney*, 897 F.2d at 95. Rather, "New York permits the trier to infer that a warning would have been heeded and thereby to conclude that the absence of a warning that was reasonably required to be given was a proximate cause of an injury." *Id.* But, as discussed above, the Rouvieres have proffered no facts that would allow a jury to make that inference without resort to speculation. *See id.* at 96 (collecting cases for the proposition that "in some circumstances it is not reasonable to draw an inference that a warning would have been heeded"); *see also Adeghe v. Janssen Pharms., Inc.*, 2017 WL 3741310, at *6 (S.D.N.Y. Aug.

30, 2017) (rejecting the heeding presumption in context of summary judgment). This is especially true here, where the Rouvieres do not proffer a specific warning that DePuy should have included. At most, the Rouvieres appear to be arguing that DePuy should have alerted Dr. Buly to the impingement risk. But even if we presume that such a warning would have been heeded, in the absence of any evidence of what such a warning would have said and that it would have told Dr. Buly of anything significant he did not already know, the Rouvieres would still need evidence that Dr. Buly would have done something differently as a result.

At trial, the Rouvieres would bear the burden of proof. Thus, at the summary judgment stage, DePuy can seek summary judgment by "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). That is what DePuy did here. This shifted the burden of production to the Rouvieres to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* The Rouvieres have not done so with respect to proximate causation because there is no evidence upon which a reasonable juror could conclude that a different warning would have led to a different result. *See Sosna*, 748 N.Y.S.2d at 549 ("[I]t remains plaintiff's burden to prove that defendant's failure to warn was a proximate cause of his injury and this burden includes adducing proof that the user of a product would have read and heeded a warning had one been given.") (cleaned up).

Jodi Rouviere concedes that she relied entirely on Dr. Buly to choose the components in her hip replacement device. She proffers no basis upon which to dispute Dr. Buly's testimony that he was aware of the risk of impingement and that Rouviere had an elevated risk of impingement. It is thus not enough to show that Dr. Buly may not have known of the exact magnitude of the impingement risk and that additional warnings would have informed Dr. Buly

35

of those risks.  Rather, the Rouvieres had to proffer testimonial, documentary, or expert evidence regarding the magnitude of the risk and how it differed from the risk of which Dr. Buly was aware or that would otherwise allow a reasonable juror to infer that Dr. Buly would have done something different had he received different warnings.  *See Adeghe*, 2017 WL 3741310, at *7 (granting summary judgment on failure-to-warn claim because the plaintiff "cites no direct evidence, such as the testimony from his doctors, that Plaintiff would not have been prescribed Risperdal in the same manner if the warning were more extensive . . . [n]or does Plaintiff adduce any evidence suggesting that a physician balancing the risks of Risperdal-induced gynecomastia against the benefits of Risperdal would conclude that Risperdal should not have been prescribed to Plaintiff").  There is simply no such evidence in the record, so the Rouvieres have not met their summary judgment burden of production as to this theory of proximate causation.

> **b.      Whether different warnings by DePuy would have led Dr. Buly to give additional warnings to Rouviere, leading Rouviere not to consent to the surgery**

The Rouvieres' alternative theory of proximate causation is based not on Dr. Buly's choice of components but on Jodi Rouviere's choice to undergo the surgery.  The Rouvieres argue that additional warnings by DePuy would have resulted in additional warnings by Dr. Buly to Jodi Rouviere, and that, had she received these warnings, Rouviere would not have consented to the surgery.  This theory rests on three premises: (a) that Dr. Buly did not fully warn the Rouvieres about the risk of component impingement and the presence of toxic metals; (b) that, had DePuy given Dr. Buly more robust warnings, he would have in turn given more robust warnings to Rouviere about impingement, toxic metals, and metallosis; and (c) that, upon hearing those warnings, Rouviere would not have consented to the surgery.

Even assuming that the first premise is correct, the Rouvieres proffer no evidence as to the second premise—that additional warnings by DePuy would have led Dr. Buly to give

36

additional warnings to Jodi Rouviere.  As previously discussed, there is no evidence that additional warnings about impingement would have changed Dr. Buly's choice of components. The same lack of evidence applies to Dr. Buly's choice of warnings.  The Rouvieres point to no evidence that additional warnings from DePuy would have resulted in a different conversation between Dr. Buly and Jodi Rouviere concerning the risks of impingement.

The same result follows for the Rouvieres' claim that if DePuy had disclosed to Dr. Buly that the stem contained toxic metals, Dr. Buly would have relayed that information to Jodi Rouviere.  That is partially because Dr. Buly testified to the exact opposite:  When presented with the list of metals in DePuy's stem, he testified that this knowledge would not have affected his choice of components or his choice of warnings.  *See* Dkt. No. 316-1 at 280–89; *see also, e.g.*, *id.* at 282 (Question: "If you were aware in August of 2012 that trace amounts of lead, here 30 parts per million max, were permitted and in HA coating, would you have recommended a different stem for Jodi Rouviere?"  Answer: "No."); *id.* at 282–83 (Question: "If you were aware in August of 2012 that trace amounts of lead, again, 30 parts per million, were allowed in the HA coating, would you have given any different warning to Jodi Rouviere?"  Answer: "No.").[8]  It is also because there is nothing in the facts and circumstances or in the nature of the unwarned risk

_____

[8] Because the Rouvieres have not adduced evidence as to the second premise of this proximate-cause theory, the Court need not address the third premise—that Rouviere would not have consented to the surgery had she been given additional warnings. The Rouvieres' brief states that, had Jodi Rouviere been made aware of the impingement risk or of the existence of toxic metals, she would not have consented to the surgery.  But neither statement is accompanied by a citation to the record.  *See* Dkt. No. 233 at 33, 41.  And while Jodi Rouviere submitted a detailed declaration about her pre-surgery discussions with Dr. Buly, nowhere in that declaration does she state that she would not have consented to the surgery had she been given additional warnings.  *See* Dkt. No. 231-13.  Rouviere's deposition testimony arguably says that she would not have consented to the surgery had she known of the risk of metal wear, but it does not say that she would not have consented to the surgery had she just been notified of the exact metal contents of the DePuy stem.  *See* Dkt. No. 316-6 at PDF pp. 329–32.

that could lead a jury to conclude that Dr. Buly would have given additional warnings.  In its

Local Civil Rule 56.1 statement, DePuy states that "Dr. Buly testified that after reviewing these

material specifications he would continue to use the DePuy Summit Stem and Biolox Delta

ceramic head and that he did not see any reason to provide any new or additional warnings to his

patients."  Dkt. No. 227 ¶ 65.  The Rouvieres' response points to no evidence undermining the

veracity of Dr. Buly's statement, nor does it offer any evidence that a reasonable surgeon would

have reached a different conclusion.

In sum, the Rouvieres proffer no evidence that additional warnings by DePuy would have

led Dr. Buly to choose different components or to give additional warnings to Jodi Rouviere.

Thus, while the Rouvieres have adduced evidence as to the inadequacy of DePuy's warnings,

they have not met their burden to adduce evidence of proximate causation.  Summary judgment

is therefore granted for DePuy on the Rouvieres' negligence and strict-products-liability claims

(counts one and two) to the extent they are based on a failure-to-warn theory.

### F.    The Loss-of-Consortium Claim

Andre Rouviere's loss-of-consortium is derivative of Jodi Rouviere's claims.  Since

DePuy is entitled to summary judgment on Jodi Rouviere's claims, it is entitled to summary

judgment on the loss-of-consortium claim as well.  *See Griffin v. Garratt-Callahan Co.*, 74 F.3d

36, 40 (2d Cir. 1996) ("[S]ince none of Mr. Griffin's claims survive, Mrs. Griffin's derivative

claims alleging loss of consortium must also be dismissed.").

### CONCLUSION

The Rouvieres' objection to Magistrate Judge Aaron's orders at Docket Nos. 232 and 266

is OVERRULED.  The Rouvieres' motion to supplement the summary judgment record is

GRANTED insofar as it seeks to include the supplemental Gannon and Bobst reports in the

record but is DENIED insofar as it seeks additional briefing.  DePuy's motion for summary judgment is GRANTED as to all claims against it.

The Clerk of Court is respectfully directed to close Docket Nos. 178 and 308 and dismiss DePuy from this case.

SO ORDERED.

Dated: September 17, 2021
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
JODI ROUVIERE and ANDRE ROUVIERE,                                  :
                                                                   :
                                  Plaintiffs,                      :
                                                                   :                    18-cv-04814 (LJL)
                       -v-                                         :
                                                                   :                    OPINION AND ORDER
HOWMEDICA OSTEONICS                                                :
CORPORATION d/b/a STRYKER                                          :
ORTHOPAEDICS,                                                      :
                                                                   :
                                  Defendant.                       :
-------------------------------------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:_____                │
│ DATE FILED: _12/05/2022__    │
└─────────────────────────────┘
```

LEWIS J. LIMAN, United States District Judge:

    In 2012, Jodi Rouviere ("Rouviere") underwent hip replacement surgery and, as part of

that surgery, was implanted with a device that combined components made by two companies,

one of which is Howmedica Osteonics Corp. (the "Defendant").  Rouviere alleges that the two

components impinged on one another, resulting in the release of toxic metal debris into her body.

Based on alleged injuries she sustained as a result of the release of this metal debris, Rouviere

brings claims for negligence, strict products liability, breach of express warranty, and breach of

implied warranty against Defendant.  Her spouse, Andre Rouviere ("Mr. Rouviere," and with

Rouviere, "Plaintiffs"), brings a claim for loss of consortium against the Defendant.  Dkt. No. 26.

    Defendant now moves for summary judgment based on the statute of limitations, arguing

that Rouviere's claims are time-barred and Mr. Rouviere's loss-of-consortium claims should be

dismissed as derivative.  Dkt. No. 332.  For the following reasons, the motion for summary

judgment is granted.

**BACKGROUND**

The following facts, which are largely drawn from the parties' Local Rule 56.1

statements of facts, Dkt. Nos. 333, 334, 341-1, 348, are undisputed unless otherwise indicated.[1]

Rouviere injured her right hip during an accident in her kitchen in July 2009.  Joint 56.1

Statement ¶ 1.  Rouviere reported right hip pain following the accident; she wore a brace on her

right leg, could barely walk, often used a wheelchair, and could not climb up stairs.  P's 56.1

Counterstatement ¶ 36; D's Response to 56.1 Counterstatement ¶ 36.  After the accident,

Rouviere underwent a number of arthroscopic procedures on her hips.  *Id.* ¶¶ 2–3.

Shortly after the third of these arthroscopic procedures, Rouviere was diagnosed with

Ehlers-Danlos syndrome, a connective tissue disorder.  Joint 56.1 Statement ¶ 3.  As a result of

her Ehlers-Danlos syndrome, Rouviere has suffered from neck, shoulder, back, and spinal cord

issues and underwent an anterior cervical discectomy and fusion in February 21, 2013.  P's 56.1

Counterstatement ¶¶ 40–42; D's Response to 56.1 Counterstatement ¶¶ 40–42.  Medical records

from April 2012 document that Rouviere's Ehlers-Danlos syndrome caused her shoulder to

dislocate, severe popping of her neck, and her hands to be almost totally impaired due to

subluxation of her thumbs.  Dkt. No. 346-7 at ECF p. 83.

On August 14, 2012, due to recurring pain in her right hip, Rouviere underwent a total

right hip replacement surgery at the Hospital for Special Surgery in New York, performed by Dr.

---

[1] Defendant filed a Rule 56.1 joint statement of undisputed facts, which Defendant states that it compiled after meeting and conferring with Plaintiffs about what material facts are not in genuine dispute.  Dkt. No. 333 ("Joint 56.1 Statement").  Defendant also submitted a Rule 56.1 statement of undisputed facts in support of its motion for summary judgment, which is largely identical to the Joint 56.1 Statement, except it includes two additional paragraphs.  Dkt. No. 334 ("D's 56.1 Statement").  Plaintiffs submitted a response to D's 56.1 Statement as well as a counterstatement of facts (Paragraphs 36 to 83).  Dkt. No. 341-1 ("P's 56.1 Counterstatement").  Defendant submitted a response to P's 56.1 Counterstatement.  Dkt. No. 348 ("D's Response to 56.1 Counterstatement").

Robert Buly.  Joint 56.1 Statement ¶ 4.  As part of that surgery, Dr. Buly implanted a DePuy titanium femoral stem and ceramic head, as well as a Stryker MDM ® liner and insert and acetabular cup; the Stryker device is made and sold by Defendant.  *Id.* ¶ 5.

Upon implementation, Rouviere alleges that she suffered injury, physiological instability, toxicity, and toxic result from the interaction of the devices, although the parties dispute when exactly Rouviere became aware of the injuries.  *Id.* ¶ 6; *see* P's 56.1 Counterstatement ¶ 6.  On multiple occasions in September 2012, Rouviere experienced extreme dizziness, vertigo, nausea, and vomiting and went to the Emergency Room on September 11, 2012 as a result of these symptoms.  Joint 56.1 Statement ¶ 7.  In November 2012, Rouviere complained to her osteopath of increasing right hip pain as well as "searing, shooting pain down the right hip."  *Id.* ¶ 8.  Plaintiffs also alleged in their amended complaint that by the beginning of 2013, Rouviere "experienced pain and loss of range of motion."[2]  *Id.* ¶ 9 (quoting Dkt. No. 26 ¶ 209).  Further, as 2013 progressed, Rouviere's health declined, and she suffered more pain, instability, and less function in her right hip, her heart would start beating harder, and her body felt tired.  *Id.* ¶ 10.

In October 2013, Rouviere was treated by a neurologist, Dr. Brad Herskowitz, after she complained of headaches, heaviness in her arms and legs, an itchy head and face, an urgent need to urinate, and feeling like she had slowed down in general.  *Id.* ¶ 11.  The treatment records also state that Rouviere questioned whether she may have a multiple sclerosis-like disease.  P's 56.1 Counterstatement ¶ 11; *see* Dkt. No. 335-1 at 141–42.

---

[2] In their counterstatement, Plaintiffs do not contest this allegation, but state that "the allegation made in the Amended Complaint does not by itself indicate any knowledge by the plaintiff of any occurrence or condition prior to commencement of the action."  P's 56.1 Counterstatement ¶ 9.

Treatment records from her osteopath, Dr. Mark Sandhouse, from mid-to-late 2013 indicate that Rouviere continued to suffer instability and pain in her right hip and displacement of the hip occasionally.  Joint 56.1 Statement ¶ 12.  In February of 2014, Rouviere had an appointment with a neurologist, Dr. Simon Starosta-Rubenstein, after she grew concerned with her "functional neurological decline."  *Id.* ¶ 13.

On June 27, 2014, Rouviere told her physical therapist that she was suffering from, among other things, vertigo, lightheadedness, dizziness, double and blurred vision, tinnitus, nausea and vomiting, shaking episodes, tremors, changes in sleep patterns and appetite, numbness in her right leg, chronic pain, muscle pain at rest, speech difficulty, weakness in legs and arms, and heart palpitations.  *Id.* ¶ 14.  Doctor's notes related to that visit state that Rouviere believed that the "cause of the pain or condition to be Ehlers Danlos Syndrome."  Dkt. No. 346-7.

Due to recurring incidents of instability of her right hip, Rouviere was admitted to the hospital on May 17, 2015.  *Id.* ¶ 15.  The admission records state that, in addition to instability of the right hip, Rouviere had been having problems with temperature regulation, tremors, blurred vision, cognitive impairment, dizziness, and gaited instability for the previous eight months.  *Id.*  The doctor's notes for the visit also state:

> Chief Complaint: Lower extremity pain. . . .  She has had difficulty walking. . . .  43 y/o F with a significant surgical history of Rt hip replacement. . . . The pt was taken to Broward general hospital where x-rays were done and they revealed no fractures or dislocations.  Even though the pt wasn't able to walk, she was discharged home with outpatient orders for an MRI of the rt hip.  MRI was done it showed that the pt has anatomy distortion of the hip, with diffuse metal artifact present with no evidence of fracture or dislocation.

Dkt. No. 335-15.  Rouviere's notes related to this visit dated May 18, 2015 state: "My hip mispositions again.  I cannot walk and am in excruciating pain.  I am admitted to Doctor's

Hospital (Coral Gables, FL) for 6 days of testing as I believe my unstable hip and neurological symptoms could be relational [sic] to metallosis." *Id.*; *see* Dkt. No. 335-16.

In the amended complaint, Plaintiffs allege that in May 2015, Rouviere's blood was tested and demonstrated "highly elevated Chromium level of 0.9 [mcg/L], Arsenic of [mcg/L] 5 . . . Plaintiff has no source of exposure to chromium and cobalt and other metals that would account for her elevated blood levels of chromium or cobalt and other metals other than the subject product." Joint 56.1 Statement ¶ 16. Defendant claims that these blood test results were received on May 18, 2015, although Plaintiffs claim that Rouviere did not receive the results before she left the hospital and did not know what happened to the metal test. D's 56.1 Statement ¶ 17; P's 56.1 Counterstatement ¶ 17.

On May 21, 2015, Rouviere met with Dr. Carlos Alvarado, an orthopedic surgeon, because her hip had displaced so many times and would get stuck and she was having "so many" systemic issues. D's 56.1 Statement ¶ 18 (claiming that Rouviere went to see Dr. Alvarado); P's 56.1 Counterstatement ¶ 17 (claiming that Dr. Alvarado came to see Rouviere at the hospital).

On November 11, 2016, Rouviere underwent a partial revision surgery, performed by Dr. Alvarado, to remove and replace the two implanted devices. Joint 56.1 Statement ¶ 19. The surgeon for the revision surgery found that the DePuy titanium stem had impinged upon the Stryker MDM ® cobalt chrome liner resulting in a notch in the neck of the titanium stem. *Id.* He also found "a significant amount of grayish brown soft tissue consistent with metal debris," which was indicative of metallosis. *Id.* The surgeon later told Rouviere that she was "covered in metallosis" and that she had "pseudotumors consistent with damage to the tissue." *Id.* ¶ 20.

After this procedure, Rouviere underwent two additional revision surgeries in February 2017 and May 2017 to remove and replace various components in her right hip. *Id.* ¶ 21.

Eventually, in October 2017, a procedure was performed in which all of the hip components were removed. *Id.* ¶ 22.

In this action, Rouviere claims that, due to the implantation of Defendant's device, she has suffered injuries including physiological instability, pain, swelling, inflammation, adverse tissue reaction, necrosis, pseudotumor, metallosis, and toxicity resulting from metal debris generated by her hip components as well as decreased mobility of the hip. *Id.* ¶ 23.  In her amended complaint, she alleges that by reason of Defendant's tortious acts, she "has suffered and/or is at an extremely high risk of suffering serious and dangerous side effects, including but not limited to severe pain and suffering, the need for additional surgery, as well as other severe and permanent health consequences."  Dkt. No. 26 ¶ 196; *see also id.* ¶¶ 270, 289, 313, 324, 335, 348, 371, 382, 393.  She alleges that she "has been severely and permanently injured and/or has been exposed to risk of severe and permanent injury, and has and will require more constant and continuous medical monitoring and treatment than prior to her implantation of Defendants' Summit Tapered Hip System and its stem." *Id.* ¶ 198.  Plaintiffs' experts identify the following injuries as caused by metal debris released from her 2012 implants: tissue damage and necrosis, metallosis, chronic fatigue, nausea, headaches, weakness, dizziness/vertigo, cognitive impairment, hip and other joint and muscle pain, tachycardia, dry eyes/blurred vision, and other immunological and neurological symptoms.  Joint 56.1 Statement ¶ 24.

**PROCEDURAL HISTORY**

Plaintiffs initiated this lawsuit on May 31, 2018 by filing a complaint against Defendant as well as Depuy International, Limited, DePuy Orthopaedics, Inc. ("DePuy"), Depuy Products, Inc., Johnson & Johnson Services, Inc., Johnson & Johnson, Inc., Stryker Corporation, and Stryker Sales Corporation.  Dkt. No. 1.  On October 19, 2018, Plaintiffs filed the operative, amended complaint against the same entities.  Dkt. No. 26.  That amended complaint seeks

6

damages for severe and permanent personal injuries including elevated blood levels of chromium, chromium toxicity, elevated blood levels of cobalt, cobalt toxicity, titanium, titanium toxicity, inflammation, pain, swelling, loss of range of motion, surgical removal and revision of hip replacement system, hip explant, pain and suffering, economic loss and permanent disability, all of which Rouviere allegedly sustained as a consequence of being impacted by devices manufactured and sold by the defendants. *Id.* ¶ 1.

In December 2018, Plaintiffs voluntarily dismissed their claims against Stryker Corporation and Stryker Sales Corporation, DePuy Products, Inc., DePuy International, Limited, Johnson & Johnson, and Johnson & Johnson Services, Inc. Dkt. Nos. 43–44, 51, 52. On January 7, 2019, Defendant filed an answer to the amended complaint, asserting that Plaintiffs' claims are barred by the applicable statute of limitations. Dkt. No. 54 at ECF p. 38.

On September 17, 2021, this Court granted summary judgment in favor of DePuy on all counts, including because Plaintiffs offered no expert testimony in support of their defective-design claim against DePuy and Plaintiffs failed to adduce evidence as to proximate causation in support of their failure-to-warn claim against DePuy. Dkt. No. 318 at 7. Thus, Defendant was left as the only remaining defendant in the case.

During a conference on February 17, 2012, the Court directed Defendant to file a motion for summary judgment based only on the statute of limitations by March 18, 2022, and noted that other summary judgment arguments and *Daubert* issues would be preserved pending the outcome of that motion.

On March 18, 2022, Defendant filed its motion for summary judgment based on the statute of limitations along with supporting papers. Dkt. Nos. 332–36. On May 23, 2022, Plaintiffs filed their opposition to Defendant's motion for summary judgment, as well as

supporting papers.  Dkt. No. 341.  On May 27, 2022, Plaintiffs filed a motion to file certain

exhibits or portions of the exhibits under seal,[3] as well as a revised declaration with exhibits in

support of its opposition to summary judgment.  Dkt. Nos. 345–46.  Defendant filed their reply

memorandum of law in support of summary judgment as well as supporting documentation on

June 20, 2022.  Dkt. Nos. 347–49.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' for

these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n

issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'"  *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether

there are any genuine issues of material fact, the Court must view all facts "in the light most

favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir.

---

[3] Plaintiffs seek leave to file certain exhibits under seal.  Dkt. No. 345.  Plaintiffs stated that these exhibits should be sealed as they contain material set forth in the protective order between the parties.  *Id.*  "Confidentiality agreements alone are not an adequate basis for sealing."  *Metcalf v. TransPerfect Translations Int'l, Inc.*, 2022 WL 2116686, at *1 (S.D.N.Y. June 13, 2022).  "Material designated as Confidential by a protective order might not overcome the presumption of public access once it becomes a judicial document" and "[d]ocuments submitted in support of or opposition to a dispositive motion are judicial documents."  *Id.* (internal quotation marks and citations omitted).  A party seeking to seal material subject to protective order must therefore justify why the presumption of public access over judicial documents should be overcome.  *Id.*  Here, Plaintiffs have failed to explain why sealing of this material is appropriate under the factors set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  For this reason, the motion to seal is denied without prejudice to a revised motion to be filed within 14 days of the date of this Order that explains why "sealing (1) is necessary 'to preserve higher values,' and (2) 'is narrowly tailored to serve that interest.'"  *Metcalf*, 2022 WL 2116686, at *1 (quoting *Lugosch*, 435 F.3d at 120).  In the absence of such a timely-filed motion, the Court will unseal the materials.

2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must also demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).[4]

---

[4] The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any party moving for summary judgment must "annex[ ] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if

**DISCUSSION**

Defendant argues that Plaintiffs' products liability claims arising out of an August 14, 2012 right total hip replacement surgery are barred by the three-year statute of limitations and that, because such claims are time-barred, the derivative loss-of-consortium claim asserted by Mr. Rouviere is also subject to dismissal.

**I.     Product Liability Claims**

To determine whether Plaintiffs' personal injury claims are barred by the statute of limitations, the Court must first decide what statute of limitations applies to Plaintiffs' products liability claims.  The parties agree that New York law governs this question and that a three-year statute of limitations applies.  Dkt. No. 336 at 6–7; Dkt. No. 341 at 10; *see Vuksanovich v. Airbus Americas, Inc.*, 2022 WL 2274543, at *6 (S.D.N.Y. June 23, 2022)) ("Under New York law, the general limitations period for personal injury claims is three years." (citing N.Y. C.P.L.R. § 214(5))).  The parties, however, dispute exactly when that three-year statute of limitations began to accrue.

First, the parties dispute whether N.Y. C.P.L.R. 214-c(2)—which provides a specific accrual rule for personal injury caused by the "latent effects of exposure" to any substance— applies to Plaintiffs' product liability claims.  C.P.L.R. 214-c(2) provides that where a person suffers personal injury from the "latent effects of exposure to any substance or combination of substances, in any form," the three-year limitations period runs "from the date of discovery of

---

necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  L.R. 56.1(b).  All statements in a Local Rule 56.1 submission "must be followed by citation to evidence which would be admissible."  L.R. 56.1(d).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  L.R. 56.1(c).

the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." C.P.L.R. 214-c(2). This is distinct from the general accrual rule for personal injury suits caused by the malfunctioning of a device, which runs "from the date of injury resulting from malfunction, not from the date of implantation of the device—unless implantation and malfunction occur at the same time." *Guisto v. Stryker Corp.*, 293 F.R.D. 132, 135 (E.D.N.Y. 2013). "The goal of the Legislature in adopting CPLR 214-c was to 'provide relief to injured New Yorkers whose claims would otherwise be dismissed for untimeliness simply because they were unaware of the latent injuries until after the limitations period had expired.'" *Matter of New York Cnty. DES Litig.*, 678 N.E.2d 474, 478 (N.Y. 1997) (citation omitted).

In a few sentences, Defendant appears to argue that C.P.L.R. 214-c(2) does not apply to Plaintiffs' personal liability claims because, according to Plaintiffs, the "mechanical problem" with the devices "caused pain and instability" in Rouviere's hip immediately upon implementation; in Defendant's view, then, this is not a case in which the effects of the exposure were "latent." Dkt. No. 336 at 17. In support of this argument, Defendant points to an interrogatory response from Plaintiffs stating that "[t]he device caused injury upon implementation, physiological instability, toxicity and toxic result over time." *Id.*; Dkt. No. 335-3 at ECF p. 6. Plaintiffs respond that the "implanted hip admittedly did not cause injury on the date it was implanted regardless of whether the device was otherwise defective." Dkt. No. 341 at 12.

The Court agrees with Plaintiffs that C.P.L.R. 214-c(2) applies to Plaintiffs' product liability claims. To begin, the evidence supports that there was a latency period before Rouviere discovered the alleged injury. The New York Count of Appeals has stated that "even effects

11

concealed for a few hours may be 'latent' within the meaning of the statute," *Giordano v. Mkt. Am., Inc.*, 941 N.E.2d 727, 731 (N.Y. 2010), and, here, the evidence indicates that the effects of the implantation were latent for at least a month.  Rouviere first identifies suffering injuries allegedly attributable to her exposure to the device around September 11, 2012—approximately one month after the implantation—when she began to experience "a spinning feeling paired with dizziness, nausea, and vomiting and was taken to the Emergency Room at Baptist Hospital for vertigo."  Dkt. No. 335-4 at 3; *see* Joint 56.1 Statement ¶ 7.  Plaintiffs' interrogatory response— stating that "[t]he device caused injury upon implementation"—does not compel a contrary conclusion.  Dkt. No. 335-3 at ECF p. 6.  Although the interrogatory response generally states that the device caused injury "upon implementation," it does not state that the injury occurred *immediately* upon implementation or, more important, state that the injury was patent.  A patient can be injured without the injury being discovered.  That is the point of the New York statute.  The interrogatory is thus silent as to whether the injury was "latent" for some period of time prior to its discovery, and Defendant points to no other evidence that the effects of which Plaintiffs complain were immediately apparent to Rouviere.  *See BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 91 (E.D.N.Y. 2021) (defendant bears the burden of proof on a statute of limitations defense).

To the extent Defendant is arguing that C.P.L.R. 214-c(2) does not apply because Rouviere suffered injury from a "mechanical problem" rather than "exposure to a[] substance," this argument is also unavailing.  Dkt. No. 336 at 17.  The heart of Plaintiffs' claims is that the impingement of the two component devices and the resulting friction caused the release of metal debris and ions that, in turn resulted in metallosis and other conditions that caused pain, swelling, inflammation, adverse tissue reactions, and a decrease in range of motion.  Dkt. No. 26 ¶¶ 126–

12

28; *see also* Dkt. No. 233 at 3. Rouviere's injuries thus allegedly resulted from exposure to a toxic substance, not merely a mechanical problem: Plaintiffs claim that the DePuy titanium stem impinged with the Stryker cobalt-chrome liner, releasing toxic metals into Rouviere's body, which, in turn and over time, caused various ailments in Rouviere. Joint 56.1 Statement ¶ 19; Dkt. No. 336 at 1. These allegations, if true, are precisely the type with which the New York legislature was concerned when it passed C.P.L.R. 214-c(2). *See Giordano*, 941 N.E.2d at 731 ("The Legislature's concern when it enacted the statute was the problems raised by toxic tort cases in which the latency of a substance's effect could prevent the plaintiff from bringing a timely lawsuit."). It is also apparent from the statutory text that C.P.L.R. 214-c(2) applies to claims involving the malfunctioning of an implanted device. "Exposure" is defined earlier in C.P.L.R. 214-c to mean "direct or indirect exposure by absorption, contact, ingestion, inhalation, *implantation* or injection." C.P.L.R. 214-c(1) (emphasis added). The use of the phrase "exposure by . . . implantation" specifically envisions that a party may be exposed to a substance causing injury in the manner alleged here. *See, e.g.*, *Prohaska v. Sofamor, S.N.C.*, 138 F. Supp. 2d 422, 429 (W.D.N.Y. 2001) (applying C.P.L.R. 214-c(2) to claims for physical harm resulting from defects in an internal fixation system implanted in the spine).

The cases that Defendant cite in favor of its argument that C.P.L.R. 214-c(2) does not apply to Plaintiffs' claims are inapposite. In *Baker v. Stryker Corp.*, 770 F. App'x 12 (2d Cir. 2019), the plaintiff's pain "began almost immediately after his" operation, *id.* at 14–15, and there was no allegation that the injury arose "from latent exposure to a substance," *id.* at 15.[5] Similarly, in *Guisto*, 293 F.R.D. 132, plaintiffs' claims "concern[ed] physical pain and

---

[5] The Second Circuit also noted in *Baker* in a footnote that "even if C.P.L.R. § 214-c did apply, Baker's personal injury claims would still be untimely." *Id.* at 15 n.1.

discomfort resulting from a defective or malfunctioning device" and they "made no allegations

of developing any condition or contracting any disease because of the device." *Id.* at 137.  In

addition, the plaintiffs in *Guisto* asserted "that the implant was ill-fitting and caused her immense

pain from the time of implantation." *Id.*  In this case, as noted, Rouviere complains not of

physical pain or discomfort resulting from the implantation of the device, but of a condition that

she developed as a result of exposure to toxic metal debris from the devices.  For these reasons,

the Court finds that the accrual rule in C.P.L.R. 214-c(2) applies to Plaintiffs' claims.

Because C.P.L.R. 214-c(2) applies, the next issue is when the "discovery of the injury"

occurred for purposes of the accrual of the three-year statute of limitations.  C.P.L.R. 214-c(2).

Defendant argues that discovery of the injury occurred shortly after the implant surgery

in 2012 when Rouviere began to exhibit symptoms, allegedly caused by the metal debris released

from the 2012 implants.  Dkt. No. 336 at 8–9.  In arguing that discovery of the injury occurred

around late-2012 to early-2013, Defendant points to: (i) Plaintiffs' expert opinions, which rely on

Rouviere's injuries having first occurred in 2012; (ii) Plaintiffs' own testimony and doctor

records indicating that she started to suffer symptoms, including dizziness, vertigo, instability,

and pain, beginning in late-2012 and throughout 2013; (iii) Plaintiffs' judicial admission in the

amended complaint that "[b]y the beginning of 2013, she experienced pain and loss of range of

motion"; (iv) Plaintiffs' interrogatory responses that Rouviere saw a doctor in March 2013

regarding vision problems, eye pain, sinus pressure, and headaches; and (v) deposition testimony

from Rouviere that she saw the most decline in her health occur in 2013, when it started to

"tak[e] a lot for [her] to do the normal things that [she] was doing." *Id.* at 8–13.  Defendant

argues that these symptoms only became more pronounced in 2014, pointing to evidence, among

others, that Rouviere visited a neurologist in February 2014 due to concerns about "functional neurological decline." *Id.* at 13.

Plaintiffs respond that the issue of when exactly the injury was discovered is a question of fact unsuitable for summary judgment. Dkt. No. 341 at 19. Plaintiffs make several arguments in support of this point. Plaintiffs note that Rouviere suffered numerous ailments and complaints related to a number of different parts of her body, "not just her hip, making it difficult, to say the least, for plaintiff or anyone else to parse through which complaints could reasonably be related to the implant malfunction." *Id.* at 15. Plaintiffs also argue that Rouviere's symptoms were varied and random and thus insufficient to trigger the running of the statute of limitations. *Id.* at 21–22. Plaintiffs further state that Rouviere has had a complex medical history, with symptoms occurring before and continued after her 2012 surgery—which does not lend itself to isolating a specific date prior to the revision surgery at which time Plaintiff's injuries can be traced to the implantation malfunction. *Id.* at 22. For these various reasons, Plaintiffs argue that the accrual date did not run until the revision surgery in November 2016. *Id.* Plaintiffs, however, note that if the Court finds that "the injury related to the malfunction manifest[ed] itself prior to May 31, 2015, it is submitted that the only dates which might lend themselves to such a finding would be May 17, 2015, May 18, 2015 and May 21, 2015," which are the dates on which Rouviere first opined that her symptoms were related to metallosis and her blood was tested. *Id.* at 15–16. Plaintiffs note that if the claims accrued on the last of these three dates (*i.e.*, May 21, 2015), Plaintiffs' claims would not be untimely as Mr. Rouviere attempted to file the initial complaint on May 21, 2018. *Id.* at 1–2, 16.

The meaning of the phrase "discovery of the injury" in C.P.L.R. 214-c(2) has been explored at length by courts in this Circuit as well as New York State courts. The key case is

*Matter of New York County DES Litigation*, in which the New York Court of Appeals first addressed the meaning of the phrase. 678 N.E.2d 474. In that case, the plaintiff experienced a number of reproductive difficulties and ailments which were initially misdiagnosed; she ultimately learned that her ailments may have been related to her mother's ingestion of diethylstilbestrol ("DES"), while pregnant with the plaintiff. Upon that discovery, she sued the manufacturers of DES, claiming that they were responsible for her reproductive ailments. Several of the defendants moved for summary judgment and the court ruled in their favor, directing the complaint to be dismissed as time-barred under C.P.L.R. 214-c(2). *Id.* at 475–76.

The New York Court of Appeals accepted defendants' argument that the statute of limitations begins to run in a latent exposure case "when the injured party discovers the primary condition on which the claim is based." *Id.* at 475. In doing so, the court rejected plaintiff's argument that the limitations period would begin to run only when the plaintiff was aware that the injury was "caused by an outside, nonbiological source"; in other words, that the statute of limitations could not begin to run if the plaintiff knew "neither of the cause of the symptom nor of the very fact that th[e] symptoms have a nonnatural cause." *Id.* at 477.

Although noting that the "interpretation plaintiff urges has some superficial appeal, since it would benefit potential claimants whose symptoms, like plaintiff's, are ambiguous and are not always associated with exposure to a foreign substance," the New York Court of Appeal rejected plaintiff's reading of the statute, finding that its "construction is out of harmony with the statutory design and is unsupported by the provision's legislative history." *Id.* The court recognized that the rule it was adopting would result in the statute of limitations beginning to run before the plaintiff knew that the harm she suffered was "caused by an outside, nonbiological source." *Id.* Indeed, Judge Smith, in dissent, noted that the rule would burden plaintiffs "with an

16

expiring Statute of Limitations when the only knowledge in their possession [wa]s the existence

of an abnormal physical condition," and "disregard the diligence exercised by plaintiffs in

attempting to discover the causes of their medical problems." *Id.* at 481 (Smith, J., dissenting).

However, the Court of Appeals majority noted that a separate provision in C.P.L.R. 214-c

addresses scenarios where a plaintiff "was aware of the 'injury' itself but there was a delay in the

discovery of its 'cause'" and requires certain "statutorily prescribed conditions" to be satisfied to

invoke this provision.[6] *Id.* at 477. Thus, discovery of the injury in C.P.L.R. 214-c(2) must have

a different meaning than discovery of the cause of the injury. In addition, the court stated that

"the distinction plaintiff advances"—between discovery that symptoms have a nonbiological

cause and the precise identity of that nonbiological cause—"is more semantic than real." *Id.*

The court reasoned that:

> The knowledge that particular symptoms are attributable to an outside cause is
> almost invariably coupled with an awareness of the identity of that cause. As a
> practical matter, physicians do not diagnose medical problems as having a
> nonbiological cause in a vacuum. It is usually only after the discovery by

---

[6] That provision, *i.e.*, C.P.L.R. 214-c(4), states that:

> where the discovery of the cause of the injury is alleged to have occurred less than
> five years after discovery of the injury or when with reasonable diligence such
> injury should have been discovered, whichever is earlier, an action may be
> commenced or a claim filed within one year of such discovery of the cause of the
> injury; provided, however, if any such action is commenced or claim filed after the
> period in which it would otherwise have been authorized pursuant to subdivision
> two or three of this section the plaintiff or claimant shall be required to allege and
> prove that technical, scientific or medical knowledge and information sufficient to
> ascertain the cause of his injury had not been discovered, identified or determined
> prior to the expiration of the period within which the action or claim would have
> been authorized and that he has otherwise satisfied the requirements of subdivisions
> two and three of this section.

C.P.L.R. 214-c(4). In this case, both parties agree—although for different reasons—that this
provision does not save Plaintiffs' claims and thus the Court does not address it. *See* Dkt. No.
336 ("The 'Unknown Cause' exception of CPLR §214-c(4) does not apply."); Dkt. No. 341
("Plaintiff does not dispute that CPLR 214-c(4) does not apply but not for the reasons set forth
by defense.").

researchers of the relationship between a particular toxic substance and a particular set of symptoms, such as the now known relationship between thalidomide and certain birth defects or between asbestos and certain lung diseases, that diagnosticians connect the observed symptoms to a nonbiological, outside cause.

*Id.* at 477–78. The court further stated that: "CPLR 214-c(2)'s reference to 'discovery of the injury' was intended to mean discovery of the condition on which the claim was based" and that "nothing more is [] apparent from the legislative history of the provision." *Id.* at 478. Specifically, the court stated: "It is apparent from this history that, in enacting a new 'discovery' rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the manifestations or symptoms of the latent disease that the harmful substance produced." *Id*. For these reasons, the court concluded that the "time for bringing the action begins to run under the statute when the injured party discovers the primary condition on which the claim is based." *Id.* at 475. The court noted that a different rule "would depend on such fortuitous circumstances as the medical sophistication of the individual plaintiff and the diagnostic acuity of his or her chosen physician." *Id.* at 479.

Since the majority's holding in *Matter of New York County DES Litigation*, courts have repeatedly held that claims are time barred under C.P.L.R. 214-c(2) where a plaintiff suffered symptoms of an illness more than three years prior to filing suit, regardless of whether the cause of those symptoms had been discovered. For example, in *Vuksanovich*, the court dismissed a plaintiff's claims as untimely after finding that they accrued when she began experiencing serious illness, including pain, trouble breathing, and worsening eyesight, and were not tolled during the period in which the doctors were unable to "identify the cause of her symptoms." 2022 WL 2274543, at *7–8. Similarly, in *Trisvan v. Heyman*, the court found that a plaintiff's claims were time-barred as the plaintiff admitted to suffering certain symptoms, including gaining close to a hundred pounds and suffering hypertension, by the usage of the drugs in 2003

and did not file suit until 2015. 305 F. Supp. 3d 381, 389, 397 (E.D.N.Y. 2018). In reaching its result, the court held that it was irrelevant that plaintiff's medical physician had not linked his side effects to the drugs at issue until 2015. *Id.* at 389. And, in *Whitney v. Quaker Chemical Corp.*, the New York Court of Appeals held that the plaintiff's symptoms which resulted in him making repeated visits to the hospital and the health center for treatment were sufficient to trigger the running of the statute of limitations. 683 N.E.2d 768, 769 (N.Y. 1997). The court noted that "[n]either plaintiff's contention that his symptoms worsened and changed in 1991 nor the diagnosis of a doctor he first visited in September 1991 that substances other than the coolant caused his injury makes his claim timely." *Id.*

It important to note that onset of *any* symptoms is not sufficient to trigger the statute of limitations under C.P.L.R. 214-c(2). Instead, the symptoms must put plaintiff on notice of the "primary condition on which the claim is based." *Matter of New York Cnty. DES Litig.*, 678 N.E.2d at 475; *see Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 487 (S.D.N.Y. 2009) ("[T]he relevant inquiry for statute of limitations purposes is when the injured party became aware of the primary condition on which the plaintiff's claim is based."). "New York courts have not established a bright-line rule for when symptoms or manifestations of a physical condition are sufficient to trigger" notice of the primary condition on which the claim is based, *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 211 (2d Cir. 2014), although the New York Court of Appeals cautioned in *Matter of New York County DES Litigation* that "there may be situations in which the claimant may experience early symptoms that are too isolated or inconsequential to trigger the running of the Statute of Limitations under CPLR 214-c(2)," 678 N.E.2d at 478 n.4. Applying this general guidance, the court in *O'Halloran v. 345 Park Co.* found that a plaintiff's early symptoms were "too isolated or

inconsequential to trigger the running of the Statute of limitations" where the plaintiff who brought an action to recover for toxic injuries allegedly caused by exposure to defendant's pain product only "missed two and a half days of work," and "neither sought medical attention nor filed a Workers' Compensation claim until" a later date. 675 N.Y.S.2d 55, 55 (1st Dep't 1998) (citation omitted). On the other hand, the court in *Scheidel v. A.C. & S. Inc.*, rejected plaintiff's argument that the symptoms of the decedent (who was exposed to asbestos and developed asbestosis as a result) "were so generalized and episod[ic] that they did not constitute the primary condition upon which the claim was based." 685 N.Y.S.2d 829, 831 (3d Dep't 1999). The court stated that the "record reveals that decedent . . . experienced multiple manifestations of his condition or injury which affected virtually all physical activity and prompted him to change the nature of his employment" and thus was "not a situation in which decedent's symptoms were so isolated or inconsequential that a reasonably diligent person would not attribute them to an injury or disease." *Id.* (further holding that "the fact that his illness was not diagnosed until November 1994 and he may not have been fully aware that the cause of his injury was an exposure to asbestos is not dispositive").

Defendant has established that there is no genuine issue of material fact that Plaintiffs' personal injury claims accrued more than three years prior to May 2018, when this lawsuit was brought, and therefore the claims are time barred. In the years leading up to May 2015, Rouviere began to experience exactly those symptoms that she now seeks damages for and attributes to the implantation of Defendant's device. In September 2012, Rouviere went to the emergency room because she was experiencing extreme dizziness and vertigo as well as nausea and vomiting. Joint 56.1 Statement ¶ 7. Even if those symptoms at the time could be deemed to be too "inconsequential" or "isolated" to be the "primary condition" on which Plaintiffs' claim is based,

Rouviere testified at her deposition that by 2013 she felt like she saw "the most decline starting

to happen" and experienced "[m]ore pain, more instability, less function" in her hip.  Dkt. No.

335-1 at ECF p. 13.  Rouviere further testified that in 2013 she was "receiving a lot of effects"

such as her "heart would start beating harder," it was "taking a lot for [her] to do the normal

things [she] was doing," "[e]xertion was exhausting for [her]," and "[her] body was tiring."  *Id.*

at ECF pp. 13–14.  In 2013, Rouviere visited a neurologist due to symptoms including

"heaviness in arms and legs, feeling like itching in her face and head, urinary urgency and

hesitation," and "feel[ing] like she has slowed down in general" and questioned whether she had

a disease such as multiple sclerosis.  *Id.* at ECF p. 15.  In 2014, at a physical therapy

appointment, Rouviere reported feeling "shooting pain through her body" and that "she is getting

worse" with "severe daily headaches" and extreme fatigue, Dkt. No. 335-14; at a neurosurgery

appointment in that same year, Rouviere presented with "vertigo, dizziness, lightheadedness,

tremors, the headache and neck pain, blurred vision at times on the left, visual flashes, vision

halos, tinnitus, speech difficulties, hoarseness, choking, weakness of the arms and legs, nausea,

imbalance, poor coordination, dysphagia, and dysautonomia manifest by palpitations," Dkt. No.

346-7 at ECF p. 12.  And, at the time of her visit to Dr. Alvarado in May of 2015, Rouviere again

reported "poundings in [her] body" and head, blurred and double vision, "malaise," and an

"[o]verall feeling of sickness."  *Id.* at ECF p. 18.  These symptoms map onto the injuries

Plaintiffs' experts state that Rouviere experienced from Defendant's conduct, including "chronic

fatigue, nausea, headaches, weakness, dizziness/vertigo, cognitive impairment, hip and other

joint and muscle pain, tachycardia, dry eyes/blurred vision, and other immunological and

neurological symptoms."  Joint 56.1 Statement ¶ 24.

Medical records also document that the impacts of these symptoms on Rouviere's life were immense in the years prior to the three-year period before Plaintiffs filed the complaint in this case. As one medical record from 2014 documents: "Notwithstanding the fact that she has been raising [] four children, she has been otherwise totally disabled. There was a cascade of injuries starting six years ago when she injured her hip . . . . Presently, with no activity and some pain medicine, her pain level is 6/10. With activity the pain is 9/10." Dkt. No. 346-7 at ECF p. 12. In 2014, Rouviere reported on a medical form that "living is a physical challenge," that she worked from her "bed," and that she suffered numerous symptoms including numbness of right leg, shaking episodes, tremors, headaches, blurred vision at times, double vision at times, ringing in ears, chronic pain, heart palpitations, poor coordination, speech difficulty, among other symptoms. Dkt. No. 346-7 at ECF pp. 36–37.

Thus, from this evidence, it is apparent that Rouviere knew of the condition on which her claim was based and that "virtually all of plaintiff's alleged symptoms emerged more than three years prior to her commencement of the action" on May 31, 2018.[7] *Bartlett v. Moore Bus. Forms, Inc.*, 2000 WL 362022, at *4–5 (N.D.N.Y. Mar. 30, 2000). Those symptoms, prior to

---

[7] Plaintiffs argue that the three-year period should be measured from May 21, 2018, which is when Plaintiffs state that Mr. Rouviere attempted to file the initial complaint but was unable to because he paid the fee with a personal check. Dkt. No. 341 at 1–2. That argument is without merit, but it is also immaterial. Mr. Rouviere, though appearing *pro se* on behalf of himself at the time he attempted to file the initial complaint, is also an attorney. Thus, he is entitled to no special solicitude. Dkt. No. 346-4 ¶ 1; *see Corbett v. City of New York*, 816 F. App'x 551, 553 (2d Cir. 2020); *Abraham v. Leigh*, 471 F. Supp. 3d 540, 553 (S.D.N.Y. 2020) ("[W]here, as here, an attorney represents herself in a proceeding, she is entitled to no special solicitude."). Moreover, a party claiming excusable neglect will almost always lose where a party "fail[s] to follow the clear dictates of a court rule." *Silvanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366–67 (2d Cir. 2003) (citation omitted). Plaintiffs do not detail any special circumstances why this general holding should not apply here. Finally, however, it is irrelevant whether the time runs back from May 21, 2018 or from May 31, 2018. Rouviere's symptoms manifested significantly prior to May 21, 2015 and by 2014, Rouviere described "living [as] a physical challenge" due to her symptoms. Dkt. No. 346-7 at ECF pp. 36–37.

March 31, 2015, were also sufficiently continuous and sufficiently severe that they were not "so isolated or inconsequential that a reasonably diligent person would not attribute them to an injury or disease." *Id.* at \*4; *see, e.g.*, *Cochrane v. A C & S, Inc.*, 1998 WL 642719, at \*6 (S.D.N.Y. Sept. 18, 1998) ("[I]solated and generic symptoms of shortness of breath do not suffice in commencing the running of the statute of limitations."); *Cabrera v. Picker Int'l, Inc.*, 770 N.Y.S.2d 302, 303 (1st Dep't 2003) (finding symptoms too isolated or inconsequential to trigger statute of limitations where "[w]hile plaintiff complained of shortness of breath and had intermittent coughs, her physical activities were not affected"). The conditions significantly affected Rouviere's physical activity and quality of life over an extended period of time. Rouviere stated in 2014 that, due to her symptoms, living was a "physical challenge," and she repeatedly went to various doctors during this period in order to seek treatment for her symptoms and to have them diagnosed. Dkt. No. 346-7 at ECF pp. 36–37; *see generally* Dkt. No. 346-7. Courts have held that symptoms of this degree trigger the running of the statute of limitations under C.P.L.R. 214-c(2) as a matter of law. *See Braunscheidel v. Stryker Corp.*, 2013 WL 1337013, at \*5 (N.D.N.Y. Mar. 29, 2013) (granting motion to dismiss where symptoms "consistently impacted Plaintiff's day-to-day life" and required "numerous appointments with a number of different doctors"); *Whitney*, 683 N.E.2d at 769 (granting summary judgment where "symptoms that afflicted plaintiff in 1989 led him to make repeated visits to the hospital and the health center for treatment"). They have also held that repeated complaints to doctors about symptoms are sufficient to trigger the running of the statute of limitations. *See Paesano v. Ethicon, Inc.*, 2022 WL 846899, at \*6 (S.D.N.Y. Mar. 22, 2022).

It is true that there is evidence Rouviere did not begin to suspect that her symptoms were related to the implant malfunction until May 2015, and that her doctors did not determine that the

devices at issue were the cause of those symptoms until November 2016 (when she underwent

her partial revision surgery). Those facts make it understandable that she did not file suit prior to

November 2016 (though it is more difficult to understand why she waited until May 2018). But

the fact that the statute of limitations would start to run before Rouviere was aware that the

ailments she was experiencing were due to the implanted devices or even before she might have

known that those ailments had a nonbiologic clause is what *Matter of New York County DES*

*Litigation* requires. For the three-year limitations period for toxic torts to start to run, a plaintiff

need not know the cause of her injury or even know that the injury has a "nonbiological cause,"

*Whitney*, 683 N.E.2d at 768, and a doctor's misdiagnosis of a plaintiff's symptoms of that injury

in the interim years does not toll the statute of limitations, *id.* at 769. *See also Scheidel*, 685

N.Y.S.2d at 831 ("[T]he fact that his illness was not diagnosed until November 1994 and he may

not have been fully aware that the cause of his injury was an exposure to asbestos is not

dispositive."); *see also Braunscheidel*, 2013 WL 1337013, at *4 (concluding that fact that

plaintiff "saw numerous physicians, all of whom failed to diagnose chondrolysis as the root of

his shoulder pain" was irrelevant to timeliness analysis). The New York Legislature did not

"intend to make the running of the Statute of Limitations depend on claimants' subjective

understanding of the etiology of their conditions." *Matter of New York County DES Litigation*,

678 N.E.2d at 479. As the New York Court of Appeals again held shortly after *Matter of New*

*York County DES Litigation*, it is irrelevant that the plaintiff has no reason to believe that her

injury has a nonnatural cause—it is sufficient that the Plaintiff have simply discovered the injury

underlying his claim: "[a]ll that is necessary to start the limitations period is that plaintiff be

aware of the primary condition for which damages are sought." *Whitney*, 683 N.E.2d at 769. A

would-be plaintiff must, within the three-year period, receive a correct diagnosis of her other

than inconsequential, generalized, or isolated ailments lest she lose her claim even before she

knew she had it.  Rouviere was aware prior to May 2015 of the injuries which she now claims

were caused by Defendant's allegedly tortious acts.  That she was left in the dark as to its true

cause does not save her claims.[8]

Plaintiffs nonetheless argue that this case is ill-suited for resolution at summary judgment

as Rouviere has had a long and complex history of medical conditions and injuries, even prior to

the 2012 hip surgery at issue, and "[t]he complexity of her physical condition makes it

impossible to state that as a matter of law any one injury was resultant from the malfunction or

defect of the device."  Dkt. No. 341 at 25.  Plaintiffs state that the ailments that Rouviere

complained of "back in 2012-2015 are subject to interpretation since the defendant's own experts

attribute these ailments in various body parts to a connective tissue disorder, generally genetic in

nature."  *Id.*  Plaintiffs then appear to argue that the injury may not have presented itself "until

the revision surgery done in 2016."  *Id.*

The facts upon which Defendant bases this motion, however, are not genuinely in

dispute.  The legal conclusions she would have the Court draw do not follow.  *See Braunschidel*,

2013 WL 1337013, at *5 (rejecting argument that the statute of limitations defense raised a fact

issue precluding summary judgment).  To the extent that Plaintiffs would now have the Court

accept that the symptoms she experienced prior to May 2015 do not constitute part of the

primary condition on which their claim is based, "[t]hat is not how" Plaintiffs pleaded their case,

---

[8] Plaintiffs argue that Defendant is precluded from arguing that these symptoms triggered the
statute of limitations because Defendant's experts contend that these symptoms were not related
to the malfunction of the device but were caused by Rouviere's underlying medical issues.  Dkt.
No. 341 at 19–20.  The argument is a non-sequitur.  A defendant may contend that it did not
cause plaintiff's injury and that, if it did cause the injury, the plaintiff was aware of the injury
more than three years before she brought suit.

*Vuksanovich*, 2022 WL 2274543, at *7. Throughout this litigation, including in the amended complaint and Plaintiffs' briefing, interrogatory responses, as well as expert reports, Plaintiffs have proffered a theory of the case that the symptoms Rouviere suffered shortly after the 2012 surgery were attributable to the implementation of the devices. *See, e.g.*, Dkt. No. 26 ¶ 209; Dkt. No. 335-3 at 6 (Rouviere Interrogatory Response: "The device cause injury upon implementation, physiological instability, toxicity, and toxic result over time."); Dkt. No. 335-10. Plaintiffs also allege in the amended complaint that Rouviere suffered "elevated metal levels and instability" *prior* to the revision surgery and "[b]y the beginning of 2013, she experienced pain and loss of range of motion." Dkt. No. 26 ¶¶ 6, 11. These are key injuries that Rouviere claims were caused by implantation of Defendant's device. Joint 56.1 Statement ¶ 23 ("Among the injuries claimed by Ms. Rouviere in this action include physiological instability, pain . . . toxicity."). Plaintiffs cannot now state—solely for purposes of getting around the applicable statute of limitations—that it is unprovable whether any of these symptoms were, in fact, attributable to the devices and the only injury Plaintiff can be shown to have suffered was the revision surgery itself. *See Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 319 (N.D.N.Y. 2013) ("[A] party 'may not raise new claims or theories of liability for the first time in opposition to summary judgment.'" (citation omitted)); *Webadviso v. Bank of Am. Corp.*, 2010 WL 521117, at *2 (S.D.N.Y. Feb. 16, 2010) (Chin, J.) (Plaintiff "cannot now take a position, in an effort to defeat summary judgment, that so clearly contradicts the allegations of his own complaint."), *aff'd*, 448 F. App'x 95 (2d Cir. 2011).

Moreover, even if Rouviere subjectively believed that her ailments "were merely a continuation of h[er] pre-existing" conditions, "this is not a factor in the accrual of the statute of limitations." *Braunscheidel*, 2013 WL 1337013, at *4 (internal citations omitted). The record

here, however, establishes that the ailments Rouviere suffered from were "new and different"
and they "consistently impacted" her life. *Id.* at *4–5. Rouviere testified during her deposition
that up until the August 2012 surgery she largely suffered from pain in her right hip as well as
joint and ligament complaints, which were connected to her hip injury from her 2009 accident as
well as her Ehlers-Danlos syndrome; however, after, the August 2012 surgery, Rouviere started
to experience a host of new side effects throughout 2013 and 2014, including that her heart
would start beating faster, "exertion was exhausting," her body was "tiring," and she was
experiencing dizziness.  Dkt. No. 316-6 at 84–89, 135–36, 145.  Plaintiffs also submit expert
opinions opining that these 2013 and 2014 symptoms were caused not by Rouviere's underlying
medical conditions but by "excessive metal debris from the impacted hip components."  Dkt. No.
335-8; *see also, e.g.*, Dkt. No. 335-9.  In other words, this is not a case where the type of
symptoms Rouviere suffered due to her underlying medical issues prior to her surgery were the
identical symptoms that she suffered post-surgery and thus she would not have known she was
injured.  To the contrary, Rouviere testified that the nature of her ailments changed markedly
after the surgery making it unmistakable that she would have known she was injured.

The case is also distinguishable from the cases that Plaintiffs cite in support of their
argument that the time period of accrual raises a question of material fact.  *Delaremore v.
Zimmer, Inc.* arose at the motion to dismiss stage and the court decided that "further factual
development" was necessary to determine when the statute of limitations accrued.  2019 WL
5394566, at *2 (E.D.N.Y. 2019); *see Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F.
Supp. 3d 122, 136–37 (S.D.N.Y. 2016) (stating that "[t]he question of constructive knowledge
and inquiry notice" in statute of limitations inquiries are "ill-suited for determination on a motion
to dismiss").  The court reasoned that the complaint stated that the implant had caused plaintiff

pain starting approximately in July 2013, but was "not prepared to accept as a matter of law that the 'pain' plaintiff allegedly felt in 2013 necessar[il]y constitutes a symptom" as it may have "been fleeting" or otherwise not be "indictive of his symptomology." 2019 WL 5394566, at *2. The court continued that "[t]his is not to say that plaintiff is going to have an easy time distancing himself from the statement in his original complaint." *Id.* Unlike in *Delaremore*, this case arises after "factual development," and that factual development demonstrated that Rouviere's symptoms prior to the three-year period were not fleeting and were indicative of symptomology, as evidenced by Rouviere's numerous medical visits. In *Cerqua v. Stryker Corp.*, 2012 WL 5506119 (S.D.N.Y. Nov. 9, 2012), the court found that there was a question of fact as to when the accrual period started as a reasonable jury could find that the symptoms plaintiff suffered prior to 2009 were relatively minor and thus may not have sufficiently warned plaintiff that he had been suffering "from a 'condition' at all." *Id.* at *4. Here, Rouviere's symptoms were not minor and, as she stated herself, impacted her qualify of life significantly at least as early as 2014.

Plaintiffs' personal injury claims are thus time-barred, and Defendant is entitled to summary judgment on these claims.

## II.     Implied and Express Warranty Claims

Defendant also argues that Plaintiffs' claims for implied and express warranty are barred by the statute of limitations. Dkt. No. 336 at 24. Although Defendant notes that these claims seek damages for personal injury and thus should be barred under the three-year statute of limitations period discussed above for personal injury claims, Defendant argues that, even if this court applied the four-year statute of limitations for breach of warranty claims under New York law, the claims are nonetheless barred. *Id.* Because this Court agrees that the breach of warranty

claims are barred even if a four-year statute of limitations period applies, the Court does not address which of these two statute of limitations periods is more appropriate.

"Section 2-725 of the New York Uniform Commercial Code establishes a four-year statute of limitations for breach of warranty claims." *Baker*, 770 F. App'x at 15 (quoting N.Y. U.C.C. § 2-725). "For such claims, the statute begins to run when 'the product is placed in the stream of commerce or at the time of sale by the manufacturer.'" *Id.* (quoting *Schrader v. Sunnyside Corp.*, 747 N.Y.S.2d 26, 28 (2d Dep't 2002)). Here, the device at issue, which was implanted into Rouviere, must have been placed in the stream of commerce or been sold prior to the device being implanted into Rouviere on August 14, 2012. Because August 14, 2012 is more than four years prior to the May 2018 date that this action was initiated, the breach of warranty claims are time-barred. *See Galletta v. Stryker Corp.*, 283 F. Supp. 2d 914, 916 (S.D.N.Y. 2003) ("There is no question that the breach of warranty claim is time barred, because the polyethylene implant had to have been delivered to the hospital where the operation was performed prior to the date of the operation—April 23, 1996—and the lawsuit was not commenced until May 1, 2002.").

Plaintiffs' argument that the implied and express warranty claims are not time barred because they were tolled pursuant to N.Y. U.C.C. § 2–725(2) is unavailing. Under U.C.C. § 2–725(2), "[i]f a plaintiff demonstrates that the defendant made an explicit warranty as to the future performance of its device, that could toll the limitations period for an express warranty cause of action until the 'breach is or should have been discovered.'" *Guisto*, 293 F.R.D. at 137 (quoting N.Y. U.C.C. § 2–725(2)). Implied warranty claims, however, are not subject to tolling under U.C.C. § 2–725(2). *Id.*; *see Orlando v. Novurania of America, Inc.*, 162 F. Supp. 2d 220, 224 (S.D.N.Y. 2001) ("The [future performance] exception speaks to express warranties not implied

warranties."). Moreover, Plaintiffs do not identify any express warranty that Defendant made as

to the future performance of its device. *See Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 166

(S.D.N.Y. 2011) ("A warranty of future performance is one that guarantees that the product will

work for a specified period of time."). In support of this argument, Plaintiffs in their opposition

brief quote only a statement made by Dr. Buly about the device. Dkt. No. 341 at 35. Thus, the

statute of limitations is not tolled on this basis and summary judgment is granted in Defendant's

favor on these claims.

### III.    Derivative Loss-of-Consortium Claim

Mr. Rouviere's loss of consortium claim is derivative of Rouviere's claims. Because

Defendant is entitled to summary judgment on Rouviere's claims, summary judgment must be

granted on the loss of consortium claim as well. *See Griffin v. Garratt-Callahan Co.*, 74 F.3d

36, 40 (2d Cir. 1996); *Rouviere v. DePuy Orthopaedics, Inc.*, 560 F. Supp. 3d 774, 802

(S.D.N.Y. 2021), *reconsideration denied*, 2021 WL 5854283 (S.D.N.Y. Dec. 9, 2021).

### IV.    Equitable Estoppel

Finally, Plaintiffs argue that Defendant is estopped from asserting any statute of

limitations defense due to fraudulent concealment. Dkt. No. 341 at 28–29. Plaintiffs argue that

Defendant's misrepresentations prevented Plaintiffs from timely commencing an action because

Dr. Buly would never have implanted the device in Rouviere had he known that it would cause

impingement and that it would result in the release of metals into Rouviere's body. *Id.* at 30.

Plaintiffs state that Defendant made numerous misrepresentations in its filings with the Food and

Drug Administration ("FDA") and deceived both the FDA and physicians about the true nature

of the product. *Id.* at 31.

"Equitable estoppel is an 'extraordinary remedy.'" *Twersky v. Yeshiva Univ.*, 993 F.

Supp. 2d 429, 442 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (quoting *Pulver v.*

30

*Dougherty*, 871 N.Y.S.2d 495, 496 (3d Dep't 2009)); *see also Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 616 (S.D.N.Y. Feb. 26, 2021), *aff'd*, 2022 WL 211702 (2d Cir. Jan. 25, 2022). It applies "where [a party] is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the other." *Pulver*, 871 N.Y.S.2d at 496 (citation omitted). "Such fraud, misrepresentations, or deception must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough, nor are broad misstatements to the community at large." *Twersky*, 993 F. Supp. 2d at 442; *see Doe v. Kolko*, 2008 WL 4146199, at *4 (E.D.N.Y. Sept. 5, 2008) ("This argument demonstrates plaintiffs' fundamental misunderstanding of the equitable estoppel doctrine. Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, not a community at large."); *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) ("[I]n cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, we have held that the defendants were not estopped from pleading a statute of limitations defense.").

"The case law draws a distinction between misrepresentations made to the community at large, and specific misrepresentations or deceptive conduct sufficient to constitute a basis for equitable estoppel." *Roeder*, 523 F. Supp. 3d at 619 (cleaned up). "The former is insufficient to make out a claim for equitable estoppel 'in light of the specificity requirement in the equitable estoppel standard; equitable estoppel is only "appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants" misconduct toward the potential plaintiff, not a community at large.'" *Id.* (quoting *Twersky*, 993 F. Supp. 2d at 445).

In the case at hand, Plaintiffs' allegations of fraud on behalf of the Defendant—even if true—involve misrepresentations made to the community at large and thus are insufficient to justify equitably estopping Defendant from asserting a statute of limitations defense. *See Roeder*, 523 F. Supp. 3d at 619; *Twersky*, 993 F. Supp. 2d at 442. Plaintiffs allege that Defendant failed to disclose the true nature of its product from consumers, doctors, and the FDA *generally*. Plaintiffs do not allege that any of these statements or concealments were specifically directed at Plaintiffs or, even more specifically, directed at preventing Plaintiffs from timely filing suit. *See Roeder*, 523 F. Supp. at 620 (statement to a third party may be sufficient to invoke equitable estoppel "if it is directed to a plaintiff or intended to frustrate his ability to timely sue"). Accordingly, these allegations are not of the type that justify the application of equitable estoppel, a doctrine which is to be invoked "only under exceptional circumstances." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (citation omitted); *see Roeder*, 523 F. Supp. 3d at 620 (rejecting equitable estoppel argument where "there are no plausible allegations" that the statement was "directed to Plaintiffs as opposed to the more general public in response to public concerns").

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 332, 345. The Clerk of Court is also respectfully directed to close this case.


SO ORDERED.

Dated: December 5, 2022
    New York, New York                              _____
                                                          LEWIS J. LIMAN
                                                      United States District Judge

# EXHIBIT D

Jun 17, 2025                    Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal
                                Electronic Files for 397 Notice of Appeal filed by Jodi Rouviere were transmitted to
                                the U.S. Court of Appeals..(nd)

        Jun 26, 2025                    USCA Appeal Fees

        Jun 26, 2025                    USCA Appeal Fees received $ 605.00 receipt number 41035 on 6/26/2025 re: 397
                                        Notice of Appeal filed by Jodi Rouviere..(nd)

# EXHIBIT E

YOU BUILT TODAY'S COURTLISTENER. HELP BUILD WHAT COMES NEXT.

Donate before December 31 and tell us how CourtListener helped you—your support and your story power the future of open law.

Donate Today (https://donate.free.law/forms/supportcl)

×

# Rouviere v. Depuy Orthopaedics, Inc. (1:18-cv-04814)

## District Court, S.D. New York

Tags ▾    🔔 Get Alerts (/alert/docket/toggle/)    ▾

⧉ View on PACER (https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?494893)    ▾

Last Updated: Oct. 14, 2025, 11:14 a.m.

Assigned To: Gregory Howard Woods III (/person/3549/gregory-howard-woods-iii/)

Referred To: Sidney H. Stein (/person/3095/sidney-h-stein/)

Citation: Rouviere v. Depuy Orthopaedics, Inc., 1:18-cv-04814, (S.D.N.Y.)

Date Filed: May 31, 2018

Date Terminated: Dec. 6, 2022

Date of Last Known Filing: June 26, 2025

Cause: 28:1332 Diversity Action (/?type=r&cause="28:1332 Diversity Action")

Nature of Suit: Personal Injury: Health Care/Pharmaceutical Personal Injury Product Liability (/?type=r&nature_of_suit="Personal Injury: Health Care/Pharmaceutical Personal Injury Product Liability")

Jury Demand: Both (/?type=r&q=juryDemand:"Both")

Jurisdiction Type: Diversity

≣ Docket Entries (Page 3 of 3) (/docket/7021271/rouviere-v-depuy-orthopaedics-inc/)

👥 Parties and Attorneys (/docket/7021271/parties/rouviere-v-depuy-orthopaedics-inc/)

ℹ FJC Integrated Database (/docket/7021271/idb/rouviere-v-depuy-orthopaedics-inc/)

Authorities (/docket/7021271/authorities/rouviere-v-depuy-orthopaedics-inc/)

Search this docket    🔍 (/?type=r&q=docket_id%3A7021271)

**Filed**

MM/DD/YYYY

to

MM/DD/YYYY

**Documents**

to

⇵ Asc.    ⇵ Desc.    ◀ Prev. (?page=2)    Next ▶

ℹ️ Items on this page are sourced from PACER (https://www.pacer.gov) and RECAP (https://free.law/recap/) and may not be up to date. Learn more about our coverage (/help/coverage/recap/).

| | Date Filed | Description | ⬇ CSV |
|---|---|---|---|
| 295 | Apr 23, 2021 | NOTICE of Noitce of Filing Declaration of Attorney Andre Rouviere re: 293 Order, Set Hearings,,,,,,,,,,,. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit Declaration of Andre Rouviere).(Rouviere, Andre) (Entered: 04/23/2021) | |
| | | Main Doc (/docket/7021271/295/rouviere-v-depuy-orthopaedics-inc/) | Notice (Other) |
| | | Att 1 (/docket/7021271/295/1/rouviere-v-depuy-orthopaedics-inc/) | Exhibit Declaration of Andre Rouviere |
| | Apr 28, 2021 | Minute Entry for proceedings held before Magistrate Judge Stewart D. Aaron: Telephonic Oral Argument held on 4/28/2021. (kl) | |
| | Apr 28, 2021 | Oral Argument | |
| 296 | Apr 29, 2021 | ORDER granting in part and denying in part 287 Letter Motion for Discovery: Plaintiffs' motion, pursuant to Rules 16(b) and 37(c) of the Federal Rule of Civil Procedure, is GRANTED IN PART and DENIED IN PART. No later than May 14, 2021, Plaintiffs may serve supplemental expert reports of Dr. Gannon and Dr. Bobst. Thereafter, the parties shall meet and confer and submit to the Court, no later than May 17, 2021, a joint letter regarding a proposed schedule for rebuttal reports and for depositions of Dr. Gannon, Dr. Bobst and any rebuttal experts. (Signed by Magistrate Judge Stewart D. Aaron on 4/29/2021) (Aaron, Stewart) (Entered: 04/29/2021) | |
| | | Main Doc (/docket/7021271/296/rouviere-v-depuy-orthopaedics-inc/) | Order on Motion for Discovery |
| 297 | May 4, 2021 | ORDER: NOW, THEREFORE, it is hereby ORDERED that, no later than Tuesday, May 11, 2021, DePuy shall file (1) a public version of the Letter Opposition with any portions it seeks to file under seal redacted, and (2) a motion for leave to file under seal those redacted portions. If no such papers are filed by that date, the Court will unseal ECF Nos. 290 through 290-6. So Ordered. (Motions due by 5/11/2021., Responses due by 5/11/2021) (Signed by Magistrate Judge Stewart D. Aaron on 5/4/2021) (js) (Entered: 05/04/2021) | |
| | | Main Doc (/docket/7021271/297/rouviere-v-depuy-orthopaedics-inc/) | Order |
| 298 | May 5, 2021 | | |

TRANSCRIPT of Proceedings re: Telephone Conference held on 4/28/2021 before Magistrate Judge Stewart D. Aaron. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/26/2021. Redacted Transcript Deadline set for 6/7/2021. Release of Transcript Restriction set for 8/3/2021..(ks) (Entered: 05/05/2021)

| Main Doc | Transcript |
|---|---|
| (/docket/7021271/298/rouviere-v-depuy-orthopaedics-inc/) | |

| 299 | May 5, 2021 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Telephone Conference proceeding held on 4/28/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(ks) (Entered: 05/05/2021) |
|---|---|---|
| | | Main Doc          Notice of Filing Transcript |
| 300 | May 6, 2021 | LETTER RESPONSE in Opposition to Motion addressed to Magistrate Judge Stewart D. Aaron from J.T. Larson dated May 6, 2021 re: 287 FIRST LETTER MOTION for Discovery Letter Motion to Modify Current Scheduling Order Pursuant to Fed.R.Civ.P. 16(d) addressed to Magistrate Judge Stewart D. Aaron from Attorney Melissa Damian Visconti dated March 31, 2021. . Document filed by Depuy Orthopaedics, Inc.. (Attachments: # 1 Exhibit A - Expert Report, # 2 Exhibit B - Expert Report of Francis Gannon, # 3 C - Deposition of Francis Gannon, M.D.). (Larson, Joel) (Entered: 05/06/2021) |
| | | Main Doc          Response in Opposition to Motion |
| 301 | May 6, 2021 | LETTER MOTION to Seal Exhibit A to DePuy's Opposition to Plaintiffs' Request to Modify Scheduling Order and Reopen Expert Discovery addressed to Magistrate Judge Stewart D. Aaron from J.T. Larson dated May 6, 2021. Document filed by Depuy Orthopaedics, Inc...(Larson, Joel) (Entered: 05/06/2021) |
| | | Main Doc          Motion to Seal |
| | May 7, 2021 | Oral Argument |
| 302 | May 13, 2021 | ORDER granting 301 Letter Motion to Seal. Motion to Seal Granted. So Ordered. (Signed by Magistrate Judge Stewart D. Aaron on 5/13/2021) (js) (Entered: 05/13/2021) |
| | | Main Doc          Order on Motion to Seal<br>(/docket/7021271/302/rouviere-v-depuy-orthopaedics-inc/) |
| 303 | May 14, 2021 | NOTICE of Notice of Filing Supplemental Report of Dr. Sol Bobst PhD DABT re: 293 Order, Set Hearings,,,,,,,,,,. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit Supplemental Report of Dr. Sol Bobst PhD DABT). (Rouviere, Andre) (Entered: 05/14/2021) |
| | | Main Doc          Notice (Other) |
| 304 | May 14, 2021 | |

NOTICE of Notice of Filing Supplemental Report of Dr. Francis H. Gannon M.D. re: 293 Order, Set Hearings,,,,,,,,,,.. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit Supplemental Report of Dr. Francis H. Gannon M.D.). (Rouviere, Andre) (Entered: 05/14/2021)

| Main Doc | Notice (Other) | |
|---|---|---|
| 305 | May 17, 2021 | LETTER MOTION for Discovery Defendants' Request to Set Briefing Schedule on Discovery Activities Related to Plaintiffs Supplemental Pathology and Toxicology Reports addressed to Magistrate Judge Stewart D. Aaron from JT Larson dated May 17, 2021. Document filed by Depuy Orthopaedics, Inc.. (Attachments: # 1 Exhibit A - May 17 Emails between A. Rouviere and J. Larson).(Larson, Joel) (Entered: 05/17/2021) |
| | Main Doc | Motion for Discovery |
| 306 | May 17, 2021 | LETTER MOTION for Discovery addressed to Magistrate Judge Stewart D. Aaron from Melissa Damian Visconti dated 05/17/2021. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit 1).(Visconti, Melissa) (Entered: 05/17/2021) |
| | Main Doc | Motion for Discovery |
| 307 | May 18, 2021 | ORDER terminating 305 Motion for Discovery; terminating 306 Motion for Discovery. the Court hereby ORDERS, as follows: 1.No later than Friday, June 4, 2021, Defendants shall complete depositions of Francis Gannon, M.D., and Sol Bobst, Ph.D. 2. No later than Friday, June 25, 2021, Defendants shall serve Plaintiffs with supplemental rebuttal reports, if any. 3. No later than Friday, July 16, 2021, Plaintiffs shall complete depositions of any expert witnesses of Defendants who prepared supplemental rebuttal reports. 4. All depositions shall be limited to three hours, and to those opinions and facts set forth in Dr. Gannon's and Dr. Bobst's supplemental reports and in Defendants' expert witnesses' rebuttals thereto. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 5/18/2021) (ks) (Entered: 05/18/2021) |
| | Main Doc (/docket/7021271/307/rouviere-v-depuy-orthopaedics-inc/) | Order on Motion for Discovery |
| | May 18, 2021 | Set/Reset Deadlines |
| | May 18, 2021 | Set/Reset Deadlines: Deposition due by 7/16/2021. (ks) |
| 308 | Aug 6, 2021 | FIRST MOTION for Leave to File PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND RELATED ARGUMENT IN SUPPORT OF OPPOSITION TO DEPUYS MOTION FOR SUMMARY JUDGMENT . Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit Dr. Gannon Supplemental Report, # 2 Exhibit Dr. Bobst Supplemental Report).(Rouviere, Andre) (Entered: 08/06/2021) |
| | Main Doc | Motion for Leave to File Document |
| 309 | Aug 10, 2021 | LETTER MOTION for Discovery Parties' Request to Set Briefing Schedule addressed to Judge Lewis J. Liman from J.T. Larson dated August 10, 2021. Document filed by Depuy Orthopaedics, Inc...(Larson, Joel) (Entered: 08/10/2021) |
| | Main Doc | Motion for Discovery |
| | Aug 10, 2021 | Set/Reset Deadlines |
| 310 | Aug 10, 2021 | ORDER granting 309 Letter Motion for Discovery. SO ORDERED. (Signed by Judge Lewis J. Liman on 8/10/2021) (rro) (Entered: 08/10/2021) |

Main Doc              Order on Motion for Discovery
(/docket/7021271/310/rouviere-
v-depuy-
orthopaedics-
inc/)

|     | Aug 10, 2021 |              | Set/Reset Deadlines: Responses due by 8/20/2021 Replies due by 8/27/2021. (rro) |
| --- | --- | --- | --- |
| 311 | Aug 20, 2021 |              | RESPONSE in Opposition to Motion re: 308 FIRST MOTION for Leave to File PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND RELATED ARGUMENT IN SUPPORT OF OPPOSITION TO DEPUYS MOTION FOR SUMMARY JUDGMENT . . Document filed by Depuy Orthopaedics, Inc...(Larson, Joel) (Entered: 08/20/2021) |
|     |              | Main Doc     Response in Opposition to Motion | |
| 312 | Aug 20, 2021 |              | RESPONSE to Motion re: 308 FIRST MOTION for Leave to File PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND RELATED ARGUMENT IN SUPPORT OF DEPUYS MOTION FOR SUMMARY JUDGMENT . . Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 08/20/2021) |
|     |              | Main Doc     Response to Motion (/docket/7021271/312/rouviere-v-depuy-orthopaedics-inc/) | |
| 313 | Aug 25, 2021 |              | ORDER re: 233 Memorandum of Law in Opposition to Motion,, filed by Jodi Rouviere, 227 Declaration in Support of Motion filed by Jodi Rouviere. Plaintiffs Local Rule 56.1 statement at Dkt. No. 227 and summary judgment brief at Dkt. No. 233 cite deposition testimony that has not been filed on ECF. Plaintiffs are directed to file the following documents by August 27, 2021: (1) the full transcript of the August 10, 2020 deposition of Dr. Robert Buly; (2) the full transcript of the deposition of Dr. Sol Bobst; and (3) the full transcript of the deposition of Jodi Rouviere. SO ORDERED. (Signed by Judge Lewis J. Liman on 8/25/2021) (kv) (Entered: 08/25/2021) |
|     |              | Main Doc     Order (/docket/7021271/313/rouviere-v-depuy-orthopaedics-inc/) | |
| 314 | Aug 25, 2021 |              | LETTER MOTION for Extension of Time to File Reply (Unopposed Letter Motion)) addressed to Judge Lewis J. Liman from Melissa Damian Visconti dated August 25, 2021., LETTER MOTION for Extension of Time to File Response/Reply as to Set/Reset Deadlines, 310 Order on Motion for Discovery addressed to Judge Lewis J. Liman from Melissa Damian Visconti dated August 25, 2021. Document filed by Andre Rouviere, Jodi Rouviere..(Rouviere, Andre) (Entered: 08/25/2021) |
|     |              | Main Doc     Motion for Extension of Time | |
| 315 | Aug 26, 2021 |              | ORDER granting in part and denying in part 314 Letter Motion for Extension of Time; granting in part and denying in part 314 Letter Motion for Extension of Time to File Response/Reply re 314 LETTER MOTION for Extension of Time to File Reply (Unopposed Letter Motion)) addressed to Judge Lewis J. Liman from Melissa Damian Visconti dated August 25, 2021. LETTER MOTION for Extension of Time to File Response/Reply as to Set/Reset Deadlines, 310 Order on Motion for Discovery addressed to Judge Lewis J. Liman from Melissa Damian Visconti dated |

August 25, 2021. EXTENSION GRANTED TO AUGUST 30, 2021. (HEREBY
ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered:
08/26/2021)

Main Doc

|  |  |  |
|---|---|---|
|  | Aug 26, 2021 | Order on Motion for Extension of Time to File Response/Reply AND Order on Motion for Extension of Time |
| 316 | Aug 27, 2021 | NOTICE of Plaintiff's Notice of Compliance with Court Order Dated August 25, 2021 and Notice of Filing re: 313 Order,,. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit A- Depo Transcript of Dr. Robert Buly, # 2 Exhibit - Exhibits to Dr Robert Buly deposition (pt 1), # 3 Exhibit - Exhibits to Dr. Robert Buly deposition (pt. 2), # 4 Exhibit B- Depo Transcript of Dr. Sol Bobst, # 5 Exhibit - Exhibits to Dr. Sol Bobst deposition, # 6 Exhibit C- Depo Transcript of Jodi Rouviere, # 7 Exhibit - Exhibits to Jodi Rouviere deposition (pt 1), # 8 Exhibit - Exhibits to Jodi Rouviere deposition (pt 2), # 9 Exhibit - Exhibits to Jodi Rouviere deposition (pt 3), # 10 Exhibit - Exhibits to Jodi Rouviere deposition (pt 4), # 11 Exhibit - Exhibits to Jodi Rouviere deposition (pt 5)).(Visconti, Melissa) (Entered: 08/27/2021) |

|  |  |
|---|---|
| Main Doc | Notice (Other) |
| Att 1 | Exhibit A- Depo Transcript of Dr. Robert Buly |
| Att 2 | Exhibit - Exhibits to Dr Robert Buly deposition (pt 1) |
| Att 3 | Exhibit - Exhibits to Dr. Robert Buly deposition (pt. 2) |
| Att 4 | Exhibit B- Depo Transcript of Dr. Sol Bobst |
| Att 5 | Exhibit - Exhibits to Dr. Sol Bobst deposition |
| Att 6 | Exhibit C- Depo Transcript of Jodi Rouviere |
| Att 7 | Exhibit - Exhibits to Jodi Rouviere deposition (pt 1) |
| Att 8 | Exhibit - Exhibits to Jodi Rouviere deposition (pt 2) |
| Att 9 | Exhibit - Exhibits to Jodi Rouviere deposition (pt 3) |
| Att 10 | Exhibit - Exhibits to Jodi Rouviere deposition (pt 4) |
| Att 11 | Exhibit - Exhibits to Jodi Rouviere deposition (pt 5) |

|  |  |  |
|---|---|---|
| 317 | Aug 30, 2021 | REPLY to Response to Motion re: 308 FIRST MOTION for Leave to File PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND RELATED ARGUMENT IN SUPPORT OF OPPOSITION TO DEPUYS MOTION FOR SUMMARY JUDGMENT . . Document filed by Andre Rouviere, Jodi Rouviere..(Rouviere, Andre) (Entered: 08/30/2021) |

|  |  |
|---|---|
| Main Doc | Reply to Response to Motion |

|  |  |
|---|---|
| 318 | Sep 17, 2021 |

OPINION AND ORDER re: 178 MOTION for Summary Judgment . filed by Depuy Orthopaedics, Inc., 308 FIRST MOTION for Leave to File PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND RELATED ARGUMENT IN SUPPORT OF OPPOSITION TO DEPUYS MOTION FOR SUMMARY JUDGMENT . filed by Andre Rouviere, Jodi Rouviere. The Rouvieres' objection to Magistrate Judge Aaron's orders at Docket Nos. 232 and 266 is OVERRULED. The Rouvieres' motion to supplement the summary judgment record is GRANTED insofar as it seeks to include the supplemental Gannon and Bobst reports in the record but is DENIED insofar as it seeks additional briefing. DePuy's motion for summary judgment is GRANTED as to all claims against it. The Clerk of Court is respectfully directed to close Docket Nos. 178 and 308 and dismiss DePuy from this case. SO ORDERED. Depuy Orthopaedics, Inc. terminated. (Signed by Judge Lewis J. Liman on 9/17/2021) (kv) (Entered: 09/17/2021)

Main Doc          Memorandum & Opinion
(/docket/7021271/318/rouviere-
v-depuy-
orthopaedics-
inc/)

| | | | |
|---|---|---|---|
| 319 | Sep 23, 2021 | | JOINT LETTER MOTION for Discovery Request to Reset the Deadline for Deposition of Plaintiffs Engineering Expert, Dr. Jarrell addressed to Magistrate Judge Stewart D. Aaron from Paul E. Asfendis, Esq. dated September 23, 2021. Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 09/23/2021) |
| | | Main Doc | Motion for Discovery |
| 320 | Sep 24, 2021 | | ORDER granting in part and denying in part 319 JOINT LETTER MOTION for Discovery Request to Reset the Deadline for Deposition of Plaintiffs Engineering Expert, Dr. Jarrell. Joint request GRANTED: the parties' proposed expert discovery schedule is ADOPTED. HOC's request for a phone conference is DENIED WITHOUT PREJUDICE. After expert discovery is complete, the parties should contact Judge Liman regarding a schedule for motion practice. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 9/24/2021) (jca) (Entered: 09/24/2021) |
| | | Main Doc | Order on Motion for Discovery |
| | | (/docket/7021271/320/rouviere- | |
| | | v-depuy- | |
| | | orthopaedics- | |
| | | inc/) | |
| | Sep 24, 2021 | Set/Reset Deadlines | |
| | Sep 24, 2021 | Set/Reset Deadlines: Deposition due by 10/27/2021. (jca) | |
| 321 | Oct 1, 2021 | | MOTION for Reconsideration re; 318 Memorandum & Opinion, Add and Terminate Parties,,,,,, 320 Order on Motion for Discovery,, . Document filed by Andre Rouviere, Jodi Rouviere..(Rouviere, Andre) (Entered: 10/01/2021) |
| | | Main Doc | Motion for Reconsideration |
| 322 | Oct 15, 2021 | | NOTICE OF APPEARANCE by Robert Edward Godosky on behalf of Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Supplement Notice of appearance, # 2 Supplement Notice of appearance).(Godosky, Robert) (Entered: 10/15/2021) |
| | | Main Doc | Notice of Appearance |
| 323 | Oct 15, 2021 | | RESPONSE in Opposition to Motion re: 321 MOTION for Reconsideration re; 318 Memorandum & Opinion, Add and Terminate Parties,,,,,, 320 Order on Motion for Discovery,, . Document filed by Depuy Orthopaedics, Inc...(Larson, Joel) (Entered: |

10/15/2021)

Main Doc          Response in Opposition to Motion

| 324 | Oct 22, 2021 | REPLY to Response to Motion re: 321 MOTION for Reconsideration re; 318 Memorandum & Opinion, Add and Terminate Parties,,,,,, 320 Order on Motion for Discovery,, . . Document filed by Andre Rouviere, Jodi Rouviere..(Rouviere, Andre) (Entered: 10/22/2021) |

          Main Doc          Reply to Response to Motion

| 325 | Dec 9, 2021 | OPINION AND ORDER re: 321 MOTION for Reconsideration re; 318 Memorandum & Opinion, Add and Terminate Parties,,,,,, 320 Order on Motion for Discovery, . filed by Andre Rouviere, Jodi Rouviere. The motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to close Dkt. No. 321. (Signed by Judge Lewis J. Liman on 12/9/2021) (ate) (Entered: 12/09/2021) |

          Main Doc          Memorandum & Opinion
(/docket/7021271/325/rouviere-
v-depuy-
orthopaedics-
inc/)

| 326 | Jan 3, 2022 | MOTION for Melissa Damian Visconti to Withdraw as Attorney Unopposed Application to Withdraw as Counsel of Record. Document filed by Andre Rouviere, Jodi Rouviere..(Visconti, Melissa) (Entered: 01/03/2022) |

          Main Doc          Motion to Withdraw as Attorney

| 327 | Jan 4, 2022 | MEMO ENDORSEMENT on UNOPPOSED APPLICATION TO WITHDRAW AS COUNSEL OF RECORD on re: 326 MOTION for Melissa Damian Visconti to Withdraw as Attorney Unopposed Application to Withdraw as Counsel of Record. filed by Andre Rouviere, Jodi Rouviere. ENDORSEMENT: No later than January 7, 2022, Ms. Visconti shall file a supplemental declaration indicating whether or not she is asserting a retaining or charging lien pursuant to Local Rule 1.4. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 1/4/2022) (ks) (Entered: 01/04/2022) |

          Main Doc          Memo Endorsement

| 328 | Jan 10, 2022 | NOTICE of Declaration of No Charging Lien re: 327 Memo Endorsement,,. Document filed by Andre Rouviere, Jodi Rouviere..(Visconti, Melissa) (Entered: 01/10/2022) |

          Main Doc          Notice (Other)

| 329 | Jan 10, 2022 | MEMO ENDORSED ON 326 APPLICATION TO WITHDRAW AS COUNSEL OF RECORD: ENDORSEMENT: Request GRANTED. So Ordered. Attorney Melissa Visconti terminated. (Signed by Magistrate Judge Stewart D. Aaron on 1/10/2022) (js) (Entered: 01/10/2022) |

          Main Doc          Order on Motion to Withdraw as
                            Attorney

| 330 | Jan 27, 2022 | LETTER addressed to Judge Lewis J. Liman from Paul E. Asfendis, Esq. dated January 27, 2022 re: Conferences. Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 01/27/2022) |

          Main Doc          Letter

| 331 | Jan 28, 2022 | RULE 26 DISCLOSURE.Document filed by Andre Rouviere, Jodi Rouviere.. (Godosky, Robert) (Entered: 01/28/2022) |

          Main Doc          Rule 26 Disclosure

|  | Jan 28, 2022 | Order |

| | Jan 28, 2022 | ORDER re: 330 Letter filed by Howmedica Osteonics Corporation. A Status Conference is scheduled in this matter for February 17, 2022 at 10:00AM. The conference will be held remotely by telephone and parties are directed to dial into the Court's teleconference line at 888-251-2909 and use access code 2123101. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (mf) |
| | Jan 28, 2022 | Set/Reset Hearings |
| | Jan 28, 2022 | Set/Reset Hearings: Status Conference set for 2/17/2022 at 10:00 AM before Judge Lewis J. Liman. (mf) |
| | Feb 17, 2022 | Status Conference |
| | Feb 17, 2022 | Minute Entry for proceedings held before Judge Lewis J. Liman: Status Conference held on 2/17/2022 by Telephone Conference. Robert Godosky present by telephone for Plaintiffs. Paul Asfendis present by telephone for Defendant. Defendant's motion for summary judgment, limited to statute of limitations, due by March 18, 2022. Plaintiffs response due by April 18, 2022. Defendant's reply due by May 2, 2022. Defendant directed to submit a joint statement of undisputed facts along with its summary judgment motion. (mf) |
| | Feb 22, 2022 | Status Conference |
| 332 | Mar 18, 2022 | MOTION for Summary Judgment Based on Statute of Limitations. Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 03/18/2022) |
| | | Main Doc (/docket/7021271/332/rouviere-v-depuy-orthopaedics-inc/)    Motion for Summary Judgment |
| 333 | Mar 18, 2022 | RULE 56.1 STATEMENT. Document filed by Howmedica Osteonics Corporation.. (Asfendis, Paul) (Entered: 03/18/2022) |
| | | Main Doc (/docket/7021271/333/rouviere-v-depuy-orthopaedics-inc/)    Rule 56.1 Statement |
| 334 | Mar 18, 2022 | RULE 56.1 STATEMENT. Document filed by Howmedica Osteonics Corporation.. (Asfendis, Paul) (Entered: 03/18/2022) |
| | | Main Doc (/docket/7021271/334/rouviere-v-depuy-orthopaedics-inc/)    Rule 56.1 Statement |
| 335 | Mar 18, 2022 | DECLARATION of Paul E. Asfendis, Esq. in Support re: 332 MOTION for Summary Judgment Based on Statute of Limitations.. Document filed by Howmedica Osteonics Corporation. (Attachments: # 1 Exhibit A - Jodi Rouviere Deposition Excerpts, # 2 Exhibit B - 8/14/12 Implant Operative Report, # 3 Exhibit C - Jodi Rouviere Interrogatory Response, # 4 Exhibit D - Jodie Rouviere Declaration, # 5 Exhibit E - Andre Rouviere Declaration, # 6 Exhibit F - 11/11/16 Revision Report, # 7 Exhibit G - Discharge Summary, # 8 Exhibit H - Dr. Tervaert Expert Report, # 9 Exhibit I - Dr. Gannon Expert Report, # 10 Exhibit J - Dr. Bobst Expert Report, # 11 Exhibit K - Dr. Bobst Deposition Excerpts, # 12 Exhibit L - Dr. Tervaert Deposition Excerpts, # 13 Exhibit M - Dr. Sandhouse Medical Records, # 14 Exhibit N - Healy Physical Therapy Medical Records, # 15 Exhibit O - Doctor's Hospital Medical |

Records, # 16 Exhibit Jodi Rouviere Medical Record, # 17 Exhibit Q - Blood Test
Results, # 18 Exhibit R - Dr. Buly Deposition Excerpts, # 19 Exhibit Dr. Jarrell
Expert Report).(Asfendis, Paul) (Entered: 03/18/2022)

| | |
|---|---|
| Main Doc | Declaration in Support of Motion |
| Att 1 | Exhibit A - Jodi Rouviere Deposition Excerpts |
| Att 2 | Exhibit B - 8/14/12 Implant Operative Report |
| Att 3 | Exhibit C - Jodi Rouviere Interrogatory Response |
| Att 4 | Exhibit D - Jodie Rouviere Declaration |
| Att 5 | Exhibit E - Andre Rouviere Declaration |
| Att 6 | Exhibit F - 11/11/16 Revision Report |
| Att 7 | Exhibit G - Discharge Summary |
| Att 8 | Exhibit H - Dr. Tervaert Expert Report |
| Att 9 | Exhibit I - Dr. Gannon Expert Report |
| Att 10 | Exhibit J - Dr. Bobst Expert Report |
| Att 11 | Exhibit K - Dr. Bobst Deposition Excerpts |
| Att 12 | Exhibit L - Dr. Tervaert Deposition Excerpts |
| Att 13 | Exhibit M - Dr. Sandhouse Medical Records |
| Att 14 | Exhibit N - Healy Physical Therapy Medical Records |
| Att 15 | Exhibit O - Doctor's Hospital Medical Records |
| Att 16 | Exhibit Jodi Rouviere Medical Record |
| Att 17 | Exhibit Q - Blood Test Results |
| Att 18 | Exhibit R - Dr. Buly Deposition Excerpts |
| Att 19 | Exhibit Dr. Jarrell Expert Report |
| 336 | Mar 18, 2022 | MEMORANDUM OF LAW in Support re: 332 MOTION for Summary Judgment Based on Statute of Limitations. . Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 03/18/2022) |
| | | Main Doc (/docket/7021271/336/rouviere-v-depuy-orthopaedics-inc/) | Memorandum of Law in Support of Motion |
| 337 | Apr 5, 2022 | FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 332 MOTION for Summary Judgment Based on Statute of Limitations. addressed to Judge Lewis J. Liman from Robert Godosky dated 04/05/2022. Document filed by Andre Rouviere, Jodi Rouviere..(Godosky, Robert) (Entered: 04/05/2022) |
| | | Main Doc | |

Motion for Extension of Time to File
Response/Reply

| | | |
|---|---|---|
| 338 | Apr 14, 2022 | ORDER granting 337 Letter Motion for Extension of Time to File Response/Reply re 337 FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 332 MOTION for Summary Judgment Based on Statute of Limitations. addressed to Judge Lewis J. Liman from Robert Godosky dated 04/05/2022. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 04/14/2022) |
| | | Main Doc |
| | Apr 14, 2022 | Order on Motion for Extension of Time to File Response/Reply |
| 339 | May 2, 2022 | SECOND LETTER MOTION for Extension of Time to File Response/Reply as to 332 MOTION for Summary Judgment Based on Statute of Limitations. The letter motion is addressed to Judge Lewis J. Liman from Robert Godosky, Esq. dated 05/02/2022. Document filed by Andre Rouviere, Jodi Rouviere. Return Date set for 5/23/2022 at 05:00 PM..(Godosky, Robert) (Entered: 05/02/2022) |
| | | Main Doc — Motion for Extension of Time to File Response/Reply |
| 340 | May 3, 2022 | ORDER granting 339 Letter Motion for Extension of Time to File Response/Reply re 339 SECOND LETTER MOTION for Extension of Time to File Response/Reply as to 332 MOTION for Summary Judgment Based on Statute of Limitations. The letter motion is addressed to Judge Lewis J. Liman from Robert Godosky, Esq. dated 05/ The Court is unlikely to grant any further extensions. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 05/03/2022) |
| | | Main Doc |
| | May 3, 2022 | Order on Motion for Extension of Time to File Response/Reply |
| 341 | May 23, 2022 | DECLARATION of Robert Godosky in Opposition re: 332 MOTION for Summary Judgment Based on Statute of Limitations.. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Supplement Rule 56.1 Statement, # 2 Supplement Declaration in Opposition).(Godosky, Robert) (Entered: 05/24/2022) |
| | | Main Doc — Declaration in Opposition to Motion |
| | | Att 1 — Supplement Rule 56.1 Statement |
| | | Att 2 — Supplement Declaration in Opposition |
| 342 | May 25, 2022 | LETTER MOTION for Extension of Time to File Response/Reply as to 332 MOTION for Summary Judgment Based on Statute of Limitations. addressed to Judge Lewis J. Liman from Paul E. Asfendis, Esq. dated May 25, 2022. Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 05/25/2022) |
| | | Main Doc — Motion for Extension of Time to File Response/Reply |
| 343 | May 25, 2022 | ORDER granting 342 Letter Motion for Extension of Time to File Response/Reply re 342 LETTER MOTION for Extension of Time to File Response/Reply as to 332 MOTION for Summary Judgment Based on Statute of Limitations. addressed to Judge Lewis J. Liman from Paul E. Asfendis, Esq. dated May 25, 2022. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 05/25/2022) |
| | | Main Doc |

| 344 | May 25, 2022 | FIRST LETTER addressed to Judge Lewis J. Liman from Robert Godosky dated 5/25/2022 re: Rouviere v. Howmedica. Document filed by Jodi Rouviere..(Godosky, Robert) (Entered: 05/25/2022) |
| | | Main Doc         Letter |
| | May 25, 2022 | Order on Motion for Extension of Time to File Response/Reply |
| 345 | May 27, 2022 | FIRST LETTER MOTION to Seal Records subject to Protective Order addressed to Judge Lewis J. Liman from Robert Godosky dated May 27, 2022. Document filed by Jodi Rouviere. (Attachments: # 1 Exhibit Dr. Ochoa Exhibit 13 Report - Stryker material, # 2 Exhibit Exhibit16 - Part 1 Stryker Documents, # 3 Exhibit Exhibit16 - Part 2 Stryker Documents, # 4 Exhibit Exhibit16 - Part 3 Stryker Documents, # 5 Exhibit Exhibit16 - Part 4 Stryker Documents, # 6 Exhibit Exhibit16 - Part 5 Stryker Documents, # 7 Exhibit Exhibit16 - Part 6 Stryker Documents, # 8 Exhibit Exhibit16 - Part 7 Stryker Documents, # 9 Exhibit Exhibit16 - Part 8 Stryker Documents, # 10 Exhibit Exhibit16 - Part 9 Stryker Documents, # 11 Exhibit Exhibit E - Part 1 Stryker Documents, # 12 Exhibit Exhibit E - Part 2 Stryker Documents, # 13 Exhibit Exhibit E - Part 3 Stryker Documents, # 14 Exhibit Exhibit E - Part 4 Stryker Documents, # 15 Exhibit Exhibit E - Part 5 Stryker Documents, # 16 Exhibit Exhibit E - Part 6 Stryker Documents, # 17 Exhibit Exhibit E - Part 7 Stryker Documents, # 18 Exhibit Exhibit E - Part 8 Stryker Documents, # 19 Exhibit Exhibit E - Part 9 Stryker Documents).(Godosky, Robert) (Entered: 05/27/2022) |
| | | Main Doc         Motion to Seal |
| 346 | May 27, 2022 | DECLARATION of Robert Godosky in Opposition re: 332 MOTION for Summary Judgment Based on Statute of Limitations.. Document filed by Jodi Rouviere. (Attachments: # 1 Exhibit 1 Motion topermit Andre ROuviere to Efile, # 2 Exhibit 2 - Check payable to SDNY Clerk, # 3 Exhibit 3 Civil Cover Sheet, # 4 Exhibit 4 Andre Rouviere Declaration, # 5 Exhibit 5 portions of Jodi Rouvere deposition, # 6 Exhibit 6 portions of Exh 74 from Dr. Buly deposition, # 7 Exhibit 7 Rouviere MNG Medical Records, # 8 Exhibit 8 Rouviere Baptist Hospital medical recordss, # 9 Exhibit 9 Portionof Jodi Rouvier Medical Records Complete2019, # 10 Exhibit 9A Portionof Jodi Rouvier Medical Records Complete2019, # 11 Exhibit 10 Dr. Esatpe records, # 12 Exhibit Neurology Consult report Baptist Hospital, # 13 Exhibit 12 Neurology Consult South Miami Hospital, # 14 Exhibit 14 Dr. Kosnett Report, # 15 Exhibit 15 portions of Dr. Buly depostion, # 16 Exhibit 17 Stryker documents, # 17 Exhibit 18 portions of Dr. Alvarado deposition, # 18 Exhibit 19 Stryker recall documents, # 19 Exhibit 20 Stryker recall documents, # 20 Exhibit 21 Stryker recall documents, # 21 Exhibit 22 Stryker recall documents, # 22 Exhibit 23 portions of Christopher Hefferman deposition, # 23 Exhibit A to JSOF - Dr. Wang records, # 24 Exhibit B Stryker records, # 25 Exhibit C portions of Edwin Rodriguez, # 26 Exhibit D Stryker records).(Godosky, Robert) (Entered: 05/27/2022) |
| | | Main Doc         Declaration in Opposition to Motion |
| 347 | Jun 20, 2022 | REPLY MEMORANDUM OF LAW in Support re: 332 MOTION for Summary Judgment Based on Statute of Limitations. . Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 06/20/2022) |
| | | Main Doc         Reply Memorandum of Law in Support of Motion |
| 348 | Jun 20, 2022 | RESPONSE re: 332 MOTION for Summary Judgment Based on Statute of Limitations. Response to Plaintiff's' Counterstatement of Facts. Document filed by Howmedica Osteonics Corporation..(Asfendis, Paul) (Entered: 06/20/2022) |
| | | Main Doc         Response |
| 349 | Jun 20, 2022 | |

REPLY AFFIRMATION of Paul E. Asfendis in Support re: 332 MOTION for Summary Judgment Based on Statute of Limitations.. Document filed by Howmedica Osteonics Corporation. (Attachments: # 1 Exhibit T).(Asfendis, Paul) (Entered: 06/20/2022)

| Main Doc | | Reply Affirmation in Support of Motion |
|---|---|---|
| 350 | Dec 5, 2022 | ORDER denying without prejudice 345 Letter Motion to Seal. The request to file certain exhibits under seal is denied without prejudice for the reasons set forth in footnote 3 of the Court's December 5, 2022 opinion and order on the motion for summary judgment filed by Howmedica Osteonics Corp. Within 14 days of of this order, the parties must submit a revised motion that explains why sealing (1) is necessary to preserve higher values, and (2) is narrowly tailored to serve that interest. In the absence of such a timely-filed motion, the Court will unseal the materials. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (mcf) (Entered: 12/05/2022) |
| | | Main Doc |
| 351 | Dec 5, 2022 | OPINION AND ORDER re: 332 MOTION for Summary Judgment Based on Statute of Limitations. filed by Howmedica Osteonics Corporation. ENDORSEMENT: The motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close Dkt. Nos. 332, 345. The Clerk of Court is also respectfully directed to close this case. SO ORDERED. (Signed by Judge Lewis J. Liman on 12/5/2022) (tg) Transmission to Orders and Judgments Clerk for processing. (Entered: 12/05/2022) |
| | | Main Doc        Memorandum & Opinion (/docket/7021271/351/rouviere-v-depuy-orthopaedics-inc/) |
| | Dec 5, 2022 | Order on Motion to Seal |
| 352 | Dec 6, 2022 | CLERK'S JUDGMENT re: 351 Memorandum & Opinion in favor of Howmedica Osteonics Corporation against Andre Rouviere, Jodi Rouviere. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated December 5, 2022, Defendant's motion for summary judgment is GRANTED; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 12/6/2022) (Attachments: # 1 Right to Appeal) (km) (Entered: 12/06/2022) |
| | | Main Doc        Clerk's Judgment (/docket/7021271/352/rouviere-v-depuy-orthopaedics-inc/) |
| | Dec 6, 2022 | Terminate Transcript Deadlines |
| | Dec 6, 2022 | Terminate Transcript Deadlines (km) |
| 353 | Dec 19, 2022 | LETTER MOTION to Seal certain motion-related exhibits addressed to Judge Lewis J. Liman from Paul E. Asfendis, Esq. dated December 19, 2022. Document filed by Howmedica Osteonics Corporation. (Attachments: # 1 Affidavit Declaration of Christopher Heffernan).(Asfendis, Paul) (Entered: 12/19/2022) |
| | | Main Doc        Motion to Seal |
| 354 | Dec 20, 2022 | ORDER: granting in part and denying in part 353 Letter Motion to Seal. ORDER: The request to seal certain motion-related exhibits is GRANTED IN PART AND DENIED IN PART. Defendant may seal the design file, the 510k file, and the |

manufacturing records in full. "Such documents fall into categories commonly sealed[:] those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like. Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (cleaned up). This is also true of the report of expert Jorge Ochoa, except for the Table of Contents and Sections 1, 1.1, 1.2, and 4 of that report. It is not clear what competitive harm public disclosure of these sections of the report would cause. Thus, Defendant is directed to file the expert report with everything redacted but the Table of Contents and Sections 1, 1.1, 1.2, and 4. SO ORDERED. (Signed by Judge Lewis J. Liman on 12/20/2022) (ama) (Entered: 12/20/2022)

| Main Doc | Order on Motion to Seal |
| --- | --- |

(/docket/7021271/354/rouviere-v-depuy-orthopaedics-inc/)

| 355 | Dec 22, 2022 | REDACTION to 354 Order on Motion to Seal,,,, by Howmedica Osteonics Corporation (Attachments: # 1 Exhibit A - Redacted Report).(Asfendis, Paul) (Entered: 12/22/2022) |
| --- | --- | --- |
| | | Main Doc          Redacted Document |
| | Dec 22, 2022 | Transmission of Notice of Appeal and Docket Sheet to USCA |
| 356 | Dec 22, 2022 | NOTICE OF APPEAL from 351 Memorandum & Opinion,. Document filed by Andre Rouviere, Jodi Rouviere. Filing fee $ 505.00, receipt number ANYSDC-27125689. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Godosky, Robert) (Entered: 12/22/2022) |
| | | Main Doc          Notice of Appeal |
| | Dec 22, 2022 | Appeal Record Sent to USCA - Electronic File |
| | Dec 22, 2022 | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 356 Notice of Appeal. (tp) |
| | Dec 22, 2022 | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 356 Notice of Appeal, filed by Andre Rouviere, Jodi Rouviere were transmitted to the U.S. Court of Appeals. (tp) |
| 357 | Dec 30, 2022 | FILING ERROR - DEFICIENT DOCKET ENTRY - PROPOSED JUDGMENT. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit Exhibit A - Order 09-17-21).(Godosky, Robert) Proposed Judgment to be reviewed by Clerk's Office staff. Modified on 12/30/2022 (km). (Entered: 12/30/2022) |
| | | Main Doc          Proposed Judgment |
| | Dec 30, 2022 | Notice to Attorney Regarding Deficient Notice of Appeal |
| 358 | Dec 30, 2022 | FILING ERROR - NO ORDER/JUDGMENT SELECTED FOR APPEAL - AMENDED NOTICE OF APPEAL re: 356 Notice of Appeal,. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Supplement Judgment dated 12/06/22, # 2 Supplement Order dated 12/05/22, # 3 Supplement Order dated 09/17/21, # 4 Supplement Order dated 11/24/20, # 5 Supplement Order dated 12/19/20). (Godosky, Robert) Modified on 12/30/2022 (nd). (Entered: 12/30/2022) |
| | | Main Doc          Amended Notice of Appeal |
| | Dec 30, 2022 | Notice to Attorney Regarding Deficient Proposed Order |

Dec 30, 2022

***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Robert Godosky to RE-FILE Document No. 358 Amended Notice of Appeal,.. The filing is deficient for the following reason(s): the orders/judgment being appealed were not selected;. Re-file the appeal using the event type Amended Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. (nd)

Dec 30, 2022

***NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED JUDGMENT. Notice to attorney Robert Godosky to RE-FILE Document No. 357 Proposed Judgment. The filing is deficient for the following reason(s): The Judge signs the judgment. Please remove the signature line for the Clerk of Court and Deputy Clerk and replace it with one for the Judge to sign. Re-file the document using the event type Proposed Judgment found under the event list Proposed Orders. (km)

359    Dec 30, 2022

AMENDED NOTICE OF APPEAL re: 356 Notice of Appeal, 352 Clerk's Judgment, 351 Memorandum & Opinion,. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Supplement Judgment dated 12/06/22, # 2 Supplement Order dated 12/05/22, # 3 Supplement Order dated 09/17/21, # 4 Supplement Order dated 11/24/20, # 5 Supplement Order dated 12/19/20).(Godosky, Robert) Modified on 1/3/2023 (tp). (Entered: 12/30/2022)

Main Doc        Amended Notice of Appeal

360    Dec 30, 2022

PROPOSED JUDGMENT. Document filed by Andre Rouviere, Jodi Rouviere. (Attachments: # 1 Exhibit Exhibit A - Order 09-17-21).(Godosky, Robert) Proposed Judgment to be reviewed by Clerk's Office staff. (Entered: 12/30/2022)

Main Doc        Proposed Judgment

Dec 30, 2022

Notice to Attorney Regarding Deficient Appeal

Jan 3, 2023

Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 359 Amended Notice of Appeal. (tp)

Jan 3, 2023

Transmission of Notice of Appeal and Docket Sheet to USCA

Jan 3, 2023

First Supplemental ROA Sent to USCA (Electronic File). Certified Supplemental Indexed record on Appeal Electronic Files for 359 Amended Notice of Appeal, filed by Andre Rouviere, Jodi Rouviere were transmitted to the U.S. Court of Appeals. (tp)

Jan 3, 2023

Supplemental ROA Sent to USCA - Electronic File

Jan 3, 2023

***NOTICE TO COURT REGARDING PROPOSED JUDGMENT. Document No. 360 Proposed Judgment was reviewed and approved as to form. (km)

Jan 3, 2023

Notice to Court Regarding Proposed Order

361    Jan 4, 2023

JUDGMENT: It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated September 17, 2021, (ECF Doc. No. 318) Defendant DEPUY ORTHOPAEDICS, INC.'s motion for summary judgment is GRANTED. (Signed by Judge Lewis J. Liman on 1/4/2023) (va) (Entered: 01/04/2023)

Main Doc        Judgment
(/docket/7021271/361/rouviere-
v-depuy-
orthopaedics-
inc/)

| | | |
|---|---|---|
| 362 | Jan 10, 2023 | SECOND NOTICE OF APPEAL from 361 Judgment,. Document filed by Andre Rouviere, Jodi Rouviere. Filing fee $ 505.00, receipt number ANYSDC-27183586. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Godosky, Robert) (Entered: 01/10/2023) |
| | | Main Doc         Notice of Appeal |
| | Jan 10, 2023 | Transmission of Notice of Appeal and Docket Sheet to USCA |
| | Jan 10, 2023 | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 362 Second Notice of Appeal. (tp) |
| | Jan 10, 2023 | Appeal Record Sent to USCA - Electronic File |
| | Jan 10, 2023 | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 362 Second Notice of Appeal, filed by Andre Rouviere, Jodi Rouviere were transmitted to the U.S. Court of Appeals. (tp) |
| 363 | Jun 11, 2024 | MANDATE of USCA (Certified Copy) as to 356 Notice of Appeal, filed by Andre Rouviere, Jodi Rouviere, 359 Amended Notice of Appeal, filed by Andre Rouviere, Jodi Rouviere, 362 Notice of Appeal, filed by Andre Rouviere, Jodi Rouviere USCA Case Number 22-3205(L), 23-50 (Con). UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the January 4, 2023 judgment of the district court is AFFIRMED. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 6/11/2024.(km) (Entered: 06/11/2024) |
| | | Main Doc         USCA Mandate |
| | Jun 11, 2024 | Transmission of USCA Mandate/Order to District Judge |
| | Jun 11, 2024 | Transmission of USCA Mandate/Order to the District Judge re: 363 USCA Mandate.(km) |
| 364 | Oct 31, 2024 | MOTION for RELIEF OF JUDGEMENT Pursuant to Fed. R. CIV and Memorandum of Law in Support Thereof. Document filed by Jodi Rouviere..(rdz) (Entered: 11/06/2024) |
| | | Main Doc         Miscellaneous Relief (/docket/7021271/364/rouviere-v-depuy-orthopaedics-inc/) |
| 365 | Nov 6, 2024 | JOINT LETTER MOTION for Extension of Time addressed to Judge Lewis J. Liman from J.T. Larson dated November 6, 2024. Document filed by Depuy Orthopaedics, Inc...(Larson, Joel) (Entered: 11/06/2024) |
| | | Main Doc         Extension of Time |
| | Nov 7, 2024 | NOTICE OF CASE REASSIGNMENT to Judge Mary Kay Vyskocil. Judge Lewis J. Liman is no longer assigned to the case. (vba) |
| | Nov 7, 2024 | Notice of Case Assignment/Reassignment |
| | Nov 7, 2024 | Notice of Redesignation to Magistrate Judge |
| | Nov 7, 2024 | Notice of Reassignment of Referral to Magistrate Judge |
| | Nov 7, 2024 | NOTICE OF REDESIGNATION TO ANOTHER MAGISTRATE JUDGE. The above entitled action has been redesignated to Magistrate Judge Henry J. Ricardo to handle matters that may be referred in this case. Please note that this is a |

reassignment of the designation only. (vba)

| | Nov 7, 2024 | NOTICE OF REASSIGNMENT OF A REFERRAL TO ANOTHER MAGISTRATE JUDGE. The referral in the above entitled action has been reassigned to Magistrate Judge Henry J Ricardo, for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Magistrate Judge Stewart D. Aaron no longer referred to the case. Motions referred to Henry J Ricardo. (vba) |
|---|---|---|
| 366 | Nov 7, 2024 | MOTION for Andre A. Rouviere to Withdraw as Attorney for Plaintiff Jodi Rouviere. Document filed by Jodi Rouviere, Andre Rouviere. Return Date set for 11/21/2024 at 12:00 AM. (Attachments: # 1 Affidavit Declaration in Support of Motion to Withdraw as Counsel for Plaintiff Jodi Rouviere, # 2 Proposed Order Proposed Order Granting Motion to Withdraw as counsel for Plaintiff Jodi Rouviere). (Rouviere, Andre) (Entered: 11/07/2024) |
| | | Main Doc (/docket/7021271/366/rouviere-v-depuy-orthopaedics-inc/)   Withdraw as Attorney |
| | | Att 1   Affidavit Declaration in Support of Motion to Withdraw as Counsel for Plaintiff |
| | | Att 2   Proposed Order Proposed Order Granting Motion to Withdraw as counsel for Plainti |
| | Nov 7, 2024 | NOTICE OF CASE REASSIGNMENT to Judge Gregory H. Woods. Judge Mary Kay Vyskocil is no longer assigned to the case. (vba) |
| 367 | Nov 7, 2024 | ORDER granting 365 Letter Motion for Extension of Time. Application granted. Defendants' November 6, 2024 request for an extension of time to file their opposition to Plaintiff's motion for vacatur and their response to Plaintiff's motion for an evidentiary hearing, Dkt. No. 365, is granted. Defendants' opposition and response are both due no later than December 6, 2024. Plaintiffs reply to Defendants' opposition to Plaintiff's motion for vacatur, if any, is due two weeks following the date of service of Defendants' opposition. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 365. (Signed by Judge Gregory H. Woods on 11/7/2024) (jjc) (Entered: 11/08/2024) |
| | | Main Doc   Order on Motion for Extension of Time |
| | Nov 7, 2024 | Set/Reset Deadlines: Responses due by 12/6/2024 (jjc) |
| 368 | Nov 7, 2024 | ORDER with respect to 366 Motion to Withdraw as Attorney. On November 7, 2024, attorney Andre Rouviere filed a motion to withdraw as counsel for Plaintiff Jodi Rouviere. Dkt. No. 366. The Court will hold a conference regarding Mr. Rouvieres motion on December 20, 2024 at 4:00 p.m. Counsel for all parties must appear at this conference. Plaintiff Jodi Rouviere is also ordered to appear. The conference will be held by telephone. The parties are directed to the Courts Individual Rules of Practice in Civil Cases, which are available on the Courts website. Rule 2 of the Courts Individual Rules contains the dial-in number for the conference and other relevant instructions. The parties are specifically directed to comply with Rule 2(C) of the Courts Individual Rules. (Signed by Judge Gregory H. Woods on 11/7/2024) (jjc) (Entered: 11/08/2024) |
| | | Main Doc   Order on Motion to Withdraw as Attorney |

| | | |
|---|---|---|
| | Nov 7, 2024 | Set/Reset Hearings: Telephone Conference set for 12/20/2024 at 04:00 PM before Judge Gregory H. Woods. (jjc) |
| | Nov 8, 2024 | NOTICE OF REDESIGNATION TO ANOTHER MAGISTRATE JUDGE. The above entitled action has been redesignated to Magistrate Judge Gary Stein to handle matters that may be referred in this case. Please note that this is a reassignment of the designation only..(tro) |
| | Nov 8, 2024 | Notice of Redesignation to Magistrate Judge |
| | Nov 8, 2024 | Notice of Reassignment of Referral to Magistrate Judge |
| | Nov 8, 2024 | NOTICE OF REASSIGNMENT OF A REFERRAL TO ANOTHER MAGISTRATE JUDGE. The referral in the above entitled action has been reassigned to Magistrate Judge Gary Stein, for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Magistrate Judge Henry J Ricardo no longer referred to the case. Motions referred to Gary Stein. (tro) |
| 369 | Nov 8, 2024 | FIRST MOTION for Robert Godosky to Withdraw as Attorney . Document filed by Jodi Rouviere, Andre Rouviere. Return Date set for 11/12/2024 at 10:00 AM. (Attachments: # 1 Exhibit Emails).(Godosky, Robert) (Entered: 11/08/2024) |
| | | Main Doc (/docket/7021271/369/rouviere-v-depuy-orthopaedics-inc/)     Withdraw as Attorney |
| | | Att 1     Exhibit Emails |
| 371 | Nov 9, 2024 | ORDER with respect to 369 Motion to Withdraw as Attorney. On November 8, 2024, attorney Robert Edward Godosky filed a motion to withdraw as counsel for Plaintiff Jodi Rouviere. Dkt. No. 369. The Court will address Mr. Godoskys motion at the conference scheduled in this case on December 20, 2024 at 4:00 p.m. As stated in the Courts prior scheduling order, Dkt. No. 368, counsel for all parties must appear at this conference, and Plaintiff Jodi Rouviere is also ordered to appear. The conference will be held by telephone. The parties are directed to the Courts Individual Rules of Practice in Civil Cases, which are available on the Courts website. Rule 2 of the Courts Individual Rules contains the dial-in number for the conference and other relevant instructions. The parties are specifically directed to comply with Rule 2(C) of the Courts Individual Rules.. (Signed by Judge Gregory H. Woods on 11/9/2024) (jjc) (Entered: 11/12/2024) |
| | | Main Doc     Order on Motion to Withdraw as Attorney |
| 370 | Nov 11, 2024 | NOTICE of agreed briefing schedule. Document filed by Depuy Orthopaedics, Inc... (Larson, Joel) (Entered: 11/11/2024) |
| | | Main Doc     Notice (Other) |
| 372 | Nov 11, 2024 | MEMO ENDORSEMENT on re: 370 Notice (Other) filed by Depuy Orthopaedics, Inc. ENDORSEMENT: Application granted. The parties' application for a modification of the briefing schedule, Dkt. No. 370, is granted. Defendants' oppositions to Plaintiffs motion for vacatur and motion for an evidentiary hearing are due on December 6, 2024. Plaintiff's replies, if any, are due on January 6, 2024. SO ORDERED. ( Replies due by 1/6/2025., Responses due by 12/6/2024) (Signed by Judge Gregory H. Woods on 11/11/2024) (sgz) (Entered: 11/12/2024) |
| | | Main Doc     Memo Endorsement AND ~Util - Set Deadlines |

| | | |
|---|---|---|
| 373 | Nov 13, 2024 | PLAINTIFF JODI ROUVIERE'S VERIFIED MOTION FOR EVIDFNTIARY HEARINGAND MEMORANDUM OF LAW IN SUPPORT THEREOF. Document filed by Jodi Rouviere.(ar) (Entered: 11/14/2024) |
| | | Main Doc (/docket/7021271/373/rouviere-v-depuy-orthopaedics-inc/)      Hearing |
| 374 | Nov 13, 2024 | NOTICE of plaintiff Jodi Rouviere's demand to proceed pro se. Document filed by Jodi Rouviere. (ar) (Entered: 11/15/2024) |
| | | Main Doc (/docket/7021271/374/rouviere-v-depuy-orthopaedics-inc/)      Notice (Other) |
| 377 | Nov 14, 2024 | PLAINTIFF JODI ROUVIERE'S VERIFIED MOTION TO DISQUALIFY MAGISTRATE JUDGE GARY STEIN PURSUANT TO TITLE 28 U.S.C. 455(a). Document filed by Jodi Rouviere. (jjc) (Entered: 11/19/2024) |
| | | Main Doc (/docket/7021271/377/rouviere-v-depuy-orthopaedics-inc/)      Disqualify Judge |
| 375 | Nov 15, 2024 | ORDER with respect to 366 Motion to Withdraw as Attorney. On November 7, 2024, the Court scheduled a conference regarding attorney Andre Rouviere's motion to withdraw as counsel for Plaintiff Jodi Rouviere for December 20, 2024 at 4:00 p.m. Dkt. No. 368. On November 8, 2024, the Court ordered that attorney Robert Edward Godosky's motion to withdraw as counsel for Ms. Rouviere and Mr. Rouviere would be addressed at the same conference. Dkt. No. 371. That December 20, 2024 conference will now be held on November 22, 2024 at 2:00 p.m. The Court reiterates that counsel for all parties must appear at this conference, and that Plaintiff Jodi Rouviere is also ordered to appear. The conference will be held by telephone. The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available on the Court's website. Rule 2 of the Court's Individual Rules contains the dial-in number for the conference and other relevant instructions. The parties are specifically directed to comply with Rule 2(C) of the Court's Individual Rules. SO ORDERED. (Signed by Judge Gregory H. Woods on 11/15/2024) (sgz) (Entered: 11/15/2024) |
| | | Main Doc      Order on Motion to Withdraw as Attorney |
| | Nov 15, 2024 | Set/Reset Hearings: Telephone Conference set for 11/22/2024 at 02:00 PM before Judge Gregory H. Woods. (sgz) |
| 376 | Nov 15, 2024 | MOTION for Leave to Appear Notice of Appearance . Document filed by Depuy Orthopaedics, Inc...(Metzger, Jessica) (Entered: 11/15/2024) |
| | | Main Doc (/docket/7021271/376/rouviere-v-depuy-orthopaedics-inc/)      Appear |
| | Nov 22, 2024 | Telephone Conference |

Nov 22, 2024                          Minute Entry for proceedings held before Judge Gregory H. Woods: Telephone
                                      Conference held on 11/22/2024. (Court Reporter Devon Gerber) (va)

378      Nov 22, 2024                 ORDER granting 366 Motion to Withdraw as Attorney. Attorney Robert Edward
                                      Godosky and Andre A Rouviere terminated; granting 369 Motion to Withdraw as
                                      Attorney. Attorney Robert Edward Godosky and Andre A Rouviere terminated;
                                      terminating 376 Motion for Leave to Appear. For the reasons stated on the record
                                      at the November 22, 2024 conference, Andre Rouviere's motion to withdraw, Dkt.
                                      No. 366, and Robert Godosky's motion to withdraw, Dkt. No. 369, are granted.
                                      Separately, the Court is in receipt of attorney Jessica Metzger's notice of
                                      appearance as counsel for Defendant DePuy Orthopaedics, Inc. Dkt. No. 376. The
                                      Clerk of Court is directed to: Terminate the motions pending at Dkt. No. 366, Dkt.
                                      No. 369, and Dkt. No. 376. Remove attorneys Andre Rouviere and Robert
                                      Godosky from the list of active counsel in this case. Update Plaintiff Jodi
                                      Rouviere's address on the docket and mail a copy of this order to Plaintiff Jodi
                                      Rouviere at: Jodi Rouviere 10950 SW 84th Ct Miami, Florida 33156. Update
                                      Plaintiff Jodi Rouviere's phone number on the docket to: (305) 608-8076. SO
                                      ORDERED. (Signed by Judge Gregory H. Woods on 11/22/2024) (sgz) (Entered:
                                      11/25/2024)

         Main Doc                     Order on Motion for Leave to Appear
         (/docket/7021271/378/rouviere-   AND Order on Motion to Withdraw as
         v-depuy-                     Attorney AND Order on Motion to
         orthopaedics-                Withdraw as Attorney
         inc/)

379      Dec 6, 2024                  MEMORANDUM OF LAW in Opposition re: 364 MOTION., 373 MOTION for
                                      Hearing. Omnibus Brief. Document filed by Howmedica Osteonics Corporation..
                                      (Asfendis, Paul) (Entered: 12/06/2024)

         Main Doc                     Memorandum of Law in Opposition to
         (/docket/7021271/379/rouviere-   Motion
         v-depuy-
         orthopaedics-
         inc/)

380      Dec 6, 2024                  DECLARATION of Paul E. Asfendis in Opposition re: 364 MOTION., 373 MOTION
                                      for Hearing.. Document filed by Howmedica Osteonics Corporation..(Asfendis,
                                      Paul) (Entered: 12/06/2024)

         Main Doc                     Declaration in Opposition to Motion

381      Dec 6, 2024                  MEMORANDUM OF LAW in Opposition re: 364 MOTION., 373 MOTION for
                                      Hearing. . Document filed by Depuy Orthopaedics, Inc...(Larson, Joel) (Entered:
                                      12/06/2024)

         Main Doc                     Memorandum of Law in Opposition to
         (/docket/7021271/381/rouviere-   Motion
         v-depuy-
         orthopaedics-
         inc/)

382      Dec 6, 2024                  FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT#383
                                      DECLARATION of J. T. Larson in Opposition re: 364 MOTION., 373 MOTION for
                                      Hearing.. Document filed by Depuy Orthopaedics, Inc.. (Attachments: # 1 Exhibit
                                      1- Summary Order, # 2 Exhibit 2- Hon. Raggi 2022 Annual Financial Disclosure, # 3
                                      Exhibit 3- Hon. Raggi 2023 Annual Financial Disclosure, # 4 Exhibit 4- Hon. Lee
                                      2022 Annual Financial Disclosure, # 5 Exhibit 5- Hon. Lee 2023 Annual Financial
                                      Disclosure, # 6 Exhibit 6- Hon. Robinson 2022 Annual Financial Disclosure, # 7
                                      Exhibit 7- Hon. Robinson 2023 Annual Financial Disclosure).(Larson, Joel) Modified
                                      on 12/10/2024 (lb). (Entered: 12/06/2024)

Main Doc            Declaration in Opposition to Motion
(/docket/7021271/382/rouviere-
v-depuy-
orthopaedics-
inc/)

Att 1               Exhibit 1- Summary Order
(/docket/7021271/382/1/rouviere-
v-depuy-
orthopaedics-
inc/)

Att 2               Exhibit 2- Hon. Raggi 2022 Annual
(/docket/7021271/382/2/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 3               Exhibit 3- Hon. Raggi 2023 Annual
(/docket/7021271/382/3/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 4               Exhibit 4- Hon. Lee 2022 Annual
(/docket/7021271/382/4/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 5               Exhibit 5- Hon. Lee 2023 Annual
(/docket/7021271/382/5/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 6               Exhibit 6- Hon. Robinson 2022 Annual
(/docket/7021271/382/6/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 7               Exhibit 7- Hon. Robinson 2023 Annual
(/docket/7021271/382/7/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

383      Dec 6, 2024               DECLARATION of J. T. Larson in Opposition re: 364 MOTION., 373 MOTION for
                                   Hearing.. Document filed by Depuy Orthopaedics, Inc.. (Attachments: # 1 Exhibit
                                   Summary Order, # 2 Exhibit Hon. Raggi 2022 Annual Financial Disclosure, # 3
                                   Exhibit Hon. Raggi 2023 Annual Financial Disclosure, # 4 Exhibit Hon. Lee 2022
                                   Annual Financial Disclosure, # 5 Exhibit Hon. Lee 2023 Annual Financial
                                   Disclosure, # 6 Exhibit Hon. Robinson 2022 Annual Financial Disclosure, # 7
                                   Exhibit Hon. Robinson 2023 Annual Financial Disclosure).(Larson, Joel) (Entered:
                                   12/06/2024)

                                   Main Doc            Declaration in Opposition to Motion
                                   (/docket/7021271/383/rouviere-
                                   v-depuy-

orthopaedics-
inc/)

Att 1                    Exhibit Summary Order
(/docket/7021271/383/1/rouviere-
v-depuy-
orthopaedics-
inc/)

Att 2                    Exhibit Hon. Raggi 2022 Annual
(/docket/7021271/383/2/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 3                    Exhibit Hon. Raggi 2023 Annual
(/docket/7021271/383/3/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 4                    Exhibit Hon. Lee 2022 Annual
(/docket/7021271/383/4/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 5                    Exhibit Hon. Lee 2023 Annual
(/docket/7021271/383/5/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 6                    Exhibit Hon. Robinson 2022 Annual
(/docket/7021271/383/6/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

Att 7                    Exhibit Hon. Robinson 2023 Annual
(/docket/7021271/383/7/rouviere-Financial Disclosure
v-depuy-
orthopaedics-
inc/)

| 384 | Dec 9, 2024 | MOTION for an order waiving certain ECF requirements on Plaintiff and directing Clerk to allow Plaintiff to file motions/responses/replies/documents via ECF. Document filed by Jodi Rouviere. (ar) (Entered: 12/11/2024) |
| | | Main Doc          Miscellaneous Relief |
| 385 | Dec 12, 2024 | OPINION AND ORDER re: 377 MOTION to Disqualify Judge. filed by Jodi Rouviere. For the reasons set forth above, Plaintiff's motion for disqualification is DENIED. The Clerk of Court is respectfully directed to terminate the pending motion at Dkt. No. 377. SO ORDERED. (Signed by Magistrate Judge Gary Stein on 12/12/2024) (tg) (Entered: 12/12/2024) |
| | | Main Doc          Memorandum & Opinion (/docket/7021271/385/rouviere-v-depuy-orthopaedics-inc/) |

| | | |
|---|---|---|
| 386 | Dec 23, 2024 | ORDER with respect to 384 Motion for for an order waiving certain ECF requirements on Plaintiff and directing Clerk to allow Plaintiff to file motions/responses/replies/documents via ECF. The Court grants the relief requested in the Application. The Court directs the Clerk of Court to waive the requirement that Plaintiff participate in an in-person training course in order to become an ECF User. In lieu of that requirement, the Clerk of Court is directed to accept a certification from Plaintiff that she has reviewed the "Online Learning" modules available on the following webpage, other than the modules excluded in the following sentence of this order: https://nysd.uscourts.gov/programs/ecf-training. Plaintiff need not review the following modules: "Miscellaneous Case Opening;" "Attorney Civil Case Opening," "Requesting a Civil Summons,""Filing An Amended Initiating Pleading," and "Fling a Motion to Appear Pro Hac."The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to mail a copy of this order to Plaintiff and not terminate the motion pending at Dkt. No. 384. SO ORDERED. (Signed by Judge Gregory H. Woods on 12/23/2024) (sgz) (Entered: 12/23/2024) |

Main Doc (/docket/7021271/386/rouviere-v-depuy-orthopaedics-inc/)    Order on Motion for Miscellaneous Relief

| | | |
|---|---|---|
| 389 | Jan 8, 2025 | REPLY to Defendants' Response in Opposition to re: 364 MOTION., 373 MOTION for Hearing. Document filed by Jodi Rouviere. (vba) (Entered: 01/13/2025) |

Main Doc (/docket/7021271/389/rouviere-v-depuy-orthopaedics-inc/)    Reply to Response to Motion

| | | |
|---|---|---|
| 387 | Jan 10, 2025 | JOINT LETTER MOTION for Leave to File Sur-Reply to Plaintiff's Reply addressed to Judge Gregory H. Woods from J.T. Larson dated January 10, 2025. Document filed by Howmedica Osteonics Corporation, Depuy Orthopaedics, Inc.. (Attachments: # 1 Exhibit A - Plaintiff's Reply).(Larson, Joel) (Entered: 01/10/2025) |

Main Doc (/docket/7021271/387/rouviere-v-depuy-orthopaedics-inc/)    Leave to File Document

Att 1 (/docket/7021271/387/1/rouviere-v-depuy-orthopaedics-inc/)    Exhibit A - Plaintiff's Reply

| | | |
|---|---|---|
| 388 | Jan 11, 2025 | ORDER terminating 384 Motion ; granting 387 Letter Motion for Leave to File Document. Application granted. Defendants' request for leave to file a joint sur-reply, Dkt. No. 387, is granted. Defendants are granted leave to file a five-page sur-reply by no later than January 17, 2025. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 384 and 387. (Signed by Judge Gregory H. Woods on 1/11/2025) (jjc) (Entered: 01/13/2025) |

Main Doc (/docket/7021271/388/rouviere-v-depuy-    Order on Motion for Leave to File Document AND Order on Motion for Miscellaneous Relief

orthopaedics-
inc/)

| | Jan 11, 2025 | Set/Reset Deadlines: Surreplies due by 1/17/2025. (jjc) |
|---|---|---|
| 390 | Jan 13, 2025 | LETTER addressed to Judge Gregory H. Woods from Jodi Rouviere dated 1/13/2025 re: Request for Leave to File a Sur-Sur-Reply. Document filed by Jodi Rouviere. (Attachments: # 1 Supplement attachment 1) (jjc) (Entered: 01/15/2025) |

Main Doc                Letter
(/docket/7021271/390/rouviere-
v-depuy-
orthopaedics-
inc/)

Att 1                Supplement attachment 1
(/docket/7021271/390/1/rouviere-
v-depuy-
orthopaedics-
inc/)

| 391 | Jan 15, 2025 | MEMO ENDORSEMENT on re: 390 Letter filed by Jodi Rouviere. ENDORSEMENT: Application denied. Plaintiff's application for leave to file a response to Defendants' sur-reply, Dkt. No. 390, is denied without prejudice. Defendants have not yet submitted their sur-reply. The importance, if any, of the issues Plaintiff has taken with Defendants' application for leave to file a sur-reply will not become clear until the sur-reply is filed. The Court also observes that Plaintiff's application only addresses one of the several arguments in her reply brief that Defendants raised as a basis for submitting a sur-reply. Plaintiff may renew her request for leave to file a response to Defendants' sur-reply after it has been submitted. The Clerk of Court is directed to mail a copy of this order to Plaintiff. (Signed by Judge Gregory H. Woods on 1/15/2025) (sgz) (Entered: 01/16/2025) |
|---|---|---|

Main Doc                Memo Endorsement
(/docket/7021271/391/rouviere-
v-depuy-
orthopaedics-
inc/)

| 392 | Jan 17, 2025 | JOINT REPLY MEMORANDUM OF LAW in Opposition re: 364 MOTION., 373 MOTION for Hearing. Joint Sur-Reply. Document filed by Howmedica Osteonics Corporation, Depuy Orthopaedics, Inc...(Asfendis, Paul) (Entered: 01/17/2025) |
|---|---|---|

Main Doc                Reply Memorandum of Law in
(/docket/7021271/392/rouviere-   Opposition to Motion
v-depuy-
orthopaedics-
inc/)

| 393 | Jan 21, 2025 | LETTER addressed to Judge Gregory H. Woods from Jodi Rouviere dated 1/21/2025 re: Plaintiff, Jodi Rouviere, pro se, respectfully moves to strike Defendants sur-reply (ECF-392) as improper and prejudicial. The sur-reply violates procedural norms by rearguing matters already addressed, introducing new arguments, and misleading the Court. Should the Court decline to strike it, Plaintiff requests leave to file a sur-sur-reply to address these misstatements and new arguments.. Document filed by Jodi Rouviere..(nd) (Entered: 01/21/2025) |
|---|---|---|

Main Doc                Letter
(/docket/7021271/393/rouviere-
v-depuy-

orthopaedics-
inc/)

| | | |
|---|---|---|
| 394 | Jan 21, 2025 | MEMO ENDORSEMENT on re: 393 Letter, filed by Jodi Rouviere. ENDORSEMENT: Application granted in part. Plaintiff's request that the Court strike Defendants' sur-reply is denied. Plaintiff's request for leave to submit a response to Defendants' sur-reply is granted. Plaintiff is granted leave to submit a response to Defendants' sur- reply by no later than January 28, 2025. The Clerk of Court is directed to mail a copy of this order to Plaintiff. SO ORDERED. (Signed by Judge Gregory H. Woods on 1/21/2025) (ar) (Entered: 01/22/2025) |

Main Doc                 Memo Endorsement
(/docket/7021271/394/rouviere-
v-depuy-
orthopaedics-
inc/)

| | | |
|---|---|---|
| 395 | Jan 28, 2025 | PLAINTIFF JODI ROUVIERE'S SUR-SUR REPLY TO DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S RULE 60(b)(6) MOTION re: 392 Reply Memorandum of Law in Opposition to Motion. Document filed by Jodi Rouviere. (jjc) (Entered: 01/30/2025) |

Main Doc                 Reply (non-motion)
(/docket/7021271/395/rouviere-
v-depuy-
orthopaedics-
inc/)

| | | |
|---|---|---|
| 396 | Jun 12, 2025 | MEMORANDUM OPINION & ORDER re: 364 MOTION. filed by Jodi Rouviere, 373 MOTION for Hearing. filed by Jodi Rouviere. For the foregoing reasons, Plaintiffs motions for vacatur and for an evidentiary hearing are DENIED. The Clerk of Court is directed to terminate the motions pending at Dkt. No. 364 and Dkt. No. 373. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). SO ORDERED. (Signed by Judge Gregory H. Woods on 6/12/2025) (sgz) (Entered: 06/12/2025) |

Main Doc                 Memorandum & Opinion
(/docket/7021271/396/rouviere-
v-depuy-
orthopaedics-
inc/)

| | | |
|---|---|---|
| 397 | Jun 17, 2025 | NOTICE OF APPEAL from 396 Memorandum & Opinion,.. Document filed by Jodi Rouviere. Form D-P is due within 14 days to the Court of Appeals, Second Circuit.. (nd) (Entered: 06/17/2025) |

Main Doc                 Notice of Appeal
(/docket/7021271/397/rouviere-
v-depuy-
orthopaedics-
inc/)

| | | |
|---|---|---|
| | Jun 17, 2025 | Transmission of Notice of Appeal and Docket Sheet to USCA |
| | Jun 17, 2025 | Appeal Record Sent to USCA - Electronic File |
| | Jun 17, 2025 | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 397 Notice of Appeal..(nd) |

Jun 17, 2025                    Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal
                                Electronic Files for 397 Notice of Appeal filed by Jodi Rouviere were transmitted to
                                the U.S. Court of Appeals..(nd)

          Jun 26, 2025                    USCA Appeal Fees

          Jun 26, 2025                    USCA Appeal Fees received $ 605.00 receipt number 41035 on 6/26/2025 re: 397
                                          Notice of Appeal filed by Jodi Rouviere..(nd)

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODI ROUVIERE and | ) |
| ANDRE ROUVIERE, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) **Case No. 18-cv-04814-JGW-GLS** |
| | ) |
| DEPUY ORTHOPAEDICS, INC. n/k/a | ) |
| MEDICAL DEVICE BUSINESS | ) |
| SERVICES, INC. and HOWMEDICA | ) |
| OSTEONICS CORPORATION | ) |
| d/b/a STRYKER ORTHOPAEDICS, | ) |
| | ) |
| *Defendants.* | ) |
| _____ | ) |

## [PROPOSED] ORDER

Upon the Motion of Plaintiff Jodi Rouviere for relief from order and judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), and after due consideration, it is hereby ORDERED that:

1. Plaintiff's Motion is GRANTED.
2. ECF Nos. 318 and 351 are VACATED.
3. The Clerk of Court is directed to reopen the case.
4. The case shall proceed before the currently assigned District Judge, or as otherwise directed by the Court, for such further proceedings as are necessary following vacatur.

ALTERNATIVE INDICATIVE RULING (Rule 62.1)

5. To the extent the Court determines it lacks authority to grant the Motion because an appeal or rehearing proceedings are pending, the Court states pursuant to Federal Rule of Civil Procedure 62.1 that the Motion raises a substantial issue and that the Court would grant the Motion upon remand.
6. Upon remand, the Court would vacate ECF Nos. 318 and 351 and direct that further proceedings occur before a non-disqualified judicial officer.

Dated: _____, 2026
New York, New York

_____
HON. GREGORY H. WOODS
United States District Judge

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODI ROUVIERE and<br>ANDRE ROUVIERE, | )<br>)<br>) |
| *Plaintiffs,* | )<br>) |
| v. | ) Case No. 18-cv-04814-GHW-GLS |
| | ) |
| DEPUY ORTHOPAEDICS, INC. n/k/a<br>MEDICAL DEVICE BUSINESS<br>SERVICES, INC. and HOWMEDICA<br>OSTEONICS CORPORATION<br>d/b/a STRYKER ORTHOPAEDICS, | )<br>)<br>)<br>)<br>) |
| | ) |
| *Defendants.* | )<br>) |

**DECLARATION OF JODI ROUVIERE**
**IN SUPPORT OF MOTION FOR RELIEF FROM ORDER AND JUDGMENT**

I, Jodi Rouviere, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. I am a Plaintiff in this action and I appear *pro se*. I submit this Declaration in support of my Motion for Relief from Order and Judgment under Federal Rule of Civil Procedure 60(b)(6). This Declaration is submitted as Exhibit G**.**

2. The documents attached to my motion papers are true and correct copies of the records they purport to be. I submit them to anchor the procedural record.

3. Exhibit A is ECF No. 396, the Court's June 12, 2025 Opinion and Order addressing my prior Rule 60(b)(6) request and applying *Liljeberg*.

4. Exhibit B is the Second Circuit's December 18, 2025 summary affirmance order.

5.  Exhibit C contains the summary judgment orders entered at ECF Nos. 318 and 351.

6.  Exhibit D is a Second Circuit docket excerpt reflecting payment and receipt of appellate fees in connection with the appeal(s) referenced in my papers.

7.  Exhibit E is a public docket excerpt reflecting the procedural chronology referenced in my Memorandum of Law.

8.  Exhibit F is a proposed Order (including alternative indicative-ruling language under Fed. R. Civ. P. 62.1).

9.  I declare these facts based on my review of the Court's docket and the attached exhibits.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: January 23, 2026                        /s/ Jodi Rouviere
Miami, Florida                                 Jodi Rouviere
                                               Plaintiff, Pro se